## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**Case No. 20 – 11889**

DR. SHIVA AYYADURAI,
   *The Plaintiff,*

v.

WILLIAM FRANCIS GALVIN, in his official capacity
as the Secretary of the Commonwealth of Massachusetts,
   *The Defendant.*

## VERIFIED COMPLAINT & JURY DEMAND

### Introduction

This is a Complaint to redress the Commonwealth of Massachusetts' repeated violations of Plaintiff Dr. Shiva Ayyadurai's civil rights guaranteed by the First Amendment to the United States Constitution and Article 16 of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts.

This Complaint stems from actions that the Office of the Secretary of the Commonwealth took on or around September 26, 2020, to suppress Dr. Shiva Ayyadurai's speech—specifically, the tweets that he posted on his Twitter account—that were critical of the Secretary of the Commonwealth's Election Division in the handling of the 2020 Massachusetts primary election. The Commonwealth caused Twitter to suspend Dr. Ayyadurai's Twitter account for a total of approximately 14 days in the midst of his campaign for the United States Senate.

The Commonwealth's actions violated Dr. Ayyadurai's constitutionally-guaranteed rights to freedom of speech, the press, and to petition the government for a redress of grievances.

## PARTIES

1. Dr. Shiva Ayyadurai (the "Plaintiff") is a scientist, engineer, inventor, educator, author, and entrepreneur. He is currently a candidate for the United States Senate in Massachusetts. His offices are located at: 701 Concord Avenue, Cambridge, Massachusetts 02138.

2. William Francis Galvin (the "Secretary") is the Secretary of the Commonwealth of Massachusetts, with an office at: One Ashburton Place, 17th Floor, in Boston, Massachusetts 02108.

## JURISDICTION & VENUE

3. This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §1331 & §1343 because this action raises claims under the First Amendment of the U.S. Constitution, and 42 U.S.C §1983, as the Defendant acted under the color-of-law when he violated the Plaintiff's rights to freedom of speech, freedom of the press, and freedom to petition, *inter alia*.

4. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§1391(b)(1) & (2) because this Court is seated in a District in which the Defendant holds his main office, exercises his authority in his official capacity, and has violated the constitutional rights that are the subject of this lawsuit. Moreover, the Plaintiff resides in the District, and this is the location where the Plaintiff suffered his injuries as a result of the Defendant's violations.

## FACTUAL ALLEGATIONS

5.  Dr. Shiva Ayyadurai was born in 1963 into India's oppressive caste system as a low-caste untouchable. The oppressive conditions and the corrupt system of Indian governance motivated his parents to immigrate to the United States in 1970 to seek greater freedom and opportunities for themselves and their children.

6.  Dr. Shiva Ayyadurai earned four degrees from the Massachusetts Institute of Technology (M.I.T.). He holds a bachelor's degree in Electrical Engineering and Computer Science; a master's degree in Mechanical Engineering; a master's degree in Visual Studies; and a doctoral degree in Biological Engineering.

7.  Dr. Ayyadurai is a Westinghouse Honors Award recipient; member of research and engineering academic honor societies, including Eta Kappa Nu, Sigma Xi, and Tau Beta Pi; a Fulbright Scholar; Lemelson-MIT Awards Finalist; nominee for the National Medal of Technology and Innovation; the First Outstanding Scientist/Technologist of Indian Origin.

8.  Dr. Ayyadurai is a scientist, engineer, inventor, educator, author, and entrepreneur, whose works—including startup companies, lectures and books, inventions, publications and patents—span the fields of art, science, technology, medicine, and politics.

9.  As an educator, Dr. Ayyadurai has developed new curricula; has taught courses at undergraduate and graduate level at universities such as M.I.T., and has been invited to deliver lectures and talks at leading institutions throughout the world.

10. Modern electronic and digital platforms including email, social media, and video are critical to the success and growth of Dr. Ayyadurai's scientific, technological,

entrepreneurial, educational, and political endeavors, be it for his technology companies such as CytoSolve, Inc. and EchoMail, Inc.; or for his educational institutes including Systems Health, LLC and the International Center for Integrative Systems, a 501(c)(3) research and educational organization; and, for his political activities including activism for various social and political causes, as well as for his candidacy for U.S. Senate in Massachusetts.

11. In August of 2011, Dr. Ayyadurai opened his Twitter account with the handle @va_shiva to build and reach local, national, and global audiences to support his aforementioned endeavors.

12. During August of 2011 to September 25, 2020, Dr. Ayyadurai published approximately 30,000 "tweets"—or posts—on Twitter.

13. Upon information and belief, during August of 2011 to September 25, 2020, Dr. Ayyadurai had neither been suspended from Twitter nor had Twitter ever forced him to remove any of his approximately 30,000 tweets.

14. Dr. Ayyadurai's tweets included the use of text, images, and videos, with content spanning the areas of science, medicine, education, politics, technology, and innovation.

15. During the period of August 2011 to September 25, 2020, due to Dr. Ayyadurai's hard work and consistent publication of content on Twitter, his Twitter followers grew from zero to over quarter million.

16. In February of 2017, Dr. Ayyadurai announced his candidacy for U.S. Senate against incumbent Democrat Senator Elizabeth Warren, where he ran as an Unenrolled, "Independent" candidate in the 2018 Massachusetts U.S. Senate general elections.

17. In January of 2019, Dr. Ayyadurai announced his candidacy for U.S. Senate against incumbent Senator Ed Markey, where he ran, and is running, as a Republican candidate in the 2020 Massachusetts U.S. Senate general elections.

18. During January 2019 to September 1, 2020, Dr. Ayyadurai and his campaign for U.S. Senate organized approximately 3,100 volunteers; distributed approximately 10,000 lawn signs and 20,000 bumper stickers; and raised approximately 20,000 donations that were used to fund major billboards on highways, advertisements on social media, radio and network television, making "Dr.SHIVA" a household name across Massachusetts.

19. On the evening of September 1, 2020, Dr. Ayyadurai came to find out that he had lost the 2020 Massachusetts Republican primary U.S. Senate race to an opponent who had little to no visibility, a handful of volunteers, and no real campaign organization.

20. Dr. Ayyadurai did win in Franklin County in the 2020 Massachusetts Republican primary election by nearly 10%, where the ballots were mainly hand-counted; however, he lost 60% to 40% in every other county where the ballots were mainly machine-counted using electronic software that tabulated vote counts using ballot images.

21. On or around September 4, 2020, Dr. Ayyadurai's volunteers issued Freedom of Information Act (FOIA) requests to approximately fifteen (15) cities/towns requesting: (a) the participating voters lists for each city/town, those being the names of all voters who voted in the 2020 Massachusetts primary elections; and (b) the tabulation or counts of the actual votes cast.

22. On September 9, 2020, Dr. Ayyadurai issued a Freedom of Information Act (FOIA) request to the Massachusetts Secretary of State's office requesting among other things ballot images, log files, and voting records concerning the 2020 Massachusetts primary elections.

23. On September 9, 2020, an election official at the Secretary of State's office stated in person to Dr. Ayyadurai, as documented on video, that the Secretary of State had "no ballot images" and the feature for saving "ballot images were turned off," and stated that his office would be sending Dr. Ayyadurai a formal response via email.

24. On or around September 20, 2020, Dr. Ayyadurai and his volunteers, after receiving data from seven (7) of the fourteen (14) towns/cities pursuant to FOIA, discovered in every one of those seven (7) towns/cities that there were more votes than voters. For example, Boston had approximately 4,100 more votes than voters; Newton had approximately 1,700 more votes than voters.

25. On September 24, 2020, Michelle Tassinari, legal counsel to the Secretary of State's Elections Division, sent Dr. Ayyadurai an email stating that Massachusetts was prohibited from saving ballot images, to which Dr. Ayyadurai requested, via email, the Massachusetts law or statute documenting such prohibition.

26. On September 25, 2020, Michelle Tassinari wrote another email to Dr. Ayyadurai stating that the paper ballots were saved but that ballot images were "not stored," to which Dr. Ayyadurai responded, via email, reiterating his request for the Massachusetts law or statute allowing the Commonwealth the right to destroy—not store—ballot images, and in that email Dr. Ayyadurai stated emphatically that the

Commonwealth had violated Federal Law by not saving ballot images, as any records generated in connection with a Federal election had to be saved for 22 months.

27. Upon information and belief, as of September 25, 2020, Dr. Ayyadurai had neither been suspended nor forced to remove any tweets by Twitter.

28. On September 25, 2020, Dr. Ayyadurai published tweets sharing his email conversation with Ms. Tassinari; irregularities he observed concerning the tabulation of electronic ballots; the fact that ballot images were destroyed—"not stored"— during or after 2020 Massachusetts primary election; and the data in his possession showing that there were more votes than voters in the seven (7) cities/towns for which his campaign had received information from FOIA requests. These Twitter posts contained information that was accurate to the best of Dr. Ayyadurai's knowledge and understanding; and, these posts were indeed accurate.

29. On September 26, 2020, Dr. Ayyadurai was forced to remove the first of approximately four tweets, and his Twitter account was suspended.

30. Upon information and belief, prior to September 26, 2020, Dr. Ayyadurai had neither been forced to remove tweets nor had he ever been suspended from Twitter. Upon information and belief, September 26, 2020, was the first time he had ever been forced to remove tweets, and it was the first time that he had ever been suspended on Twitter, over his nearly 10-year tenure on Twitter across his approximately 30,000 tweets.

31. On or around September 25, 2020, Debra O'Malley, a spokeswoman for the Secretary of the Commonwealth of Massachusetts, admitted that her office had notified Twitter to suppress Dr. Ayyadurai's Twitter account.[1]

32. When the Secretary of the Commonwealth sought to suppress Dr. Ayyadurai's speech, Dr. Ayyadurai was a candidate for U.S. Senate (and is currently still in the race for U.S. Senate).

33. After the Secretary of the Commonwealth's notification, Dr. Ayyadurai was forced to remove no fewer than seven of his posts.

34. After the Secretary of the Commonwealth's notification, Dr. Ayyadurai was suspended from Twitter for a total of approximately 14 days.

35. The Secretary of the Commonwealth effectively silenced Dr. Ayyadurai's Twitter presence during approximately 14 days of the remaining 40 days leading up to the federal election of November of 2020.

36. As a result of the Commonwealth's actions, Dr. Ayyadurai seeks compensation for the unlawful deprivation of his constitutionally-guaranteed rights—his right to free speech, the press, to petition, and to peaceably assemble—as guaranteed to all United States residents by the First Amendment of the United States Constitution and to all Massachusetts residents by Article 16 of the Declaration of Rights of the Massachusetts Constitution, for having been effectively silenced by the Commonwealth, and for having been deprived of valuable and essential campaign

---

[1] Lead Stories Article, by Eric Ferkenhoff: "Ayyadurai's Claim that Massachusetts Destroyed Over 1 Million Ballots in Republican Primary is NOT True" (Sep. 28, 2020): https://leadstories.com/hoax-alert/2020/09/fact-check-shiva-ayyadurais-claim-that-massachussetts-election-officials-destroyed-over-1-million-republican-primary-ballots-is-not-true.html

influence for approximately 14 days in the approximately 40 dates of the race for the U.S. Senate seat.

37. As a result of having his rights stripped from him by the Commonwealth, the Plaintiff suffered damages, including, but not limited to:

    a.  The loss of his constitutionally-guaranteed right to Free Speech;

    b.  The loss of his constitutionally-guaranteed right to the Press;

    c.  The loss of his constitutionally-guaranteed right to Petition the Government for a Redress of Grievances;

    d.  The loss of his constitutionally-guaranteed right to Peaceably Assemble; and

    e.  The loss of essential time and means to campaign during his race for the 2020 U.S. Senate seat.

38. Title 42 U.S.C. §1983 holds that: "Every person who, under color of any statute [or] ordinance…subjects, or causes to be subjected, any citizen of the Unites States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

39. Article 16 of the Massachusetts Declaration of Rights states: "The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth."

40. Now therefore, the Plaintiff is seeking compensation for his loss of liberty in the amount of $1,200,000,000 ($1.2 Billion), on the below-referenced grounds.

## COUNT I
### Violations of the Freedom of Speech or Expression

41. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

42. The First Amendment states, in relevant part: "Congress shall make no law…abridging the freedom of speech."

43. The Fourteenth Amendment states, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

44. "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." Riley v. National Federation of Blind, 487 U.S. 781 (1988); citing NAACP v. Button, 371 U.S. 415, 438 (1963).

45. The Defendant effectively silenced the Plaintiff by bidding Twitter to silence the Plaintiff.

46. The First Amendment prohibits the states from restricting speech because of its message, its ideas, its subject-matter, or its content, and such content-based restrictions are presumptively unconstitutional, and are justified only if the government proves that they are narrowly tailored to serve only a compelling state interest.

47. Here, as above-cited, there are no "compelling state interests," as defined by the law, as the Defendant was merely silencing the Plaintiff because the Defendant disagreed with the Plaintiff's posts.

10

48. Importantly, even if the Plaintiff's posts contained incorrect information—and the Plaintiff maintains that his posts was based on sound evidence—the Defendant had no legal right to bid Twitter to silence the Plaintiff.

49. Pursuant to 42 U.S.C., §§1983 & 1988, the Plaintiff is entitled to judgment as the Defendants violated his constitutionally-guaranteed rights.

50. The Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law, and the Plaintiff is therefore entitled to an award of his attorney-fees pursuant to 42 U.S.C. §1988.


## COUNT II
### Violations of the Right to Freedom of the Press

51. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

52. The First Amendment states, in relevant part: "Congress shall make no law...abridging the freedom of speech, or of the press."

53. The Fourteenth Amendment states, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

54. As a Massachusetts resident, and as a man seeking political office, the Plaintiff had a right to publish his opinion and information, particularly when he is addressing matters of important public concern—including, but not limited to, election fraud.

55. By requesting that Twitter prevent the Plaintiff from publishing his comments regarding the Massachusetts elections and the Secretary of the Commonwealth's

actions regarding vote counts, the Secretary of the Commonwealth sought to prevent the Plaintiff's freedom of the press.

56. Pursuant to 42 U.S.C. §§1983 & 1988, the Plaintiff is entitled to judgment as the Defendant violated his right to freedom of the press.

57. The Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law, and the Plaintiff is therefore entitled to an award of his attorneys' fees pursuant to 42 U.S.C. §1988.

## COUNT III
### Violations of the Freedom to Petition the Government

58. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

59. The First Amendment states, in relevant part: "Congress shall make no law...abridging...the right of the people...to petition the Government for a redress of grievances."

60. The Fourteenth Amendment states, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

61. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482 (1985).

62. As a Massachusetts resident, and as a man seeking political office, the Plaintiff, including his political supporters, had a Right to Petition the Government for a Redress of Grievances—including, but not limited to, election fraud.

63. As the Plaintiff was seeking to petition the government, the Defendant used covert means by bidding Twitter to prevent the Plaintiff from exercising his constitutionally-guaranteed rights.

64. Pursuant to 42 U.S.C. §§1983 & 1988, the Plaintiff is entitled to judgment as the Defendant violated his constitutionally-guaranteed rights.

65. The Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law, and the Plaintiff is therefore entitled to an award of his attorney-fees pursuant to 42 U.S.C. §1988.

## COUNT IV
### Violations of the Freedom to Peaceably Assemble

66. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

67. The First Amendment states, in relevant part: "Congress shall make no law…abridging…the right of the people peaceably to assemble."

68. The Fourteenth Amendment states, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

69. "[P]eaceable assembly for lawful discussion cannot be made a crime. The holding of meetings for peaceable political action cannot be proscribed." DeJonge v. Oregon, 299 U.S. 353, 365 (1937).

70. Preventing peaceful folks from congregating on public platforms—regardless of whether such platforms are physical or virtual—is an abridgement of the Right to Peaceably Assemble.

71. The Defendant admittedly bid Twitter to silence the Plaintiff and his followers from assembling online, which blocked the Plaintiff from speaking to his followers on the platform.

72. This violation of the Right to Peaceably Assemble occurred during a campaign for the U.S. Senate.

73. Pursuant to 42 U.S.C. §§1983 & 1988, the Plaintiff is entitled to judgment as the Defendants violated his constitutionally-guaranteed rights.

74. The Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law, and the Plaintiff is therefore entitled to an award of his attorney-fees pursuant to 42 U.S.C. §1988.

## COUNT V
**Violations of the Right to Freedom of the Press and Freedom of Speech Guaranteed by Article 16 of the Declaration of Rights of the Massachusetts Constitution**

75. The Plaintiff incorporates by reference the paragraphs set forth above, and alleges the same as if originally set forth herein.

76. Article 16 of the Declaration of Rights of the Massachusetts Constitution states: "The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged."

77. By requesting that Twitter suppress Dr. Ayyadurai's published opinion, the Commonwealth caused the violation of Dr. Ayyadurai's rights under Article 16. As a result of these violations, Dr. Ayyadurai was forced to retain counsel to vindicate his rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands that Judgment be entered against the Defendant to compensate the Plaintiff for damages, and so that justice might be upheld as the Defendant violated the Plaintiff's Constitutionally-Guaranteed Rights, applicable to such parties, and order that the following damages be awarded:

a.  Damages for Loss of Liberty;

b.  Compensatory Damages;

c.  Punitive Damages;

d.  Attorney's fees;

e.  Court costs;

f.  Pre- and post-judgment interest;

g.  Injunctive relief; or

h.  Any such other relief as this Honorable Court might deem appropriate and equitable.

### Temporary Restraining Order

In addition to the relief requested above, the Plaintiff requests that this Court issue a Temporary Restraining Order, restraining the Defendant from again bidding Twitter to remove, ban, or otherwise silence the Plaintiff at least until the results of the race for the U.S. Senate are announced—likely by November 4, 2020, the day after election day.

A restraining order is necessary because:

-   The Plaintiff has a substantial likelihood of success on the merits of the case, since the Office of the Secretary of the Commonwealth has admitted it silenced the Plaintiff.

-   Absent an injunction, the Plaintiff would suffer an irremediable loss of rights during his campaign for the U.S. Senate. While the Plaintiff has already lost essential time and means to campaign during his race for the 2020 U.S. Senate seat, the Plaintiff would incur even more losses if the Defendant were

permitted to continue to violate the Plaintiff's constitutionally-guaranteed rights; and

- Granting this restraining order will serve the public interest, as it will preserve the public's ability to hear political speech and consider a public petition.

- Granting this restraining order will no prejudice the Defendant—as no harm may come to the government being preventing from silencing peaceful political speech.

## JURY TRIAL DEMAND

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.

The Plaintiff,
By His Attorney:

Dated: October 20, 2020
/s/ Daniel Casieri
Daniel Casieri, BBO No. 697693
The Law Office of Daniel Casieri, Esq.
19 Court Street, Unit 3D
Plymouth, MA 02360
Telephone: 508.400.0774
Email: danielcasierilaw@gmail.com

## VERIFICATION

I, Dr. Shiva Ayyadurai, hereby attest under the penalties of perjury that the allegations as presented in this Verified Complaint are accurate to the best of my understanding and recollection.

Dated: October 20, 2020
/s/ Dr. Shiva Ayyadurai
Dr. Shiva Ayyadurai