UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2020 OCT 27 PM 1:06
U.S. DISTRICT COURT
DISTRICT OF MASS

Case No. 20-11889

DR. SHIVA AYYADURAI,
 *The Plaintiff,*

v.

WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts,
 *The Defendant.*

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF's EMERGENCY MOTION FOR A TEMPORARY RESTRATING ORDER AND SHORT ORDER OF NOTICE

Plaintiff Dr. Shiva Ayyadurai filed with this Honorable Court a complaint and emergency motion for a Temporary Restraining Order and Short Order of Notice to restrain and/or enjoin the Defendant from further implementing impermissible content-based restrictions on Plaintiff's speech by abusing his official government position to cause Twitter to remove, ban, or otherwise silence Plaintiff's speech on Twitter, a platform that Dr. Ayyadurai heavily relies on to communicate with his audience of over quarter of a million including followers and supporters, as well as the volunteers, donors, prospective voters, and voters for his active U.S. Senate campaign.

1

On October 20, 2020, Judge Wolf issued an Order requiring certificates of service and conferral per LR 7.1, and a supplemental memorandum to include case law in support of the TRO. The defendant was timely served and the parties did confer but the certificates were inadvertently omitted by previous counsel. Plaintiff, now *pro se*, respectfully submits this supplemental memorandum of law in support of his requst for an emergency injunction.

## BACKGROUND

Dr. Shiva Ayyadurai is a candidate for the office of U.S. Senate from the State of Massachusetts. A key pillar of Dr. Ayyadurai's campaign is promoting integrity in systems of governance. He has been on the Twitter platform for nearly a decade, starting in August of 2011. Since August of 2011, Dr. Ayyadurai has worked hard to grow his Twitter audience from zero to over quarter of a million, by posting approximately 30,000 tweets. Dr. Ayyadurai has never faced any action by Twitter, to the best of his knowledge, that caused loss of access to his account, however temporary, until Galvin's intervention.

Starting on September 1, 2020, Dr. Ayyadurai discovered evidence of fraud and corruption in electronic voting systems and processes, certified by the Secretary of State's Election Division, as detailed in the Verified Complaint. From September 1, 2020 to approximately September 24, 2020, Dr. Ayyadurai began publishing tweets on his Twitter account, sharing his discoveries and opinions on election. During that time, he changed his main banner image on Twitter to "WRITE IN Dr.SHIVA for U.S. Senate. #StopElectionFraud."

2

During September 1, 2020 to September 24, 2020, the period during which Dr. Ayyadurai was exposing the issues of election fraud, Twitter neither forced him to remove his posts nor banned his access to his Twitter account.

On September 25, 2020, Dr. Ayyadurai posted a series of tweets specifically exposing the Defendant's admitting to destroying – "not storing" - ballot images in the 2020 Massachusetts primary elections. Ballot images are the digital objects used to tabulate votes on the electronic voting systems, which the Defendant certifies for use in Massachusetts. Dr. Ayyadurai asserted, in those tweets, the Defendant not only was required to preserve ballot images pursuant to United States federal law for 22 months, but also had violated federal law by not storing those images.

On or around September 25, 2020, Debra O'Malley, a spokeswoman for the Secretary of the Commonwealth of Massachusetts, admitted that her office had notified Twitter to suppress Dr. Ayyadurai's Twitter account. *See* Eric Ferkenhoff: "Ayyadurai's Claim that Massachusetts Destroyed Over 1 Million Ballots in Republican Primary is NOT True" (Sep. 28, 2020): https://leadstories.com/hoax-alert/2020/09/fact-check-shiva-ayyadurais-claim-that-massachussetts-election-officials-destroyed-over-1-million-republican-primary-ballots-is-not-true.html

The Defendant's notification caused Twitter to not only force Dr. Ayyadurai to remove no fewer than seven (7) of his tweets that were critical of the Defendant's involvement in the 2020 Massachusetts primary election but also in Dr. Ayyadurai being banned from Twitter for approximately fourteen (14) days, starting on September 26, 2020.

The Defendant causing Dr. Ayyadurai being banned from Twitter for approximately fourteen (14) days, at a time when only thirty-nine (39) days remained in the U.S. Senate, caused irreparable harm to the Plaintiff. That number of days amounts to nearly 40% of the days remaining until the November 3, 2020 general elections.

Defendant Galvin has abused his official power to actively intervene in the conduct of one candidate's federal election campaign. This is repugnant to the Constitution and must not be allowed to happen again.

Given the actions of the Defendant have already caused irreparable harm to the Plaintiff and his campaign, and given only less than ten (10) days remain in the campaign, and further given that the Plaintiff lives in fear that any postings critical of the Defendant will result in the Defendant taking vengeful action to again cause Twitter to ban him just before Election Day, Plaintiff seeks this Temporary Restraining Order and Short Order of Notice to ensure that the Defendant will be restrained and/or enjoined from further causing Twitter to ban his account, remove his tweets, and silence his speech on Twitter.

## ARGUMENT

The court must weight four factors when deciding whether to grant a motion for a temporary restraining order: (1) The likelihood of success on the merits; (2) The potential for the movant to be irreparably harmed by denial of the relief; (3) The balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted; and (4) The effect that granting preliminary relief will have on the public interest. *Phillip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir., 1998), *Monsanto v. Geertson*, 561 U.S. 139 (2010), *Trump v. Hawaii*, 585 U.S. ___ (2018), *Arborjet, Inc. v. Rainbow Treecare*, 794 F.3d 168 (1st Cir. 2015), *Planned Parenthood League v. Bellotti*, 641 F.2d 1006 (1st Cir. 1981)  These factors are easily met in this action.

1.     Likelihood of success on the merits favors the Plaintiff

4

The facts of this case demonstrate that the Plaintiff here has a great likelihood of success on the merits because it is beyond dispute that the defendant violated an explicit prohibition on any government official imposing content-based restrictions on speech. There are few cases where the required result is as open and shut as enjoining a government official from continuing to abuse his official power to censor speech and make a candidate's voice disappear just before Election Day.

"While some means of communication may be less effective than others at influencing the public in different contexts, any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. And in all events, those differentiations might soon prove to be irrelevant or outdated by technologies that are in rapid flux. See *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 639 (1994). Courts, too, are bound by the First Amendment. We must decline to draw, and then redraw, constitutional lines based on the particular media or technology used to disseminate political speech from a particular speaker." "The Government may not render a ban on political speech constitutional by carving out a limited exemption through an amorphous regulatory interpretation." "First Amendment standards, however, "must give the benefit of any doubt to protecting rather than stifling speech." *WRTL*, 551 U. S., at 469 (opinion of ROBERTS, C. J.) (citing *New York Times Co. v. Sullivan*, 376 U. S. 254, 269–270 (1964))." "As the foregoing analysis confirms, the Court cannot resolve this case on a narrower ground without chilling political speech, speech that is central to the meaning and purpose of the First Amendment. See *Morse v. Frederick*, 551 U. S. 393, 403 (2007).
*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010)

Here it is undisputed that Galvin stifled the Plaintiff political candidate's political speech during an election campaign based solely on the content of Plaintiff's speech, which exposed irregularities in the way Galvin conducted and influenced the counting of votes during the recent Republican primary elections, a matter of great public concern. This was unconstitutional *per se*. No court should require voluminous briefing on this point.

"It is speech on 'matters of public concern'" that is "at the heart of the First Amendment's protection." *First National Bank of Boston v. Bellotti*, 435 U. S. 765, 435 U. S. 776 (1978), citing *Thornhill v. Alabama*, 310 U. S. 88, 310 U. S. 101 (1940)

The Plaintiff, the candidate who has been consciously and willfully harmed in a most un-American fashion by Galvin, is assured of succeeding on the merits of his claim. His claim also meets the required plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Iannacchino v. Ford Motor*, 451 Mass. 623 (2008)

2.   This political candidate has already been irreparably harmed

Defendant Galvin had Dr. Ayyadurai banned from Twitter for approximately fourteen (14) days, at a time when only thirty-nine (39) days remained in the U.S. Senate campaign, which amounts to nearly 40% of the days remaining until the November 3, 2020 general elections. This caused massive harm to a write-in U.S Senate federal candidate who needs as much public recognition as possible so voters can learn that he is still a candidate whose name they would have to write in themselves if they choose. Galvin, through his conscious defiant violation of bedrock American principles enshrined in the Constitution via the First Amendment, deliberately caused immense harm to this candidate Plaintiff by making him disappear from a platform that he had been dependent on for political outreach and political speech. And Galvin did this solely to block the candidate from raising awareness of irregularities with the way Galvin counts votes, which is as content-based as a restriction on speech by the government can get.

"The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v. United    States,

354 U. S. 476, 354 U. S. 484 (1957); New York Times Co. v. Sullivan, 376 U. S. 254, 376 U. S. 269 (1964). "[S]peech concerning public affairs is more than self- expression; it is the essence of self-government." Garrison v. Louisiana, 379 U. S. 64, 379 U. S. 74-75 (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,'" and is entitled to special protection. NAACP v. Claiborne Hardware Co., 458 U. S. 886, 458 U. S. 913 (1982); Carey v. Brown, 447 U. S. 455, 447 U. S. 467 (1980)."
*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)

"Entitled" means this court is duty-bound to immediately enjoin Galvin from further willful violations of the Constitution including causing the candidate Plaintiff's political speech to be stifled on Twitter.

3. Defendant Galvin faces no harm from an injunction

Galvin faces no harm whatsoever from being required by this court to further refrain from abusing his office to violate the candidate Plaintiff's free speech rights and to be enjoined from stifling political speech on a matter of public concern. Again, no voluminous briefing is required for this court to follow hornbook law.

"Strong medicine is required to cure the defendant's disrespect for the law." *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70 (1st Cir. 2000) The requested injunction must issue.

4. The requested injunction is in the public interest

It is in the public interest to uphold the rule of law and require elected officials to stop abusing their office to impose content-based restraints on political speech in the closing days of an election campaign in order to actively sabotage a candidate's prospects and throw the election.

It is in the public interest to comply with 100 years of Supreme Court rulings that require courts to support and protect First Amendment rights. *Dun & Bradstreet, Inc.*, supra

<u>No bond should be imposed on the Plaintiff by the court</u>

Finally, because the granting of the Plaintiff's Motion for a Temporary Restraining Order will cause the Defendant to suffer no monetary loss and no prejudice, the Plaintiff respectfully requests that this Court forego asking the Plaintiff to issue a bond to the Court. Most importantly, the Plaintiff maintains that there is already a mechanism in place to estop the Secretary of the Commonwealth from silencing the Plaintiff—namely, the First Amendment. It would be a miscarriage of justice if the Plaintiff were made to place a bond in order to secure rights already guaranteed by the First Amendment.

## CONCLUSION

Based on the points detailed above this court must issue the emergency injunction immediately as a matter of law. Because of the severe deficiency of time left before Election Day this injunction must be issued today, *ex parte* if need be.

Respectfully submitted under the pains and penalties of perjury,

*[signature]*
Plaintiff, *pro se*
Dr. Shiva Ayyadurai
701 Concord Ave
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

## CERTIFICATE OF SERVICE

I certify that this document, filed through the clerk's office, was sent electronically by email to opposing counsel Adam Hornstine Esq. at the Massachusetts Office of the Attorney General.

October 27, 2020

Plaintiff, *pro se*
Dr. Shiva Ayyadurai
701 Concord Ave
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

## CERTIFICATE OF CONFERRAL PER LR 7.1

The Plaintiff certifies that the parties did confer at the time of service of the motion for which this document serves as supplemental memorandum, and the discussion was initiated by previous counsel Daniel Casieri, though the certificate documenting that was inadvertantly omitted from the filings to this court.

October 27, 2020

Plaintiff, *pro se*
Dr. Shiva Ayyadurai
701 Concord Ave
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com