UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>                 Plaintiff,<br><br>         v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts,<br><br>                 Defendant. | CIVIL ACTION<br>NO. 1:20-cv-11889-MLW |

**OPPOSITION TO PLAINTIFF'S MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER**

1

## INTRODUCTION

Plaintiff Shiva Ayyadurai ran unsuccessfully to become the Republican Party's nominee for United States Senator from Massachusetts. After losing his party's primary election on September 1, 2020 by a substantial margin, he posted on his Twitter social media account a Tweet claiming that the Commonwealth of Massachusetts had destroyed more than one million ballots from that primary election. This Tweet was false and sought to undermine the public's faith in the validity of the election.

Accordingly, elections staff working for the Secretary of the Commonwealth of Massachusetts William F. Galvin took steps to combat the misinformation. As the elected state official charged with ensuring free and fair elections in the Commonwealth, Secretary Galvin exercised his free speech rights and spoke on behalf of the government to ensure that the public had access to accurate information. The Secretary reported Plaintiff's misinformation to Twitter, just as any person could have done. Allegedly as a result, Twitter – not the Secretary – temporarily suspended Plaintiff's ability to post new information to his Twitter account. Plaintiff now contends that the Secretary should be unable to report false election claims to Twitter in the future. The Court should not entertain this request but should instead deny Plaintiff's effort to restrain future government speech.

First, as a threshold matter, this case is jurisdictionally barred. The Eleventh Amendment broadly prohibits suits in federal court against state officials in their official capacity. It also prevents courts from issuing forward-looking injunctions for past actions that are not ongoing in nature. Because the Court lacks jurisdiction, it cannot grant the injunctive relief Plaintiff seeks.

Second, Plaintiff is unlikely to succeed on the merits of his claim. Plaintiff cannot succeed on this claim because he is seeking to apply the First Amendment's protections to the

government's own speech (allegedly to protect Plaintiff's own First Amendment rights), but government speech is not subject to First Amendment scrutiny. The Secretary's decision to tell Twitter that Plaintiff had posted false information to his account is classic government speech which cannot, in turn, constitute a violation of Plaintiff's alleged free speech rights. Plaintiff is also unlikely to succeed on the merits of his claim because the harm he complaints of, his temporary suspension from Twitter, is not the Secretary's doing, but was instead Twitter's.

Finally, an injunction that would restrain the government's ability to speak out to correct disinformation about the upcoming election is plainly not in the public's interest.

**FACTUAL BACKGROUND**

**Plaintiff's Public Records Request**

Following the September 1 primary, on September 9, 2020, the Elections Division of the Secretary of State's office received a public records request from Plaintiff for: "(1) All Scanned Digital Ballot Images from all jurisdictions in Massachusetts pertaining to the September 1, 2020, State Primary; (2) All Cast Vote Records (CVRs) from all jurisdictions in Massachusetts pertaining to the September 1, 2020, Massachusetts State Primary; and (3) The List of Vote Records (LVR), also called the Vote Cast Log, Cast Ballot Log, or other designation, from all jurisdictions in Massachusetts pertaining to the September 1, 2020, Massachusetts State Primary." Affidavit of Michelle K. Tassinari (hereinafter "Tassinari Aff."), ¶ 4.[1] On September 21, 2020, Plaintiff filed a "follow up" to his request in which he reiterated his request, apparently under the mistaken belief that the response to his request was due within 10 calendar days instead of 10 business days. Id.

---

[1] The Affidavit of Michelle K. Tassinari is filed herewith.

At 10:47am on September 24, Tassinari responded to Plaintiff by email, informing him that no responsive records existed and that no ballot images existed because the certification of voting equipment in Massachusetts prohibits the capturing of ballot images.  Tassinari Aff., ¶ 5.  Moreover, not every municipality in Massachusetts uses the type of voting equipment that would be capable of capturing ballot images.  Id.  Plaintiff responded seeking a citation for the prohibition on capturing ballot images.  Id.  Tassinari responded again at 11:44am on September 25, attaching copies of the certification for two different types of digital scan equipment in Massachusetts.  Id.

**Plaintiff's Tweet and the Elections Division's Report of a False Election Claim**

Following Tassinari's response, Plaintiff began claiming on social media that the Commonwealth had unlawfully destroyed ballots from the September 1 primary.  Tassinari Aff., ¶ 6.  Those statements were plainly false because all of the paper ballots – i.e., the only ballots – from the September 1 primary are being retained under seal by local election officials in accordance with state and federal law.  Tassinari Aff., ¶ 5; Affidavit of Debra O'Malley (hereinafter "O'Malley Aff."), ¶ 4.[2]

On September 24, 2020, Plaintiff Tweeted this false claim:



---

[2]    The Affidavit of Debra O'Malley is filed herewith.

Tassinari Aff., ¶ 8; O'Malley Aff., ¶ 3.  The Elections Division is always concerned about false information being disseminated about the election process, as this can be a form of voter suppression.  Tassinari Aff., ¶ 9.  These concerns are particularly heightened this year, since multiple state-sponsored and private actors are known to have engaged in widespread disinformation campaigns in the 2016 presidential election and are doing so now, in an attempt to influence the outcome of the election.  Id.  Indeed, on September 28, 2020, the FBI and the Cybersecurity and Infrastructure Security Agency (CISA) issued a joint alert regarding the threat posed by election disinformation: http://ic3.gov/Media/Y2020/PSA200928.  Id.  Therefore, on September 25, 2020, Tassinari asked the Secretary of State's Communications Director, Debra O'Malley, to report the Tweet to Twitter as false, using the mechanism within Twitter for reporting Tweets that violate the terms and conditions of that platform.  Tassinari Aff., ¶ 10; O'Malley Aff., ¶ 5.  O'Malley did so.  O'Malley Aff., ¶ 6.  In response, O'Malley received what appeared to be an automated email response, informing her that Twitter would investigate her report and would contact her if they needed additional information.  O'Malley Aff., ¶ 7.  O'Malley received no further communication from Twitter regarding her report of Ayyadurai's Tweet.  O'Malley Aff., ¶ 8.

Aside from the September 25 report of Plaintiff's September 24 Tweet, nobody in the Secretary's Elections Division has reported any of Plaintiff's Tweets to Twitter for any reason.  Tassinari Aff., ¶ 11; O'Malley Aff., ¶ 9. Moreover, the Secretary's office has no control over Twitter or its complaint process.  Tassinari Aff., ¶ 12.  They do not have any input into whether Twitter imposes a sanction such as removing a Tweet or suspending a user's account.  Id.  Twitter does not tell the Secretary's office what, if any, action it takes in response to a complaint

they submit; the Secretary's office merely receives what appears to be an automated reply stating that Twitter will investigate and contact the report author if they need more information. Id.

**The Complaint**

On October 20, 2020, Plaintiff filed the instant Complaint, alleging that the Elections Division's action in reporting Plaintiff's false Tweet to Twitter – and Twitter's subsequent independent decision to suspend temporarily Plaintiff's ability to post new information – violated Plaintiff's rights under both the federal and state Constitutions. Accordingly, he brought a claim pursuant to 42 U.S.C. § 1983 against the Secretary in his official capacity seeking $1.2 billion in monetary damages. He now has also moved for preliminary injunctive relief to prohibit the Secretary and his employees from notifying Twitter of any further misinformation posted to Plaintiff's Twitter account between now and the November 3, 2020 general election.

Although Plaintiff filed this Complaint on October 20, 2020, and although the Court ordered Plaintiff to make prompt service of his "submissions" to the Secretary, Plaintiff has never (despite his claim to the contrary) properly served the Complaint and a summons on the Secretary. Nor had Plaintiff (or his now-fired counsel) completed a Local Rule 7.1 conference prior to filing – or refiling – this motion for injunctive relief on October 27, 2020.[3]

---

[3] The Secretary submits that Plaintiff's motion should be denied for failure to make proper service on the Secretary and for the failure to conduct the meet and confer required by Local Rule 7.1(a)(2) before refiling this motion as directed by the Court on October 20, 2020. This opposition is presented pursuant to the Court's order of October 27, 2020, and the Secretary reserves the right to present these defenses to the claims asserted by Plaintiff.

# ARGUMENT

I. **The Motion Seeking an Injunction Should Be Denied Because This Court Lacks Jurisdiction Over Plaintiff's Claims.**

   A. **Plaintiff's Claims for Both Monetary and Injunctive Relief are Barred by the Eleventh Amendment.**

As a threshold matter, Plaintiff's motion for injunctive relief should be denied because this Court lacks jurisdiction over this suit as a result of the Eleventh Amendment. Although the Supreme Court "has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction," Hudson Sav. Bank v. Austin, 479 F.3d 102, 109 (1st Cir. 2007) (citing Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 391 (1998)), the Court has stated that the "Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power." Calderon v. Ashmus, 523 U.S. 740, 745 n. 2 (1998); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72–73 (1996) ("The Eleventh Amendment restricts the judicial power under Article III....").

The Eleventh Amendment provides that federal jurisdiction "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." U.S. Const. amend. XI. The Supreme Court has held that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.... [T]his jurisdictional bar applies regardless of the nature of the relief sought."). The Eleventh Amendment also extends to bar suits against state agencies and their instrumentalities. Maysonet–Robles v. Cabrero, 323 F.3d 43, 48–49 (1st Cir.2003) (citation omitted). As a general

matter, the Eleventh Amendment bars suits for money damages that are brought by private citizens in federal courts against any state, including "official capacity" suits against state officials.  Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002).[4]

This Eleventh Amendment proscription is subject to a narrow exception recognized more than a century ago in Ex parte Young, 209 U.S. 123, 159–160 (1908).  Under Young, federal courts can prospectively enjoin state officials from continuing to violate the U.S. Constitution or other federal law, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony."  Rosie D., 310 F.3d at 234 (quoting Lane v. First Nat'l Bank, 871 F.2d 166, 172 n.5 (1st Cir. 1989)).  Thus, where a private plaintiff seeks purely prospective equitable relief against individual state officers in a federal forum based on a federal right, the Eleventh Amendment is usually not a bar.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 276–277 (1997).  But the Young doctrine only allows federal courts to exercise jurisdiction over a suit in which the private plaintiff alleges ongoing violations of federal law; suits that seek redress for past wrongs are still barred by the Eleventh Amendment.  See Papasan v. Allain, 478 U.S. 265, 277–78 (1986) (noting that "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.").  Moreover, requests for injunctions seeking to require that state officials comply with state laws are also barred in federal court.  See

---

[4]   It is well-established that the Office of the Secretary of the Commonwealth is a state agency for purposes of the Eleventh Amendment.  See Noonan v. Galvin, No. 17-CV-11273-LTS, 2018 WL 813377, at *1 (D. Mass. Feb. 9, 2018) (concluding that where plaintiff sues "Secretary [Galvin] in his official capacity, the Commonwealth's sovereign immunity recognized by the Eleventh Amendment bars the claim.").

Pennhurst, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Here, Plaintiff's claims are entirely foreclosed by the Eleventh Amendment, and the Court lacks jurisdiction. As this Court recognized in its October 20, 2020 order, Plaintiff's claim for money damages against the Secretary is clearly barred under the Eleventh Amendment. See Quern v. Jordan, 440 U.S. 332, 342 (1979). Plaintiff's claims for alleged violation of state law are likewise forbidden, regardless of whether he seeks damages or injunctive relief. Pennhurst, 465 U.S. at 106. This Court also lacks jurisdiction over any injunctive claims grounded in federal law because Plaintiff nowhere provides any evidence that the Secretary has engaged in an ongoing course of conduct that would continue to deprive Plaintiff of his federally protected constitutional rights; his claim is purely retrospective in nature, and thus the Young doctrine does not apply. See Hootstein v. Collins, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) ("The Ex parte Young doctrine, then, only allows federal courts to exercise jurisdiction over a suit in which the plaintiff alleges ongoing violations of federal law; suits that seek redress of past wrongs are still barred by the Eleventh Amendment.").[5] This Court lacks any basis for jurisdiction over this matter, and therefore it cannot grant the injunctive relief Plaintiff seeks.

---

[5] Relatedly, where, as here, Plaintiff fails to identify an ongoing future threat of alleged governmental misconduct, his request for injunctive relief is moot and should be denied on this basis as well. See Whalen v. Massachusetts Trial Court, 397 F.3d 19, 30 (1st Cir. 2005) (agreeing that request for injunctive relief against the state that sought remedy for past misconduct and had "no impact on an ongoing violation" was both moot and barred by the Eleventh Amendment).

> **B. Plaintiff's Section 1983 Claim is Barred Because the Secretary is not a Person Who May Be Sued Under Section 1983.**

Plaintiff's claims also suffer from a fatal statutory flaw. Plaintiff's sole basis for relief in this Court is 42 U.S.C. § 1983. Section 1983 "supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 57 (1st Cir. 2002) (internal quotations omitted). However, it is well-established that states and their agencies cannot be sued as "persons" for purposes of Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 & n. 10 (holding that suits against states or state officials acting in their official capacities are forbidden under Section 1983); Canales v. Gatzunis, 979 F. Supp. 2d 164, 171 (D. Mass. 2013) (dismissing Section 1983 claim against agency of the state). This blackletter rule arises as a result of the sovereign immunity principles of the Eleventh Amendment, which generally prohibits a state (or its agencies) from being subject to suit under Section 1983. See Will, 491 U.S. at 65–67.

**II. In the Alternative, Plaintiff's Motion Should Be Denied Because It Does Not Satisfy the High Burden for Injunctive Relief.**

> **A. Standard of Review.**

Even if this Court considers this motion on the merits, it should deny the motion for a temporary restraining order because Plaintiff fails to carry his substantial burden to demonstrate an entitlement to the "extraordinary and drastic remedy" he seeks. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (noting that a "preliminary injunction is an 'extraordinary and drastic remedy'") (citation omitted). A preliminary injunction "is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008). Rather, Plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest.  See Díaz-Carrasquillo v. García-Padilla, 750 F.3d 7, 10 (1st Cir. 2014) (outlining four elements for consideration of motion for preliminary injunction).  The last two factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  Because Plaintiff cannot carry his substantial burden to make a "clear showing," Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), that he is entitled to preliminary injunctive relief, his motion should be denied.

### B. Plaintiff Is Not Likely to Show a Likelihood of Success on the Merits of His Claims.

Plaintiff's motion should be denied because he cannot prove that he is likely to succeed in proving a violation of his free speech rights.  First, Plaintiff's First Amendment claim is not likely to succeed because the speech he seeks to regulate by this motion is the government's, and government speech is not subject to First Amendment regulation.  The alleged misconduct here concerns the Secretary's office's decision to file a complaint with Twitter that Plaintiff disseminated false and misleading information concerning an election.  The Secretary is permitted to do so by the First Amendment, because this report reflects the government's own speech.  Second, Plaintiff is unlikely to succeed on the merits of his claim because he cannot demonstrate that the Secretary suspended Plaintiff's Twitter account.  Only Twitter – not the Secretary – can suspend one of its users for violating its terms of service.  For these reasons, the Secretary asks this Court to deny Plaintiff's motion.

#### 1. Plaintiff Cannot Succeed on His First Amendment Claim Because the First Amendment Does Not Curtail Government Speech

Plaintiff's First Amendment claim fails because the government's speech – here, an affirmative report to Twitter that Plaintiff was making misrepresentations about the election – is not subject to First Amendment regulation.  The First Amendment prohibits Congress and other government entities and actors from "abridging the freedom of speech."  It "does not say that

Congress and other government entities must abridge their own ability to speak freely." Matal v. Tam, 137 S.Ct. 1744, 1757 (2017).  The First Amendment, the Supreme Court has made clear, "does not regulate government speech."  Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009); Johanns v. Livestock Marketing Assn., 544 U.S. 550, 553 (2005) ("[T]he Government's own speech ... is exempt from First Amendment scrutiny").  Indeed, the Supreme Court has observed that government could not "function" if it were subject to the restrictions that the First Amendment imposes on private speech.  Summum, 555 U.S. at 468; see also Walker v. Texas Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 215 (2015) ("First Amendment strictures that attend the various types of government-established forums do not apply" to government speech.).  "When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others.  The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture." Matal, 137 S.Ct. at 1757.  "When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy.  If the citizenry objects, newly elected officials later could espouse some different or contrary position." Bd. of Regents of Univ. of Wis. Sys. v. Southworth, 529 U.S. 217, 235 (2000).

      Here, the Secretary's office, which is charged with ensuring free and fair elections in the Commonwealth, made the decision to report Plaintiff's misleading Tweet about an election he lost to Twitter.  The Secretary can permissibly do so under the First Amendment because his statements (and those of his staff in support of the Secretary's policies and official acts) are government speech.  See Knight First Amendment Inst. at Columbia Univ. v. Trump, 928 F.3d 226, 239 (2d Cir. 2019) ("the President's tweets can accurately be described as government

12

speech"); Sutliffe v. Epping School Dist., 584 F.3d 314, 329–30 (1st Cir. 2009) (holding that municipality's refusal to place hyperlink on municipal website to website of group opposed to municipal budget constituted government speech); Page v. Lexington Cty. School Dist. One, 531 F.3d 275, 283–85 (4th Cir. 2008) (holding that School District's refusal to place hyperlink on its website to website of group that opposed School District's position on pending legislation constituted government speech because, in part, "the links to other websites were selected by the School District alone as ones that supported its own message").

The Secretary's social media "accounts are a means for communicating his own speech, not for the speech of his constituents" and are therefore not subject to the First Amendment. See Morgan v. Bevin, 298 F. Supp. 3d 1003, 1011 (E.D. Ky. 2018) (concluding that governor's decision to block users from being able to post on his social media accounts was not a First Amendment violation because the governor's actions on his accounts reflected government speech). His staff used these official social media accounts to post a report to Twitter alleging that the Plaintiff made false statements about an election. Plaintiff cannot now use this suit to stifle the Secretary's speech in service of free and fair elections in the Commonwealth. Davison v. Randall, 912 F.3d 666, 686 (4th Cir. 2019) (government official's "references on the Chair's Facebook Page to other Pages, personal profiles, and websites amount to governmental speech" that is not subject to First Amendment regulation); Shurtleff v. City of Boston, No. 18-CV-11417-DJC, 2020 WL 555248, at *4 (D. Mass. Feb. 4, 2020) (concluding that city's decision to fly third-party flags on government property was government speech); Griswold v. Driscoll, 625 F. Supp. 2d 49, 54 (D. Mass. 2009), aff'd on other grounds, 616 F.3d 53 (1st Cir. 2010) ("Public officials have the right to recommend, or even require, the curriculum that will be taught in public school classrooms. Doing so is a form of government speech, which is not generally

subject to First Amendment scrutiny. There is no requirement that such government speech be balanced or viewpoint neutral."). Accordingly, the Secretary's communication of information to Twitter, which reflected the government's own protected speech, could not have violated Plaintiff's alleged rights.

    **2.**    **Plaintiff's First Amendment Claim Also Fails Because He Cannot Demonstrate that the Secretary Has the Power to Curtail Plaintiff's First Amendment Speech by Suspending his Twitter Account.**

In alleging that the Secretary violated his First Amendment rights, Plaintiff overlooks a critical fact: the Secretary did not – indeed, cannot – suspend a Twitter user's account, and an injunction here would not prohibit Plaintiff's Twitter account from being suspended by Twitter again.[6] Twitter is a private, for-profit corporation, and its users, like Plaintiff, are subject to certain terms of use and service, including terms of use and service that prohibit making false or misleading statements about elections.[7] See Morgan, 298 F. Supp. 3d 1003, 1006, & n.4 (E.D. Ky. 2018) ("Twitter is a privately owned social networking site where users post messages of up

---

[6] Indeed, the Secretary understands that Twitter has suspended Plaintiff's account multiple times since the suspension that is the subject of this Complaint, even though the Secretary only made one report to Twitter.

[7] Twitter has a "Terms of Use" agreement that all users must sign to use Twitter. See https://twitter.com/en/tos. All users are bound by the terms of this agreement and Twitter's policies. These policies make clear that Twitter (and only Twitter) has the right to remove material from the platform for violation of these Terms of Use or any of Twitter's policies. As relevant here, Twitter has a "Civic Integrity Policy" that its users agree to obey. See https://help.twitter.com/en/rules-and-policies/election-integrity-policy. This policy prohibits users from using "Twitter's services for the purpose of manipulating or interfering in elections or other civic processes," including by making "disputed claims that could undermine faith in the [civic] process itself, such as unverified information about election rigging, ballot tampering, vote tallying, or certification of election results" and making "misleading claims about the results or outcome of a civic process which calls for or could lead to interference with the implementation of the results of the process." Twitter encourages users, including government officials, to report violations of this policy. Twitter's policy makes clear that sanctions for violating this policy are Twitter's to make and may include "Tweet deletion," profile "modifications," "labeling," or "suspension."

to one hundred forty (140) characters.").[8] Although social media platforms like Twitter can serve as "powerful mechanisms available to a private citizen to make his or her voice heard" and can be used for "a wide array of protected First Amendment activity," Packingham v. North Carolina, 137 S.Ct. 1730, 1737-38 (2017), this case does not present a situation where the government directly "muted" a user from posting comments on a government-sponsored social media account,[9] criminalized speech appearing on privately-owned social media,[10] or otherwise directly deleted Plaintiff's speech.[11]  In other words, the injunction sought by Plaintiff (a prohibition seeking to stifle the government's ability to speak) would not prevent the harm he has allegedly endured (the stifling of his speech caused by Twitter's suspension of his social media credentials).  This is because while the Secretary can report alleged misinformation to Twitter, he is powerless to suspend a Twitter user for violating Twitter's own terms of use; that power belongs to Twitter and Twitter alone.  Plaintiff's motion does not make clear how the Secretary caused Plaintiff to be suspended.  Indeed, it is possible that Plaintiff was suspended of Twitter's own volition or because of other reports from other users.  Put differently, the Secretary did not burden Plaintiff's speech here – Twitter did.  Because Plaintiff presents no

---

[8]  For this reason, the Court in Morgan observed that "At least one academic argues that '[t]here's no right to free speech on Twitter.  The only rule is that Twitter Inc. gets to decide who speaks and listens–which is its right under the First Amendment." Id. (citing Noah Feldman, Constitution Can't Stop Trump from Blocking Tweets, BLOOMBERG VIEW (June 7, 2017, 12:39 PM), https://www.bloomberg.com/view/articles/2017-06-07/constitution-can-t-stop-trump-from-blocking-tweets).
[9]  See Knight, 928 F.3d at 239 (holding that "the President violated the First Amendment when he used the blocking function to exclude the Individual Plaintiffs because of their disfavored speech" from being able to post on the President's social media account).
[10]  See Rideout v. Gardner, 838 F.3d 65 (1st Cir. 2016) (striking down a New Hampshire law prohibiting people from photographing their marked ballots and publicizing the photographs on social media).
[11]  See Faison v. Jones, 440 F. Supp. 3d 1123, 1129 (E.D. Cal. 2020) (allowing injunction where government deleted posts from plaintiff and then precluded them from posting on the government's social media accounts).

evidence tying the Secretary's actions to Plaintiff's suspension, his claim is unlikely to succeed and should be denied.

      **C.    The Balance of Hardships and the Public Interest Strongly Favor Denying Plaintiff's Attempt to Stifle the Secretary's Ability to Report False Tweets to Twitter.**

Plaintiff's failure to establish that he will likely prevail on his injunctive claims alone warrants denial of his motion for preliminary injunction.  But to the extent this Court considers the other factors, the balance of hardships and the public interest weigh decisively against the interlocutory relief requested by Plaintiff.  Plaintiff's motion should be denied because there is a strong public interest in ensuring free and fair elections, elections that are not beset by misinformation spread on social media that tends to undermine the credibility of the democratic process.

The Secretary's decision to make a report to Twitter that Plaintiff had posted election-related misinformation to his account should be commended, not condemned.  The Secretary is charged with ensuring free and fair elections in Massachusetts.  The Supreme Court has recognized that "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 352 (1997).  When others make statements that are inconsistent with that goal, the Secretary is empowered to speak out and to set the record straight, and the First Amendment permits him to do so.  The public's interest in free elections, by contrast, is ill-served by preventing the Secretary and his staff from speaking out to ensure that the record on elections in the Commonwealth is clear.  The Secretary is a trusted source for election-related information in Massachusetts, and the public has a vested interest in permitting its elected officials to speak on matters of critical public importance.  Plaintiff's requested injunction would undermine the Secretary's ability to maintain the integrity of the

election, effect a prior restraint on the free speech of an elected official, and stifle the ability of public officials to make statements to correct the record on areas of public concern. Accordingly, the injunction should be denied on this basis as well.

## CONCLUSION

For the reasons set forth above, the Secretary respectfully requests that this Court deny the Plaintiff's motion for a temporary restraining order.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Adam Hornstine
Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2524
Anne.Sterman@mass.gov
(617) 963-2048
Adam.Hornstine@mass.gov

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that a copy will be sent to those indicated as non-registered participants by email on October 29, 2020.

/s/ Adam Hornstine
Adam Hornstine
Assistant Attorney General
