UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | | |
|---|---|---|
| Dr. SHIVA AYYADURAI | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM FRANCIS GALVIN, | ) | |
| MICHELLE K. TASSINARI, | ) | |
| DEBRA O'MALLEY, | ) | JURY DEMANDED |
| AMY COHEN, | ) | |
| NATIONAL ASSOCIATION OF | ) | |
| STATE ELECTION DIRECTORS, | ) | |
| all in their individual capacities, and | ) | |
| WILLIAM FRANCIS GALVIN, | ) | |
| in his official capacity as Secretary | ) | |
| of State for Massachusetts, | ) | |
| Defendants. | ) | |

OPPOSITION TO JOINT MOTION TO DISMISS

Defendants have already admitted under oath that they coordinated an effort to strongly

encourage Twitter to silence the Plaintiff during his run for federal office. That train left the

station weeks ago. Despite this fact on the record in this very case, Defendants now claim that

"Plaintiff attempts to bring a wholly novel and unsupportable claim" because "Plaintiff posted

misinformation to his Twitter account and Twitter decided to sanction him."

In the related injunction case, 20-12080, Defendant Tassinari submitted an affidavit

(ECF #17-1) to this court in a last-ditch attempt to claim that Defendants here did not

consciously violate Federal law by destroying ballot images, in which Tassinari swore:

"***Voting equipment used in Massachusetts does not create or store ballot images***." and "***I have
confirmed with vendors of the Imagecast and DS200 voting equipment that the scanning
functionality was disabled for the September 1st State Primary and November 3rd general
election and that no ballot images were created***."

This ***consciously perjurious assertion*** flies in the face of every single statement and document from the ImageCast and DS200 vendors and is counter to the very mechanism employed to tabulate votes in cities and towns that use these scanning machines. In the September 1st State Primary that was 83% of the cities and towns in Massachusetts! In addition to the facts presented by the Plaintiff in his response to the Tassinari affidavit in case 20-12080, Plaintiff submits one (1) additional affidavit from an Election Commissioner and expert in electronic voting, who has evaluated the Tassinari affidavit. Many more experts shall testify against Tassinari's perjurious assertion.

It is undeniable at this point that Defendant Tassinari committed perjury.

Plaintiff tweeted that Defendants Galvin and Tassinari destroyed ballot images. This statement has already been proved correct and was not "election misinformation" in any way. That Tassinari and Galvin felt compelled to file a perjurious affidavit only confirms this fact.

In addition, despite this court already pointing out that Defendant Galvin and Attorney Hornstine were wrong to claim that Eleventh Amendment immunity bars claims for injunctive relief, as recorded in the Amended Complaint, ECF #23, p56, the Defendants once again make that same shocking assertion to this same court, Def. MTD, ECF #36, p2.

So, Defendants have once again made a consciously false claim to this court on a point of law, even after being called out on it already. And this is just page 2 of this Opposition. As the Massachusetts Supreme Judicial Court said about certain Boston Police officers, the Defendants here just don't get it. *Commonwealth v. Adams*, 416 Mass. 558 (1993)('the officers, in the phrase of the day, `don't get it,' and they do not understand how unacceptably they acted thereafter') It is undeniable at this point that barring an injunction and other orders from this court, "the defendants "will regard themselves as free to continue" their unlawful conduct." *Adams*, supra.

```
          THE COURT:  It's clearly barred, but that's not what
you're discussing here.  You're making a different argument
here.
          MR. HORNSTINE:  I agree, but it primarily proceeds
from the damages piece, and I'm happy to move on.
          THE COURT:  It doesn't say that.  You're happy to move
on.  Frankly, I'm not.  You represent the government.  You
should always be accurately describing the law.  But here
you've got a pro se litigant on the other side.  And, you know,
we're talking about the nuances of constitutional law, and the
case is going very quickly.
          And, you know, this is not the only case I have.  I've
been dealing for the last couple of days with an MS-13 murder
case.  But this is consequential.  We're talking about
fundamental constitutional law a couple of days before an
election.  So I expect that if the Attorney General is going to
give me a brief, I'm going to take it seriously.  But I was
surprised to see this argument because it's not an argument
that your bureau of your office has made to me before as
recently as in the last two months in another suit against a
cabinet secretary and the governor.  And I've been spending
time trying to think if I've misunderstood *Will*.  I don't think
I did.
```

The Attorney General represented to the Plaintiff that an enlarged brief was required because it had to deal with three defendants rather than just one. However, even a generous reading of the filed motion to dismiss fails to reveal any section where legal arguments regarding the three Defendants are discussed separately. It is hard to escape the conclusion that the representation was merely a pretext to obtain the Plaintiff's consent to a motion to enlarge.

To assist the court compare arguments, Plaintiff here uses the same heading numbers used by the Defendants in their joint motion to dismiss, to present his specific rebuttals.

SECTION II A. 1. a.:

Twitter made explicit that it was responding to a user complaint. At no point did Twitter ever

declare that it acted *sua sponte* under its Terms of Use. The Defendants desire that this court

should forget the testimony elicited during the October 30, 2020, hearing during which

O'Malley proudly testified that Galvin's office had been 'onboarded' as an Official Twitter

Partner and thus had complaint options available that were not visible to ordinary civilians and

enjoyed the assurance of an immediate response to their complaint. Both the testimony that day

and the Amended Complaint explicitly detail that the Defendants collaborated to strongly

encourage Twitter to take down the Tassinari screenshot tweets and to silence the Plaintiff. In his

Amended Complaint, the Plaintiff has presented voluminous factual evidence to document that

Twitter never *sua sponte* acted privately under its Terms of Use to silence him and but for the

Defendants' complaint regarding the Tassinari email screenshots, Twitter wouldn't have acted.

Twitter's action was state action under the standard set in *Blum v. Yaretsky*, 457 U.S. 991 (1982)

as detailed in the Amended Complaint.

SECTION II A. 1. b.:

Defendants deliberately attempt to misdirect the court away from the fact that of all the tweets

posted by Plaintiff over nine years, Twitter forced him to delete only those that displayed

screenshots of Tassinari's emails.

We have only the Defendants' word that they did not complain to Twitter about any of

the Plaintiff's tweets that displayed the Tassinari emails. Defendants have already been proved

to have committed perjury and misrepresented facts and law to this court. Their word is

worthless. This court must view adversely that to this minute the Defendants have chosen to not

provide the court a screenshot or other contemporaneous evidence regarding which tweets they strongly encouraged Twitter to conceal from the people of the United States.

The evidence is irrefutable that Twitter responded immediately to a state Twitter Partner and repeatedly deleted only the Tassinari email tweets. The only legitimate conclusion is that the state Twitter Partner complained to Twitter about those Tassinari email tweets (one threaded tweet with three tweets under the main tweet). Defendants have already testified that they checked the next day and were pleased that Twitter had acted on their complaint and deleted the tweets. Since the Tassinari email tweets were the only tweets deleted, doubtless that is what pleased the Defendants and made Tassinari feel "relieved" that the risk of being sent away to federal prison had receded.

Given the courtroom testimony already in the record, Defendants are remiss in once again presenting only conclusory statements that Twitter acted privately. The complaint details how Twitter's action was state action and that Plaintiff's claim meets or exceeds the standard set in *Blum v. Yaretsky*, 457 U.S. 991 (1982). Defendants have failed to rebut this and expect the court to simply take them at their word. Plaintiff has presented conclusive evidence that the threaded tweet of the Tassinari email screenshots (set of four) was the one the Defendants complained about. In rebuttal the Defendants must produce a screenshot or printed copy of the actual complaint filed by them with Twitter. *Ipse dixit* is insufficient as a matter of law. *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)

Defendants deliberately attempt to misdirect this court by repeatedly using the word "compel" when the *Blum* standard is "strongly encouraged" in order to change the argument away from *Blum*. The straw man argument that Twitter was not 'compelled,' is unacceptable.

Plaintiff's Amended Complaint, however, already explains why Twitter had no choice but to respond to Defendants' strong complaint in coordination with NASED and NASS.

SECTION II A. 1. c.:

Defendants strongly encouraged Twitter to conceal evidence of a crime committed personally by them. This is not "Government speech." As if that weren't enough, they have doubled down with the consciously perjurious Tassinari affidavit, the sole purpose of which is the claim that because no ballot images were created in the first place (false!) none was destroyed and so federal law was not violated. Attempting to conceal the fact that ballot images, result files, and audit logs were consciously destroyed in order to prevent discovery of the use of a computer algorithm that multiplied all votes for the Plaintiff by 0.666 is the core reason underlying the Defendants' actions. Because the mathematical evidence is unassailable that Plaintiff and his voters were reduced to 2/3rds persons, hard evidence that the Defendants cannot begin to mathematically rebut, they attempted to claim that no ballot images were created in the first place, an absurd and desperate assertion that does not survive one millisecond of scrutiny.

No government *servant* is authorized to commit crimes. The government here are the People of Massachusetts, who certainly were not party to silencing the Plaintiff in order to conceal actual crimes committed by these Defendants. It is not in the public interest to help these Defendants abuse their status as public *servants* in order to conceal their crimes.

SECTION II A. 1. d.:

Defendants peddle a straw man argument solely to mislead this court. Plaintiff has pleaded civil claims under the Racketeering statute and asserted the existence of an Enterprise that colluded together to violate his First Amendment rights under the color of law solely to conceal evidence

of their crime. No RICO enterprise needs supervisory liability to be pleaded. The Defendants

must think that this court is soft in the head!

SECTION II A. 2:

Plaintiff's Amended Complaint ably alleges that the Defendants acted against him in order to

obstruct justice, thus placing his claim squarely within the gambit of § 1985 (2). Exactly what

part of "obstruction of justice" did the Defendants not understand? Plaintiff's claims under §

1985(2) are more than adequately pled for the purposes of the Rule 12 stage. "Obstruction of

justice" also figures prominently in Plaintiff's RICO claims.

SECTION II A. 3:

Defendants once again attempt to misdirect the court by going on and on for pages and pages

about 18 U.S.C 1503. The Plaintiff was first turned into a 2/3rds person by the Defendants. After

the Plaintiff discovered and exposed on a worldwide scale that the Defendants had violated

Federal law, the Defendants violated his First Amendment rights and had him silenced. This act

was aimed at eliminating Plaintiff's voice in order to prevent further exposure and legal

consequences for their conscious and willful violation of Federal law, as revealed by the

Tassinari emails. The consciously perjurious Tassinari Affidavit – "***Voting equipment used in***

***Massachusetts does not create or store ballot images***." and "***I have confirmed with vendors of***

***the Imagecast and DS200 voting equipment that the scanning functionality was disabled for***

***the September 1st State Primary and November 3rd general election and that no ballot images***

***were created***." – is yet one more overt act towards preventing further exposure and legal

consequences for their conscious and willful violation of Federal law. The sole goal underlying

every one of the Defendants' actions is the obstruction of justice. The Amended Complaint

already documents that Plaintiff has filed a sworn complaint with the U.S. Attorney against these

Defendants for their conscious violation of Federal law. Defendants are welcome to argue in open court that conspiring to retaliate against the person who swore out a pending criminal complaint against them does not qualify as impeding, influencing, obstructing the due administration of justice.

Dismissing the entire RICO claim at the Rule 12 stage would be unsupportable and manifestly unjust. Plaintiff's RICO claim more than meets the *Iqbal/Twombly* standard.

SECTION II B. 1:

The Amended Complaint details with particularity that the Defendants violated Plaintiff's First Amendment rights under color of law and in conscious violation of the explicit ban on public servants silencing candidates in the midst of their election campaign. *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015)

This court must view adversely the fact that nowhere in 36 pages do these Defendants, all state officials, even mention *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015) let alone discuss why it did not apply to them.

SECTION II B. 2:

Plaintiffs have actively misrepresented yet again to this court an important point of law. Plaintiffs have known for five (5) years already that a political candidate's First Amendment rights are clearly established. *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015)

It is undeniable that these Defendants, all Massachusetts officials, fully knew that it is settled law in Massachusetts that they are ***banned*** from silencing political candidates in any way based on the content of the candidate's political speech during a campaign.

By claiming otherwise, these Defendants have engaged in conscious factual misrepresentation to this court.

SECTION III:

Defendants silenced the Plaintiff during the last month of his write-in election campaign and

disappeared him from his main media platform. And now they mock the Plaintiff further by

claiming that simply complaining to Twitter caused him no distress.

The Amended Complaint more than meets the *Iqbal/Twombly* standard in detailing the

severe harm caused to the Plaintiff by the Defendants' targeted, conscious, malicious actions that

were indeed outrageous given that they knew they were **banned** by the SJC from silencing the

Plaintiff during his political campaign on the basis of his political speech. *Commonwealth v.*

*Melissa Lucas*, 472 Mass. 387 (2015)

The motion to dismiss compounds the distress caused by these arrogant and power-drunk

Defendants, who continue to be unconstrained by all possible bounds of decency, let alone SJC

rulings and Federal laws.

The silencing of the Plaintiff was all the more shocking to him because Plaintiff had

relied on mere **servants** complying with settled law as declared by the state's highest court, and

their overt contempt for the rule of law was wholly unexpected, disconcerting, bewildering and

intolerable. *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015)

SECTION IV A:

Defendant Galvin again attempts to mislead this court by claiming that prospective injunctive

relief is barred by the Eleventh Amendment. The Amended Complaint could not be more

explicit that an injunction is required because Galvin has a proven innate contempt for the

Constitution and the law and that without a court maintaining jurisdiction over him going

forward it is assured that Galvin would abuse his status as Secretary of State and his privileged

connections with Twitter, NASED and NASS to silence political speech just as he did in 2020.

It is settled law in Massachusetts that a court can maintain jurisdiction over a public servant to enjoin future violations of the law even when the record indicates only one prior violation. *Commonwealth v. Adams*, 416 Mass. 558 (1993)

> "A single, egregious incident involving a collective violation of a citizen's rights and a collective failure to prevent or to report that violation would warrant issuance of an injunction where, as here, the judge found that, without any injunction, the defendants "will regard themselves as free to continue" their unlawful conduct. Moreover, the judge was justified in regarding the failure of the defendants, many of whom had considerable professional experience, to report the incident as contributing in a fundamental way to the obstruction of justice."

This court must note adversely that it was the Attorney General that sought the injunction in *Adams*, a case not cited once in 36 pages, and it is the same Attorney General who has sworn to the exact opposite argument here in our case. Just as the binding ruling of the Supreme Judicial Court in *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015)(*ALL government officials in Massachusetts are barred from censoring or sanctioning political speech by candidates in the midst of their election campaign*) does not matter one bit to Galvin, Tassinari or O'Malley, the doctrine of *estoppel* does not matter one bit to the Attorney General.

After all, in *Adams* the defendants were just street level Police officers, and the Attorney General happily sought an injunction that could expose the defendants to being held in contempt of court, whereas here we are talking about High-Ranking Senior Important Indispensable Irreplaceable Government Officials. Oh my.

SECTION IV B:

As noted by the SJC in *Adams*, the Defendants here cannot claim that the Plaintiff faces no harm in the future from the Defendants because, unless they are in prison, the Plaintiff suffers the same risk of being silenced during his next election campaign, as do all future candidates. As detailed in the Amended Complaint, the relief sought is for the court to enjoin these Defendants

from silencing ***any and all candidates in the future***, just as in *Adams*. The relief is to maintain

jurisdiction over these Defendants ***so they do not again violate the Federal civil rights of a***

***candidate for Federal office*** as a result of their contemptuous disregard for a Federal statute, 52

U.S.C. 20701, and the SJC's ruling in *Lucas* regarding the ***Federal First Amendment***.

The Attorney General is *estopped* from opposing this relief.

SECTION IV C:

As noted repeatedly earlier, the only legitimate conclusion is that Secretary Galvin and his office

abused his position, gravitas, and privileged connection with Twitter, NASS and NASED, to

strongly encourage Twitter to delete the Tassinari email tweets. Twitter privately and on its own

has not acted against the Plaintiff's tweets over the past nine (9) years, and has not acted once

ever since ***this court made Galvin agree to cease and desist*** from making Twitter silence the

Plaintiff. That is why Twitter is not a defendant in this RICO lawsuit. Plaintiff's detailed

Amended Complaint meets or exceeds the standard in *Blum*.

SECTION V A:

Indemnification of Tassinari and O'Malley is ***not*** required by state statute, MGL ch. 258, as

detailed in the next section. The statute, MGL ch. 258 § 9, reserves the word **shall** solely for

holders of office under the constitution. In addition, as detailed below, the Attorney General is

barred by state law from indemnifying mere employees where "***triable issues of fact existed***

***concerning the applicability of the exclusions***" listed in Section 9. Indemnification of Tassinari

and O'Malley violates state law and impacts on the course of litigation in Federal court on a

violation of Federal law. State sovereignty is no justification to misrepresent the law to this

court. This court must object.

Given that ***triable issues of fact exist concerning the applicability of the exclusions***, the qualification of the Attorney General to represent Tassinari and O'Malley in Federal court is a question well within this court's jurisdiction to resolve.

SECTION V B:

Defendants cite MGL ch. 258 § 9 to happily claim that they are indemnified up to $1 million in tax dollars for intentional torts and that the Attorney General is charged with setting "a unified and consistent legal policy for the Commonwealth[,]" a concern that did not extend to ***consistently*** refusing to declare that the SJC's ruling in *Adams*, sought by the Attorney General, applies equally to Galvin, Tassinari and O'Malley. Some are more equal.

Defendants however have not pasted in the full text of that paragraph in MGL ch. 258 § 9.  This is curious. Section 9 states:

"Public employers may indemnify public employees, and the commonwealth shall indemnify persons holding office under the constitution, from personal financial loss, all damages and expenses, including legal fees and costs, if any, in an amount not to exceed $1,000,000 arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law, **if such employee or official or holder of office under the constitution at the time of such intentional tort or such act or omission was acting within the scope of his official duties or employment. No such employee or official, other than a person holding office under the constitution acting within the scope of his official duties or employment, shall be indemnified under this section for violation of <u>any such civil rights if he acted in a grossly negligent, willful or malicious manner</u>**."

Emphasis added.

Galvin, Tassinari and O'Malley are sued under RICO for engaging in an enterprise to obstruct justice by concealing evidence of their violation of Federal law through violation of the Plaintiff's civil rights under the Federal Constitution in a willful and malicious manner, including silencing Plaintiff's political speech in the last month before the 2020 General Election, and in gross, willful, malicious violation of an explicit ruling from the SJC five (5) full years ago in *Lucas*, that made it explicit to government **servants** such as Galvin, Tassinari and O'Malley that they are barred from silencing a candidate's speech during an election campaign. The law has been known to these three defendants and to the Attorney General for five full years now.

It naturally follows that in order to comply with the plain ***and full*** text of Section 9 that the Attorney General concealed from this court, the Attorney General must refuse to defend Tassinari and O'Malley at public expense because "***triable issues of fact existed concerning the applicability of the exclusions***" regarding Tassinari's and O'Malley's gross, willful and malicious violation of Plaintiff's civil rights. Only that would be consistent with the law, and the explicit ruling from the SJC in *Maimaron v. Commonwealth*, 449 Mass. 167 (2007).

The Massachusetts Tort Claims Act expressly ***prohibits indemnification*** of mere public employees for gross, willful or malicious violation of a person's civil rights. Tassinari and O'Malley are ***not*** persons holding office under the constitution. Indemnifying Tassinari and O'Malley even where ***triable issues of fact exist concerning the applicability of the exclusions,*** intentionally violates the law and promotes corruption, crime and further violations of citizens' civil rights under the Federal constitution. This action by the Attorney General violates public

policy, the will of the Legislature, and the Plaintiff's Fourteenth Amendment Right to equal

protection.

At minimum, Plaintiff seeks a written declaration from this court that even if the court is

unable to require the Attorney General to stop defying an explicit state law, the indemnification

of Tassinari and O'Malley did explicitly violate state law and impacted the course of litigation in

Federal court on a Federal question.

CONCLUSION

For the reasons detailed above and in the Amended Complaint, this court must deny these

Defendants' motion to dismiss and the case must proceed immediately to pre-trial discovery and

then to a public jury trial.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

**Dr. Shiva Ayyadurai**
Date: December 15, 2020                Plaintiff, *pro se*
                                       701 Concord Ave,
                                       Cambridge, MA 02138
                                       Phone: 617-631-6874
                                       Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this opposition upon Defendants Galvin, Tassinari and
O'Malley, via their attorney, Adam Hornstine Esq., via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

**Dr. Shiva Ayyadurai**
Date: December 15, 2020                Plaintiff, *pro se*