UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | |
|---|---|
| Dr. SHIVA AYYADURAI )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM FRANCIS GALVIN, )<br>MICHELLE K. TASSINARI, )<br>DEBRA O'MALLEY, )<br>AMY COHEN, )<br>NATIONAL ASSOCIATION OF )<br>STATE ELECTION DIRECTORS, )<br>all in their individual capacities, and )<br>WILLIAM FRANCIS GALVIN, )<br>in his official capacity as Secretary )<br>of State for Massachusetts, )<br>      Defendants. ) | JURY DEMANDED |

**OPPOSITION TO NASED'S AND COHEN'S MOTION TO DISMISS**

THIS COURT MUST MAKE A FINDING OF MISCONDUCT
BY ATTORNEY NOLAN J. MITCHELL (BBO #668145)

Attorney Mitchell has tampered with the caption of this case without consent from either the court or the Plaintiff. This is impermissible conduct.

Case 1:20-cv-11889-MLW   Document 44-2   Filed 01/07/21   Page 1 of 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILLIANS FRANCIS GALVIN, MICHELLE )<br>K. TASSINARI, DEBRA O'MALLEY, AMY )<br>COHEN, NATIONAL ASSOCIATION OF )<br>STATE ELECTION DIRECTIOS, allegedly in )<br>their individual capacities, and WILLIAM )<br>FRANCIS GALVIN, in his official capacity as )<br>Secretary of State for Massachusetts. )<br>)<br>Defendants. )<br>)<br>) | Civ. No. 20-cv-11889 |

**AFFIDAVIT OF AMY COHEN**

1

Attorney Mitchell has employed this tampered caption in all the documents he has filed on behalf of both Amy Cohen and NASED. Specifically, he has inserted the phrase "allegedly in their individual capacities" in the caption (and the word "DIRECTORS," he changed to "DIRECTIOS"). A search on Google is able to locate only ONE document among the approximately 130 TRILLION documents on Google where this phrase is employed. And, that one document was written by a judge, not by counsel for a RICO defendant. And even then, that judge did NOT tamper with the case caption.



Attorney Mitchell's misconduct is absolutely unheard of and demonstrates contempt for this court and an arrogance that is unique. What we have in this case, is not only one RICO Defendant who considers herself above the law, but also her attorney who considers himself above the law too. Tampering with the caption, by an attorney of nearly 20 years experience, was undeniably intentional, and not some late night keyboard error.

The Plaintiff respectfully requests this court to make a finding that Attorney Mitchell committed conscious, intentional, willful, egregious misconduct, and issue exemplary sanctions such that all lawyers are on notice that they shall NOT tamper with case captions.

## COHEN AND NASED CONTRADICT TESTIMONY ON THE RECORD

Cohen and NASED claim that the complaint portal available to Trusted Partners that Cohen used to get Twitter to silence Plaintiff's speech in the last stretch of his campaign for federal office is exactly the same portal available to ordinary persons. NASED MTD pg.4  This is contrary to O'Malley's October 30, 2020, testimony to this court.

```
Q.    And you mentioned a few moments ago in response to a
question from the judge that the Elections Division is a
Twitter partner; is that correct?
A.    Yes, yes.
Q.    And when you say that, what does that mean?
A.    My understanding is that we are able to select certain
reasons for reporting a tweet that may not be available to
everyone and that they will -- that the people who review the
tweets at Twitter, when complaints are made, will try to act
quickly on the ones we report.
```

Right away we have a contradiction with sworn testimony provided by a co-defendant on an important point that goes to the heart of Cohen's and NASED's claim that they are: 1) just ordinary folks;  2) that Twitter deleted the Tassinari email tweets entirely on its own;  3) silenced the Plaintiff's speech entirely by itself;  and, 4) Tassinari's call to Cohen and NASED for help in concealing her email screenshots had nothing to do with anything.

## COHEN AND NASED CONTRADICT TESTIMONY ON RECORD
## REGARDING THE TWEET REPORTED TO TWITTER

O'Malley made explicit that Tassinari was very upset about the four tweets that displayed her

emails and that this is what made Tassinari telephone Cohen and enlist her help in adding to the efforts by the Massachusetts Office of the Secretary of State to strongly encourage Twitter to force the Plaintiff to delete those specific four tweets.

```
            THE COURT:  Well, do you know of anybody who reported
    any other of Dr. Shiva's tweets?
            THE WITNESS:  I believe someone from the National
    Association of State Elections Directors may have reported some
    other tweets.
            THE COURT:  Why do you think that?
            THE WITNESS:  We were in communication with the
    National Association of State Elections Directors because they
    assist us in figuring out how to report these tweets.
```

After initially denying under oath any knowledge of Twitter's response to their complaints, O'Malley and Tassinari then testified that they checked Plaintiff's timeline a couple of days later and were pleased to note that the tweets had indeed been deleted.

```
          THE COURT:  Let me clarify something.  You were
asked -- you testified that you didn't know what Twitter did
"as a result of my tweet."  Is that what you said?
          THE WITNESS:  Correct.
          THE COURT:  Did you know that Twitter removed Dr.
Shiva's tweet, the one you complained about?
          THE WITNESS:  I know that they eventually did.
          THE COURT:  When did you learn they removed it?
          THE WITNESS:  I think a few days later.
          THE COURT:  How did you learn it?
          THE WITNESS:  I believe Michelle Tassinari may have
told me.
```

It is a matter of record that only the four Tassinari email screenshot tweets were deleted. This is a fact that even O'Malley and Tassinari have already acknowledged under oath. The tweet that O'Malley admits to having reported to Twitter is acknowledged as undeleted. The only deleted tweets were the ones that O'Malley testified as being reported by Cohen and NASED after Tassinari, *the incoming President of NASED,* delegated that task to Cohen. Cohen and NASED however insist that their actions on behalf of their RICO co-defendants, as part of the enterprise at the heart of this case, did not result in any action by Twitter at all. Even before discovery and trial, their claim lacks credibility and does not meet the standard required for granting a motion to dismiss at the Rule 12(b)(6) stage.

COHEN AND NASED CONSCIOUSLY MIS-STATE THE RECORD AND THE LAW

Cohen and NASED declare in their motion to dismiss that "Plaintiff subjectively believes it is a federal crime that Massachusetts Election Officials did not save these scanned images, which he asserts the machines have the technical capability to record." NASED MTD pg. 5

The amended complaint presents court decisions from across the United States in which numerous courts have made the specific finding that ballot images are records encompassed by the federal law that requires preservation of all records created in the course of a federal election.

While belittling the accuser is fair game, claiming in writing that the requirement is merely the Plaintiff's subjective belief and not based on rulings from numerous courts is consciously false. The defendants lack credibility on a fundamental point of law.

### COHEN AND NASED MIS-STATE THE AMENDED COMPLAINT BY CLAIMING PLAINTIFF HAS LABELED NASED A STATE ACTOR

Nowhere in the amended complaint has Plaintiff labeled NASED as *per se* being a state actor in this case, which is why NASED and Amy Cohen are sued in their individual capacities.  Plaintiff applied the Supreme Court's reasoning in *Brentwood* and concluded that the official mouthpiece for state officials defined by Cohen and NASED as "civil servants," and identified by Tassinari and O'Malley in testimony as being intertwined with efforts by the Massachusetts Office of the Secretary of State to promote the image of election integrity and the absence of fraud, and acted against this Plaintiff solely on behalf of the state, is indeed an entity that is so wholly intertwined with the state that its actions must be imputed to the state.

The difference is one of *ipso facto* state actor versus state actor *in fact*. While NASED can legitimately claim to not be an *ipso facto* state actor, it may not deny testimony already in the record in this case that it acted on behalf of, and in concert with, and solely at the request of Tassinari, the State Election Director for Massachusetts, a state official, a civil servant, the legal counsel for Secretary of State William Galvin.

The record also contains testimony declaring that NASED and Cohen have routinely and repeatedly coordinated with Massachusetts state officials in the realm of elections and their

conduct as well as reporting complaints to Twitter. NASED is the Massachusetts state's trusted partner in that space.

The amended complaint more than meets the plausibility pleading standard required at the Rule 12 stage to show that, even before proper pre-trial discovery, there is more than a plausible claim that NASED and Cohen's action against the Plaintiff to strongly encourage Twitter to silence the Plaintiff was state action.

NASED and Cohen have chosen to incorporate and join in Galvin's motion to dismiss. Galvin has already agreed that he would desist from contacting NASED and Cohen to strongly encourage Twitter to further silence the Plaintiff.

The enterprise is tight-knit. That NASED and Cohen acted on behalf of the state is already a matter of record. Given that Tassinari is the incoming President of NASED, NASED's protest that it was not "compelled" by the state is resoundingy hollow.

PLAINTIFF HAS ADEQUATELY PLED CAUSATION FOR RULE 12 PURPOSES

The amended complaint presents within the four corners ample avidence that Tassinari was upset over the four email screenshot tweets, that she contacted Cohen at NASED and enlisted her help in strongly encouraging Twitter to delete those tweets, that those tweets were indeed deleted immediately and also every time Plaintiff posted them up again, and that Tassinari testified that she knew that the tweets had been deleted and this fact made her feel "relieved."

O'Malley has already testified that she reported one tweet, which was not deleted, and that Cohen at NASED reported the other tweets, which did get deleted. This is in the record already. The four corners also include evidence that Twitter by itself had never ever deleted any of the Plaintiff's tweets. Cohen and NASED were the proximal cause.

As the 1st Circuit has repeatedly made explicit, the complaint is required to present plausible claims, not concrete evidence. *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F. 3d 33 (1st Cir. 2013) Even without discovery, the evidence presented more than meets the standard required by the Supreme Court.

> "Although the opinion contains some language that could be read to suggest otherwise, the Court in Bell Atlantic made clear that it did not, in fact, supplant the basic notice-pleading standard. *Bell Atlantic*, 127 S.Ct. at 1973 n. 14 (expressly disclaiming the establishment of any "heightened pleading standard")"
> *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)

NASED AND COHEN SILENCED A POLITICAL CANDIDATE ON BEHALF OF A STATE

Cohen's and NASED's claim that their report to Twitter on behalf of Tassinari was "an expression of its own countervailing views to another private actor in an evolving online marketplace of ideas" NASED MTD pg. 18 would be laughable if weren't consciously perverse and contrary to testimony and evidence already within the four corners of the amended complaint. The evidence already makes explicit that Tassinari's request was the sole reason Cohen and NASED reported this Plaintiff's tweets to Twitter, tweets that specifically exposed Tassinari to prosecution for violation of federal law. There is no evidence that *prior* to Tassinari's request Cohen and NASED had ever expressed a view countervailing to that held by the Plaintiff. Just as significantly, Cohen and NASED did not feel compelled to express their countervailing view *after* Galvin agreed in this court, in this case, to cease and desist.

CONCLUSION

As a matter of law this court must deny these defendants' motion to dismiss.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: January 21, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this opposition upon Defendants, via counsel, via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: January 21, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com