UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | | |
|---|---|---|
| Dr. SHIVA AYYADURAI | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM FRANCIS GALVIN, | ) | |
| MICHELLE K. TASSINARI, | ) | |
| DEBRA O'MALLEY, | ) | JURY DEMANDED |
| AMY COHEN, | ) | |
| NATIONAL ASSOCIATION OF | ) | |
| STATE ELECTION DIRECTORS, | ) | |
| all in their individual capacities, and | ) | |
| WILLIAM FRANCIS GALVIN, | ) | |
| in his official capacity as Secretary | ) | |
| of State for Massachusetts, | ) | |
| Defendants. | ) | |

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF EMERGENCY HEARING AND ORDER

At the hearing held in this court on October 30, 2020, I accepted the Defendants' stipulation in

good faith that they would desist from strongly encouraging Twitter to delete tweets that

mentioned **Tassinari** or displayed public emails in which **Tassinari** revealed that she knew she

was in violation of federal law. This has been proved to have been a mistake.

My amended complaint presented documentary evidence that Twitter deleted only those

tweets of mine that mentioned "**TASSINARI**" and her emails.  After filing the amended

complaint, I did not mention **"TASSINARI"** in a tweet until February 1, 2021, because I had

been busy tweeting about various diverse topics, such as new scientific data regarding the long

term effect on the oral microbiome from wearing a mask daily, a finding that is to be published

in a peer-reviewed scientific journal, and about election fraud in general.

I am a known educator with decades of teaching experience who conducts lectures online in an interactive format with thousands of students worldwide, on applying systems science to analyze numerous topics so as to understand underlying facts and processes. Many students had requested a lecture on my federal lawsuits as they had heard about it, but were unable to read the briefs themselves, needed a simpler explanation, and the students could not find any source in the broader media who would cover this lawsuit or the findings within regarding the use of an algorithm or the destruction of digital ballot images.  There was no coverage anywhere on the real fraud demonstrated here while there is ample coverage of what I defined earlier to this court as fake election fraud claims, such as the *Moran* case. This is curious.

Therefore, on February 1, 2021, I conducted my usual lecture online in my usual format and talked about the basis for my lawsuits and what they had revealed thus far. The lecture was in a Harvard Case Study format, which looked at my specific experiences as a candidate for federal office and the events that publicly occurred in my life in that regard.

During this one hour forty minute video that streamed live on Twitter, I mentioned **"TASSINARI"** for the first time since September 26, 2020.   The link to the relevant video clip is provided in Exhibit I (below) along with a transcript of the video clip, in which I mention **"TASSINARI"** and review the screenshots of her emails.

Within four hours of my posting this video tweet, Twitter permanently suspended my account and provided the reason as repeated posting of content that may suppress voter participation.

I immediately understood that **Tassinari** and Cohen had strongly encouraged Twitter to implement a keyword block on my account which scanned my posts for the keyword "**TASSINARI**" and implemented a block. The evidence for this is overwhelming.

I created my Twitter account on August 29, 2011.  During the period from August 29, 2011 until September 24, 2020, I posted **19,001 tweets**.  Never during this period of NINE YEARS and TWENTY-SEVEN DAYS was I ever suspended from Twitter. On September 24, 2020 I had 230,000 people following me on Twitter.

During September 24, 2020 – September 25, 2020, I posted a series of 4-threaded tweets referring to **"TASINNARI"** in the screenshots of the tweets.  Prior to September 24, 2020, I had NEVER referenced that keyword **"TASINNARI"** in ANY of my 19,001 tweets.

On September 26, 2020, Defendants contacted and made Twitter not only delete those 4-threaded tweets posted by me referring to **"TASSINARI"** but also got Twitter to suspend me on Twitter through most of October 2020 during my U.S. Senate general election campaign.

Starting on November 6, 2020 and until February 1, 2021 4:30PM EST, I posted 743 tweets. Not one of them used the keyword **"TASSINARI."**  During this period, because of my valuable educational lectures and content, the number of people following me on Twitter grew by 100,000 followers.

On February 1, 2021 5:12PM EST, I posted ONE SINGLE Tweet of my lecture explaining this lawsuit, which naturally had to include a reference to **Tassinari's** emails. This was the first time I mentioned the name **"TASSINARI"** on Twitter since September 26, 2020.

On February 1, 2021 9:48PM EST, I was suspended from Twitter.  Up until that time, I had posted **19,744 tweets**.  Across those 19,744 tweets spanning NINE YEARS and FIVE MONTHS, the only times I was suspended was when I used the keyword **"TASSINARI"** in my tweets.

BUT FOR **Tassinari**, O'Malley, Galvin, Cohen and NASED, the keyword **"TASSINARI"** undeniably associated with Plaintiff's Twitter handle would not exist in

Twitter's algorithms to flag my tweets.  This continues the Defendants' chilling of my speech, and would not exist but for the Defendants strongly encouraging Twitter to conceal the **Tassinari** emails which document that she knew she was in violation of Federal Law.

The Defendants may likely argue that, "They have nothing to do with this" or "Twitter randomly associated the name **Tassinari** to Dr. Shiva Ayyadurai's Twitter handle."

Testimony in this case has already established that the Defendants DID strongly encourage Twitter to flag my account. It beggars belief that Twitter by itself would have inserted the keyword **"TASSINARI"** into its algorithm to flag my tweets given that the name **"TASSINARI"** is a very unlikely name to have been randomly selected by a Twitter programmer.  The name **"TASSINARI"** is uncommon and is carried by only one in 692,996 people, 72% of whom live in Southwestern Europe. https://forebears.io/surnames/tassinari

Here are some screenshots of the diverse tweets that I posted in the month of January 2021, all of which may be deemed provocative or controversial or out of compliance with mainstream dogma.  Not one of them triggered an immediate, and now, permanent suspension of my Twitter account. The sole keyword that triggered that action is the keyword "**TASSINARI**."





































In 1993, I won the White House contest for automatic categorization of President Clinton's email using keyword analysis.  I was awarded three United States patents for keyword analysis of text messages.  Those patents were the basis of my company EchoMail, Inc. founded in 1994. The largest Global 2000 companies, government organizations including the United States Senate, major retailers, corporations such as Nike, Calvin Klein, JC Penney, and others employed EchoMail for automatic categorization, routing and automatic response to incoming email using my patented keyword categorization algorithms.

As a computer scientist of many decades standing, it is my duty to inform this court about basic computer science and the concept of a **state** versus a **process**.  A computer can be either a state machine or a stateless machine. A stateless machine has no memory of the past and cannot be programmed to act a certain way in the future if it encounters a certain circumstance again. A state machine remembers a certain state and carries out a defined process as programmed when it encounters that same state again, meaning it saves the state information and not just the process information. This is accomplished by a few simple lines of code that tell the machine that IF you encounter this particular circumstance – state – again, THEN you must do this process.

Transferring this to the Cat's Paw Liability analogy, consider that the Monkey has either hypnotized the Cat or inserted a microchip in its brain that informs its behavior such that IF at anytime it comes across a chestnut labelled with the keyword **"TASSINARI"** THEN it must immediately pull that chestnut from the fire on behalf of the Monkey. Twitter is the Cat, and Defendants the Monkey.

This is precisely what is accomplished by automatic keyword recognition algorithms employed by Twitter.  The evidence is overwhelming that a keyword algorithm has been

implemented that scans each of my tweets everyday for the keyword "**TASSINARI"** and as soon as this keyword is recognized, adverse action is taken against my account.  First, the suspension was for hours, then for days, then for weeks. It so happened that I did not use the keyword "**TASSINARI"** for many weeks between Election day and February 1, 2021. But as soon as I did so, this time the adverse action was a permanent suspension because of a "repeated" violation.

Twitter has pursued the implementation of such automatic algorithms to police content and has purchased three separate artificial intelligence companies that developed this capability. 'Twitter pays up to $150M for Magic Pony Technology, which uses neural networks to improve images' - https://techcrunch.com/2016/06/20/twitter-is-buying-magic-pony-technology-which-uses-neural-networks-to-improve-images/ ; 'How Twitter Uses Big Data and AI' - https://www.bernardmarr.com/default.asp?contentID=1373 Two decades before Twitter came to exist, Nicky Hager had already publicly revealed the existence of the NSA's Echelon Dictionary, a keyword search algorithm that vacuumed up telephone calls worldwide and listened for specific keywords. This is not new by any stretch. https://en.m.wikipedia.org/wiki/Nicky_Hager

It is undeniable that the government, in this case the Commonwealth of Massachusetts, via its Secretary of State and its State Election Director, strongly encouraged Twitter to employ a keyword algorithm aimed solely and squarely at the content of my speech, even when I was merely talking about public facts in my Federal lawsuit.

What this means is that Massachusetts does not want me to talk about my own lawsuit. By ensuring that Twitter included the keyword "**TASSINARI"** in its algorithm, the government has ensured that I am blocked from talking about **Tassinari** in perpetuity.

This action is as Anti-American as a government action can get.  This action violates the foundational principles of the United States and goes against who we are as a country. This fact objectively makes Massachusetts no different from Putin's Russia or Xi's China.



**Alexey Navalny** ✔
@navalny

Replying to @navalny

8. Of course, Twitter is a private company, but we have seen many examples  in Russian and China of such private companies becoming the state's best friends and the enablers when it comes to censorship.

1:15 PM · Jan 9, 2021 · Twitter Web App

The mendacity of these defendants is laid bare now. They knew full well that they had used their massive power to require Twitter to implement a keyword block on my Twitter account such that I would be punished everytime I used the word **"TASSINARI**," and yet **actively misled this court at the TRO hearing** and gave the consciously false impression that their act of strongly encouraging Twitter to silence a candidate for political office was limited to the period prior to the court's Order and that there was no danger of my being silenced the next time I wrote the word "**TASSINARI**" in a tweet.

Given that **Tassinari** has committed perjury in her affidavit to this court by falsely claiming that: (1) electronic voting machines used in Massachusetts, including the DS-200 and the DS-850, do not even create digital ballot images, and (2) she has received confirmation from vendors that these machines do not even create digital ballot images, it should come as no surprise that **Tassinari** deliberately deceived this court at the October 30, 2020 TRO hearing. It

is inescapable at this point that **Tassinari** is a habitual offender when it comes to deliberately lying to this court and concealing material facts.

      **Tassinari** has already displayed her arrogance to this court when asked why she chose to drive me off Twitter rather than simply exercise her own right to speech. This arrogance has now been shown to extend to this court and her expectation that this court would not understand keyword algorithms, scanning of oral media, and the covert use of a private company to enforce a government blacklist that silences speech regarding very specific content.

      This total suspension is calamatous as it completely blocks me from interacting with thounds of students on my platform of choice.  Immediately prior to this suspension, my followers had grown to  330,000 people.

      I strongly urge this court to ORDER these Defendants to withdraw from Twitter their strong request to implement a blacklist of the keyword **"TASSINARI"** and to use their powerful position to strongly encourage Twitter to **now** reverse the permanent suspension of my Twitter account because these Defendants are the proximal and sole cause of said suspension.

      Respectfully submitted under the pains and penalties of perjury,

                                  /s/ Dr. Shiva Ayyadurai

                                  _____

                                  **Dr. Shiva Ayyadurai**

Date: February 3, 2021            Plaintiff, *pro se*

                                  701 Concord Ave,

                                  Cambridge, MA 02138

                                  Phone: 617-631-6874

                                  Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this affidavit in support of his emergency motion upon the defendants via their counsel, via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: February 3, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

## EXHIBIT I
Mentioning of "TASSINARI" and Reference to 4-Threaded Tweet
on Twitter February 1, 2021

Video Clip Link: https://youtu.be/CHRA1t03kYM

TRANSCRIPT OF VIDEO CLIP

On September 25th, I get an email from the Secretary of State and you can see it right here, which I tweeted out. This is the email response from Massachusetts legal counsel Shiva for Senate requests for ballot images. Look what it says:



Dr.SHIVA Ayyadurai, MIT PhD. Inventor of Email
@va_shiva

Email response from Massachusetts Legal Counsel to #Shiva4Senate request for ballot images. - September 24, 2020. 10:47AM. https://t.co/oDKf8my3pf

Sep 25, 2020, 10:49 PM

On Thu, Sep 24, 2020 at 10:47 AM Tassinari, Michelle (SEC) <michelle.tassinari@state.ma.us> wrote:

Good Morning-

I am writing to acknowledge receipt of your request for records. Please note, that this Office does not maintain voter tabulation software, firmware or hardware. While this office certifies voting equipment, as required by law, we do not purchase or lease equipment. Once equipment is approved by this Office, cities and towns can purchase or lease such equipment. Accordingly, this Office has no records responsive to your request.

Further, to the extent you request the same information from local election officials, please note that the approval of digital scan equipment in Massachusetts specifically prohibits the capturing of ballot images.

Michelle K. Tassinari
Director and Legal Counsel
Elections Division
One Ashburton Place, Room 1705
Boston, MA 02108
617-727-2828

© 2021. Dr.SHIVA Ayyadurai

"Good morning, I'm writing to acknowledge receipt of your request for records. Please note that this office does not maintain voter tabulation software firmware, blah, blah, blah. While the office certifies voting equipment as required by law, we do not purchase or lease equipment." She doesn't answer the question, but then she goes on to say, "Further, to the extent you request

the same information from local officials, please note that the approval of digital scan equipment in Massachusetts specifically prohibits the capturing of ballot images."

So this woman is telling me that Massachusetts prohibits the storing of ballot images. Okay, I'm new to all this. So what do I write back? What do I write back? This is what I do. So that's the first tweet I put out, that email. Then I put out the email that I wrote to her. It said, "Michelle," her name is Michelle Tassinari, "kindly refer me to the statute or law by which approval of digital scan equipment in Massachusetts specifically prohibits the capturing of ballot images." She writes back to me, which I also tweeted out. She goes, "Please find digital scan equipment." She's not even answering the question. And she repeats. "Please note that while the ballot images are not stored, the actual ballots are." She's not answering the question. I write back to her, this is my fourth tweet. I said, "1 million ballot images used to count votes on electronic equipment were destroyed." She evades answering what statute allows Massachusetts to destroy ballots.

I said, "Michelle, you have not answered my question." Basically, this was my fourth tweet where basically exposed the fact, let me go back to this. If you read it goes, I said, "The fact that those ballot images do not exist, they were destroyed. The destruction is illegal and therefore the election is null and void." Okay. So what I had done was I took my email interactions, which are public. She's a public official. I put it out on Twitter. Bam! Within hours of putting out those four tweets, I was banned on Twitter for 21 days, leading up to the general elections where I'd moved my campaign to a WRITE-IN campaign.