UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>                              Plaintiff,<br><br>              v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts and his individual capacity, MICHELLE TASSINARI, in her individual capacity, DEBRA O'MALLEY, in her individual capacity, AMY COHEN, in her individual capacity, and NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS<br><br>                              Defendant. | CIVIL ACTION<br>NO. 1:20-cv-11889-MLW |

**OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR HEARING TO OBTAIN AN ORDER THAT DEFENDANTS MUST IMMEDIATELY WITHDRAW KEYWORD "TASSINARI" FROM TWITTER'S ALGORITHM INTENDED TO SILENCE PLAINTIFF'S SPEECH BY WILLIAM FRANCIS GALVIN, MICHELLE TASSINARI, AND DEBRA O'MALLEY**

MAURA HEALEY
ATTORNEY GENERAL

Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Dated: February 9, 2021

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ..................................................................................2

ARGUMENT ..........................................................................................................5

I.   Plaintiff's Motion for Injunctive Relief Should Be Denied Because This Court Lacks
     Jurisdiction. ...................................................................................................5

     A.   Plaintiff's Request for Relief is Barred by the Eleventh Amendment. .......................... 5

     B.   Plaintiff Lacks Standing to Seek the Relief He Requests. ............................................ 7

II.  Even if This Court Had Jurisdiction, Plaintiff's Motion Should Be Denied Because It Fails
     to Satisfy the High Burden for Injunctive Relief. ....................................................8

     A.   Standard of Review. ....................................................................................... 8

     B.   Plaintiff Is Not Likely to Succeed on the Merits of his Claims. .................................... 9

          1.   Plaintiff Cannot Show That the Alleged Action He Complains
               About was State Action to Which the First Amendment Applies. ............. 9

          2.   Plaintiff Is Not Entitled to an Order Compelling Speech. ........................ 13

          3.   Plaintiff's Claim is Utterly Devoid of Factual Support. .......................... 16

     C.   The Balance of the Equities Favors Denying an Injunction that Would
          Interfere with a Private Business's Decision to Police Behavior on its
          Platform................................................................................................. 18

CONCLUSION.....................................................................................................20

**INTRODUCTION**

On February 1, 2021, Twitter permanently suspended – or "deplatformed" – Plaintiff

Shiva Ayyadurai from its private social media platform.  Plaintiff alleges, with no basis in fact,

that Twitter deplatformed him because the Secretary's office supposedly asked Twitter to apply

an algorithm to detect any instance in which he uttered a certain word.  This is not true.

Plaintiff's "theory" is not only ridiculous but also ignores the fact that "Twitter suspends

accounts that violate the Twitter Rules," rules that are publicly available and which Plaintiff

agreed to follow when he signed up for a Twitter account.  A cursory review of Plaintiff's

provocative Tweets over the past few months provides ample reason as to why Twitter may have

decided to remove the Plaintiff's account: he cheered as insurrectionists violently stormed the

United States Capitol on January 6, 2021, called COVID-19 death rates a hoax and spread

unfounded conspiracies about forced vaccinations, and argued that elections in Massachusetts

and elsewhere were rigged by way of doctored voting machines.  These actions all violated

Twitter's Terms of Use.  Indeed, over the past few months, Twitter suspended Plaintiff

temporarily at least three times, deleted Plaintiff's Tweets, and labeled a number of his Tweets as

containing misinformation – all sanctions contemplated by Twitter's Terms of Use agreement

and done of Twitter's own volition.

But Plaintiff does not accept personal blame for his antics that caused Twitter to remove

him from its service for violating the Terms of Use agreement.  Instead, he conjures a fact-free

conspiracy theory that employees of the Secretary of the Commonwealth somehow forced

Twitter to put one employee's name on an automated blacklist such that if Plaintiff ever spoke

this name, a trapdoor would open and Plaintiff would be deplatformed.  He offers no evidence in

1

support of this conjecture but instead launches into an intensely personal attack against one of the Defendants.  Plaintiff's theory is contradicted by all admissible evidence in the record.  Since the last hearing in this case, the Secretary's office has not reported any of Plaintiff's myriad misconduct to Twitter or asked anyone else to report his Tweets.  Nor has the Secretary's office ever asked Twitter to fashion a blacklist of forbidden words.  Simply put, Plaintiff pushed the bounds of Twitter's Terms of Use, and Twitter, acting of its own volition, deplatformed him.

Now Plaintiff seeks to have this Court act as a means of appealing Twitter's decision, even though Twitter is not a party to this action, even though the Court cannot compel the Secretary or Twitter to speak in derogation of their own First Amendment rights and contrary to their viewpoints, and even though there is no evidence linking Twitter's decision to any state action by the Secretary's office.  The Court should deny this motion for preliminary injunction and put an end to Plaintiff's conspiracy-fueled and accusation-laden attempts to control the actions of a third-party private entity through the Secretary.

## FACTUAL BACKGROUND

On September 24, 2020, Plaintiff posted to his Twitter account (@va_shiva):



Am. Compl. at 18.  Michelle Tassinari, the Director of the Elections Division of the Office of the Secretary of the Commonwealth, believed that this Tweet was false election misinformation, so she directed Defendant Debra O'Malley, who is the Communications Director for the Office of

the Secretary of the Commonwealth and who runs the Elections Division's official Twitter

account (@VotingInMass) to lodge a complaint with Twitter about Plaintiff's Tweet, Am.

Compl. at 23-24, just as any other Twitter user could have done.[1]  In response to the report from

the Secretary's Office about this single Tweet, Twitter appears to have done nothing.  As

Plaintiff admits, the misleading Tweet that the Secretary's Office complained about was never

deleted from Twitter.  Am. Compl. at 18.

On September 25, 2020, Plaintiff published four additional Tweets to his account.  Am.

Compl. at 20-21.  These four Tweets again alleged that the Commonwealth destroyed a million

ballots from the September primary election, and this time, included screenshots of Plaintiff's

correspondence with Ms. Tassinari.  Am. Compl. at 21-23.  Plaintiff does not allege that anyone

from the Secretary's Office complained to Twitter about these four Tweets from September 25,

2020, nor could he, because they did not do so.  Twitter, as is their prerogative as a private

company, elected to remove these Tweets and temporarily suspended Plaintiff's access to his

Twitter account pursuant to the company's Terms of Use.[2]  Am. Compl. at 28.  After this initial

suspension ended, Twitter twice more suspended Plaintiff for separate infractions.  Am. Compl.

at 52; Am. Compl. Exhibit A at 26, 40-42.

On October 30, 2020, after a hearing before this Court, the Secretary's Office agreed not

to report any of Plaintiff's Tweets to Twitter between then and 9 AM on November 4, the day

following the general election in which Plaintiff was a candidate.  Affidavit of Michelle K.

Tassinari (hereinafter "Tassinari Aff."), ¶ 5; Affidavit of Debra O'Malley (hereinafter "O'Malley

Aff."), ¶ 5.  The Secretary also agreed to instruct NASED not to further report Plaintiff's Tweets

to Twitter.  Tassinari Aff., ¶ 5.  That agreement was memorialized in an order from the Court.

---

[1]     See https://help.twitter.com/en/safety-and-security/report-a-tweet.
[2]     See https://twitter.com/en/tos; https://help.twitter.com/en/rules-and-policies/twitter-rules.

Docket No. 20.  The Secretary complied with that order.  Tassinari Aff., ¶ 5; O'Malley Aff., ¶ 5.
And contrary to Plaintiff's fact-free conspiracy, at no time before or since the Court's Order has
the Secretary's office asked Twitter to create an algorithm flagging Tweets containing the word
"Tassinari."  Tassinari Aff., ¶ 7; O'Malley Aff., ¶ 7.  In fact, in the subsequent four months, no
one from the Secretary's office has reported any of Plaintiff's Tweets to Twitter or anyone else.
Tassinari Aff., ¶ 6; O'Malley Aff., ¶ 6.

Now, more than four months later, Plaintiff alleges that Twitter permanently suspended
his account, one of the many sanctions that Twitter – and only Twitter – can mete out under its
Terms of Use to users who violate this agreement.[3]  See Plaintiff's Emergency Motion For
Hearing To Obtain An Order That Defendants Must Immediately Withdraw Keyword
"Tassinari" From Twitter's Algorithm Intended To Silence Plaintiff's Speech (hereinafter, "Pl.
Em. Mot."), p. 2.  Plaintiff's public-facing Twitter page indicates that his account was suspended
for violation of Twitter's rules:



@va_shiva

**Account suspended**

Twitter suspends accounts which violate the Twitter Rules

Notwithstanding that, Plaintiff conjectures that this permanent suspension is the result of a
nefarious algorithm by which Twitter, at the behest of the Secretary's office, flags for sanctions
any mention of the word "Tassinari," as he alleges that just prior to his suspension, he mentioned

---

[3]      See https://help.twitter.com/en/rules-and-policies/enforcement-options.

Tassinari in a video posted to his account, for the first time since late September.  Pl. Em. Mot.,

pp. 3-5, 8.  He offers no factual support for this conspiracy theory, only the unfounded

assumption that because he was suspended again, it must be true.  As described in further detail

below, Plaintiff's conspiracy theories and unfounded suppositions cannot, when paired with the

utter absence of factual evidence, support his request for relief.

## ARGUMENT

I.    **Plaintiff's Motion for Injunctive Relief Should Be Denied Because This Court Lacks Jurisdiction.**

A.    **Plaintiff's Request for Relief is Barred by the Eleventh Amendment.**

Plaintiff's motion for a preliminary injunction against the Secretary first fails because it –

like his entire injunctive relief claim against the Secretary in his official capacity – is

jurisdictionally barred by the Eleventh Amendment, as he fails to provide any evidence that there

is an ongoing course of conduct by the Secretary's office that can be enjoined to rectify an

alleged constitutional violation.  The Eleventh Amendment provides that federal jurisdiction

"shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another state."  U.S. Const. amend. XI.  The Supreme

Court has held that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting

States may not be sued by private individuals in federal court."  Bd. of Trs. of Univ. of Ala. v.

Garrett, 531 U.S. 356, 363 (2001).  This Eleventh Amendment proscription is subject to a narrow

exception recognized more than a century ago in Ex parte Young, 209 U.S. 123, 159–160 (1908).

Under Ex parte Young, federal courts can prospectively enjoin state officials from continuing to

violate the U.S. Constitution or other federal law, "notwithstanding the absence of consent,

waiver or evidence of congressional assertion of national hegemony."  Rosie D. ex rel. John D.

v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (citation omitted).  But "the theory of Young has not

been provided an expansive interpretation." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984).

In determining whether a suit falls within the narrow exception carved out in Ex parte Young, it is "the substance, rather than … the form of the relief sought" that matters. Papasan v. Allain, 478 U.S. 265, 278-79 (1986). The Ex parte Young doctrine only allows federal courts to exercise jurisdiction over a suit in which the private plaintiff alleges ongoing violations of federal law; suits that seek redress for past wrongs are still barred by the Eleventh Amendment. See id. at 277–78 (noting that "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 73 (1996) (Ex parte Young permits suit against a state official to go forward where it seeks "only prospective injunctive relief in order to "end a continuing violation of federal law.") (emphasis added). Thus, in "determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (citation omitted). Even where the requested relief has only future impact on the state defendant, "[t]he pivotal question is whether the relief 'serves directly to bring to an end a present violation of federal law.'" Whalen v. Mass. Trial Court, 397 F.3d 19, 29 (1st Cir. 2005) (citation omitted).

This Court lacks jurisdiction over Plaintiff's motion (and all his injunctive claims) against the Secretary in his official capacity because nowhere does Plaintiff provide evidence that the Secretary has engaged in an ongoing course of conduct that would continue to deprive Plaintiff of his federally protected constitutional rights; his claim is purely retrospective in nature and concerns a solitary report filed with Twitter months ago, and thus the Ex parte Young

doctrine does not apply.  See Hootstein v. Collins, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) ("The Ex parte Young doctrine, then, only allows federal courts to exercise jurisdiction over a suit in which the plaintiff alleges ongoing violations of federal law; suits that seek redress of past wrongs are still barred by the Eleventh Amendment.").  At most, Plaintiff alleges that on a single occasion months ago, the Secretary's staff alleged to Twitter that one of Plaintiff's Tweets constituted election misinformation.  See King v. Whitmer, No. CV 20-13134, 2020 WL 7134198, at *5 (E.D. Mich. Dec. 7, 2020) (concluding Eleventh Amendment barred election-related suit where the alleged harm already occurred and thus there "is no continuing violation to enjoin").  Twitter's private decision months after this single report to deplatform Plaintiff – unprompted by any action by the Secretary – does not provide a basis for circumventing the Eleventh Amendment.  This Court thus cannot grant the injunctive relief Plaintiff seeks.

### B.   Plaintiff Lacks Standing to Seek the Relief He Requests.

Plaintiff's request should also be rejected because he lacks standing to seek the extraordinary remedy he proposes: a Court order requiring government officials to tell a non-party private entity how to run its affairs.  Plaintiff lacks standing to pursue this relief because Twitter, which is not a party in this case, is not obligated to comply with either a directive from the Secretary or an order of this Court in a case to which it is not a party.

Generally, a Court "cannot enjoin a nonparty," Lumber Liquidators, Inc. v. Sullivan, No. CIV.A. 10-11890-NMG, 2011 WL 5884252, at *4 (D. Mass. Sept. 27, 2011), except under the limited circumstances set forth by Fed. R. Civ. P. 65(d).  Under Rule 65(d), the Court may only bind through an injunction (1) a party to the action; (2) a party's "officers, agents, servants, employees, and attorneys;" and (3) any others who "are in active concert or participation with" anyone that falls into the first two categories.  Twitter is not a party to this case.  Nor is there any evidence in the record that Twitter is an officer, agent, servant, employee, or attorney of the

Secretary's office.  And Plaintiff provides no coherent evidence that would show that the

Secretary's office was in "active concert or participation with" Twitter when it decided to

deplatform Plaintiff such that an injunction here would apply to Twitter under these

circumstances.  To the contrary, the only relevant evidence of interaction between Twitter and

the Secretary's office that pertains to this suit is limited to the single instance in which the

Secretary's office filed a single report with Twitter to complain about a Tweet of Plaintiff's,

months before Twitter decided to deplatform Plaintiff.  This is hardly the type of ongoing, active,

and concerted action required to fall within the meaning of Rule 65.  See Abernathy v. Dewey,

No. CV 15-10431-FDS, 2016 WL 3976561, at *1 (D. Mass. July 22, 2016) (denying motion for

preliminary injunction against non-party prison superintendent in Section 1983 suit against

corrections officers from prison); compare Bank of New York Mellon v. Lezdey, No. 13-CV-

11118-MLW, 2014 WL 12914791, at *2 (D. Mass. Mar. 24, 2014) (stating that "the servicer of

the mortgage at the heart of the present dispute, could be characterized as an 'agent' or entity 'in

active concert or participation' with plaintiff Bank of New York Mellon).

Because a Court order here would not rectify Plaintiff's alleged harm – Twitter's decision

to deplatform Plaintiff pursuant to its Terms of Use – Plaintiff's request for an order overturning

this decision is not redressable.  Accordingly, Plaintiff lacks standing to pursue this injunctive

remedy.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 568-69 (1992) (lack of redressability and

Article III standing where necessary government agencies were not parties to the case).

## II.     Even if This Court Had Jurisdiction, Plaintiff's Motion Should Be Denied Because It Fails to Satisfy the High Burden for Injunctive Relief.

### A.     Standard of Review.

The Court should deny the motion for a preliminary injunction because Plaintiff fails to

carry his substantial burden to demonstrate an entitlement to the "extraordinary and drastic

remedy" he seeks, which is in the nature of a preliminary injunction against the Secretary.  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (noting that a "preliminary injunction is an 'extraordinary and drastic remedy'") (citation omitted).  A preliminary injunction "is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008).  Rather, Plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  See Díaz-Carrasquillo v. García-Padilla, 750 F.3d 7, 10 (1st Cir. 2014) (outlining four elements for consideration of motion for preliminary injunction).  The last two factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  Because Plaintiff cannot carry his substantial burden to make a "clear showing," Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), that he is entitled to preliminary injunctive relief, his motion should be denied.

> **B.      Plaintiff Is Not Likely to Succeed on the Merits of his Claims.**
>
> > **1.      Plaintiff Cannot Show That the Alleged Action He Complains About was State Action to Which the First Amendment Applies.**

Once again, Plaintiff fails to adduce any cogent, admissible evidence that Twitter's decision to deplatform Plaintiff constituted state action to which the First Amendment applies, and that failure is fatal to his request for a preliminary injunction.  Twitter's decision to reprimand Plaintiff pursuant to its Terms of Use was a private act to which the First Amendment does not apply, and there is nothing in the record that would demonstrate that Twitter's decision to deplatform Plaintiff can be construed as state action.

It is axiomatic that "the constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state."  Hudgens v. NLRB, 424 U.S. 507, 513 (1976).  In other words, to "trigger First Amendment protection, the infringement upon speech must have

arisen from state action of some kind." <u>Bronner v. Duggan</u>, 249 F. Supp. 3d 27, 41 (D.D.C. 2017) (citing <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1002-03 (1982)).  A private party can only be characterized as a state actor under limited circumstances.  <u>See</u> <u>Mead v. Indep. Ass'n</u>, 684 F.3d 226, 231 (1st Cir. 2012) (describing as "rare" the instances in which the Court will consider private party's acts as state action).  As the Supreme Court recently emphasized, the First Amendment only rarely applies to the conduct of a private entity.  <u>See</u> <u>Manhattan Cmty. Access Corp. v. Halleck</u>, 139 S.Ct. 1921, 1928, 1933 (2019) (deciding that cable television network was "not subject to First Amendment constraints on how it exercises its editorial discretion with respect to the public access channels," and explaining that "a private entity can qualify as a state actor in a few limited circumstances").

Plaintiff has previously asserted in this case – without any evidence – that Twitter became a private actor under the so-called "state compulsion" doctrine such that the Defendants are liable for their report to Twitter (and Twitter's subsequent decision to sanction Plaintiff). Under this doctrine, a private act is considered a government act only when "the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 5 (1st Cir. 2005) (quoting <u>Blum</u>, 457 U.S. at 1004).  For purposes of this motion, Plaintiff bears the burden of proving that the Secretary used this coercive power in a way that transforms Twitter's decision to deplatform Plaintiff into a public one.  <u>See</u> <u>Mead</u>, 684 F.3d at 231.

But Plaintiff fails to provide anything beyond charged, fact-free rhetoric to substantiate his theory that Twitter deplatformed him at the behest of the Secretary.  The evidence in the record contradicts his wild assertions.  Staff from the Secretary's office lodged one report with Twitter months ago.  Twitter later suspended Plaintiff on different occasions for posting different

Tweets.  Then, months later, Twitter, acting pursuant to its publicly available Terms of Use, kicked Plaintiff off the Twitter platform altogether – along with, around the same time, several other high-profile users.[4]  Plaintiff hypothesizes that because he was deplatformed, the only possible explanation is that the Secretary's office cajoled Twitter into creating an algorithm that would automatically deplatform Plaintiff if he uttered the name of one employee in the Secretary's office.  He has no evidence that would support such specious nonsense.  Even construing the actual evidence in the record liberally, Plaintiff's attempt to tie Twitter's decision to the state (and thus the First Amendment) fails.

This claim fails because no government coercion can be found where a private actor like Twitter retains ultimate authority to make the decision later challenged by a plaintiff.[5]  See Logiodice v. Trustees of Me. Cent. Inst., 296 F.3d 22, 28 (1st Cir. 2002) (finding that a private school under contract to educate school district's secondary students was not a state actor for purposes of disciplinary decision where school retained the "sole right to promulgate, administer and enforce all rules and regulations pertaining to student behavior, discipline, and use of the buildings and grounds."); Rodriguez-Garcia v. Davila, 904 F.2d 90, 97 (1st Cir. 1990) (finding no state action with respect to private entity's employment decision even though "management contract and the sales agreement grant [state entity] significant control over the operations of [private entity]" because private entity was ultimately "accorded freedom to make the initial selections" on employment matters); Yeo v. Town of Lexington, 131 F.3d 241, 254–55 (1st Cir. 1997) (en banc) (finding no government conduct where students, not public school teachers, retained editorial control over newspaper content).  Twitter, which retains authority to discipline

---

[4]    See https://www.washingtonpost.com/technology/2021/01/11/trump-twitter-ban/.
[5]    See Morgan v. Bevin, 298 F. Supp. 3d 1003, 1006, & n.4 (E.D. Ky. 2018) ("Twitter is a privately owned social networking site ….").

its users pursuant to its contractual Terms of Use, made the decision to deplatform Plaintiff

months after the Secretary filed a single report with Twitter, as to which Twitter took no action.

Where, as here, Twitter maintains final decision-making authority over the discipline of its users,

state action cannot be found.   These allegations fail to show that the Secretary <u>compelled</u>

Twitter to act to punish Plaintiff; at most, they demonstrate only that the Secretary <u>reported</u> one

of Plaintiff's misleading Tweets months ago for an alleged violation of Twitter's civic integrity

policy, just as any other Twitter use can do by clicking "Report Tweet."[6]  These allegations are

not enough to show that the state violated the First Amendment, even under Plaintiff's risible

theory of state action in connection with his deplatforming.

      Moreover, even if the Court finds that the Defendants' report and Twitter's subsequent

decision to deplatform Plaintiff months later was state action caused by Defendants, Plaintiff's

motion should still be denied because the government's speech – here, one lone affirmative

report to Twitter that Plaintiff was making misrepresentations about the primary election – is not

subject to First Amendment regulation.  As the official charged with administering fair elections

in the Commonwealth, the Secretary and the Elections Division have a solemn responsibility to

prevent voter suppression achieved through the spread of election misinformation.  This task is

their job, and they are entitled to speak out to counteract such suppression attempts in the

marketplace of ideas.  The First Amendment permits them to do so.  The First Amendment

prohibits Congress and other government entities and actors from "abridging the freedom of

speech."  It "does not say that Congress and other government entities must abridge their own

ability to speak freely."  <u>Matal v. Tam</u>, 137 S.Ct. 1744, 1757 (2017).  The First Amendment, the

Supreme Court has made clear, "does not regulate government speech."  <u>Pleasant Grove City v.</u>

---

[6]     <u>See</u> https://help.twitter.com/en/safety-and-security/report-a-tweet.

Summum, 555 U.S. 460, 467 (2009).  Here, the employees of Secretary's office, which is

charged with ensuring free and fair elections in the Commonwealth, reported Plaintiff's

misleading election Tweet.  The government can permissibly do so under the First Amendment

because these statements are government speech.  See Sutliffe v. Epping School Dist., 584 F.3d

314, 329–30 (1st Cir. 2009) (holding that municipality's refusal to place hyperlink on municipal

website to website of group opposed to municipal budget constituted government speech).  The

Secretary's staff used the office's social media account to make a report to Twitter.  That is,

these government officials entered the marketplace of ideas and told Twitter of their belief that

Plaintiff's speech was election misinformation.  This act does not run afoul of the First

Amendment.  See Davison v. Randall, 912 F.3d 666, 686 (4th Cir. 2019) (government official's

"references on the Chair's Facebook Page to other Pages, personal profiles, and websites amount

to governmental speech" that is not subject to First Amendment regulation); Shurtleff v. City of

Boston, No. 18-CV-11417-DJC, 2020 WL 555248, at *4 (D. Mass. Feb. 4, 2020) (concluding

that city's decision to fly third-party flags on government property was government speech);

Griswold v. Driscoll, 625 F. Supp. 2d 49, 54 (D. Mass. 2009), aff'd on other grounds, 616 F.3d

53 (1st Cir. 2010) ("Public officials have the right to recommend, or even require, the curriculum

that will be taught in public school classrooms.  Doing so is a form of government speech, which

is not generally subject to First Amendment scrutiny.  There is no requirement that such

government speech be balanced or viewpoint neutral.").

### 2.      Plaintiff Is Not Entitled to an Order Compelling Speech.

Plaintiff's request for preliminary injunctive relief requiring Twitter – with the

Secretary's assistance – to reinstate Plaintiff to its private platform or to revise any computer

algorithms he speculates Twitter may employ should also be rejected because it improperly asks

this Court to compel speech by an elected state official and by Twitter, both of whom retain the

right to speak – or to choose not to speak – under the First Amendment.  Compulsions of speech, the Supreme Court has maintained, are as constitutionally suspect as are government restrictions of speech.  As the Court has explained, "the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say."  Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796–97 (1988); Janus v. Am. Fed'n of State, Cty. & Municipal Employees, Council 31, 138 S. Ct. 2448, 2463 (2018) ("freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.'") (citations omitted).  "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned."  Id.  The injunction sought by Plaintiff here seeks to do precisely what is forbidden by the First Amendment: having this Court compel a private entity (Twitter) and an elected official (the Secretary and his employees) to speak out by affirmatively carrying or endorsing Plaintiff's messages.  See Sindi v. El-Moslimany, 896 F.3d 1, 32 (1st Cir. 2018) (concluding that court injunctions that implicate future speech are subject to First Amendment scrutiny).

The Secretary, as an elected official, is permitted by the First Amendment to have his own viewpoints and to speak out – or decline to speak – on matters of public concern.  "When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others.  The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture."  Matal, 137 S.Ct. at 1757.  "When the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy.  If the citizenry objects, newly elected officials later could espouse some different or contrary position."  Bd. of Regents of Univ. of Wis. Sys. v. Southworth, 529 U.S. 217, 235 (2000).  As relevant here, the Secretary's staff spoke out in September to voice concern about a single Tweet

containing election misinformation.  The Secretary thus participated in the marketplace of ideas to respond to speech he deemed contrary to his office's mission to ensure fair and free elections in the Commonwealth and that could lead to disenfranchisement of voters who did not believe their votes would be counted.  The instant motion seeks to go far beyond Plaintiff's initial preliminary injunction motion, which sought only to prevent further protected speech by the Secretary about Plaintiff's misinformation; now, he seeks to have this Court not only compel the Secretary to speak to Twitter, but also to compel the content of that speech so that it urges Twitter to put Plaintiff back onto its platform.  Just as it would be inappropriate for this Court to direct a private company to adopt certain viewpoints, neither the Plaintiff nor this Court can compel the Secretary to speak or dictate the content of that speech.

Twitter, of course, is a private social media company that has its own viewpoints and rights to freedom of association.  As relevant here, these viewpoints are most notably expressed in Twitter's Terms of Use, which articulate certain standards that all users agree to follow if they want to post messages on Twitter's platform.  Those who violate these rules are subject to Twitter's sanctions, including deplatforming.  Twitter's viewpoints are protected speech, and the Court cannot compel it to publish viewpoints on its service that are not its own or force Twitter to associate with those it does not wish to associate with.  See Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 256 (1974) (striking down "right-of-reply statute" because it directly interfered with the newspaper's editorial right to speak in its own newspaper); Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of Cal., 475 U.S. 1, 13-17 (1986) (Powell, J., plurality op.) (forbidding compelling a private corporation to provide a forum for views other than its own as violation of First Amendment); Boy Scouts of America v. Dale, 530 U.S. 640, 648 (2000) (group's freedom of expressive association was violated when a state law required the organization to accept members it did not want to accept).

### 3.      Plaintiff's Claim is Utterly Devoid of Factual Support.

Plaintiff's fantastical theory about a nefarious Twitter algorithm to flag mentions of the word "Tassinari" is unsupported by any evidence and is belied by the factual record of the limited interaction between Twitter and the Defendants regarding the Plaintiff.  Defendant O'Malley, at Tassinari's direction, reported a single Tweet of Plaintiff's, which was the subject of the Court's previous order.  That Tweet did not mention Tassinari by name, and the report was evidently unavailing to Twitter, as that Tweet was not removed.  Later, Twitter issued several temporary suspensions to the Plaintiff and asked him to remove several other Tweets – but not the one that O'Malley reported.  The Secretary's office did not further complaint to Twitter Plaintiff or any of his Tweets.  Nor has the Secretary's office ever asked Twitter to include any words in an algorithm that would result in Plaintiff's Twitter account being suspended.  Plaintiff somehow leaps to the conclusion that the single report of a Tweet not containing the word Tassinari inexorably caused Twitter to implement an algorithm flagging the word Tassinari, thereby causing Plaintiff's Twitter account to be permanently suspended within hours of mentioning Tassinari's name in a video posted to his account.  In the alternative, Plaintiff argues that the Secretary's employees had subsequent communications with Twitter to order Twitter to create this algorithm.[7]  In doing so, he offers exactly zero facts supporting the existence of such an algorithm, arguing only that it must exist because it is the only conceivable reason why his account was suspended.  He offers no evidence supporting his claim that his mention of Tassinari's name caused the suspension.[8]  Significantly, Plaintiff's suspension occurred against

---

[7]      It is unclear from Plaintiff's motion whether Plaintiff is suggesting that the Secretary insisted that this algorithm be applied only to his Tweets or all Tweets.  Either way, it does not matter because the Secretary never asked Twitter to do anything of the sort.

[8]      Plaintiff assumes that his suspension was caused by the video in which he mentioned Tassinari because he was allegedly suspended hours after that video was posted.  But he offers

(footnote continued)

16

the backdrop of Twitter, in the weeks following the January 6 violence at the U.S. Capitol,

appearing to have increased its suspensions of accounts for election misinformation and

insurrection-related Tweets.[9]

Moreover, given the content of some of Plaintiff's other recent Tweets, it is also possible

that he was suspended for claiming on or around January 14 that COVID-19 death rates were

exaggerated:



or for, on January 6, cheering on the insurrectionists who invaded the Capitol:



or for, on the same day, claiming that Americans are subject to forced vaccinations:

---

no factual support for the inference that Twitter is able to, or in fact does, monitor its hundreds of
millions of users in real-time such that suspensions are implemented immediately following the
alleged rules violation. Indeed, some of Twitter's recent high-profile suspensions occurred days
after the offending Tweet (or in most instances, Tweets).  Moreover, Plaintiff's theory is belied
by the fact that a simple search of the word "Tassinari" on Twitter yields numerous hits.
[9]     See, e.g., https://www.nytimes.com/2021/01/08/technology/twitter-trump-
suspended.html; https://www.nbcnews.com/business/business-news/twitter-permanently-
suspends-mypillow-ceo-election-misinformation-n1255651;
https://www.cnn.com/2021/01/17/politics/marjorie-taylor-greene-twitter/index.html.



**Dr.SHIVA Ayyadurai, MIT PhD. Inventor of Email** ✔ @va_shiva · 36s   ⚬⚬⚬

Isn't it interesting BOTH Democrats & Republicans call this "Sedition." They expect us to wear #Masks, get #ForceVaccinated, accept #Censorship, be fine w our business going bankrupt #Lockdowns.

Why? Because none of these scumework for a living.

The Establishment is ONE!

The bottom line is that neither the Defendants, nor, more importantly, the Plaintiff, know why Twitter decided to suspend the Plaintiff's account, aside from the displayed statement that "Twitter suspends accounts which violate the Twitter Rules."[10]  See https://twitter.com/va_shiva. Plaintiff offers no evidence as to what particular Twitter rule he is alleged to have violated, no evidence as to what Tweet (or Tweets) caused his suspension, and no evidence as to whether his suspension was the result of a single Tweet or a pattern of sharing content that violated Twitter's rules. Plaintiff has only speculation and unsupported theories of collusion and algorithms that plainly fall short of the high bar necessary to demonstrate that he is entitled to an injunction compelling the Defendants' speech to Twitter.  But the affidavits submitted by the Secretary with this opposition – based on personal knowledge, unlike Plaintiff's speculation-laden affidavit – contradict Plaintiff's fanciful theories; nothing like what Plaintiff suggests actually happened.

### C.   The Balance of the Equities Favors Denying an Injunction that Would Interfere with a Private Business's Decision to Police Behavior on its Platform.

Plaintiff's failure to establish that he will likely prevail on his injunctive claims alone warrants denial of his motion for preliminary injunction.  But to the extent this Court considers the other factors, the balance of hardships and the public interest weigh decisively against the

---

[10]     The Twitter Rules cover wide and varied ground, with sections on Safety, Privacy, Authenticity, and Third-party advertising in video content. See https://help.twitter.com/en/rules-and-policies/twitter-rules.

interlocutory relief requested by Plaintiff.  Plaintiff's motion should be denied because there is a strong public interest in ensuring that private plaintiffs cannot use the Courts to dictate particular speech by the government.  Moreover, this Court should not allow Plaintiff to force private social media companies to carry messages they disagree with, thus thwarting their ability to combat misinformation spread on their platforms, particularly messages that undercut the credibility of the democratic process or that tend to foment discord and disruption.  See Halleck, 139 S. Ct. at 1932 (cautioning that Courts should not interfere with decisions taken by private businesses because doing so "could eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms.").  The Court is not the proper theater for such efforts.  If a person does not like a government's speech, the recourse is at the ballot box.  If a person does not like a social media company's viewpoints or terms of use, that person can argue with the platform or choose a different social media platform.

Even assuming that the Secretary's initial report to Twitter somehow resulted in Twitter's decision to deplatform Plaintiff – an assumption unsupported by any evidence – the Secretary's decision to make an initial report to Twitter that Plaintiff had posted election-related misinformation to his account should be commended, not condemned.  The Secretary is charged with ensuring free and fair elections in Massachusetts.  The Supreme Court has recognized that "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 352 (1997).  When others make statements that are inconsistent with that goal and undermine the voter's faith in the election process, the Secretary is empowered to speak out and to set the record straight, and the First Amendment permits him to do so.  The public's interest in free elections, by contrast, is ill-served by preventing the Secretary and his staff from speaking out to ensure that the record on elections in the

19

Commonwealth is clear.  The Secretary is a trusted source for election-related information in Massachusetts, and the public has a vested interest in permitting its elected officials to speak on matters of critical public importance.  Plaintiff's requested injunction would undermine the Secretary's ability to maintain the integrity of the election, effect a prior restraint on the free speech of an elected official, and stifle the ability of public officials to make statements to correct the record on areas of public concern, and should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion.

Respectfully submitted,

Defendants,

WILLIAM FRANCIS GALVIN, in his official and individual capacities, MICHELLE TASSINARI, in her individual capacity, and DEBRA O'MALLEY, in her individual capacity,

By their attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Adam Hornstine
Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Date: February 9, 2021

## <u>CERTIFICATE OF SERVICE</u>

I, Adam Hornstine, Assistant Attorney General, hereby certify that I have this day, February 9, 2021, served the foregoing **Memorandum**, upon all parties, by electronically filing to all ECF registered parties, and paper copies will be sent to those indicated as non-registered ECF participants.

<u>/s/ Adam Hornstine</u>
Adam Hornstine