UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | |
|---|---|
| Dr. SHIVA AYYADURAI )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM FRANCIS GALVIN, )<br>MICHELLE K. TASSINARI, )<br>DEBRA O'MALLEY, )<br>AMY COHEN, )<br>NATIONAL ASSOCIATION OF )<br>STATE ELECTION DIRECTORS, )<br>all in their individual capacities, and )<br>WILLIAM FRANCIS GALVIN, )<br>in his official capacity as Secretary )<br>of State for Massachusetts, )<br>      Defendants. ) | JURY DEMANDED |

MEMORANDUM IN SUPPORT OF MOTION FOR JOINDER
AND LEAVE TO FILE A SECOND AMENDED COMPLAINT

Plaintiff hereby files this memorandum of law with affidavit in support of his motion for joinder and leave to amend his complaint in order to add Twitter as a defendant and add claims against Twitter.

BACKGROUND FACTS

On September 25, 2020, this Plaintiff revealed on Twitter four screenshots of a public email conversation between himself and one public servant, a Michelle Tassinari, who is the Election Director for Massachusetts, legal counsel for Secretary of State William Galvin, and the President-elect for the National Association of State Election Directors (NASED). On October 30, 2020, Tassinari testified that she was very upset at seeing that tweet and acted to do *whatever it took* to have them deleted and this Plaintiff silenced on Twitter.

```
            THE WITNESS:  I think the goal was generally to ensure
    that misinformation wasn't being spread, and so whatever
    actions that we could take to make sure that the tweet was
    labeled as inaccurate or taken down, we were willing to pursue.
            THE COURT:  But did you think -- you had filed a
    report.  Did you want to do everything possible to try to
    assure that Twitter would take it seriously and either remove
    the tweet or label it inaccurate?
            THE WITNESS:  Yes.
            THE COURT:  And were you pleased when they deleted the
    tweet?
            THE WITNESS:  I believe I saw that it had been
    removed.  I was, yes, I was relieved.
```

To that end Tassinari personally reached out to NASED's executive director, Amy Cohen, and to the National Association of Secretaries of State, to apply pressure on Twitter using their Trusted Partner privileges which granted them special access to complaint categories not available to ordinary users on Twitter, and priority attention from Twitter to their complaints. In his amended complaint, Plaintiff described their special status compared to ordinary civilian users as the difference between a credit union debit card and Amex Black.

Tassinari testified that she checked on Twitter and was "relieved" that those tweets were deleted per her wishes.

At the October 30, 2020, hearing held to consider the grant of a TRO, Tassinari, O'Malley and Galvin did not reveal to this court that they had caused Twitter red flag algorithm that automatically scanned tweets for words or images that revealed the Defendants violation of Federal law. Tassinari further did ***not*** inform the court that she would ***not*** now cause Twitter to stop doing to ensure that thePlaintiff was no longer at risk of being silenced for mentioning "Tassinari" or posting her email images in the future.

Tassinari, O'Malley and Galvin consciously allowed this court and the Plaintiff to mistakenly conclude that these Defendants' intervention within Twitter against this Plaintiff was over. These Defendants outwardly "agreed" to the court's stipulations just in order to avoid the public ignominy of a TRO.

On February 1, 2021, this Plaintiff mentioned "Tassinari" and posted images of her emails in a tweet for the first time since September 2020, and was immediately suspended permanently from Twitter that same day. It is undeniable that this permanent suspension followed a simple dunning protocol wherein the first response from Twitter to Plaintiff referencing "Tassinari" and the emails had been a suspension for a few hours, followed by a suspension of a few days for the next mention, followed by a suspension of a few weeks for his next mention of "Tassinari" and her email images, until the permanent suspension for his next (and final) mention on Twitter of "Tassinari" and her emails.

Tassinari and her co-defendants have deplatformed this Plaintiff from a private microblogging service, in order to keep concealed from the public, documentary evidence of their *scienter* that Tassinari and Galvin have *intentionally* violated federal law and consciously defied the principle of "One Person One Vote." Now *that* is power.

Plaintiff sought an emergency hearing on the fact that Tassinari and her co-defendants had concealed from this court that they had left Twitter's red flag algorithm in place to monitor the Plaintiff for mentioning Tassinari and her email images, while outwardly agreeing to desist from silencing this Plaintiff in the future, and sought a court order directing Tassinari and her co-defendants to finally stop Twitter's red flag algorithm from monitoring his tweets for Tassinari and her emails, and to reverse their deplatforming him from Twitter.

On February 19, 2021, this court ordered the Plaintiff to consider adding Twitter Inc., a Delaware Corporation, as a defendant in this case, because it was "questionable whether the court may grant plaintiff complete relief on his Motion if Twitter is not a party to this case. Such relief may also implicate Twitter's interests, which could be impaired in its absence." This memorandum follows.

## ARGUMENT

At the October 30, 2020, emergency TRO hearing, Plaintiff declared to the court that Twitter had had no choice but to act as the cat's paw in this travesty given the tremendous pressure it was under from the government of Massachusetts acting in concert with two major national associations that speak for state officials.

When he filed his December 2020 amended complaint, Plaintiff again desisted from adding Twitter as a defendant because he still considered that Twitter had acted under duress from the government. Left to itself Twitter had never, and would never have, coerced this Plaintiff to delete any tweets or suspended his account. But for Tassinari and her co-defendants, neither would have happened. It was purely government action.

In February 2021, after being deplatformed, Plaintiff Dr. Shiva is now certain that it is imperative to join Twitter as a defendant in this case in order to allow Twitter the opportunity to stop living by lies and to allow this court to publicly explore, on the record, the parameters of Twitter's clandestine relationship with the government, its role as the government's active proxy, and its use of the Trusted Partner program to provide the government an end run around the US Constitution that allows it to violate citizens' rights at will without any public exposure let alone accountability.

## TWITTER WAS INTEGRAL TO THE SUCCESS OF THE RICO ENTERPRISE

The Defendants formed an enterprise to obstruct justice and keep concealed from public attention the fact that they knew they actively violated Federal law when they deleted or discarded digital ballot images that were generated by electronic voting machines used in the course of a federal election. It is a matter of record that the electronic voting machines used in Massachusetts work by first generating digital ballot images and that access to these images is essential for honest audits to determine whether the principle of "One Person One Vote" was upheld. Tassinari has actively committed perjury on this important point in her affidavits to this court in both related cases, 11889 and 12080. These Defendants knew that courts in numerous jurisdictions have already declared that digital ballot images are records encompassed by 52 USC § 20701 *et seq*.

Twitter was integral to these Defendants' effort to obstruct justice by concealing the screenshots of the Tassinari emails and by silencing this Plaintiff on Twitter, initially for weeks during his election campaign and now permanently.

It is Twitter's Trusted Partner program that allowed these Defendants to covertly silence this Plaintiff at will and to now deplatform him, exclusively for the content of his speech. But for Twitter's active covert collusion with the government, these Defendents would not have been able to successfully meet their enterprise's goal.

## TWITTER IS LIABLE FOR ACTING AS THE CAT'S PAW

The record shows that but for these Defendants' Trusted Partner status with Twitter, and Twitter's final decision maker on suspension issues, General Counsel Vijaya Gadde, Twitter would not have focussed its red flag algorithm on the Plaintiff mentioning Tassinari or posting images of her emails, and this Plaintiff would not have eventually been dunned out of Twitter

itself. Twitter acted as the Defendants' cat's paw. This is the definition of cat's paw liability. *Staub v. Proctor Hospital* 562 US 411 (2011), *Tryon v. MBTA*, 98 Mass. App. Ct. 673 (2020)

The record already in this case makes it impossible for Twitter to now credibly claim that it was not threatened or strongly encouraged or induced by the Defendants and their office or did not actively collude with them to act against this Plaintiff, and that it randomly plucked the keyword "Tassinari" out of thin air as a private actor all by itself, as acknowledged by Judge Posner in the case of Visa succumbing to the government and abandoning its own client:

> "It's true that Visa filed an affidavit stating that "at no point did Visa perceive Sheriff Dart to be threatening Visa." But what would one expect an executive of Visa to say? "I am afraid of the guy?" "He is in effect calling me an accomplice of a criminal organization (Backpage), and I'm afraid he might pull strings to get me investigated and even prosecuted by any one of several federal or state agencies?" More significant than Visa's denial of having succumbed to Sheriff Dart's pressure tactics is the statement in the affidavit that the withdrawal of credit card services from Backpage "follow[ed] communication with Sheriff Dart's staff" and with "Visa Legal Department" personnel."

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015).

The law in Massachusetts and the United States makes Twitter liable for silently carrying out the Defendants' bidding, and without privately warning this Plaintiff, even if it claims duress. It is extremely unlikely that Twitter was prevented from reaching out to this Plaintiff, by a lawful court order or a National Security Letter, and from informing him that it was under government pressure. Plaintiff was Twitter's loyal user for nine (9) years, with nearly 360,000 followers. It is impossible to tell where Twitter ends and the government begins. It remains liable for its internal decisions. Twitter chose back room shenanigans and living by lies, over truth and honor.

TWITTER IS LIABLE FOR INTERFERING
IN THE CONDUCT OF A FEDERAL ELECTION

Twitter holds itself out as an internet platform under the "Good Samaritan" protections of the Communications Decency Act, 47 U.S. Code § 230: Protection for "Good Samaritan" blocking and screening of offensive material:

> (1) Treatment of publisher or speaker - No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. (2) Civil liability - No provider or user of an interactive computer service shall be held liable on account of—(A) any action ***voluntarily taken in good faith to restrict access*** to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).  emphasis added

The law states that any action by Twitter must be done "voluntarily" and "in good faith" in order to avail of section 230 immunity.  Twitter's action against this Plaintiff was ***not*** voluntary and ***not*** in good faith.

On behalf of the Defendants, Twitter consciously chose to interfere in the conduct of an election for Federal office, the 2020 Republican primary for US Senator from Massachusetts. On behalf of Massachusetts Defendants, Twitter blocked this Plaintiff, a candidate whose speech was fully protected by Massachusetts law, as construed by the SJC in *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015). There was no lawful basis underlying Twitter's decision to silence this Plaintiff's campaign statements during his election campaign in Massachusetts. As a direct result of its unlawful actions, Twitter ensured a significant advantage to the Plaintiff's opponent, Kevin O'Connor.

It is elementary that revealing on September 25, 2020, public emails that documented that Tassinari and Galvin knew full well that they were required by Federal law to preserve

digital ballot images created in an election that was already over on September 1, 2020, does not in any way constitute "content that may suppress participation or mislead people about when, where, or how to participate in a civic process." The only legitimate conclusion from the record already available in this case is that Twitter's proferred reason for deleting the tweets and suspending this Plaintiff was entirely pretextual, in deliberate bad faith, and entirely due to its Trusted Partner relationship with the Defendants. Twitter's bad faith actions in this case strip it of any "Good Samaritan" immunity granted by Section 230.

In addition, actively interfering in the conduct of a Federal election, in this case the three-way race between this Plaintiff, Kevin O'Connor and Edward Markey, violated Federal election laws and granted Plaintiff's opponents a massive impermissible benefit. Twitter acted as an un-registered un-declared SuperPAC instead of a neutral internet platform. Twitter's action equates to it running negative attack advertisements against this Plaintiff during a campaign. Plaintiff shall develop these points of law further in his second amended complaint.

### LEAVE TO AMEND MUST BE FREELY GIVEN AND IS WELL-DESERVED IN THIS CASE

Both the Federal rules and the Supreme Court encourage courts to freely grant leave to amend complaints.

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 US 178 (1962)

This Plaintiff has not transgressed in any way upon this court or the Defendants and leave must be granted to amend his complaint.

CONCLUSION

Twitter must be joined as a defendant and the court must grant leave to amend the complaint in order to add claims against Twitter.

Respectfully submitted under the pains and penalties of perjury,
/s/ Dr. Shiva Ayyadurai
_____

Date: February 26, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this memorandum upon the Defendants via their counsel via ECF. Respectfully submitted under the pains and penalties of perjury,
/s/ Dr. Shiva Ayyadurai
_____

Date: February 26, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave, Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF CONFERRAL PER LR 7.1

Plaintiff certifies that he conferred with counsel for Galvin, Tassinari and O'Malley on this motion and these Defendants declared that they had no position, for or against, this motion for joinder and leave to amend. Plaintiff further certifies that he conferred with counsel for Cohen and NASED and these Defendants indicated that they would oppose this motion when filed. Counsel for Cohen and NASED also informed Plaintiff that Twitter is immune per Section 230.

Respectfully submitted under the pains and penalties of perjury,
/s/ Dr. Shiva Ayyadurai
_____

Date: February 26, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave, Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com