UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | |
|---|---|
| Dr. SHIVA AYYADURAI )<br>       Plaintiff, )<br>       )<br>    v. )<br>       )<br>WILLIAM FRANCIS GALVIN, )<br>MICHELLE K. TASSINARI, )<br>DEBRA O'MALLEY, )<br>AMY COHEN, )<br>NATIONAL ASSOCIATION OF )<br>STATE ELECTION DIRECTORS, )<br>all in their individual capacities, and )<br>WILLIAM FRANCIS GALVIN, )<br>in his official capacity as Secretary )<br>of State for Massachusetts, )<br>       Defendants. ) | JURY DEMANDED |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
THE FEBRUARY 4, 2021 MOTION FOR AN EMERGENCY HEARING
AND TO VACATE STAY OF DISCOVERY

On October 30, 2020, Galvin, Tassinari and O'Malley submitted to this court that they would no longer silence this Plaintiff's speech on Twitter.

Though this court had revealed the existence of the Trusted Partner relationship between Twitter and the government, these Defendants did not inform this court that their means of silencing this Plaintiff's speech on Twitter involved them causing Twitter to employ a computer algorithm that monitored all of this Plaintiff's tweets for any reference to Tassinari either as plain text or in the form of screenshots of her emails.

Tassinari, Galvin and O'Malley further concealed from this court that they had no intention of causing Twitter to stop monitoring Plaintiff's tweets and stop silencing him every time he made any reference to Tassinari either as text or in the form of screenshots of her emails.

It is established in the record of this case that BUT FOR these Defendants implementing their *whatever it took* enterprise to silence this Plaintiff, Twitter had not and would not have monitored Plaintiff's tweets for any reference to Tassinari either as text or in the form of screenshots of her emails.  The silencing occurred solely at the behest of these Defendants.

Government has interfered in the past to abrogate a private citizen's rights under the exception granted for maintaining relations with friendly foreign powers. *Ex parte Republic of Peru*, 318 U.S. 578 (1943) More recently, the Lego Sytems A/S company based in the Royal Kingdom of Denmark refused to sell Lego bricks to the National Gallery of Victoria in Melbourne because the bricks were to be used by dissident artist Ai Wei Wei, and neither Denmark nor Lego wished to support freedom of expression in Australia that would be in defiance of the very progressive People's Republic of China.

https://www.dezeen.com/2015/10/26/ai-weiwei-lego-building-blocks-political-work/ ,

https://www.theguardian.com/artanddesign/2015/oct/24/artist-ai-weiwei-banned-by-lego-to-build-artwork-australian-exhibition

Certification by the State Department on behalf  of a foreign country would be the sole legal basis for the Defendants' abrogation of this private citizen's rights.   Discovery shall reveal if foreign relations were implicated in this Plaintiff exposing Tassinari and Galvin for their intentional violations of Federal law and for reducing American citizens to 2/3rds of a person.

On February 1, 2021, the very first time that this Plaintiff referenced Tassinari in a tweet since October 2020, Twitter permanently suspended his account and blocked Plaintiff from communicating with his 360,000 followers.

As documented in the motion, the evidence is unequivocal and damning that this February 2021 permanent suspension was the culmination of an existing program of escalating

consequences, an existing protocol of dunning that began in 2020, and not an original, fresh, all-new, independent, unconnected action in 2021 itself.

It is undeniable that Tassinari, Galvin and O'Malley fully knew that they had set in place a program to silence Plaintiff permanently should he reference the Tassinari emails ever again and fully intended that outcome despite what they outwardly agreed to in court.

It is undeniable that Tassinari, Galvin and O'Malley came to the October 30, 2020, TRO hearing with unclean hands, dealt with both the court and this Plaintiff in deliberate bad faith, and materially breached an agreement they officially and publicly accepted prior to the court's Order that memorialized said agreement.

A R G U M E N T

THE OCTOBER 30, 2020 ORDER MATERIALLY ALTERED THE RELATIONSHIP
BETWEEN THE PLAINTIFF AND THE DEFENDANTS

On October 30, 2020, Tassinari testified that she and her co-defendants had been prepared to take whatever action was necessary to silence this Massachusetts Plaintiff in the middle of his election campaign. Defendants retained this position despite the SJC declaring such efforts unconstitutional in *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015), meaning these government officials are precluded from claiming they had no idea that their **whatever it takes** action would violate this Massachusetts candidate's constitutional rights.

After a four-hour hearing and extensive colloquoy with this court, these Defendants agreed that they would no longer take any steps to silence this Plaintiff's speech on Twitter, and would request Cohen and NASED to also desist.     Plaintiff accepted the Defendants' agreeing to stop silencing him on Twitter to be in good faith.  In return, the Plaintiff agreed that court could declare his TRO motion to be moot.  Solely on the basis of said agreement, entered into by

the Commonwealth's Secretary of State, State Election Director, and their Spokesperson, which this court also took to be in good faith, the court declared this Plaintiff's motion to moot and issued an Order memorializing the agreement.

This agreement, entered into by the Defendants in order to avoid the ignominy and precedent of a TRO enjoining them from using a private corporation to silence a Massachusetts candidate during his election campaign, materially altered the relationship between them and the Plaintiff, a material change memorialized in a court Order which granted judicial *imprimatur* on this material change. *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001) The agreement memorialized by this court in its Order was specific and not a generalized aspirational representation. *Santoni v. FDIC*, 677 F.2d 174, 179 (1st Cir. 1982), *G. v. Fay School*, No. 18-1602 (1st Cir. 2019) The agreement was a binding contract that the Defendants were required to comply with in letter and spirit, that committed the Defendants to a specific course of action: **Stop Silencing The Plaintiff Via The Private Sector**.

THE DEFENDANTS ENTERED INTO AN AGREEMENT WITH THIS COURT IN BAD FAITH AND WITH NO INTENTION OF DESISTING FROM SILENCING THIS PLAINTIFF VIA THE PRIVATE SECTOR

Subsequent events have now made undeniable the fact that in order to avoid the ignominy and precedent of that TRO while still ensuring the success of their enterprise, these Defendants concealed from this court the existence of a computer algorithm, employed by Twitter solely on their behalf, which ***continued*** to actively monitor this Plaintiff's tweets for any reference to Tassinari either as text or in the form of screenshots of her emails, ***without any change from prior to*** these Defendants entering into an agreement with this court.

These Defendants, and Twitter, knew full well that the algorithm, implemented on their express wishes, escalated adverse consequences for this Plaintiff, with suspensions increasing in severity each time the algorithm detected that the Plaintiff had made on Twitter any reference to Tassinari either as text or in the form of screenshots of her emails.

The suspensions implemented prior to the Defendants entering into an agreement with this court that materially changed their relationship with the Plaintiff, progressed sequentially from a few hours to a few days to a few weeks.

On February 1, 2021, eventually, the Defendants succeeded in permanently deplatforming this Plaintiff from Twitter and met their enterprise's goal of obstructing justice, on the basis of a computer algorithm that they had caused to be implemented against this Plaintiff's tweets *before* they entered into an agreement with this court to desist from silencing this Plaintiff's speech on Twitter.

Immediately prior to the final suspension, the Plaintiff had just referenced Tassinari on a live video lecture to thousands of students and displayed the screenshots of Tassinari's emails, which remain public documents.  These *public documents* revealed that Tassinari and Galvin fully knew that digital ballot images are required by 52 USC § 20701 to be preserved and that they intentionally deleted them. This was the first time since the October hearing that Plaintiff had referenced these *public documents* -  Tassinari's emails on Twitter.

The deplatforming of the Plaintiff was an event that media sources found newsworthy.

https://apnews.com/article/senate-elections-elizabeth-warren-elections-ca43aabf3d6a7e405db7e4fef80e10b2

https://patch.com/massachusetts/cambridge/twitter-suspends-senate-candidate-shiva-ayyadurais-account ,

https://www.universalhub.com/2021/twitter-permanently-bans-serial-senate-candidate,

https://www.indiawest.com/news/global_indian/u-s-senate-candidate-shiva-ayyadurai-s-twitter-account-suspended/article_1e3fcb1e-6a5c-11eb-a5f0-93c3d1d44365.html

The Defendants implemented the goal of their enterprise, the obstruction of justice, through the conscious, willful, material breach of a court agreement and Order that they never had the slightest intention of complying with from the get go.

As the amended complaint documents, these Defendants were committed to concealing their intentional violation of Federal law and their intentional defiance of the principle of "One Person One Vote," and intentionally silenced this Plaintiff because his is the lone voice in the entire United States which exposed their violation of the constitutional guarantee of Equal Protection and their turning him into two-thirds of a person.

This commitment to the success of their enterprise took precedence over an agreement that these Defendants made with this court simply to deflect attention.

## THIS COURT MUST SANCTION THESE DEFENDANTS AND ORDER THEM TO REVERSE THEIR DEPLATFORMING THIS PLAINTIFF ON TWITTER

Twitter entered into a Trusted Partnership with the government solely to provide government officials, such as Tassinari, Galvin and O'Malley, a covert means of performing an end run around the strong restrictions imposed on the government by the United States Constitution regarding violations of citizens' right to free speech.

Tassinari, Galvin and O'Malley took full advantage of this covert program to ensure that this Plaintiff is deplatformed from Twitter, his chosen medium of communication as well as his means of educating his students via the Internet, and a significant source daily income.

Tassinari, Galvin and O'Malley intentionally deplatformed this Plaintiff from Twitter because his is the lone voice in the entire United States which exposed their violation of the constitutional guarantee of Equal Protection and their turning him into two-thirds of a person.

This deplatforming of the Plaintiff was a material breach of the agreement that the Defendants entered into with this court.

The Defendants thus came with unclean hands and left with unclean hands. They perpetrated a willful fraud on the court when they entered into that agreement knowing they would not honor it in the slightest and that deplatforming this Plaintiff from Twitter was inevitable given their initiation of Twitter's monitoring algorithm which they then allowed to continue.

Such a deliberate fraud and breach demands exemplary sanctions from this court.

"Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals...Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions setup to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society...The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

Two of the parties who defrauded the court, Tassinari and Galvin, are officers of the court themselves and all three are government officials as well. *Reintjes v. Stoker*, 71 F.3d 44 (1st Cir 1995)

The only just and equitable relief here is for this court to order these Defendants to use the very same Trusted Partner relationship they employed to deplatform the Plaintiff to now reverse the consequences of the computer algorithm they caused Twitter to implement which monitored tweets daily to determine if the Plaintiff had made any reference to Tassinari either as text or in the form of screenshots of her emails and to then suspend his account in retaliation for doing so. These Defendants have that power, and chose to use this power against this Plaintiff despite a binding agreement with this court to desist from doing so.

No other sanction would be just. *Lemon v. Kurtzman*, 411 U.S. 192 (1973)(In shaping equity decrees, the trial court is vested with broad discretionary power), *Lee v. Weisman*, 505 US 577 (1992)

## THE DEFENDANTS' MATERIAL BREACH OF THE AGREEMENT NECESSITATES EARLY DISCOVERY

Relying on the assumption of good faith on the part of the Defendants and on their acceptance of an agreement proposed by this court which then granted judicial *imprimatur* upon the terms of said agreement, Plaintiff agreed to a stay of discovery. The subsequent deplatforming from Twitter, based solely on him referencing Tassinari and her emails, makes it vital that this court allow discovery immediately regarding the Defendants causing Twitter to implement a computer algorithm to monitor Plaintiff's tweets. This is important for the court itself to determine the exact parameters of the Defendants' deceit and rule on the Plaintiff's motion for equitable relief. Whatever "good cause" this court was led to believe existed to grant the stay of discovery, has been revealed to have a foundation of sand.

The only bar to a lifting of the stay of discovery regarding the communications between the Defendants and Twitter is an assertion by these Defendants of their Fifth Amendment right to not incriminate themselves in any future criminal prosecution. *United States v. Balsys*, 524 U.S. 666, 672 (1998), *Gray et al v. Derdarian et al*, 1:03-cv-00483-L-DLM (DRI 2007) Such assertion must be made in writing in a public, unsealed, document to this court.

## CONCLUSION

As a matter of law, the Plaintiff's motion to vacate the stay of discovery must be granted and the court must order the Defendants to reverse their actions that resulted in the Plaintiff being deplatformed from Twitter.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: February 28, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this supplemental memorandum upon the Defendants via their counsel via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: February 28, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com