UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAM FRANCIS GALVIN, MICHELLE K. TASSINARI, DEBRA O'MALLEY, AMY COHEN, NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS, allegedly in their individual capacities, and WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of State for Massachusetts.<br><br>        Defendants. | Civ. No. 20-cv-11889 |

**OPPOSITION TO PLAINTIFF'S MOTION TO JOIN TWITTER
BY THE NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS
AND AMY COHEN**

The National Association of State Election Directors and Ms. Cohen (collectively, "NASED") submit this brief response to oppose Plaintiff's request for leave to file a second Amended Complaint to add unspecified, unsupported, and ultimately futile claims against Twitter. (*See* Dkt No. 64.)[1] Plaintiff makes no showing that Twitter is a necessary party in this case, or that his proposed amendment to add yet more speculative and unsupported conspiracy allegations is a proper subject of relief or would serve any purpose other than delay. Accordingly, NASED respectfully requests that the Court deny Plaintiff's request and grant NASED's pending and fully-briefed motions to dismiss, particularly as its own free speech and expressive rights remain chilled and restricted while Plaintiff's deficient claims remain pending.

---

[1] In submitting this Opposition, Ms. Cohen does not waive her challenge to personal jurisdiction. (Dkt No. 44.)

1

### I. Plaintiff Has Not Alleged Any Plausible Factual Basis To Support His Request To Add Twitter As A Party

"A district court may deny leave to amend a complaint as futile when the proposed amended claim alleges only conclusory statements that do not raise any viable claim." *Okoye v. Bank of New York Mellon*, 2011 WL 3269686, at *13 (D. Mass. July 28, 2011) (citing *Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009); *see also Foman v. Davis*, 371 US 178 (1962) (amendment is proper only where the "the underlying facts or circumstances relied upon by a plaintiff" are "a proper subject of relief"). Here, the Court should deny Plaintiff's request to amend because he has not shown that Twitter's joinder is necessary and fails to allege any non-speculative facts to support his amendment request. Twitter is only a "necessary" if Plaintiff's February 1, 2021 de-platforming is an alleged injury at issue in the case, because it is only the remedy of reinstatement that Twitter is needed to effectuate and that implicates Twitter's interests. (*See* Order, Dkt No. 63.) However, despite the Court's instruction that Plaintiff should support any request for leave to amend by providing an affidavit with relevant factual support, Plaintiff offers only conclusory assertions and overblown rhetoric. He identifies no actual, plausible factual connection between Twitter's decision to suspend him in February 2021 for repeated violations of its Rules and any defendant or issue in this case, nor is there any.[2]

Plaintiff's unadorned conjecture that Twitter was part of a supposed plot against him to implement a "secret red flag algorithm" to prevent his use of the word "Tassinari" is inadequately pled and provides no basis to permit amendment. *See, e.g.*, *Illoominate Media, Inc. v. CAIR Fla., Inc.*, No. 19-14741, 2020 WL 7703141, at *3 (11th Cir. Dec. 29, 2020)(where "Plaintiffs offered

---

[2]  Plaintiff's so-called affidavit meanders through a wide variety of irrelevant topics and grievances without ever identifying a single fact to support or explain his allegation that NASED or any defendant played a causal role in Twitter's decision to permanently suspend his account. (*See generally* Dkt No. 66; *compare* Dkt No. 58-1, Tassinari Aff. ¶¶ 3-7; Dkt No. 58-2, O'Malley Aff. ¶¶ 3-7; Dkt. 60-1 , Cohen Aff. ¶¶ 8-9, 16-19.)

nothing beyond vague speculation that CAIR-Florida was involved in the plan to ban Loomer from Twitter" for political speech, it was fraudulently joined because "there is no possibility that the plaintiffs could prove a cause of action against CAIR-Florida," and separately affirming dismissal of state law claims against Twitter because Plaintiffs' access to Twitter was terminable at Twitter's will under its Terms and therefore the complaint failed to allege "interference with actual legal or contractual rights"); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020) (affirming dismissal of conclusory conspiracy claims against "Google, Facebook, Twitter, and Apple [] alleging that they conspired to suppress conservative political views and violated the First Amendment"); *see also Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1120 (N.D. Cal. 2020) (dismissing conclusory claims alleging that Facebook conspired with the government to remove accounts).

Tellingly, moreover, Plaintiff continues to avoid acknowledging that, immediately before his suspension, he had accrued at least four "strikes" under Twitter's five-strikes-and-you're-out enforcement guidelines implemented after January 6, 2021, and was just one of tens of thousands of accounts banned by Twitter around the same time for making similar false claims.  (*See* Dkt No. 60, at 7-12.)  There is no allegation that NASED or any defendant had anything to do with Twitter's changes to its enforcement policies and practices or the four previous "strikes" Plaintiff accrued prior to his suspension, nor is there any doubt that Plaintiff's tweets concerning his stolen election theory violated Twitter's policies against election misinformation.[3]  Whether he

---

[3]  A study recently published by Cornell University that analyzed a dataset of millions of tweets concerning fraud in the 2020 election cycle refutes concludes from the data it analyzed that "Twitter's ban actions mostly affected a specific community of voter fraud promoters," ((https://arxiv.org/pdf/2101.08210.pdf, at *1), and specifically identifies Plaintiff in its list of "2020 midterm election candidates that appear in the VoterFraud2020 dataset," ranking him second only to former president Donald J. Trump in terms of retweets by suspended Twitter users.  (*See* https://voterfraud2020.io/?page=Midterm+Candidates.)  In other words, Plaintiff was among the most

acknowledges them or not, these independent, intervening events preclude the inference that any defendant's report to Twitter in September 2020 concerning a single tweet was the legal cause of Plaintiff's suspension months later under a state action theory. *See, e.g.*, *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 13 (1st Cir. 2015) (holding that it is "not enough that the state set in motion the subsequent actions taken by [a private plaintiff]: ***but-for causation is simply insufficient to conjure a finding of state action***." (emphasis added)); *see also Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) (proximate causation requirement of § 1983 "restricts tort liability to those whose conduct, beyond falling within the infinite causal web leading to an injury, was a legally significant cause").[4]  Plaintiff therefore fails to show that Twitter's February 2021 decision to terminate his license to use its platform had anything to do with any defendant or issue in this case, or was anything but the result of Twitter's own independent judgment construing its own policies.  As such, Plaintiff cannot show that his reinstatement is relief that is at issue in this case, and there is no need to join Twitter now to effectuate it or protects its interests.

## II.  Plaintiff's Proposed Amendment Is Futile

Plaintiff also fails to show that he has any viable cause of action against Twitter, and cannot avoid the futility of his proposed amendment.  Twitter has unfettered contractual authority to terminate Plaintiff's license to use its platform and technology at will, and it is generally immune from liability for claims concerning its publication and removal of user content.  42 U.S.C. 230(c); *see generally Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016)(discussing

---

prolific spreaders of election misinformation on Twitter's platform during the 2020 election cycle, and accounts retweeting his views were suspended in large numbers.

[4]     The only other basis for liability suggested in Plaintiff's request is under RICO, but Plaintiff does not allege any conceivable RICO claim against any defendant.  *See Hibbard v. Benjamin*, 1992 WL 300838, at *3 (D. Mass. 1992) ("Neither conspiracy to violate a person's Constitutional rights, nor common law torts constitute predicate acts under RICO.").

breadth of Section 230 immunity).[5]  Like NASED, moreover, Twitter is also a private actor that is not subject to constitutional constraints and has First Amendment rights of its own, including the editorial rights of a publisher.  *See, e.g., Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (constitution protects publisher's "editorial control and judgment"); *see also Manhattan Cmty. Access Corp. v. Halleck*, __ U.S. __, 204 L. Ed. 2d 405 (2019) ("[W]hen a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor," and may "exercise editorial discretion over the speech and speakers in the forum."); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019), aff'd, 816 F. App'x 497 (D.C. Cir. 2020) ("Facebook and Twitter, for example, are private businesses that do not become "state actors" based solely on the provision of their social media networks to the public."); *see also* Dkt. No. 37, AG MTD Br. at 10-11.

Although it is difficult to discern what Plaintiff is alleging as to Twitter or any defendant (because his allegations keep changing), his request acknowledges that Twitter is the "final decision maker on suspension issues," and asserts the conclusion that Twitter acted as an "integral" and "active" co-conspirator in his suspension.  (Mem. at pp. 5-6.)  However, Plaintiff's theory that Twitter ultimately made its own decision to sanction Plaintiff and actively sought his removal does not allege a viable legal claim.  There is no doubt that Twitter had the sole right to sanction and suspend Plaintiff, and Plaintiff's acknowledgment that Twitter makes its own enforcement decisions is fatal to any theory of state action.  *See Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d

---

[5]  Although Plaintiff acknowledges Section 230(c)(2), he offers only conclusory and unsupported claims that Twitter's actions were in bad faith, which are bootstrapped to his inadequately pled ballot election fraud and ballot destruction conspiracy theories and fail for the same reasons.  Plaintiff also ignores that his claims, to the extent he discloses them, attempt to hold Twitter liable for not removing content he created and are therefore separately barred under Section 230(c)(1).  *See, e.g., Fed. Agency of News LLC*, 432 F. Supp. 3d at 1120 ("Numerous courts have held that Section 230 immunizes a website's removal of political speech").

22, 28 (1st Cir. 2002) (school's contractual discretion to impose discipline broke causal link between state action and private conduct); *Yeo v. Town of Lexington*, 131 F.3d 241, 251 (1st Cir. 1997) (publisher independence precludes attribution of speech restrictions to state actor). Rather, it only highlights the ways in which Plaintiff is attempting to use the state action doctrine to restrict the expressive rights of his critics, contrary to basic First Amendment principles. *See Yeo*, 131 F.3d at 255 (emphasizing that where "there are First Amendment interests on both sides of the case, the analysis of whether there is state action must proceed with care and caution").[6]

### III.  Plaintiff's Proposed Amendment Will Not Serve Any Useful Purpose

Finally, Twitter's joinder will only set the case back, at a time when all of the defendants have fully-briefed motions to dismiss pending before the Court that are based on legal and pleading deficiencies and immunities that Twitter's joinder will not cure. Although Plaintiff did not provide a copy of his proposed amendments or identify the claims he intends to assert against Twitter, it is clear that he intends to advance an even more attenuated (and self-defeating) theory of "state action" premised on yet more false conjecture and grievance. (*See generally* Dkt No., 66 Pls.' Aff.) There can be little doubt that, by the time Twitter appears in this case after Plaintiff effects service, defendants will have again moved to dismiss his claims, and the only difference will be that they have spent more time and resources to tailor their arguments to Plaintiff's increasingly

---

[6]  Plaintiff's request also misstates basic facts previously acknowledged in his own pleadings. Most notably, there was nothing even allegedly "covert" about the Election Division's contacts with Twitter concerning his September 24, 2021 Tweet, and no basis at all for Plaintiff's rhetorical claims that the government acted "silently without any public scrutiny" when it reported his tweet as misleading. (Aff. at 12, 15.) A Plaintiff knows, when the Elections Division reported Plaintiff's September 24, 2020 tweet, it publicly announced through its "spokeswoman," and the press reported, that it "had notified Twitter [that Plaintiff's September 24, 2020] post violated 'election misinformation' guidelines." https://leadstories.com/hoax-alert/2020/09/fact-check-shiva-ayyadurais-claim-that-massachussetts-election-officials-destroyed-over-1-million-republican-primary-ballots-is-not-true.html (published Sept. 28, 2020) (cited in Pls.' Compl. ¶ 8 n.1). Moreover, as the same article cited by Plaintiff also shows, the Elections Division provided the press with copies of some of the same Tassinari emails (which are public records) that Plaintiff claims, without basis, defendants supposedly conspired to "do whatever it took" to remove from public view. (*Compare id*. with Amended Complaint, Dkt No., 23. pp. 13-14.)

baroque and unfounded conspiracy theories. Moreover, NASED's ability to exercise its own freedom of speech and expressive rights will remain chilled as long as Plaintiff's convoluted and speculative claims against it remain pending. *See Tomaiolo v. Mallinoff*, 281 F.3d 1, 10 (1st Cir. 2002) (courts should avoid recognizing a novel state action "theory [that] may impose burdens on the rights of private citizens to communicate with government officials on topics of concern").

### IV. Conclusion

Although NASED recognizes that Twitter's appearance in the case would quickly put a welcome end to Plaintiff's recklessly-made conspiracy claims, Plaintiff's allegations are, on their face, inadequately pled and may be dismissed without regard to Twitter's joinder. Moreover, if Twitter's evidence ever becomes relevant, it can be more efficiently obtained through third-party discovery than through joinder. As such, NASED requests that, because Plaintiff has not adequately supported his proposed amendment, the Court should deny his request and dismiss the claims against it with prejudice.

Dated: March 8, 2021                                    Respectfully submitted,

*For The National Association of State Election Directors and Amy Cohen*

*/s/ Nolan J. Mitchell*
Nolan J. Mitchell (BBO #668145)
nolan.mitchell@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center
Boston, MA 02111
Tel. (617) 217-4700
Fax (617) 217-4710

7

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 8th day of March, 2021, a true and correct copy of this document was served on plaintiff and all registered counsel of record via the Court's ECF system.

*/s/Nolan J. Mitchell*
Nolan J. Mitchell
