# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

DR. SHIVA AYYADURAI,

                 Plaintiff,

v.

WILLIAM FRANCIS GALVIN, MICHELLE
K. TASSINARI, DEBRA O'MALLEY, AMY
COHEN, NATIONAL ASSOCIATION OF
STATE ELECTION DIRECTORS, allegedly
in their individual capacities, and WILLIAM
FRANCIS GALVIN, in his official capacity as
Secretary of State for Massachusetts,

                 Defendants,

and

TWITTER, INC.,

                 Proposed Additional
                 Defendant.

---

Case No. 1:20-cv-11889-MLW

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR JOINDER AND FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... ii

BACKGROUND................................................................................................... 1

    The Twitter Platform................................................................................... 1

    This Litigation ............................................................................................ 2

STANDARD OF REVIEW ................................................................................... 4

ARGUMENT ......................................................................................................... 5

I.      Twitter Is Not A Required Party To This Action........................................... 6

II.    The Court Should Not Permit Plaintiff To Assert Claims Against Twitter
      In This Action Because He Has Agreed To Litigate Any Such Claims In
      California..................................................................................................... 8

III.   Plaintiff's Proposed Claims Against Twitter Are Futile ............................... 12

      A.    Twitter Is Not A State Actor And Cannot Be Sued For Violating
            The First Amendment........................................................................ 13

      B.    The First Amendment Bars Plaintiff's Claims.................................... 19

      C.    Section 230 Bars Plaintiff's Claims................................................... 20

CONCLUSION..................................................................................................... 20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abu-Jamal v. National Public Radio*, 1997 WL 527349 (D.D.C. Aug. 21, 1997)................15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................12, 20

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 571 U.S. 49 (2013) ....................................................................................9, 12

*Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir. 1990)....................................... 5

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)....................................... 17

*Blum v. Yaretsky*, 457 U.S. 991 (1982).......................................................................14, 16

*Brittain v. Twitter Inc.*, 2019 WL 110967 (D. Ariz. Jan. 4, 2019) .......................................10, 11

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)....................................... 9

*Charest v. Federal National Mortgage Assoc.*, 9 F. Supp. 3d 114 (D. Mass. 2014).................4, 8

*Chiang v. Skeirik*, 582 F.3d 238 (1st Cir. 2009)....................................................................10, 11

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41 (1st Cir. 2014).....................................................................11, 12, 13

*Clifton v. Federal Election Commission*, 114 F.3d 1309 (1st Cir. 1997)................................ 19

*Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019) ............................................ 14

*Delgado-Caraballo v. Hospital Pavia Hato Rey, Inc.*, 889 F.3d 30 (1st Cir. 2018)..................... 4

*Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592 (S.D.N.Y. 2020)................................................... 20

*Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171 (E.D. Ark. 2019)............................................. 9

*Emrit v. Universal Music Group, Inc.*, 2013 WL 3730420 (D.R.I. July 12, 2013)...................... 5

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)................................................................................. 20

*Federal Agency of News, LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295 (N.D. Cal. 2019) ................................................................ 14

*Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................ 20

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................... 12

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019) ................................. 14

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................. 9

*Gibson v. Ecoquest, Inc.*, 2017 WL 2859744 (D.P.R. July 5, 2017) ....................................... 11

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996) .......................................... 2

*Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d
686 (1st Cir. 1993) ............................................................................................. 8

*Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594 (D. Colo. 2012) ................................... 7

*Howard v. AOL*, 208 F.3d 741 (9th Cir. 2000) .............................................................. 14

*Hudgens v. NLRB*, 424 U.S. 507 (1976) ................................................................... 13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995) ....................... 19

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413 (D. Utah
June 23, 2017) .................................................................................................. 20

*Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 646 N.E.2d 741 (Mass. 1995) .................................. 11

*Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1 (1st Cir. 2015) .............................................. 14, 15

*Kim v. Apple, Inc.*, 2014 WL 3056136 (D.D.C. July 7, 2014) .............................................. 14

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007) ............................................ 19

*Levitt v. Yelp! Inc.*, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ........................................ 20

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) ............................ 14, 18

*Maxwell v. MTGLQ Investors, L.P.*, 2019 WL 438343 (D. Mass. Feb. 4, 2019) ......................... 2

*Mead v. Independent Association*, 684 F.3d 226, 230 (1st Cir. 2012) .................................... 16

*Miami Herald v. Tornillo*, 418 U.S. 241 (1974) ......................................................... 8, 19

*Over & Under Piping Contractors, Inc. v. Vermont Gas Sytems, Inc.*,
2017 WL 3037407 (D. Vt. Mar. 27, 2017) .................................................................. 5

*Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014) .................................. 12

*Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) .......................................... 14

*Rafael Rodríguez Barril, Inc. v. Conbraco Industriies, Inc.*, 619 F.3d 90 (1st Cir. 2010) ................................................................................................ 11

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) ................................... 19

*Riggs v. MySpace, Inc.*, 444 F. App'x 986 (9th Cir. 2011) ........................................ 20

*Rodriques v. Furtado*, 950 F.2d 805 (1st Cir. 1991) .................................................. 15

*Rosenzweig v. Brunswick Corp.*, 2008 WL 3895485 (D.N.J. Aug. 20, 2008) ............................ 12

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009) .................................... 15, 18

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ................................................ 19

*Temple v. Synthes Corp., Ltd.*, 498 U.S. 5 (1990) .................................................... 8

*Twitter, Inc. v. Skootle Corp.*, 2012 WL 2375486 (N.D. Cal. June 22, 2012) ............................ 10

*United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009) ........................ 5

*United States for Use of D.D.S. Industries, Inc. v. Nauset Construction Corp.*, 2018 WL 5303036 (D. Mass. Oct. 25, 2018) .............................................. 12

*Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ................................................................................................ 20

*VS Technologies, LLC v. Twitter, Inc.*, 2011 WL 11074291 (E.D. Va. June 28, 2011) ................................................................................................ 10

*Webber v. Deck*, 433 F. Supp. 3d 237 (D.N.H. 2020) .............................................. 17

*Wells Fargo Bank, N.A. v. Ablitt*, 2016 WL 3350991 (D. Mass. June 15, 2016) ........................ 5

*Wilson v. Twitter*, 2020 WL 3410349 (S.D.W. Va. May 1, 2020) .............................. 14

*Yeo v. Town of Lexington*, 131 F.3d 241 (1st Cir. 1997) ............................................ 14

*Young v. Wells Fargo, N.A.*, 717 F.3d 224 (1st Cir.2013) ........................................ 12

*Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) .............................. 19

## STATUTES, RULES, AND REGULATIONS

47 U.S.C. § 230 ............................................................................................ 20

Fed. R. Civ. P. 12(b)(6) ................................................................................ 12

Fed. R. Civ. P. 19 .................................................................................... 4, 6

## OTHER AUTHORITIES

2 Bus. & Com. Litig. Fed. Cts. § 13:15 (4th ed.)......................................................... 7

Wright & Miller, Fed. Prac. & Proc. § 3807............................................................ 11

Proposed Additional Defendant Twitter, Inc. ("Twitter") respectfully opposes Plaintiff's motion for leave to file his proposed Second Amended Complaint, Dkt. 78 ("PSAC") joining Twitter as a defendant. This case is not about Twitter's actions. Rather, as presented in the currently operative First Amended Complaint, Dkt. 23 ("FAC"), and Plaintiff's pending motion for an injunction, Dkt. 55, this suit is focused on actions that state officials allegedly took and the claim that those actions alone violated Plaintiff's First Amendment rights. Plaintiff claims that the First Amendment prohibited those state officials from asking Twitter to review his Tweets for rules violations while he was running for office. On that theory, Plaintiff is seeking an injunction that would compel the existing defendants to "request" that Twitter reinstate his Twitter account. The targeted relief Plaintiff seeks can be adjudicated without Twitter's involvement, and there is thus no need to add Twitter as a defendant.

Moreover, there are compelling reasons *not* to add Twitter as a defendant here. To the extent Plaintiff wishes to challenge *Twitter's* decision to permanently suspend his account, the User Agreement between Plaintiff and Twitter expressly requires that any such suit be filed in state or federal court in San Francisco, California. And his proposed claims against Twitter all fail as a matter of law, making his proposed amendment futile. Not only is Twitter, a private actor, not subject to the First Amendment, but Twitter has its own First Amendment and statutory rights that bar claims challenging Twitter's decisions about what and whose content may appear on its platform. The Court should therefore deny the motion.

## BACKGROUND

### The Twitter Platform

Twitter operates an Internet communications platform that allows hundreds of millions of people around the world to share views and follow current events. Twitter is committed to protecting the health and safety of the people who use its platform by fostering an environment for

"safe, inclusive, and authentic conversations." Ellsworth Decl. Ex. E.[1]  It does this through content moderation policies that, among other things, are designed to minimize the reach of harmful and misleading information.  *Id.*   One such policy is Twitter's "Civic Integrity Policy," which incorporates the election integrity policy that Twitter announced in April 2019 to address misinformation about voting.  In May 2020, Twitter publicly announced that, under that policy, it would continue to "label or remove false or misleading information about how to participate in an election or other civic process."  Ellsworth Decl. Ex. C.  In applying these policies, Twitter "evaluate[s] every case individually" and "do[es] not consult externally on individual enforcement decisions," although "local teams regularly engage with civil society and external stakeholders to incorporate local context into . . . policy and enforcement guidance."  Ellsworth Decl. Ex. D.

**This Litigation**

On September 24, Plaintiff Tweeted, "Massachusetts Destroys Over 1 MILLION Ballots in US SENATE PRIMARY RACE committing #ElectionFraud.  MA Elections Attorney confirms to #Shiva4Senate ballot images . . . are nowhere to be found."  FAC 18; PSAC 19 ("September 24 Tweet").  Plaintiff alleges that, on September 25, after receiving inquiries from the public about the September 24 Tweet, Michelle Tassinari, Director and Legal Counsel of the Elections Division, directed Debra O'Malley, another employee of the Commonwealth, to report the September 24 Tweet to Twitter as containing election misinformation, using the Election Division's Twitter account.  FAC 23; PSAC 24.  Tassinari also informed the National Association of State Election Directors (NASED) and the National Association of Secretaries of State (NASS), about the

---

[1] This factual background is drawn from the FAC, PSAC, and exhibits attached to these documents, which Twitter does not contest solely for purposes of this opposition, *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996), as well as Twitter's User Agreement and publicly available policies, including those referenced or relied on in the PSAC, *see, e.g.*, PSAC 31, 53, 66; *see Maxwell v. MTGLQ Invs., L.P.*, 2019 WL 438343, at *1 n1 (D. Mass. Feb. 4, 2019), *aff'd*, 2020 WL 6877442 (1st Cir. Aug. 28, 2020) (considering "publicly available documents . . . referred to in the complaint").  That Agreement and those policies are attached to the Ellsworth Declaration.

September 24 Tweet.  FAC 24; PSAC 25.  According to Plaintiff, Twitter considers both the Massachusetts Elections Division and NASED to be so-called "partners," whose complaints are routed to teams for expedited review.  FAC 27; PSAC 28.

Twitter is not alleged to have communicated with O'Malley following the report beyond sending her an automated response.  PSAC 27; FAC Ex. 1, Transcript of October 30, 2020 Hearing ("Tr.") 60, 65-66 (Dkt. 23-1).  O'Malley remained unsure as to what action Twitter would take in response because "Twitter was going to have to review it and make their own judgment, and [she] wasn't sure if they would choose to remove it based on their judgment."  Tr.  63-66.  According to Plaintiff, Twitter did not take down the September 24 Tweet O'Malley had reported.

After O'Malley's report, Plaintiff Tweeted on September 25, "Legal Counsel of Massachusetts FURTHER confirms . . . Sec. of State DESTROYED 1 Million+ Ballots," attaching to this Tweet thread images of email exchanges he had had with Tassinari.  FAC 21-24; PSAC 22-24. ("September 25 Tweet Thread").  On September 26, Twitter allegedly directed Plaintiff to remove the September 25 Tweet Thread—which Plaintiff posted after O'Malley's complaint and which O'Malley had not reported—and suspended his account for one week.[2]  FAC 28; PSAC 29. Plaintiff alleges that after the end of that one-week suspension, he again Tweeted about his email exchange with Tassinari, and that this resulted in Twitter directing him to delete those new Tweets and suspending his account for another week.  FAC 28; PSAC 29.

Plaintiff filed this lawsuit in October 2020 against election officials William Galvin, Michele Tassinari, and Debra O'Malley (collectively, the "Commonwealth defendants").  Compl.

---

[2] Plaintiff conclusorily alleges that Commonwealth election officials "outsourced" the task of reporting the September 25 Tweet Thread to NASED.  FAC 25, PSAC 26.  This assertion is contradicted by the timeline of communications between Tassinari and NASED established at the hearing, *see* NASED Mot. to Dismiss (Dkt. 45-1) at 5-6.  In any event, Plaintiff also does not allege that NASED actually reported the September 25 Tweet Thread.

(Dkt. 1).   On November 6, 2020, he filed his First Amended Complaint, adding claims against NASED and its executive director, Amy Cohen.   Meanwhile, Plaintiff continued to post Tweets in which he purported to "expose" election fraud by Massachusetts officials.   PSAC 34-52.   On February 1, 2021, Twitter permanently suspended Plaintiff from its platform.   PSAC 105.

On February 4, 2021, Plaintiff filed a motion seeking emergency injunctive relief against the existing defendants, Dkt. 55.   In response, this Court issued an order directing Plaintiff to address whether Twitter is a necessary party to this action under Federal Rule of Civil Procedure 19, whether the Court "may grant plaintiff complete relief on his Motion if Twitter is not a party," and whether such "complete relief" might "impair[]" Twitter's interest "in its absence."   Dkt. 63 at 2.   Plaintiff then filed the instant motion, Dkt. 64, seeking leave to file a further amended complaint, Dkt. 78, that would join Twitter as a defendant.

## STANDARD OF REVIEW

Where a party is "required" under Rule 19, courts must either join that party or, if joinder is not feasible, determine whether it is necessary to dismiss the suit. *Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*, 889 F.3d 30, 37 (1st Cir. 2018).   A person is a required party under Rule 19 only if: (1) absent joinder, "the court cannot accord complete relief among existing parties," *see* Fed. R. Civ. P. 19(a)(1)(A); or (2) the person proposed to be joined has an interest in the subject matter of the action, and the absence of joinder will "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations because of the interest," *id.* 19(a)(1)(B)(i)-(ii).   In applying this test, courts look to the existing pleadings—not any proposed amendment.   *See, e.g.*, *Charest v. Federal National Mortgage Assoc.*, 9 F. Supp. 3d 114, 131 (D. Mass. 2014).   That is because Rule 19 is concerned "only with those who are already parties," so the fact that a remedy against the existing defendants would in some manner leave a dispute with a third party "unresolved[,] does not make

4

[that party] a required party." *Id.*; *see also Wells Fargo Bank, N.A. v. Ablitt*, 2016 WL 3350991, at *3 (D. Mass. June 15, 2016).

Where a party is not required under Rule 19, its joinder is merely permissive. The considerations for permissive joinder include whether, at the current stage of litigation, amendment of the complaint would be appropriate. *See Over & Under Piping Contractors, Inc. v. Vermont Gas Sys., Inc.*, 2017 WL 3037407, at *2 (D. Vt. Mar. 27, 2017). Although Rule 15 generally espouses a liberal amendment policy, it is well established that leave to amend should be denied where the amendment would be futile. *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009). And while *pro se* litigants are entitled to have their papers construed liberally, *see Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir. 1990), they "are not excused from compliance with procedural rules or substantive law," *Emrit v. Universal Music Group, Inc.*, 2013 WL 3730420, at *1 (D.R.I. July 12, 2013) (denying pro se motion for leave to amend).

## ARGUMENT

Twitter should not be joined to this lawsuit. Twitter is not a required party because the theory Plaintiff advances in both the FAC and Motion for an Injunction is that the existing defendants violated his rights by submitting complaints to Twitter, and that the Court should enjoin the existing defendants from engaging in such activity. This Court can adjudicate Plaintiff's claims against the existing defendants, and, if warranted, award Plaintiff the relief sought, without Twitter's involvement and without intruding on Twitter's rights. Permissive joinder too is inappropriate, as Plaintiff's proposed claims against Twitter belong in California and fail as a matter of law.[3]

---

[3] Twitter's arguments in this brief address only whether joining Twitter as a defendant in this action would be improper. Twitter reserves its rights to file later motions that, if necessary, fully contest venue, personal jurisdiction, and the merits of Plaintiff's claims.

## I.      Twitter Is Not A Required Party To This Action

Twitter does not fall within either category of required party specified in Rule 19.  Because Plaintiff's legal theory does not depend on Twitter's actions and the relief he has therefore requested does not require Twitter's involvement, Twitter's joinder is not necessary to "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A). For the same reasons, adjudication of Plaintiff's existing claims would neither "impair [n]or impede [Twitter's] . . . interest[s]." *Id.* 19(a)(1)(B).

Put simply, nothing Plaintiff argues or seeks involves Twitter.  His claims instead concern actions Massachusetts election officials allegedly took that he claims infringed on his First Amendment rights.  And he seeks relief to stop those actions.  Plaintiff emphasized this focus on the first page of his original complaint: "This Complaint stems from actions that the Office of the Secretary of State took . . . ." Compl. 1.  Throughout this litigation, Plaintiff's theory has been that the First Amendment bars Massachusetts election officials from asking a private entity—here Twitter—not to disseminate a candidate's speech. *See* Compl. ¶ 55 ("By requesting that Twitter prevent the Plaintiff from publishing his comments regarding the Massachusetts elections . . . the Secretary of the Commonwealth sought to prevent the Plaintiff's freedom of the press."); FAC 31, 55 ("The Secretary should be unable to report false election claims to Twitter."). But the alleged unconstitutionality of these actions does not turn on anything Twitter did or did not do.

Although Plaintiff discusses state action and argues that Twitter's decision to remove his Tweets was a consequence of the existing defendants' complaints, the focus of his argument remains on whether *those Commonwealth defendants' efforts* violated the Constitution.  FAC 57- 60; *see also id.* at 64 ("[T]he Defendants chose to violate Dr. Shiva's First Amendment rights through abuse of office, and abuse of networks available only to state officials, such as the cooperation of NASED and 'Twitter Partner' status."); Mot. for Inj. 8 (Dkt. 55) ("Defendants were

fully aware that as State Election Officials and as a Twitter Trusted Pa[r]tners, they had immense power, which they wielded to strongly encourage Twitter to flag the Tassinari email conversation[.]").  Twitter's own conduct is not a focus of Plaintiff's challenge.

The relief Plaintiff requests similarly does not necessitate joinder.  In his initial Complaint and FAC, Plaintiff sought a declaration that the existing defendants had violated his First Amendment rights and an injunction forbidding the existing defendants from asking "Twitter to remove, ban, or silence" him.  Compl. 15; *see* FAC 63-64, 69.  In his Motion for Injunctive Relief, he likewise requests an order directing the existing defendants (1) to "request" that Twitter remove a purported "algorithm" that he surmises was tagged to Tassinari's name; (2) to "make clear to Twitter" that they have no objections to him discussing this lawsuit with the public on the Twitter platform; and (3) to "request" that Twitter reverse its permanent suspension of his Twitter account. Mot. for Inj. Rel. 11 (Dkt. 55).  Even if this Court decides to grant Plaintiff this relief, that would in no way require Twitter to be party here.  The existing defendants can refrain from making further reports to Twitter about Plaintiff's posts and can communicate to Twitter their non-opposition to its reinstating his account and ceasing its alleged use of an algorithm without Twitter being bound by the judgment.  This would constitute "complete relief" for purposes of Rule 19.  *See* 2 Bus. & Com. Litig. Fed. Cts. § 13:15 (4th ed.) ("When considering if 'complete relief' may be had among existing parties, courts look to the pleadings at the time of the proposed joinder."); *Cf. Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594, 597 (D. Colo. 2012) (in mootness context, "complete relief" is that which "afford[s] plaintiff everything that was requested in the complaint").  And because this requested relief would impose no obligations on Twitter itself, the Court may grant this relief without intruding on Twitter's independent rights.

Importantly, Plaintiff did not seek any injunctive relief as to Twitter.  And for good reason.

Ordering Twitter to reverse its decision to permanently suspend Plaintiff's Twitter account would infringe Twitter's own First Amendment right to decide what speech to disseminate or not disseminate through its privately operated platform. *See Miami Herald v. Tornillo*, 418 U.S. 241, 257-258 (1974); *see also infra* 19. Accordingly, this Court can adjudicate this case and award relief, if any, without Twitter's involvement.

To be sure, Plaintiff's *proposed* pleading seeks to make Twitter jointly and severally liable for the monetary relief sought against the existing defendants and asks for an injunction to prevent Twitter from violating his First Amendment rights. PSAC 96. But these new requests are distinct from and not essential to the relief sought in the suit as it now stands. And these proposed claims are irrelevant in the Rule 19 analysis. *See, e.g.*, *Charest*, 9 F. Supp. 3d at 13; *Wells Fargo Bank*, 2016 WL 3350991, at *3. Moreover, the Supreme Court has determined that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). Instead, an alleged "tortfeasor with the usual 'joint-and-several' liability is merely a *permissive* party to an action against another with like liability." *Id.* at 7 (emphasis added); *see also Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 691 (1st Cir. 1993). The same is true for Plaintiff's requested injunctive relief. Any injunctive relief against Twitter would be independent from an injunction forbidding the existing defendants to cease reporting Plaintiff's conduct to Twitter. As such, any relief against Twitter could be pursued in a separate suit, making Twitter's joinder unnecessary.

## II. The Court Should Not Permit Plaintiff To Assert Claims Against Twitter Here Because He Has Agreed To Litigate Any Such Claims In California

Because Twitter's presence as a party in this action is not required to adjudicate Plaintiff's existing claims, the only remaining question is whether Plaintiff should nonetheless be permitted to add new claims against Twitter through permissive joinder. He should not. The new claims he

proposes to add are not only meritless, but they also must be brought (if anywhere) in California under the forum selection clause to which Plaintiff agreed.

Twitter's User Agreement provides that "[a]ll disputes related to these Terms or Services will be brought solely in the federal or state courts located in San Francisco County, California, United States," and that the parties "consent to personal jurisdiction and waive any objection as to inconvenient forum." Ellsworth Decl. Ex. A. "When parties agree to a forum-selection clause" like this one, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). As the Supreme Court has recognized, such "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63. That principle applies equally in the context of consumer form contracts, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-595 (1991), including those in click-through user agreements like Twitter's User Agreement, *see, e.g., Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) (collecting cases).

Plaintiff agreed to Twitter's User Agreement by signing up for and continuing to use his Twitter account. *See* FAC 2, 8, 31. The versions of the User Agreement in effect when Plaintiff created his account in August 2011 and when his account was suspended in February 2021 include materially identical forum selection clauses. *See id.* at 2, 8; Ellsworth Decl. Ex. A (effective June 18, 2020), Ex. B (effective June 1, 2011). Both versions also include an acknowledgement that "[b]y continuing to access or use the Services . . . , you agree to be bound by the . . . [current Agreement's] Terms." *Id.* Numerous courts have held that the forum-selection clause in Twitter's User Agreement is valid and enforceable. *See, e.g., Twitter, Inc. v. Skootle Corp.*, 2012 WL

9

2375486, at *4 (N.D. Cal. June 22, 2012); *Brittain v. Twitter Inc.*, 2019 WL 110967, at *4 (D. Ariz. Jan. 4, 2019).

Twitter's forum-selection clause plainly encompasses the claims that Plaintiff proposes to assert against Twitter. Those claims all stem from Twitter's removal or blocking of his content from its platform based on its determination that he had violated Twitter's Terms. *See, e.g.*, PSAC 77. Such claims plainly constitute one or more "disputes related to these [i.e., Twitter's] Terms or Services." And there can be no doubt that the clause here is mandatory. It states that "disputes will be brought in" a specific jurisdiction. The word "will," particularly as used in this context, has a mandatory connotation. *See Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014); *VS Techs., LLC v. Twitter, Inc.*, No. 2:11CV43, 2011 WL 11074291, at *2 (E.D. Va. June 28, 2011) (Twitter's forum selection clause is mandatory). Because the clause is mandatory and applies to the claims Plaintiff seeks to assert against Twitter in the PSAC, it is "'prima facie valid' and, absent a 'strong showing' . . . that the clause is unreasonable under the circumstances, it should not be set aside." *Claudio-De Leon*, 775 F.3d at 48.

Forum selection clauses are entitled to a strong "presumption of enforceability," *Claudio-De Leon*, 775 F.3d at 49. Such a clause can be deemed unreasonable, and thus unenforceable, only upon a showing by the party opposing enforcement that: (1) it was the product of "fraud or overreaching"; (2) "enforcement would be unreasonable and unjust"; (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Rafael Rodríguez Barril, Inc. v. Conbraco Industries, Inc.*, 619 F.3d 90, 93 (1st Cir. 2010) (internal citations omitted). None of these grounds applies here.

Twitter's User Agreement is available on its website and there is no basis for believing that it resulted from fraud.  *See, e.g.*, *Brittain*, 2019 WL 110967, at *4 (enforcing Twitter's forum selection clause in pro se suit).  Applying the clause to require Plaintiff to sue Twitter in the preselected forum would be neither unreasonable, unjust, nor "gravely difficult and inconvenient" for Plaintiff.  There is no basis to believe Plaintiff is unable to file suit in the Northern District of California, and this Court could grant him all of the relief he seeks against the existing defendants without Twitter's involvement.  *See id.* at *3.  Finally, enforcement of the clause to permit resolution of the proposed claims against Twitter (about a decision it made in California) in a court in California would not contravene any strong Massachusetts policy interest.  *See id.*; *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 646 N.E.2d 741, 744 (Mass. 1995) (noting absence of Massachusetts public policy against enforcing forum selection clauses).  None of the factors weighs in favor of disregarding the forum selection clause, much less establishes the type of prejudice capable of overcoming the strong "presumption of enforceability."  *Claudio-De Leon*, 775 F.3d at 49.

Nor is it relevant that dismissing Twitter might cause Plaintiff to have to select among those that he wishes to sue or pursue his claims against one party elsewhere.  *See* Wright & Miller, Fed. Prac. & Proc. Juris. § 3807 (4th ed.) ("[U]nless the party for whom venue is improper is 'indispensable,' [under] Rule 19(b), the district court will merely dismiss the claims as to that party and the litigation will continue with the others."); *see Gibson v. Ecoquest, Inc.*, 2017 WL 2859744 (D.P.R. July 5, 2017).  Mere inconvenience of this sort is plainly insufficient to override a valid forum selection clause.  Even "potential unfairness" would not rise to the required level of being "unjust" or "unreasonable" as is required to permit nonenforcement.  Wright & Miller § 3807, *supra*.  Particularly because, under Plaintiff's existing claims, Twitter's joinder would be merely

permissive, enforcement of the clause will not deny him access to relief.[4]  There is therefore no

sound basis for overcoming the presumption here.  *See Paduano v. Express Scripts, Inc.*, 55 F.

Supp. 3d 400, 435 (E.D.N.Y. 2014) ("efficiency and economy" achieved by litigating claims

against all proposed defendants in a single forum is "precisely what the Supreme Court has

counseled is not a relevant consideration" because courts "should not consider arguments about

the [plaintiff's] private interests" (quoting *Atl. Marine*, 571 U.S. at 64)); *United States for Use of*

*D.D.S. Indus., Inc. v. Nauset Constr. Corp.*, 2018 WL 5303036, at *4 (D. Mass. Oct. 25, 2018).

## III.    Plaintiff's Proposed Claims Against Twitter Are Futile

This Court should deny leave to amend for an additional reason: the claims that Plaintiff

seeks to assert against Twitter are defective as a matter of law, making amendment entirely futile.

*See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009).  Amendment is proper only where "the

underlying facts or circumstances relied upon by a plaintiff" are "a proper subject of relief."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  When assessing whether an amendment is futile,

courts apply the standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(6).  Although

the court assumes the truth of all well-pled facts and gives the plaintiff the benefit of all reasonable

inferences therefrom, it does not credit "conclusory allegations that merely parrot the relevant legal

standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  Rule 12(b)(6) "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

Nothing in Plaintiff's three versions of the complaint or his papers establishes a viable legal

---

[4] Even if, notwithstanding Twitter's arguments above, the Court were to deem Twitter a required party to this action, that alone would not be a basis for declining to enforce the forum selection clause.  Instead, the appropriate course would be to dismiss this suit in its entirety and permit Plaintiff to refile it in the preselected forum.  *See Rosenzweig v. Brunswick Corp.*, 2008 WL 3895485, at *10 (D.N.J. Aug. 20, 2008).  And even if personal jurisdiction and venue in California were not proper over the existing defendants based on the forum selection clause or otherwise, they are unlikely to be required parties to a suit focused on Twitter's content-moderation decisions.

claim against Twitter.  His proposed central claim—that Twitter violated his First Amendment rights by suspending him—fails as a matter of law.  Although state election officials' alleged *report* to Twitter regarding his September 24 Tweet was no doubt an action taken by the state, Twitter's *decision* to permanently suspend his account was not.  Plaintiff has not, and cannot, allege the necessary facts to convert this complaint into private action compelled by government actors.  To hold otherwise would turn every private action taken in partial reliance on information supplied by government into state action.  His remaining proposed claims against Twitter, all stemming from that suspension, are barred by Twitter's own First Amendment rights and 47 U.S.C. § 230—both of which protect Twitter's right to suspend Plaintiff's Twitter account.

A.    Twitter Is Not A State Actor And Cannot Be Sued For Violating The First Amendment

Plaintiff's central proposed claim against Twitter is that Twitter violated the First Amendment by asking him to remove certain Tweets, temporarily suspending him from the platform in September and October 2020, and permanently suspending him on February 1, 2021. PSAC 59, 76-77.  But "[t]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."  *Hudgens v. N. L. R. B.*, 424 U.S. 507, 513 (1976). Although the election officials' alleged report to Twitter regarding Plaintiff's September 24 Tweet is an action by the state, Twitter's decision to suspend his Twitter account—made nearly four months later and pursuant to its own independent implementation of platform rules—was not. Nothing in the PSAC would change this dispositive legal conclusion.

Plaintiff's proposed First Amendment claim against Twitter runs headlong into a legion of cases holding that content-moderation decisions of private companies like Twitter are not subject to constitutional constraints.  *See, e.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020); *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000); *Fed. Agency of News, LLC v. Facebook,*

*Inc.*, 395 F. Supp. 3d 1295, 1308-1314 (N.D. Cal. 2019); *Kim v. Apple, Inc.*, 2014 WL 3056136, at \*2 (D.D.C. July 7, 2014).[5]  Plaintiff attempts to circumvent these precedents by arguing that Twitter's editorial actions are state action.  He cannot.

The Supreme Court has articulated only "a few limited circumstances" in which a private entity can qualify as a government actor.  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  "The bar for such a showing is set quite high," and the First Circuit has cautioned that it is met "[o]nly in rare circumstances."  *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015).  This is for good reason.  Using the First Amendment to impose liability on private conduct "could eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms."  *See Halleck*, 139 S. Ct. at 1932; *see also Yeo v. Town of Lexington*, 131 F.3d 241, 254–55 (1st Cir. 1997) (en banc) ("care and caution" are especially needed where there are "First Amendment interests on both sides of the case").

Plaintiff appears to argue that Twitter is a state actor under a compulsion theory, but the PSAC falls far short of plausibly alleging that the government compelled or coerced Twitter to suspend his Twitter account.  *See, e.g.*, PSAC 58-60; FAC 57-59; Memo. ISO Mtn. for Joinder at 4 (Dkt. 65); Dkt. 55, Pl.'s Mtn. for Hearing at 3 (Dkt. 55).  Government compulsion of a private entity can convert the acts of that entity into state action only when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  Mere requests or attempts to persuade are not enough; to count as state action, the private action must be *compelled*.  Courts have found this standard met only in extreme circumstances

---

[5] *See also Wilson v. Twitter*, 2020 WL 3410349, at \*2 (S.D.W. Va. May 1, 2020), *report and rec'n adopted*, 2020 WL 3256820 (S.D.W. Va. June 16, 2020); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp.3d 30, 40 (D.D.C. 2019); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va. 2019), *aff'd*, 774 F. App'x 162 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1111 (2020).

with clear hallmarks of coercion.  For example, in *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st

Cir. 1991), the court found a doctor's search of an inmate was state action because he performed

it pursuant to a court-ordered search warrant with which he felt bound to comply.  In another case,

the First Circuit found state action when a private surgeon performed a medically unnecessary

surgery at the sustained "insistence and pressure" of correctional officers.  *Sanchez v. Pereira-

Castillo*, 590 F.3d 31, 52 (1st Cir. 2009).

The PSAC alleges nothing like that.  It conclusorily asserts that Twitter "got mobbed" by

election officials and "acted to delete specifically the Tassinari email tweets. . . solely and

exclusively because of the Defendants' coordinated complaint to Twitter."  PSAC 59.  These

allegations suggest, at most, that the Commonwealth officials' report may have been one but-for

cause of Plaintiff's suspensions, not that their report *compelled* or *coerced* Twitter to suspend him.

The First Circuit has been clear that it is not enough for "the state to perform[] an action that sets

in motion some subsequent action by a private party"; indeed, such a rule would "eviscerate the

state action requirement." *Jarvis*, 805 F.3d at 10.  The government's choice to furnish information

to Twitter falls far short of the kind of "insistence and pressure" required to transform Twitter's

suspension of Plaintiff's account into state action.  *Sanchez*, 590 F.3d at 52.

Consider *Abu-Jamal v. National Public Radio*, 1997 WL 527349, at *1, *6 (D.D.C. Aug.

21, 1997).  In that case, the plaintiff challenged on First Amendment grounds NPR's decision not

to air his political commentaries.  The plaintiff argued that remarks made by then-Senator Dole

(among others) had directly pressured NPR specifically to cancel the program, rendering NPR's

otherwise private decision state action.  *Id.* at *2.  The court disagreed:

> Assuming that the [Fraternal Order of Police] and individual members of Congress
> did call NPR in attempts to pressure it not to air the program, not one of these people
> has any legal control over NPR's actions. At best, the entire Congress controls a
> small portion of federal funding NPR receives through the CPB.  But this simply

does not mean that NPR's "choice in law" not to air Jamal's broadcast was that of the government.

*Id*. at *6.   The same principle applies here.   Plaintiff has not and cannot allege that the Commonwealth of Massachusetts had the power to compel Twitter to remove the content.   And just like in *Abu-Jamal,* mere potential to influence (there arguably stronger given the government's role in financing NPR) is simply insufficient.

Furthermore, decisions that "ultimately turn on . . . judgments made by private parties according to professional standards that are not established by the State" are not state action, *Blum*, 457 U.S. at 1008, even when a government actor professes a preference for a certain course of action.   For example, the First Circuit found no state action when the government "directed" a private association to replace an employee because that replacement occurred after the association conducted its own investigation to determine what discipline would be appropriate.   *Mead v. Independent Association,* 684 F.3d 226, 230 (1st Cir. 2012).   Here, nothing in the PSAC raises a plausible inference that Twitter failed to exercise its own judgment in suspending Plaintiff's account.   Twitter's User Agreement gives it absolute discretion to decide how to respond to any report regarding platform content, *see* Ellsworth Decl. Ex. A, and, as such, Twitter was under no obligation even to review O'Malley's report—let alone respond in any particular way.   Indeed, Plaintiff admits that Twitter is the "final decisionmaker on suspension issues," Memo ISO Mtn. for Joinder at 5.   And Plaintiff alleges that, despite O'Malley's report, Twitter neither removed the Tweet that O'Malley reported nor even communicated with her following that report beyond sending an automated email response.   Although Plaintiff makes much of the fact that Tassinari and O'Malley were "relieved" to see some of his Tweets removed, PSAC 27, 30, this only underscores Twitter's independence:   While officials could "hope[]" Twitter would act consistently with their wishes, PSAC 27, they ultimately "d[id] not know what action Twitter

took."  PSAC 30.

Plaintiff's reliance on *Backpage.com, LLC v. Dart*, 807 F.3d 229, 233 (7th Cir. 2015), *see* PSAC 65, is misplaced.  There, the Seventh Circuit found state action when a sheriff threatened credit-card companies with government sanction for failing to comply with his requests, including through a letter demanding that the companies "cease and desist" certain conduct, implying that they were accomplices to a federal crime, and requesting that they designate an individual to interface with the sheriff's office.  *Id.* at 231-34.  O'Malley's request to Twitter was nothing like that sheriff's letter.  Plaintiff does not allege that the report directed or demanded that Twitter take any particular action.  It did not imply that Twitter was breaking the law, demand that Twitter continue to interface with the government, or even express a preference for a certain disciplinary result.  Tr. 60, 64-66.[6]

Nor does Twitter's so called "trusted partner" program, which allegedly provided for "expedited review," raise a plausible inference of government compulsion.  Even assuming those allegations are true, Twitter was under no obligation to review or respond to report made through that program.  And any reports from O'Malley or NASED did not carry legal force, require any action, or contain threats of reprisal if Twitter failed to act because, as Plaintiff acknowledges, Twitter is the "final decisionmaker" on how to act on information it receives, Memo. ISO Mtn. for Joinder at 5.

---

[6] To the extent Plaintiff is arguing that his suspension amounted to state action under a "joint action" theory, his arguments fare no better.  "Conclusory allegations and speculation about what might have happened are insufficient" to allege joint action, and a plaintiff must plead "in some detail" the "relationship or nature of cooperation between the state and a private individual."  *Webber v. Deck*, 433 F. Supp. 3d 237, 247 (D.N.H. 2020).  The PSAC is devoid of allegations detailing the nature of Twitter's alleged cooperation with the government, or, indeed, any other allegations that the government was involved in Twitter's day-to-day platform functions.  Plaintiff identifies only one alleged report to Twitter from O'Malley (and possibly a second from NASED) but those one-way communications do not raise a plausible inference that Twitter actively collaborated with the government to silence Plaintiff on Twitter.

Plaintiff's "algorithm" theory is equally unavailing.  He contends Twitter instituted some sort of "algorithm" to notify itself of any instance in which he included Tassinari's name in any Tweet.  PSAC 63-64.  But again, even assuming this were true, it would do nothing to render Twitter's suspension of his account state action—as discussed, *supra* at 21, Twitter's choice to use that or any other mechanism to enforce its policies would not suggest government control.

In the end, Twitter made an independent assessment of its Rules upon receiving a report regarding alleged violations—something that happens hundreds if not thousands of times a day.  It is not enough to allege that Twitter acted in ways that are consistent with state election officials' wishes.  This falls far short of the kind of "insistence and pressure" required to transform Twitter's suspension of Plaintiff's account into state action.  *See Sanchez*, 590 F.3d at 52.  That standard is high for a reason.  Finding state action here would have expansive and pernicious consequences. Plaintiff effectively asks the Court to hold that if a business invites (or merely allows) the government to provide information or express a concern, any action the business takes relying (even in part) on that communication amounts to state action—even if the government subsequently plays no role in the business's decision-making process.  Such a rule would "[e]xpand[] the state-action doctrine beyond its traditional boundaries," and "restrict[] individual liberty and private enterprise."  *Halleck*, 139 S. Ct. at 1932.  It would transform countless private entities into state actors and discourage all forms of public-private cooperation, making our society—and especially the internet—less safe.

B.    The First Amendment Bars Plaintiff's Proposed Claims Against Twitter

Amendment would also be futile because when Twitter decides not to disseminate certain content or to host certain speakers, the First Amendment protects this "exercise of editorial control and judgment."  *Tornillo*, 418 U.S. at 257-58; *see also Clifton v. Fed. Election Comm'n*, 114 F.3d 1309, 1313 (1st Cir. 1997).  This protection applies just as much to online platforms as it does to

newspapers and bookstores.  *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997) (finding "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet); *La Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) ("Facebook [has a] First Amendment right to decide what to publish and what not to publish on its platform.").

Twitter exercised its First Amendment rights by adopting rules and policies that prohibit use of its platform for purposes of "manipulating or interfering in elections or other civic processes" and that aim to curtail "content that may suppress participation or mislead people about when, where, or how to participate in a civic process." *Supra* 2; PSAC 64-66.  Overriding Twitter's judgment about how to enforce these and other rules would intrude on Twitter's own First Amendment rights.  Because "one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say,'" the First Amendment fully protects Twitter's decision to require Plaintiff to remove Tweets as well as its suspension of his account.  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995); *accord Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007)  Indeed, to the extent that Plaintiff's request for an injunction prohibiting Twitter from violating his First Amendment rights would require Twitter to reinstate his account, PSAC 100, that would constitute compelled speech foreclosed by the First Amendment, *see Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018).

C.    Section 230 Bars Plaintiff's Proposed Claims Against Twitter

Finally, the Court should not permit leave to amend because Plaintiff's claims are separately barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.*  It "immunizes providers of interactive computer services against liability arising from content

created by third parties," *Fair Housing Council of S.F. Valley v. Roommates.com*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc), including for "the *removal* of user-generated content," *id.* at 1163 (emphasis added).  Because Twitter's removing Plaintiff's profile involved "deciding whether to exclude material that third parties seek to post online," it "is perforce immune under section 230." *Id.* at 1170-71; *see also Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("Section 230 immunity should be broadly construed.").

As such, Section 230 immunity forecloses at least Plaintiff's non-constitutional causes of action under both state and federal law.  *See Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 603 (S.D.N.Y. 2020), *aff'd on other grounds*, 991 F.3d 66 (2d Cir. 2021); *Fed. Agency of News LLC v. Facebook*, 432 F. Supp. 3d 1107, 1116 (N.D. Cal. 2020); *Riggs v. MySpace, Inc.*, 444 Fed. App'x 986, 987 (9th Cir. 2011) (Section 230 "immun[izes] decisions to delete user profiles"). Plaintiff's unsupported and conclusory allegations of "bad faith," PSAC 105, are irrelevant under Section 230(c)(1) because it includes no "good faith" requirement.  *See Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413, at *3 (D. Utah June 23, 2017); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7–8 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014) (same).  For this reason as well, Plaintiff's proposal to add new claims against Twitter is futile.[7]

## CONCLUSION

Because Twitter is not a required party in this suit as it stands, and because Plaintiff's proposed claims against Twitter are futile, Plaintiff's motion to amend his complaint and to join Twitter as a new defendant should be denied.

---

[7] Plaintiff's PSAC also fails to plead each of the essential elements of his claims and does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  Should the Court grant Plaintiff's leave to amend, Twitter will move to dismiss the claims on these grounds as well.

Respectfully submitted,

/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth (BBO #665358)
felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000


PATRICK J. CAROME (BBO #542808)
  (*pro hac vice* pending)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice* pending)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

***Attorneys for Plaintiff* TWITTER, INC.**


Dated: April 28, 2021