# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DR. SHIVA AYYADURAI,

                          Plaintiff,

v.

WILLIAM FRANCIS GALVIN, MICHELLE
K. TASSINARI, DEBRA O'MALLEY, AMY
COHEN, NATIONAL ASSOCIATION OF
STATE ELECTION DIRECTORS, allegedly
in their individual capacities, and WILLIAM
FRANCIS GALVIN, in his official capacity as
Secretary of State for Massachusetts,

                          Defendants,

and

TWITTER, INC.,

                          Proposed
                          Additional
                          Defendant.

Case No. 1:20-cv-11889-MLW

## SUBMISSION BY PROPOSED DEFENDANT TWITTER, INC. REGARDING MAY 20, 2021 HEARING ON PENDING MOTIONS

## TABLE OF CONTENTS

Page(s)

I.   Twitter's Contribution To The May 20, 2021 Hearing Should Be Limited ........................... 4

II.   Plaintiff's Proposed Claims Against Twitter Must Be Brought In California ...................... 6

   A.   Plaintiff Consented To Twitter's Terms Of Service ........................................................ 7

   B.   The Forum Selection Clause Is Enforceable And Bars Twitter's Joinder, Leave To
   Amend, And Entry Of Injunctive Relief Against Twitter ....................................... 11

III.   Twitter Is Not A State Actor And Cannot Be Sued For Violating The First Amendment 13

IV.   The First Amendment and Section 230 Bar Plaintiff's Claims Against Twitter .............. 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013) ...............................................................13

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ...................................................................14, 16

*Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972) ...............................................11, 12

*Brittain v. Twitter Inc.*, 2019 WL 110967 (D. Ariz. Jan. 4, 2019) ...........................11, 13

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41 (1st Cir. 2014) ......................................................................................................................11, 12

*Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171 (E.D. Ark. 2019)...................................6

*Emmanuel v. Handy Technologies, Inc.*, 992 F.3d 1 (1st Cir. 2021)..........................7, 10

*Fryzel v. Mortgage Electronic Registration Systems, Inc.*, 719 F.3d 40 (1st Cir. 2013) ......................................................................................................................5, 6

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......................................7

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda County*, 415 U.S. 423 (1974) .........................................6

*Hudgens v. NLRB*, 424 U.S. 507 (1976) ........................................................................13

*In re Mercurio*, 402 F.3d 62 (1st Cir. 2005) ..................................................................13

*Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 10 (1st Cir. 2015)………………………….17

*Kauders v. Uber Technologies, Inc.*, 486 Mass. 557 (2021) ................................. *passim*

*Mead v. Independent Ass'n*, 684 F.3d 226 (1st Cir. 2012) ......................................16, 17

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017).....................................10

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ...................................10

*Rodriques v. Furtado*, 950 F.2d 805 (1st Cir. 1991) ....................................................14

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009)........................................14, 15

*Selden v. Airbnb, Inc.*, 2016 WL 6476934 (D.D.C. Nov. 1, 2016)................................11

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016) ....................................................10

*Summit Packaging Systems, Inc. v. Kenyon & Kenyon*, 273 F.3d 9 (1st Cir. 2001).......................12

*Twitter, Inc. v. Skootle Corp.*, 2012 WL 2375486 (N.D. Cal. June 22, 2012)..............................11

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020)...............................................................5

## CONSTITUTION, STATUTES, RULES, AND REGULATIONS

First Amendment, U.S. Constitution ...................................................................... *passim*

47. U.S.C. § 230................................................................................................................4, 18

Fed. R. Civ. P. 65.............................................................................................................5, 6

## OTHER AUTHORITIES

*Civic Integrity Policy*, Twitter, https://help.twitter.com/en/rules-and-
        policies/election-integrity-policy ....................................................................................18

*NASED's History*, https://www.nased.org/about-nased...................................................................15

Twitter is not a party to this litigation, and it should remain that way.  *See* Twitter's Memorandum in Opposition to Joinder (Dkt. 87) ("Twitter Opp. to Joinder").  First, any lawsuit against Twitter regarding Plaintiff's Twitter account must be made in a court in San Francisco, California, as required by the Twitter Terms of Service to which Plaintiff, by his own admission, agreed when he created and continued to use his account.  Second, Plaintiff's proposed claims against Twitter are futile because Twitter is not a state actor and was not compelled to act by any state actor.  Plaintiff's unsupported premise that Twitter takes its marching orders from the Massachusetts Secretary of State is false.  Twitter makes its own independent judgments about whether individual Tweets violate its rules and about whether and how to enforce against such violations.    Finally, Twitter's own rights under the First Amendment and federal statute, 47 U.S.C. § 230 ("Section 230"), bar Plaintiff's claims.  *See* Twitter Opp. to Joinder at 19-20.  These arguments also demonstrate that no injunction can issue against Twitter here.

In this submission and the declarations filed herewith, Twitter addresses certain questions raised in the Court's May 10, 2021 Order (Dkt. 91) to provide the Court with additional information that Twitter believes will aid in resolution of those questions.  Twitter also raises several procedural points relating to Twitter's participation in the May 20, 2021 hearing.

## I.    Twitter's Contribution To The May 20, 2021 Hearing Should Be Limited

Because Twitter is not a party to this matter, Twitter respectfully submits that its participation in the May 20 hearing should be limited to addressing any remaining issues regarding whether Twitter may be joined as a defendant in this action.  The Court's May 10 Order could be read to suggest that at the May 20 hearing the Court may consider issuing a preliminary injunction not only against one or more of the existing defendants but also against

Twitter, and that the Court may require a personal representative from Twitter to provide testimony at the hearing.[1]  For the reasons already given (*see* Dkt. No. 87 at 12-20) and expanded upon below (*see infra* p. 10-15), there is no legal or factual basis to enjoin Twitter.

Apart from those substantive defects, issuing an injunction against Twitter at the May 20 hearing would be procedurally improper.  Twitter has no notice of any request for an injunction against it.  Under the Federal Rules of Civil Procedure, a preliminary injunction can issue only with notice to the adverse party.  Fed. R. Civ. P. 65(a)(1).  The First Circuit has interpreted notice to require "a hearing followed by findings" that the requesting party is entitled to a preliminary injunction.  *Fryzel v. Mortg. Elec. Registration Sys., Inc.*, 719 F.3d 40, 44 (1st Cir. 2013) (remanding for further proceedings where court issued preliminary injunction without notice and did not address each traditional preliminary injunction factor in its findings).  The only pending motion for preliminary injunction was filed by Plaintiff at Docket Number 55.  That motion asks the Court to order the existing Defendants to use "their special governmental powers" to make requests of Twitter.  Dkt. 55 at 11.  But it seeks no direct action from, or relief against, Twitter.  Even if the Court were to overrule Twitter's objections to joinder at the May 20 hearing, or to construe Docket Number 55 as a motion seeking a preliminary injunction against Twitter (or issue any order that purports to require Twitter to take or refrain from taking some action),[2] the first notice Twitter would have of that motion would be the day of the hearing or

---

[1] To the extent a Twitter employee is called to provide testimony, and any confidential information is implicated by the testimony, Twitter will seek leave to proceed on a sealed record.
[2] Plaintiff in this matter is pro se by choice, having discharged his attorney.  Dkt. 8, 9.  He has not requested injunctive relief against Twitter, and the Court should not fill that gap.  *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (noting that courts are required to adhere to the principle of party presentation, including reliance on the parties to "frame the issues for decision").

order, which is insufficient.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 431-32 (1974).  Even where a party has voluntarily participated in proceedings (which Twitter has not done here), an order that functions as a preliminary injunction can issue only where there is adequate notice of the relief under consideration.  *See Fryzel*, 719 F.3d at 44 (holding order that functioned as a preliminary injunction issued without notice in violation of Rule 65 notwithstanding the participation of the allegedly bound parties).  It would be procedurally improper to issue any relief that functioned as a preliminary injunction against Twitter at the May 20 hearing.

## II.    Plaintiff's Proposed Claims Against Twitter Must Be Brought In California

This Court indicated that the May 20 hearing will address "whether [Twitter's] User Agreement bars Plaintiff from pursuing his claims against Twitter in the District of Massachusetts," and "whether the [forum selection] clause is enforceable against plaintiff."  Dkt. 91 at 2.  Twitter submits the declaration of Twitter employee Michael Anderson, Senior Engineering Manager, to provide the Court with additional factual information to demonstrate that the answer to both questions is clearly yes.

"When parties agree to a forum-selection clause[] . . . they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).  As such, this Court should give such "a valid forum-selection clause . . . controlling weight in all but the most exceptional cases."  *Id.* at 63.  That principle applies equally to agreements entered into online, *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53, 61 (1st Cir. 2018), and in the context of consumer form contracts, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-595 (1991), including those in click-through user agreements like

Twitter's User Agreement, *see, e.g.*, *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) (collecting cases).

### A.    Plaintiff Consented To Twitter's Terms Of Service

When signing up for his Twitter account, and by continuing to use that account from August 2011 to February 2021, Plaintiff consented to Twitter's Terms of Service (TOS).  He is accordingly bound by those terms, including the forum selection clause.  An online contract is formed under Massachusetts law when "the user of the online interface [is] given 'reasonable notice of the terms' of the agreement and . . . made a 'reasonable manifestation of assent to those terms.'" *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 7 (1st Cir. 2021) (quoting *Kauders v. Uber Technologies, Inc.*, 486 Mass. 557, 572 (2021)).[3]

"The 'reasonable notice' requirement is plainly satisfied . . . when a party to the online contract has 'actual notice' of its terms, such as would be the case if that party had 'reviewed' those terms or 'must somehow interact with the terms before agreeing to them.'"  *Emmanuel*, 992 F. 3d at 7 (quoting *Kauders*, 486 Mass. at 572).  Plaintiff testified on October 30, 2020, that he in fact read parts of the Twitter TOS, and was "aware that Twitter requires users to agree to [the] terms of use . . . as a condition of participating on [its] social media platform."  FAC Ex. 1 at 32-33.  He accordingly had reasonable notice of the agreement.  And because Twitter's TOS state that continued use of the platform will constitute consent, *see* Ellsworth Decl. (Dkt. 88), Ex. A, Plaintiff's use of Twitter after that further manifests his assent.

---

[3] Although Twitter believes California law governs Plaintiff's claims in this litigation, for purposes of the question of contract formation, Massachusetts and California laws do not materially differ, and therefore Twitter discusses the contract formation question under Massachusetts law.

But "even absent actual notice, the reasonable notice requirement can be met if 'the totality of the circumstances' indicates that the user of the online interface was provided with such notice of the terms." *Id.* (quoting *Kauders*, 486 Mass. at 572). "The question of reasonable notice comes down to whether 'the offeror [has] reasonably notif[ied] the user that there are terms to which the user will be bound and [has] give[n] the user the opportunity to review those terms.'" *Id.* at *8 (quoting *Kauders*, 486 Mass. at 573) (alterations in original). Twitter's sign-up process meets that standard, and independently demonstrates contract formation, above and beyond Plaintiffs' own admission.

To create a Twitter account, a prospective accountholder must go through an online sign-up process that requires them to provide certain information, such as their name and phone number or email address. Since at least 2010, before individuals click the link to complete the signup process, they are presented with a screen explaining that by signing up for Twitter and creating an account, they are agreeing to the Twitter TOS. That message has always included a link to the TOS, and in August of 2011, for individuals, like Plaintiff, who created their account using a web browser, the TOS itself appeared in a scrollable box on the same screen. *See* Anderson Decl. ¶¶ 2-3. Accordingly, when Plaintiff signed up for his @va_shiva Twitter account, he was presented with the following web page:

Anderson Decl. ₱ 2.

In order to proceed with signing up, Plaintiff had to fill-in the empty boxes with the requested information and click a "Create my account" button that itself was embedded in the shaded box displaying the Terms of Service.  At the top of that shaded box was the instruction: "By clicking the button, you agree to the terms below."  The page is uncluttered; the TOS are clearly displayed in the middle of the screen *and* a printable version of the entire TOS was also made available through a blue hyperlink.  This is the type of "conspicuousness" that Massachusetts courts and the First Circuit recognize as sufficient to put an individual on notice of the terms.  *See Cullinane v. Uber Techs., Inc*., 893 F.3d 53, 62 (1st Cir. 2018) ("Under Massachusetts law, 'conspicuous' means that a term[ ] is 'so written, displayed or presented that

a reasonable person against which it is to operate ought to have noticed it.'").  Presented with this page, any reasonable individual would have recognized "there are terms to which the user will be bound" or that would have had "the opportunity to review those terms."  *Kauders*, 486 Mass. at 573.

This presentation is also sufficient to manifest assent.  "Courts around the country have recognized that an electronic 'click'" like the one Plaintiff necessarily made here to proceed with the sign-up process "can suffice to signify the acceptance of a contract, and that 'there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'"  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)).  The Massachusetts Supreme Judicial Court has held that so-called "clickwrap" agreements—where an individual is "required to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions"—are valid.  *Kauders*, 486 Mass. at 574.  The same rule should apply here.  *See id.* at 574-75 (holding that "clickwrap" "is not … required"; the question, rather, is whether under the "totality of the circumstances" "the connection between the action taken and the terms is [ ]clear" and "the action taken . . . clearly signif[ies] assent").

The button that Plaintiff pressed to create his account is embedded within the Terms of Service box and indicates affirmative assent to that agreement.  *See Emmanuel*, 992 F.3d at 9 (finding Massachusetts standard satisfied where Terms were presented in scrollable box); *Meyer*, 898 F.3d at 80 ("The fact that clicking the register button had two functions—creation of a user account and assent to the Terms of Service—does not render . . . assent ambiguous.").  This is a far cry from cases in which users were "expected to ferret out hyperlinks to terms and conditions

10

to which they have no reason to suspect they will be bound." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1179 (9th Cir. 2014). Here, Twitter put the terms front and center, where no reasonable person could miss them. Indeed, numerous courts have enforced Twitter's TOS, necessarily concluding that this sign-up flow established an enforceable contract and user consent. *See, e.g.*, *Twitter, Inc. v. Skootle Corp*., 2012 WL 2375486, at *4 (N.D. Cal. June 22, 2012); *Brittain v. Twitter Inc*., 2019 WL 110967, at *4 (D. Ariz. Jan. 4, 2019). And courts routinely find user consent based on online sign-up forms with less conspicuous reference to the terms and assent requirements than were present here. *See, e.g.*, *Selden v. Airbnb, Inc*., 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (collecting cases).

### B.   The Forum Selection Clause Is Enforceable And Bars Twitter's Joinder, Leave To Amend, And Entry Of Injunctive Relief Against Twitter

The above-described sign-up flow and Plaintiff's own testimony establish the existence of a valid contract between Twitter and the Plaintiff, and this Court should, consistent with binding law, enforce that contract's plain terms. "[T]he threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014). "The next step . . . is ascertaining [the clause's] scope." *Id.* at 47. "[T]he final step . . . involves asking whether there is some reason the presumption of enforceability should not apply." *Id.* at 48 (internal quotations omitted). "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable' under the circumstances, it should not be set aside." *Id.* (quoting *Bremen v. Zapata Off–Shore Co*., 407 U.S. 1, 10 (1972)). Because Plaintiff has not and cannot make these showings, the forum selection clause should be enforced. *See* Twitter Opp. to Joinder at 8-12.

11

As previously discussed, Twitter Opp. to Joinder at 9, the forum-selection clause applicable here provides that "[a]ll disputes related to these Terms or Services will be brought solely in the federal or state courts located in San Francisco County, California, United States," Ellsworth Decl. Ex. A.  The reference to where "*all* disputes" "*will* be brought" is clearly mandatory.  *See* Twitter Opp. to Joinder at 10 (emphasis added); *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) (parties' "choice of the word 'will'—a word 'commonly having the mandatory sense of 'shall' or 'must'—demonstrates their exclusive commitment to the . . . named forums").  That language—referencing "all disputes related to [Twitter's] Terms or Services"—also plainly encompasses Plaintiff's proposed claims, each of which relates to Twitter's enforcement of its "Terms" based on how Plaintiff used Twitter's "Services" and termination of Plaintiff's access to those "Services."  *See* Twitter Opp. to Joinder at 10.[4]

Finally, the presumption of enforceability applies in this case.  Plaintiff bears the burden of establishing unenforceability, and he has not done so.  *Claudio De-Leon*, 775 F.3d at 48; *Bremen*, 407 U.S. at 17 (party arguing against a forum selection clause "bear[s] a heavy burden

---

[4] The current version of the TOS (the version in force when Twitter permanently suspended Plaintiff's account in February 2021) is controlling under the parties' contract.  *See* Anderson Decl. ¶ 6 (explaining the TOS' requirement that continued use of Twitter's services amounts to consent to be bound by the current version, including any revisions).  But the forum selection clause in the version of the TOS in place when Plaintiff originally signed up for his account and consented to the agreement is also mandatory and equally embracing of Plaintiff's claims against Twitter.  That clause provided that "All claims, legal proceedings, or litigation arising in connection with the Services will be brought solely in San Francisco County, California . . ." Ellsworth Decl. Ex. B.  The "will be" language demonstrates mandatory exclusivity in the same manner as the current terms.  Plaintiff's claims also fall within the scope of the prior version of the forum selection clause: The phrase "[a]ll claims, legal proceedings, or litigation arising in connection with the Services" is expansive and certainly covers Plaintiff's assertion that Twitter's removal of his profile from its platform violated the law.

of proof"); *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005) ("heavy burden of proof" to overcome a forum selection clause). That is dispositive. And for the reasons Twitter has already explained, there is no basis on which Plaintiff *could* reasonably argue that the clause is unenforceable. *See* Twitter Opp. to Joinder at 10-12. To be sure, it may well be more convenient for Plaintiff to litigate all his claims together in the instant suit. But that is insufficient, as a matter of law, to establish that enforcement is unreasonable or unjust. *See id.* at 11; *Atl. Marine*, 571 U.S. at 64. That Plaintiff has elected to represent himself in this litigation does not change that calculus. *Brittain*, 2019 WL 110967, at \*4.

## III.   Twitter Is Not A State Actor And Cannot Be Sued For Violating The First Amendment

Plaintiff's Proposed Second Amended Complaint seeks injunctive relief against Twitter, alleging that Twitter's decisions to remove Plaintiff's Tweets, temporarily lock his account in September and October 2020, and permanently suspend him in February 2021 constituted state action and violated his First Amendment rights. PSAC 59, 75-77 (Dkt. 78). But "[t]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state," *Hudgens v. N. L. R. B.*, 424 U.S. 507, 513 (1976).

Accordingly, the Supreme Court has articulated only "a few limited circumstances" in which a private entity can qualify as a government actor. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). This is for good reason. As discussed, Twitter Opp. to Joinder 18-19, using the First Amendment to impose liability on the conduct of a private, non-governmental actor "could eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms." *See Halleck*, 139 S. Ct. at 1932; *see also Yeo v. Town of Lexington*, 131 F.3d 241, 254–55 (1st Cir. 1997) (en banc) ("care and

caution" are especially needed where there are "First Amendment interests on both sides of the case").

Injunctive relief against Twitter is therefore unavailable here because Twitter's enforcement of its own platform rules against Plaintiff's account cannot amount to state action. Plaintiff's own allegations establish that Twitter is not a state actor and is thus not constrained by the restrictions of the First Amendment.  *See* Twitter Opp. to Joinder at 13-18.   In further support of that conclusion, however, Twitter also submits the accompanying declaration of Twitter employee Stacia Cardille, which outlines and explains Twitter's independent enforcement actions with respect to Plaintiff's account and leaves no doubt that Twitter's decision to permanently suspend Plaintiff's Twitter account was not state action.

Nor is Twitter a state actor under a compulsion theory.  Plaintiff's own allegations and the evidence show otherwise.  Government compulsion of a private entity can convert the acts of that entity into state action only when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  Courts have found this standard met only in extreme circumstances with clear hallmarks of coercion.  *See, e.g.*, *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir. 1991); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 52 (1st Cir. 2009); *see also* Twitter Opp. to Joinder at 14-15.  Neither the September 2020 Tweet removal and locking of his account nor the permanent suspension in February 2021 meet this high bar.

*First*, there is no evidence that any government official compelled Twitter to act.  Twitter received a report from the Election Division of the Massachusetts Secretary of State ("Election Division") about the @va_shiva account regarding a Tweet posted on September 24, 2020.

14

Cardille Decl. ¶ 10.  *But Twitter did not take any adverse action against the Tweet that the Election Division reported.*  To the contrary, a Twitter reviewer analyzed that Tweet and independently determined not to take enforcement action against the Tweet. Cardille Decl. ¶ 11. Accordingly, the Tweet remained on the platform.  *Id.*

Twitter received a separate report from the National Association of State Election Directors ("NASED") on September 25, 2020 regarding a different Tweet that Plaintiff posted on September 25, 2020.  Cardille Decl. ¶ 12.  NASED is a private organization of election officials, not a state actor.  NASED's website describes itself as a "professional organization for state election directors," and a "nonpartisan 501(c)(3) professional organization that disseminates election administration best practices and information across the states."  NASED's History, https://www.nased.org/about-nased.  Twitter could not have possibly been compelled by the government to take action on Plaintiff's account by a report that had been submitted by a private association.

Moreover, the report that Twitter received from NASED did not threaten Twitter, direct Twitter to take action, or even express a preference for a certain disciplinary result.  Cardille Decl. ¶ 14.  Twitter was under no obligation to review that report—much less respond to it in a certain way.  Merely receiving a report from NASED (a private organization) falls far short of the kind of "insistence and pressure" by government officials that would be required to transform Twitter's lockout and permanent suspension of Plaintiff's account into state action.  *See Sanchez*, 590 F.3d at 52.

*Second*, Plaintiff's compulsion theory also fails because Twitter exercised its own discretion and judgment in taking action against Plaintiff's account.  Decisions that "ultimately turn on . . . judgments made by private parties according to professional standards that are not

established by the State" are not state action, *Blum*, 457 U.S. at 1008.  In *Blum*, for example, the Supreme Court found that a private nursing home's discharge decisions were not state action— even when made pursuant to Medicaid guidelines—when the nursing home also applied its own professional judgments to the discharge decisions.  *Id.*  The independence of Twitter's action here is even more clear than the situation found not to constitute state action in *Blum*: whereas the private nursing home's professional judgments were constrained by extensive regulation, neither the Election Division nor NASED have any say over the manner in which Twitter moderates platform content.  *See Blum*, 457 U.S. at 1008.  Indeed, even when a government actor has professed a preference for a certain course of action, courts have held that a decision to pursue that course of action is not state action when made pursuant to independent investigation and review.  The government's alleged subjective aims are even more irrelevant.  *Mead v. Independent Association*, 684 F.3d 226, 230 (1st Cir. 2012), demonstrates the point.  In that case, the First Circuit found no state action when the government "directed" a private association to replace an employee because that replacement occurred after the association conducted its own investigation to determine what discipline would be appropriate.

Here, as noted above, Twitter exercised its independent judgment to decide *not* to act on the report that it received from the Election Division on September 25, 2020.  Cardille Decl. ¶ 11.  That alone defeats Plaintiff's state action theory.

And Twitter exercised the same independent judgment with respect to the enforcement decision regarding NASED's report.  Cardille Decl. ¶ 15.  Twitter reviewed the content and made an independent determination as to whether it violated its Rules.  Circuit precedent makes clear that it is not enough for "the state to perform[] an action that sets in motion some subsequent action by a private party"; indeed, such a rule would "eviscerate the state action

requirement." *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 10 (1st Cir. 2015). Here, even if NASED's report could have been, one "but-for" cause of Twitter requiring Plaintiff to remove certain Tweets and temporarily locking Plaintiff's account in the Fall of 2020, "but for" causation is insufficient to create state action. *Id.* Following the initial report, Twitter teams independently analyzed the Tweets at issue and determined that they violated Twitter's policies and so warranted enforcement action. Cardille Decl. ¶ 15. Twitter's independent evaluation as to whether Plaintiff's September 25 Tweet violated Twitter's policies, and its subsequent enforcement actions pursuant to those policies, demonstrate that Twitter's lockout of Plaintiff's account in Fall 2020 was not the result of state action. *See Mead*, 684 F.3d at 230.

Plaintiff's permanent suspension, which occurred nearly four months later, similarly was not directed or caused by the Election Division's and NASED's September reports. Throughout January 2021, internal, automated monitoring systems that Twitter unilaterally implemented as part of its overall platform-moderation practices, independently identified at least six of Plaintiff's Tweets as potentially containing election misinformation. Cardille Decl. ¶¶ 19-24. That automated monitoring system was not, as Plaintiff speculates, PSAC 63-64, set up to flag Tweets containing the name "Tassinari" or referencing Plaintiff's email exchange with Michelle Tassinari. Cardille Decl. ¶¶ 8, 17-18, 24. It was not set up in response to Plaintiff at all. It applied broadly across the entire Twitter platform, without any particular focus on Plaintiff or any of Twitter's hundreds of millions of other accountholders. *Id.* With respect to each of these six proactively identified Tweets, after the Tweet was internally identified through automated means, a Twitter employee independently analyzed the Tweet, determined that the Tweet violated Twitter's policies and applied one of a series of escalating enforcement actions that eventually resulted in Twitter permanently suspending Plaintiff's account. Cardille Decl. ¶¶ 19-

24.   Twitter's reviewers took enforcement actions pursuant to Twitter's own platform-wide, strike-based framework for violations of the Civic Integrity Policy, based on Twitter's own independent judgment.  *Id.*; *Civic Integrity Policy*, Twitter, https://help.twitter.com/en/rules-and-policies/election-integrity-policy.

On these facts, the various actions Twitter took against Plaintiff based on his repeated violations of Twitter's platform rules cannot amount to state action.

## IV.   The First Amendment and Section 230 Bar Plaintiff's Claims Against Twitter

Twitter is a corporation with its own rights under the First Amendment and Section 230 of the Communications Decency Act, 47 U.S.C. §230.  Although the Court did not include these defenses among the issues to be addressed at the May 20 hearing, Dkt. 91, these rights independently render Twitter's joinder, and any amendment to add claims against Twitter, futile and therefore improper.  They also preclude entry of any injunctive relief against Twitter in connection with this controversy, as such an injunction would unconstitutionally compel Twitter to disseminate speech against its will.  Twitter has set out further argument on this in its opposition to Plaintiff's motion for joinder.  *See* Twitter Opp. to Joinder (Dkt. 87).

## CONCLUSION

For the foregoing reasons, as well as those reasons stated in Twitter's Opposition to Joinder, Dkt. 87, Twitter should not be joined as a defendant in this matter and the Court should deny Plaintiff's request to amend his Complaint to include allegations against Twitter.  Further, no preliminary injunction should issue against Twitter.

Respectfully submitted,

/s/   Felicia H. Ellsworth

Felicia H. Ellsworth (BBO #665358)

18

felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000


PATRICK J. CAROME (BBO #542808)
  (*pro hac vice* pending)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice* pending)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

***Attorneys for Non-Party* TWITTER, INC.**


Dated: May 14, 2021


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 14,

2021.

19

/s/__*Felicia H. Ellsworth*_____
Felicia H. Ellsworth