UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | |
|---|---|
| Dr. SHIVA AYYADURAI             ) <br>     Plaintiff,                    ) <br>                                   ) <br>     v.                            ) <br>                                   ) <br> WILLIAM FRANCIS GALVIN,         ) <br> MICHELLE K. TASSINARI,          ) <br> DEBRA O'MALLEY,                 ) <br> AMY COHEN,                      ) <br> NATIONAL ASSOCIATION OF         ) <br> STATE ELECTION DIRECTORS,       ) <br> all in their individual capacities, and ) <br> WILLIAM FRANCIS GALVIN,         ) <br> in his official capacity as Secretary ) <br> of State for Massachusetts,     ) <br>     Defendants,                   ) <br> and                             ) <br> TWITTER INC., proposed defendant) | JURY DEMANDED |

**SUPPLEMENTAL MEMORANDUM**
REGARDING ***THE ELECTIONS INTERFERENCE OPERATIONS PLAYBOOK
FOR STATE AND LOCAL OFFICIALS***
THAT ESTABLISHED THE INFRASTRUCTURE, PROCESSES  & PROTOCOLS
***DESIGNED BY*** TASSINARI, COHEN, NASED, TWITTER LEGAL ET AL
IN CAMBRIDGE, MA
FOR SURVEILLANCE  & REPORTING OF "THREATS" VIA
THE TWITTER TRUSTED PARTNERSHIP
AND TWITTER PARTNER SUPPORT PORTAL (PSP) PROGRAM

On May 14, 2021, proposed Defendant Twitter Inc. ("Twitter") filed with this court a supplemental memorandum and included a sworn affidavit (ECF #96) signed by Stacia Cardille, Director and Associate General Counsel at Global Policy Legal within Twitter, and presented to this court by her as a representative of Twitter. This first declaration was rapidly superseded as inaccurate by Cardille herself after Plaintiff filed his declaration (ECF #100) pointing out that the narrative advanced by Cardille on behalf of Twitter did not match facts already in the record.

Crucially, the declarations from Twitter did not mention the prior longstanding deep relationship between Tassinari, Cohen, NASED, and Twitter's Legal department. This relationship is directly relevant to the main questions faced by this court. By not disclosing this longstanding active relationship between these named persons Twitter concealed material facts from this court regarding whether Twitter's action was state action in both September-October 2020 and in February 2021.

As noted in Plaintiff's own declaration (#100), Twitter's sworn declaration that Twitter deplatformed this Plaintiff on FEBRUARY 3RD, 2021, after internal deliberations, flies in the face of established facts. No amount of post-hoc handwaving about time zones will turn FEBRUARY 3rd into FEBRUARY 2nd or FEBRUARY 1st.

Plaintiff has independently discovered the documentary evidence proving that Tassinari, Cohen, NASED and Twitter Legal jointly collaborated to design and build the core infrastructure, processes, and protocols enabling the Twitter Trusted Partnership Program and the Twitter Partner Support Portal (PSP).  In 2017, Cohen and others began formulating and designing the framework for silently violating the free speech rights of US persons by first characterizing speakers as "*Influence Operators*" **(IOs)** thereby fabricating a sinister connotation where none exists, as the ideological framework to justify canceling speakers who exercise their right to express their opinion.

In 2018, Amy Cohen, as Executive Director for NASED, testified to Congress about this emerging framework that she helped to formulate and architect in 2017, in cooperation with state officials and that they created a new centralized Governing Coordinating Council (GCC) that brought together both state and federal officials to create an electronic infrastructure for surveilling speech and monitoring "Influence Operators." This GCC also recognized the EI-

ISAC as a centralized repository, across state lines. EI-ISAC also has direct access to Twitter. Cohen also testified that the Belfer Center at Harvard provided the tools for educating state and local officials.

In 2017-2018, as part of this concerted coordinated effort, Cohen and Tassinari worked together at Belfer and formulated the ***The State and Local Election Cybersecurity Playbook*** which was published in February 2018. Both their names are on page 3 of that document, At the same time both Cohen and Tassinari formulated the ***Election Cyber Incident Coordination Communication Guide*** on behalf of EI-GCC. These two documents are the foundational documents laying the goals and the needs that needed to be put in place to "defend digital democracy." These documents also lay out which state official should play what role. Diagrams and trees laid out the pathways to delegate tasks and responsibilities between state and local officials.

All of these finally culminated in 2020 in the final manual for state officials called the ***Elections Influence Operations Playbook for State and Local Officials***, for which Cohen and Twitter Legal are architects. This manual is split into three parts. The first two parts are available to the public. The third part is available only to state and local officials.

Part 1 provides the theoretical foundation for identifying and targeting "Influence Operators," i.e. persons who accuse state election officials of corruption or make allegations that state elections may have violated Federal law. Part 1 ends by introducing the Steps to Counter Influence Operators, which is a 4-stage ***ongoing process*** that includes preparing the criteria that define Influence Operators, identifying them, dealing with them and then monitoring after the officials have acted, and continue this process indefinitely.

**Part 2 of the Playbook** is the actual step-by-step manual on how state officials can deal with "Influence Operators" and prescribes the Best Practices that must be followed. The manual promotes a unified effort that results in speed, simplicity and efficiency. The manual provides all the tools that a state official would need to silence a person identified as an "Influence Operator" for opining that a state election official has violated Federal law.

The manual identifies the specific state officials and their respective roles, such as Secretary of State, Director of Elections, Chief Legal Officer, Communications Team, et al. The manual strongly recommends that the state organization acquire a Verified Twitter Account with the blue check mark. The manual also teaches officials to understand the nature of their threats - who, what, when, where and how.

Stage 2 of Part 2 teaches state officials to use keywords to identify vulnerabilities, i.e. "#BallotImages," "Tassinari," "#ElectionFraud, "lawsuit." State officials are urged to monitor threats in real time through regular proactive searches.

Stage 2 of Part 2 also provides certain free tools to state officials to educate them on further facilities available upon paying fees.  The manual also teaches officials on how to report threats, including the Twitter account name of the Influence Operator, hashtags, screenshots, date and time, popularity of the tweet or Influence Operator, etc.

The manual then urges officials to assess the Threat Level of the Influence Operator using a three-level score after answering the following questions:

1) Is the IO an established voice?
2) Is the IO a credible person – meaning, are voters likely to believe the information? How prominent is the person and how many engagements do his tweets receive, i.e. retweets, likes?

      3) Is the IO's message gaining traction? Did the official receive lots of communications about the tweet?

Once these questions are answered, the official may rate the IO Threat Level as High, Medium or Low Severity. Now, that the IO has been scored, the official must choose the correct response.

Stage 3 of the manual prescribes a two-pronged approach: 1) approach Twitter directly; **AND,** 2) amplify your voice such as getting NASED to also approach Twitter with "more voices."

That Tassinari followed this very approach is not a surprise given that Tassinari was one of the architects of the foundation documents leading to the final manual, along with Cohen and Twitter Legal. What was done to the Plaintiff followed precisely the approach specified on page 22 of Part 2 of the Playbook. The manual makes explicit that officials enrolled in the Twitter Partner Support Portal (PSP) must use a dedicated email address for reporting threats from IOs - PSPOnboarding@twitter.com

The court must note that even during their testimony, neither O'Malley nor Tassinari revealed that they used this dedicated email reporting system and instead claimed they used the same complaint webpage available to ordinary civilians.

Page 27 of the manual specifies that officials must maintain *continuous media monitoring and feedback loop* for High Severity IO threats. Low Severity threats are treated differently.

On page 46 the manual describes the Twitter Partner Support Portal (PSP) and explains Twitter's commitment to state officials who use the PSP.

The Twitter PSP serves to allow state officials to silence their speech by outsourcing the actual silencing to Twitter. Twitter serves to provide state officials with plausible deniability, ***by design!*** This written COMMITMENT from Twitter to state officials makes the relationship between the defendants in this case totally different from the relationship between state actors and other defendants in the various cases cited by the defendants, such as *Manhattan* or *Jarvis*.

In none of those cited cases is there documentary evidence for a COMMITTED TRUSTED RELATIONSHIP in which Twitter commits to immediately silence a HIGH THREAT Individual – "an Influence Operator" - on behalf of state actors under the convenient pretext of independent, methodical, private action by Twitter Review Teams implementing some internal policy.

It bears repeating that in this case here the guillotine fell on FEBRUARY 1, 2021, within 17 MINUTES of the very first mention in 2021 by the Plaintiff of Tassinari and her email screenshots. The PLAYBOOK explains in minute detail exactly how that outcome can be achieved by state officials.

The PLAYBOOK is a chilling read for any American who does not think the First Amendment is just "bonkers" and who considers that the government has no business chilling the speech of a political candidate talking about malfeasance by public officials that is at the heart of his own lawsuit.

All the times that Tassinari and Galvin pooh-poohed the Plaintiff's realization that an algorithm and well-defined processes and protocols must be involved given the nature of the responses from Twitter exclusively to his tweets about Tassinari and her emails, both in September 2020 and in February 2021. Tassinari and Galvin fully knew that Tassinari is one of the architects of that very capability!

Given that two public parts of this PLAYBOOK are in the record in this case, Tassinari must explain under oath why she chose to mislead this court via both affidavit and testimony about the relationship between her and Twitter, Cohen, NASED and Twitter Legal, and about her personal knowledge regarding the powerful capabilities and COMMITMENT offered by Twitter to state officials who wish to outsource the silencing of speech and launder censorship.

## CONCLUSION

This PLAYBOOK, from the horse's mouth as it were, is directly relevant to the court's intention to expand the factual record in this case before it decides on pending motions. Unlike the Cardille affidavits or the Tassinari affidavit, this PLAYBOOK is wholly credible. The PLAYBOOK reinforces the plausibility of the claims in the 1st and 2nd amended complaints and provides a factual basis for granting the injunction sought and ending the ongoing harm.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: May 21, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that he served this memorandum and exhibits upon Defendants and Twitter via their counsel via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

Date: May 21, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com