UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE No. 1:20-CV-11889-MLW

| | |
|---|---|
| Dr. SHIVA AYYADURAI ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM FRANCIS GALVIN, ) | |
| MICHELLE K. TASSINARI, ) | |
| DEBRA O'MALLEY, ) | JURY DEMANDED |
| AMY COHEN, ) | |
| NATIONAL ASSOCIATION OF ) | |
| STATE ELECTION DIRECTORS, ) | |
| all in their individual capacities, and ) | |
| WILLIAM FRANCIS GALVIN, ) | |
| in his official capacity as Secretary ) | |
| of State for Massachusetts, ) | |
| Defendants, ) | |
| and ) | |
| TWITTER INC., proposed defendant) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS GALVIN, TASSINARI AND O'MALLEY'S MAY 28, 2021, OBJECTION TO THIS COURT'S DECISIONS**

1.      On May 21, 2021, at the Rule 12 hearing, this court proposed a hybrid representation model for the relationship between Lead Counsel Cooper and this Plaintiff. Transcript, pg. 3, line 15. The court was entirely within its discretion and authority to do so and even cited relevant case law. Galvin, Tassinari and O'Malley have filed a response alleging that Plaintiff asserted that he has a right to hybrid representation. This is a conscious misrepresentation of the record. The "largesse" of allowing hybrid representation in extraordinary cases is perfectly justified given that this landmark lawsuit is the first ever anywhere on earth to reveal a written Playbook authored by Tassinari in close partnership with Twitter to launder censorship of political speech, and already is recognized by the court as an important constitutional law case that will likely be

an exam question in law school, and which attracted 322 attendees via Zoom for the hearings held in May 2021, which surely is a record in this district.

The 'sky will fall' scenario predicted by these Defendants is unrealistic and empty scare-mongering aimed at further silencing the Plaintiff, given that this *pro se* Plaintiff has not delayed this litigation by even one minute, has been totally responsive to federal procedures and this court's orders, has filed an amended complaint and other pleadings, and has already advanced this case significantly, all by himself, in the face of an unremitting wall of silence uniting all the Defendants and Twitter, who all filed pleadings in this court that perpetrated the false impression that they did not know each other and had not worked closely together to silence speech.

2. Plaintiff is delighted, elated, thrilled, that the Attorney General, along with Galvin, Tassinari and O'Malley have finally agreed with him that the pubic must not be saddled with the expense of representing the litigants in this civil suit. Plaintiff could not agree more. That is why Plaintiff had already moved this court to Order that Tassinari and O'Malley NOT be represented at public expense, because, contrary to the Attorney General's written declaration to this court, Tassinari and O'Malley are not constitutional officers and their representation by the AGO at public expense is not required by any statute.

Now that the AGO is in written agreement with this important public policy, Plaintiff shall renew his motion to enjoin the AGO from representing Tassinari and O'Malley at public expense, because it violates long-established public policy, violates an explicit statute (ch. 258 § 10(c)), and irreparably prejudices this Plaintiff who has to contend with the mighty resources of the Commonwealth when suing individual officials in their personal capacity for intentional torts.

This court suggested that Howard Cooper represent this Plaintiff in order to assist in briefing important constitutional issues. Plaintiff gratefully accepted, and Cooper will be the Lead Counsel for this case. Plaintiff has arranged for Charles Harder to assist the Lead Counsel in order to reduce the costs and burden. As a result this litigation will cost this court a minimal initial amount and then be self-financing. Despite the Defendants' false assertions and straw man arguments, the transcript reflects that he never applied to the court for court-appointed counsel.

Galvin, Tassinari and O'Malley also falsely assert that the Plaintiff donated $1 million in cash to his campaign. The FEC document cited does not state that Plaintiff donated $1 million in cash to his campaign. That is the arms-length value of the software that he donated to his campaign, which he transparently declared to the FEC. Plaintiff is not sure that the $58,000 in his federal campaign account can be used to pay for a lawyer for his private tort lawsuit as these Defendants suggest, and even if he is allowed to do so, $58,000 certainly is not going to last the length of this litigation. These Defendants are objecting without a truthful basis to do so. It's all smoke and mirrors.

The record must reflect that this Plaintiff has already spent a massive amount in terms of his own time and effort in litigating this case up to this point, at great opportunity cost. Plaintiff's time is assessed at $1,250 per hour as a PhD Engineer from MIT and that is the consulting fee charged routinely to clients. Between September 1, 2020 and May 28, 2021, Plaintiff has had to expend an average of 24 hours per week working on this case, and this has cost him $1,080,000 already, in time taken away from innovation, creating new opportunities and growing his business.

3. On May 21, 2021, Attorney Hornstine strongly pushed this court to find that facts, as represented by the already-repudiated Cardille affidavit, must be used to determine whether or not Galvin, Tassinari and O'Malley may avail of qualified immunity for silencing Plaintiff during his run for federal office. In response, this court declared that an expanded record is required before that determination may be made. Therefore, discovery is inescapable, necessary, indispensable. Suddenly, after pushing this court to make a finding of fact based on the fictitious Cardille affidavit, Galvin, Tassinari and O'Malley now claim that the "Court must decide motions to dismiss […] before discovery may commence." Unfortunately for these Defendants, that ship has already sailed. Following the discovery of the Playbook jointly composed by Tassinari, Twitter, Cohen and NASED, a fact that all of these named parties chose to conceal from this court, it is evident to everyone that discovery is impossible to avoid prior to deciding any pending motion.

In footnote 3, these Defendants accuse the Plaintiff of lying to the court about why he is *pro se*. Plaintiff proceeded *pro se* for multiple concurrent reasons: (1) no Massachusetts lawyer would touch this case and go up against Galvin, especially *pro bono*, (2) because Twitter deplatformed the Plaintiff on behalf of Galvin, Tassinari and O'Malley within seventeen (17) minutes of his February 1, 2021 Tassinari email tweet, he was blocked from access to his usual fundraising sources and popular base, (3) Plaintiff recognized the massive importance to the nation of exposing the coordinated actions of the Defendants here and made the decision to do everything he could, even *pro se*, to ensure that the actual mechanics of the massive, conscious, willful violation of the founding principles of the United States at the heart of this lawsuit be laid bare before the citizens of the nation. In doing so, as detailed in section 2, Plaintiff has already lost over a million dollars in opportunity costs.

Compare this loss with Tassinari and O'Malley who have been provided full-service representation from day one at public expense. The AGO waited on Tassinari and O'Malley hand and foot thereby relieving them of any need to locate, hire and pay for counsel. If Tassinari and O'Malley had not been waited on hand and foot by the AGO, they each would have had to spend approximately $432,000 in just these past nine months alone. This $860,000 expense instead has been dumped on the taxpayer.

4. These "public employees" are specifically excluded from indemnification by the Commonwealth's legislature precisely because they consciously committed an intentional tort and are engaged in an ongoing pattern of racketeering. See ch. 258 § 10(c). Their argument that claims against them in their individual capacities must be dismissed before discovery is intentionally misleading because they have not been sued in any other capacity for damages. And any decision on the merits of the claim must await discovery and the findings of a jury.

Respectfully submitted,

/s/ Dr. Shiva Ayyadurai

Date: May 28, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that he served this status report upon Defendants and Twitter via their counsel via ECF.

Respectfully submitted,

/s/ Dr. Shiva Ayyadurai

Date: May 28, 2021

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave.
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com