UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>               Plaintiff,<br><br>      v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts and his individual capacity, MICHELLE TASSINARI, in her individual capacity, DEBRA O'MALLEY, in her individual capacity, AMY COHEN, in her individual capacity, and NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS<br><br>               Defendant. | CIVIL ACTION<br>NO. 1:20-cv-11889-MLW |

**MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS BY WILLIAM FRANCIS GALVIN, MICHELLE TASSINARI, AND DEBRA O'MALLEY**

MAURA HEALEY
ATTORNEY GENERAL

Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Dated: June 1, 2021

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL ALLEGATIONS ...................................................................................................2

ARGUMENT .........................................................................................................................4

I.    STANDARD OF REVIEW. ..............................................................................................4

II.    THE COMMONWEALTH'S INTEREST IN MAINTAINING ITS SOVEREIGN IMMUNITY DEMANDS THAT THE COURT ADDRESS AND RESOLVE ELEVENTH AMENDMENT ISSUE BEFORE REACHING THE MERITS OF THE FIRST AMENDMENT CLAIM. .................................................................................................6

    A.    The Eleventh Amendment confers broad immunity from litigation in federal court on the states. ............................................................................................ 7

    B.    Because the Commonwealth's sovereign immunity from suit in federal court is at stake, the Court must adjudicate – one way or the other – the Secretary's Eleventh Amendment objection before the First Amendment issue can be reached. ............................................................................................................ 9

III.    PLAINTIFF'S ALLEGATIONS AND THE UNDISPUTED FACTS ARE INSUFFICIENT TO ESTABLISH JURISDICTION. .........................................................13

IV.    THE FACTS IN THE RECORD DEMONSTRATE THAT PLAINTIFF'S CLAIM AGAINST THE SECRETARY IS JURISDICTIONALLY BARRED IN THIS FORUM BY THE ELEVENTH AMENDMENT. ...........................................................................15

CONCLUSION................................................................................................................... 18

## INTRODUCTION

The Secretary moved to dismiss the claims against him in his official capacity under Rule 12(b)(1), invoking the provisions of the Eleventh Amendment to the United States Constitution that afford the states and their agencies immunity from suit in federal court.  The Eleventh Amendment reflects a bedrock principle of constitutional jurisprudence in the federal republic: that a private plaintiff is generally forbidden from coercing a non-consenting state to defend litigation in federal court.  Because the Eleventh Amendment implicates both a federal court's power to hear a case and a state's interest in its sovereignty, the Court is bound to address a properly raised assertion of Eleventh Amendment immunity, unless the Court can more easily dispose of the case in favor of the state on non-constitutional grounds.  And Courts have emphasized that deferring the resolution of any Eleventh Amendment immunity and prolonging the time that a state is forced to litigate in federal court would subvert the very reason for the Eleventh Amendment, because any such deferral would constructively abrogate the state's sovereign immunity.

The Secretary's motion to dismiss based on the Eleventh Amendment is now ripe for resolution, either on the face of the pleadings or on the uncontroverted facts now before the Court.  For the reasons set forth in the Secretary's motion to dismiss and for the reasons articulated below, the Court should adjudicate the Rule 12(b)(1) motion, it should do so now, and it should do so in favor of the Secretary.  The injunctive relief claim against the Secretary should be dismissed before any litigation on the merits of Plaintiff's First Amendment claim against the Secretary can commence.

**FACTUAL ALLEGATIONS**

On September 24, 2020, Plaintiff posted to his Twitter account (@va_shiva):



Am. Compl. at 18. Defendant Michelle Tassinari believed that this Tweet was false and constituted election misinformation. Am. Compl. at 23. She directed Defendant Debra O'Malley, who is the Communications Director for the Office of the Secretary of the Commonwealth and who administers the Election Division's official Twitter account (@VotingInMass), which Twitter considers a "trusted partner" account, to report to Twitter about Plaintiff's Tweet. Am. Compl. at 24. She did so by filling out a publicly available online form, reporting Plaintiff's Tweet as election misinformation and an alleged violation of Twitter's Terms of Use agreement. Am. Compl. at 24. Ms. O'Malley and Ms. Tassinari also reported Plaintiff's Tweet to the National Association of State Election Directors, a nonpartisan professional organization that disseminates election administration best practices and information across the states, with the expectation that it would also report Plaintiff's misleading Tweet to Twitter. Am. Compl. at 24-25. In response to the sole complaint from the Secretary's Office about this single Tweet, though, Twitter took no action. As Plaintiff admits, the misleading Tweet that the Secretary's Office reported was never deleted from Twitter. Am. Compl. at 18.

On September 25, 2020, Plaintiff published four additional Tweets to his account. Am. Compl. at 20-21. These four tweets alleged that the Commonwealth destroyed a million ballots from the September primary election and posted screenshots of Plaintiff's correspondence with Ms. Tassinari. Am. Compl. at 21-23. Nowhere does Plaintiff allege that anyone from the Secretary's Office directly complained to Twitter about these four Tweets from September 25, 2020; he asserts instead that NASED complained to Twitter about these Tweets with the Secretary's encouragement. Twitter, however, deleted these Tweets and temporarily suspended Plaintiff's access to his Twitter account pursuant to the company's Terms of Use. Am. Compl. at 28. After his initial suspension ended, Twitter twice more suspended Plaintiff for separate infractions. Am. Compl. at 52; Am. Compl. Exhibit A at 26, 40-42.

After Plaintiff filed suit, the Court held a hearing to consider a motion for preliminary injunction submitted by Plaintiff. During this hearing, the Secretary agreed to refrain from reporting Plaintiff's Tweets to Twitter until at least after the conclusion of the November election. See Docket No. 20 (order memorializing parties' agreement). Since that time, the Secretary's employees have not reported any of Plaintiff's Tweets to Twitter, and indeed, the proposed Second Amended Complaint does not suggest any facts to the contrary. See Tassinari February 9, 2021 Decl. at ¶ 3-7; February 9, 2021 Decl. at ¶ 3-7.

But in January 2021, in the wake of the violent attack on the U.S. Capitol, Twitter publicly announced a change in its disciplinary policies. See https://help.twitter.com/en/rules-and-policies/election-integrity-policy; Cardille Decl. ¶ 17. Under this policy, Twitter announced that it would deplatform any user who accumulated five or more "strikes," or violations of its Civic Integrity Policy. Id. Plaintiff rapidly accrued six strikes in less than a month, and ultimately Twitter permanently suspended his account. Cardille Decl. ¶ 23; Cardille Supplemental Decl. ¶ 4. Although Plaintiff speculates without any personal knowledge that his

Twitter ban was the result of some secret search algorithm that the Secretary asked Twitter to implement, Twitter, the only entity who can cogently speak to its computer algorithms and its disciplinary decisions, has unequivocally denied Plaintiff's fevered conjecture.  Twitter has testified that Plaintiff was deplatformed in February 2021 not because of anything the Secretary did or said in September 2020, but because of his own antics and repeated violations of Twitter's Terms of Use.  Cardille Decl. ¶ 24.

## ARGUMENT

The official capacity claim against the Secretary for injunctive relief should be dismissed because it is barred by the Eleventh Amendment, as well as for the other reasons set forth in the Secretary's motion to dismiss.[1]  Because the Secretary is invoking the immunity principles embodied by the Eleventh Amendment, his motion must be addressed now, before any litigation into the merits of Plaintiff's First Amendment claim can commence.

### I.  STANDARD OF REVIEW.

The Secretary contends that the official capacity claim against him is barred by the immunity provisions of the Eleventh Amendment, and as such, this Court lacks jurisdiction to entertain the injunctive relief claim.  Because an Eleventh Amendment defense goes to this Court's jurisdiction, it is properly resolved pursuant to the standards of Rule 12(b)(1).  Mills v. State of Me., 118 F.3d 37, 41 (1st Cir. 1997) (reviewing Eleventh Amendment challenge under Rule 12(b)(1)).  Under Rule 12(b)(1), there are two avenues by which the Secretary can mount a contest to this Court's jurisdiction: a facial challenge or a factual challenge.

The facial attack first accepts the plaintiff's "version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has

---

[1] The Secretary is submitting this supplemental memorandum on the Eleventh Amendment issue, as requested by the Court during the May 21, 2021 hearing.

4

propounded an adequate basis for subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). In performing this task, the Court credits only the plaintiff's well-pleaded "factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw[s] all reasonable inferences from them in [plaintiff's] favor, and dispose[s] of the challenge accordingly." Id.

By contrast, the "second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." Id. This second "type of challenge under Federal Rule of Civil Procedure 12(b)(1)," the First Circuit has noted, "permits (indeed, demands) differential factfinding," meaning that the plaintiff's "jurisdictional averments are entitled to no presumptive weight" and the Court is bound to "address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Id.; see also Torres–Negrón v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007) (describing generally the methods for resolving Rule 12(b)(1) motions). In a factual challenge, the Court must also determine "whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Id. at 163  The First Circuit has explained that where "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." Id. (citation omitted).  In other words, "where the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation and internal punctuation omitted). In this scenario, if "the plaintiff presents sufficient

5

evidence to create a genuine dispute of material (jurisdictional) facts," then the motion should be denied without prejudice so that the case may proceed to trial, where the factfinder can reevaluate the jurisdictional question at that point.[2]  Id.  In conducting this inquiry, the First Circuit has emphasized that a Court is given "considerable leeway" to satisfy "itself that subject-matter jurisdiction has attached" because a "court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function."  Valentin, 254 F.3d 363-64

Here, the Secretary contests both the facial sufficiency of Plaintiff's jurisdictional allegations (supplemented by uncontroverted affidavits) and the factual predicate of his jurisdictional claim.  Plaintiff's injunctive relief claim is facially and factually barred by the sovereign immunity provisions of the Eleventh Amendment, and this case cannot proceed in this Court.  Moreover, because the Court's very authority to entertain this suit notwithstanding the Commonwealth's sovereign immunity is at stake, the Secretary submits that this motion must be resolved first before any other litigation on the merits of the First Amendment claim may occur.  Accordingly, the Secretary renews his request that this case be dismissed.

**II.    THE COMMONWEALTH'S INTEREST IN MAINTAINING ITS SOVEREIGN IMMUNITY DEMANDS THAT THE COURT ADDRESS AND RESOLVE ELEVENTH AMENDMENT ISSUE BEFORE REACHING THE MERITS OF THE FIRST AMENDMENT CLAIM.**

The Eleventh Amendment affords the Commonwealth with an "immunity from suit," not

---

[2]    As set forth more specifically below, the Secretary submits that this case is not one where the jurisdictional Eleventh Amendment question is inextricably bound up in the merits of the First Amendment claim.  The doctrinal questions of state action and the First Amendment are distinct from the Eleventh Amendment question of whether the Secretary has continued to act in a way that can be enjoined under the narrow Ex parte Young exception.  The divide between these two concepts is particularly acute where, as here, Plaintiff has failed to even allege in his multitude of pleadings that Twitter's February 2021 decision to deplatform him was tied in any way to the Secretary's Office or the Secretary's single report to Twitter in September 2020.

merely a defense to litigation. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). Because "a motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a fundamental constitutional protection," id., one that impacts not only the Court's very ability to exert jurisdiction over the case but also its ability to hale the Commonwealth into Court at all, the Court is obliged to address this issue before any other litigation as to the merits of Plaintiff's First Amendment claim can be addressed. Indeed, the "value to the States of their Eleventh Amendment immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice." Id. Accordingly, the Court must issue a ruling one way or the other on this threshold issue before merits litigation on the First Amendment question may commence. By contrast, deferring the resolution of the Eleventh Amendment question would effectively vitiate the Commonwealth's sovereign immunity. The Court should, therefore, decide the question of the Eleventh Amendment now.

      **A.**      **The Eleventh Amendment confers broad immunity from litigation in federal court on the states.**

The Eleventh Amendment of the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Long interpreted as an affirmation of state sovereign immunity[,] ... [the] amendment (despite its literal text) also bar[s] a citizen from bringing a federal court action against his or her own State," Maysonet–Robles v. Cabrero, 323 F.3d 43, 48 (1st Cir. 2003) (citation and footnote omitted), including all instrumentalities of the state, such as state agencies, see Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429–30 (1997). The Eleventh Amendment, therefore, generally guarantees that "non-consenting States may not be sued by private

7

individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.... [T]his jurisdictional bar applies regardless of the nature of the relief sought.").

This broad grant of immunity to the states, however, "is subject to a well recognized exception memorialized in Ex parte Young," 209 U.S. 123, 159–60 (1908), which permits "federal courts, notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law." Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (alteration in original) (internal quotation marks omitted). But the exception created by Ex parte Young, the Supreme Court has emphasized, is "narrow." Puerto Rico Aqueduct, 506 U.S. at 146. The "pivotal question" under Ex parte Young is whether the relief sought by a plaintiff "serves directly to bring an end to a present violation of federal law." Whalen v. Mass. Trial Court, 397 F.3d 19, 29 (1st Cir. 2005) (internal quotation marks omitted) (state employee's claim for restoration of retirement credit was not prospective; though employee sought "no monetary reward," and relief sought "would have only future impact on the state," it was barred because there was no "ongoing violation" of federal law); Green v. Mansour, 474 U.S. 64, 68 (1985) (Ex parte Young permits only "injunctive relief to prevent a continuing violation of federal law"). In other words, the Ex parte Young exception only allows federal courts to exercise jurisdiction over a suit in which the private plaintiff alleges ongoing violations of federal law by the state; suits that seek redress for past wrongs are foreclosed by the Eleventh Amendment. Papasan v. Allain, 478 U.S. 265, 277-78 (1986) (noting that "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."); see

8

also Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 73 (1996) (explaining that a federal suit against a state official can go forward, notwithstanding the Eleventh Amendment's jurisdictional bar, where the suit seeks "only prospective injunctive relief in order to 'end a continuing violation of federal law.'"); Puerto Rico Aqueduct, 506 U.S. at 146 (noting that Ex parte Young "does not permit judgments against state officers declaring that they violated federal law in the past.").

In Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002), the Supreme Court set forth the sovereign immunity test as follows: "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Id. at 645 (alteration in original) (internal quotation marks omitted). In conducting this inquiry, the Supreme Court has emphasized the need to strike a proper balance "of federal and state interests that [the Eleventh Amendment] embodies." Papasan, 478 U.S. at 277. This is why the applicability of Ex parte Young must be "tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights" so that this exception to the Eleventh Amendment is not "stretch[ed]" beyond its narrow footprint. Id. (citation and internal punctuation omitted); see also Town of Barnstable v. O'Connor, 786 F.3d 130, 139 (1st Cir. 2015).

> **B.  Because the Commonwealth's sovereign immunity from suit in federal court is at stake, the Court must adjudicate – one way or the other – the Secretary's Eleventh Amendment objection before the First Amendment issue can be reached.**

"The Eleventh Amendment," the Supreme Court has declared, "is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued" in federal court. Puerto Rico Aqueduct, 506 U.S. at 146 n.5. "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial

9

tribunals at the instance of private parties." In re Ayers, 123 U.S. 443, 505 (1887). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." Puerto Rico Aqueduct, 506 U.S. at 146. This is why the First Circuit has characterized the Eleventh Amendment as reflecting "just as much a grant of immunity (i.e., a type of defense) as it is a limitation on courts' jurisdiction." Parella v. Retirement Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 55 (1st Cir. 1999)

Because Eleventh Amendment issues are tied to the twin questions of jurisdiction and a state's sovereign immunity to avoid being sued in federal court, some courts have held they must always address Eleventh Amendment questions before reaching any other issues. See, e.g., Seaborn v. Florida Dep't of Corrections, 143 F.3d 1405, 1407 (11th Cir. 1998) ("[A]n assertion of Eleventh Amendment immunity must be resolved before a court may address the merits of the underlying claim(s)."); Harris v. Owens, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once effectively raised, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction, and we may not then assume 'hypothetical jurisdiction' to reject a plaintiff's claim on the merits."); United States ex rel. Foulds v. Tex. Tech Univ., 171 F.3d 279, 285–88 (5th Cir. 1999). The First Circuit's approach is slightly more flexible; it has instructed that any Eleventh Amendment questions must generally be given primacy unless another, non-constitutional issue permits early termination of litigation in favor of the state, in which case a Court is given latitude to sidestep the Eleventh Amendment issue under the doctrine of constitutional avoidance. See Parella, 173 F.3d at 56 (1st Cir. 1999) (permitting courts to "avoid[] Eleventh Amendment questions where there are other dispositive issues" and granting judgment to defendants on other grounds); Mercado–Boneta v. Administracion del Fondo de Compensacion Al Paciente, 125 F.3d 9, 11–12 (1st Cir. 1997) (pretermitting "resolution of th[e] [Eleventh Amendment] jurisdictional issue" but dismissing case on other grounds); U.S.I. Props. Corp. v. M.D. Constr.

10

Co., 230 F.3d 489, 495 (1st Cir. 2000) (avoiding a complex Eleventh Amendment question in favor of a simpler statutory subject matter jurisdiction question, and resolving case in favor of state).[3]  But this First Circuit "precedent allows [federal courts] to defer thorny Eleventh Amendment questions," only where "it is perfectly clear that the state entity will prevail on the merits." Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007).  Therefore, where no such easy non-constitutional offramp from litigation exists, the Eleventh Amendment question must be confronted and answered.  See Brait Builders v. Mass. Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) (declining to "bypass the Eleventh Amendment question in this case because the answer to that question is quite straightforward"); Greenless v. Almond, 277 F.3d 601, 607 (1st Cir. 2002) (stating that Eleventh Amendment issues can be evaded only if other threshold issues dispose of case).

This principle – that questions pertaining to a state's sovereign immunity must generally be addressed with alacrity – has long been a feature of Eleventh Amendment litigation.  A century ago, the Supreme Court in Ex parte New York, 256 U.S. 490 (1921) recognized that Eleventh Amendment issues must be resolved with dispatch.  There, private citizens brought an in rem action in federal court against ships chartered and operated by New York.  The state moved to dismiss on the ground that the action was in the nature of an in personam proceeding and was therefore barred by the Eleventh Amendment.  The district court denied the motion to dismiss, and New York applied to the Supreme Court for an extraordinary writ of prohibition.  Although noting that the State's interest could have been vindicated on a post-judgment appeal, the Court nonetheless issued the extraordinary writ to safeguard fully New York's "fundamental"

---

[3]   For example, the Court could dismiss Plaintiff's official capacity claim against the Secretary for failure to state a claim without first addressing the Commonwealth's Eleventh Amendment immunity.

11

sovereign immunity rights.  Id. at 497-503.  More recently, in Puerto Rico Aqueduct, the Supreme Court concluded that a denial of a motion to dismiss on Eleventh Amendment grounds must be immediately appealable under the collateral order doctrine not only so that states can avoid being "unduly burdened by litigation," but also to allow states to "fully vindicate[] their "dignitary interests" in sovereign immunity.  506 U.S. at 146.  And indeed, this rule makes sense because courts are generally required to "adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case."  Brait Builders, 644, F.3d at 10.

      That is precisely the case here.  The Secretary has asserted the Eleventh Amendment immunity as a defense here, both as a facial challenge and as a factual attack.  The jurisdictional immunity question is ripe.  And it must now be answered – unless the Court dismisses this case on other non-constitutional grounds first.  Moreover, deferring resolution of the Eleventh Amendment immunity question would not permit the Court to avoid a constitutional issue under the doctrine of constitutional avoidance because the merits of this case present a novel First Amendment question.  As such, avoiding the threshold Eleventh Amendment issue would only cause this Court to run headlong into a different constitutional issue.  Accordingly, the doctrine of constitutional avoidance is not served by skirting the jurisdictional question under the circumstances presented by this case.

      Ultimately, the Secretary's invocation of the Eleventh Amendment, which simultaneously expresses the state's immunity from suit in federal court and impacts this Court's very ability to adjudicate Plaintiff's claim for injunctive relief, thus obliges this Court to decide – one way or the other – the Secretary's motion to dismiss.  For the ensuing reasons, the Secretary submits that this Court should grant the motion to dismiss the injunctive claim against him and vindicate the Commonwealth's Eleventh Amendment immunity.

### III. PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH JURISDICTION.

Plaintiff's claim for injunctive relief should first be dismissed because he fails to allege a facial claim for jurisdiction under Ex parte Young. That is, even if Plaintiff proves every allegation in his operative pleading or in his proposed new pleading, the Eleventh Amendment would still bar his suit. In his Amended Complaint (page 24) and again in his proposed Second Amended Complaint (page 25), Plaintiff alleges that on a single occasion last September, the Secretary's staff reported a single Tweet of Plaintiff's to Twitter. See also Amended Complaint at 28; Proposed Second Amended Complaint at 29. Twitter took no disciplinary action against Plaintiff in response to the Secretary's report of that single Tweet.[4] The Tweet reported by the Secretary's Office was never deleted from Plaintiff's Twitter feed, nor was it the basis for any sanction against him. Neither the Amended Complaint nor the proposed Second Amended Complaint allege that the Secretary reported any other of Plaintiff's Tweets to Twitter. Nor could Plaintiff's pleadings do so. In undisputed affidavits and in undisputed testimony to this Court (see Amended Complaint at 24-27), the Secretary's staff have corroborated that they only reported one of Plaintiff's Tweets to Twitter, no more. Tassinari February 9, 2021 Decl. at ¶ 3-4; February 9, 2021 Decl. at ¶ 3-4. And there is not a single allegation anywhere in Plaintiff's pleadings that would suggest otherwise. Moreover, there is nothing in the Amended Complaint or the proposed Second Amended Complaint that would link the Secretary's single September 2020 report – a report for which Twitter imposed no sanction – to Twitter's ultimate decision in February 2021 to deplatform Plaintiff.

---

[4] Plaintiff also alleges that at the same time, the Secretary's employees asked NASED to report another of Plaintiff's Tweets to Twitter. NASED reported a different Tweet, and Twitter sanctioned Plaintiff for this different Tweet. Amended Complaint at 28; Proposed Second Amended Complaint at 29.

13

Accordingly, under the Eleventh Amendment this Court facially lacks jurisdiction over Plaintiff's injunctive claims against the Secretary in his official capacity because nowhere does Plaintiff allege that the Secretary has engaged in an ongoing course of conduct that would continue to deprive Plaintiff of his federally protected constitutional rights; his claim is purely retrospective in nature, and thus the Ex parte Young doctrine does not apply.  See Puerto Rico Aqueduct, 506 U.S. at 146 (stating that Ex parte Young exception "does not permit judgments against state officers declaring that they violated federal law in the past."); Hootstein v. Collins, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) ("The Ex parte Young doctrine, then, only allows federal courts to exercise jurisdiction over a suit in which the plaintiff alleges ongoing violations of federal law; suits that seek redress of past wrongs are still barred by the Eleventh Amendment.").  The single report by the Secretary's office to Twitter, now more than eight months in the past, is not the kind of ongoing governmental conduct that is necessary to invoke the Ex parte Young exception.  This pleading failure is fatal to the injunctive relief claim against the Secretary; the Court lacks any basis for jurisdiction, and therefore it cannot grant the injunctive relief Plaintiff seeks and this claim must be dismissed on this basis alone.

This means that even assuming the state action doctrine applies such that any action Twitter took in February in response to the Secretary's only report months earlier would have been subject to the First Amendment, it remains true that in order to invoke Ex parte Young, Plaintiff has to plausibly plead an ongoing course of conduct by the Secretary, but he has not and cannot do so.  The only alleged ongoing conduct here is that Plaintiff remains suspended from Twitter.  But there is nothing in the pleadings plausibly alleging that the Secretary's Office ever asked for Plaintiff to be deplatformed – and, to be clear, the Secretary's Office did not report any of Plaintiff's Tweets after September 2020 – so even if Plaintiff is right that coordinated action between a state actor and Twitter could bring the state action doctrine into play – and, to be clear,

14

Defendants dispute this legal point – as a factual pleading matter Plaintiff has alleged nothing to link the Secretary with Twitter's February 2021 suspension, which means that Ex parte Young does not apply in this case.

**IV.    THE FACTS IN THE RECORD DEMONSTRATE THAT PLAINTIFF'S CLAIM AGAINST THE SECRETARY IS JURISDICTIONALLY BARRED IN THIS FORUM BY THE ELEVENTH AMENDMENT.**

In addition to this facial failure of Plaintiff's pleadings to establish a plausible claim of jurisdiction, the facts in the record now before this Court also demonstrate that the Eleventh Amendment bars this claim. The Court has all the relevant facts that it needs to adjudicate this factual challenge to jurisdiction – as evidenced by testimony and sworn declarations from the only people and entities with relevant personal knowledge – and it should do so, finding that there is no ongoing course of conduct on the part of the Commonwealth that would support the exercise of jurisdiction under the "narrow" Ex parte Young exception. Puerto Rico Aqueduct, 506 U.S. at 146.

The undisputable evidence shows that once, more than eight months ago, the Secretary reported one of Plaintiff's Tweets to Twitter, and it has not reported any of Plaintiff's Tweets since or otherwise requested that Twitter take any disciplinary action against Plaintiff. Moreover, Twitter has testified that its decision to deplatform Plaintiff months after the Secretary's sole report had nothing to do with the Secretary's actions; that decision was instead based upon its own editorial decision and based on Plaintiff's repeated violations of Twitter's terms of use. Specifically, the evidence shows:

- On September 25, 2020, the Secretary's Office filed a report with Twitter that one of Plaintiff's Tweets from September 24, 2020 violated Twitter's Terms of Use agreement. Cardille Decl. ¶ 10; Tassinari February 9, 2021 Decl. at ¶ 3; February 9, 2021 Decl. at ¶ 3.

15

- Twitter took no action against Plaintiff because of the Secretary's report. Cardille Decl. ¶ 11.

- On September 25, 2020, employees of NASED, allegedly at the urging of the Secretary's Office, also filed a report with Twitter that one of Plaintiff's Tweets from September 25, 2020 violated Twitter's Terms of Use agreement. Cardille Decl. ¶ 12; Cohen February 12, 2021 Decl. at ¶ 7-21.

- Twitter evaluated NASED's report and independently concluded that Plaintiff's September 25, 2020 Tweet violated Twitter's Terms of Use agreement. Twitter briefly suspended Plaintiff's account as a result of this violation. Cardille Decl. ¶ 15-16.

- Since September 25, 2020, neither the Secretary nor NASED has made any similar reports to Twitter. Tassinari February 9, 2021 Decl. at ¶ 4-6; O'Malley February 9, 2021 Decl. at ¶ 4-6.

- In the wake of the January 6, 2021 Capitol attack, Twitter updated its Terms of Service to institute a five-strike enforcement protocol for Tweets that Twitter deems violate its Civic Integrity policy. Under this policy, any user who accumulates five strikes will be deplatformed. Cardille Decl. ¶ 17.

- Between January 9, 2021 and the beginning of February 2021, Plaintiff accumulated six strikes for posting content that Twitter determined violated its Civic Integrity Policy. Cardille Decl. ¶ 19-24; Cardille Supplemental Decl. ¶ 3-4.

- As a result of these six strikes, Twitter decided to deplatform Plaintiff. This permanent suspension went into effect on February 2, 2021. Cardille Decl. ¶ 23; Cardille Supplemental Decl. ¶ 4.

- Nobody in the Secretary's Office asked Twitter to implement any search algorithms, including any that would result in discipline against Plaintiff. Tassinari February 9, 2021 Decl. at ¶ 7; O'Malley February 9, 2021 Decl. at ¶ 7.
- Twitter's decision to deplatform Plaintiff had nothing to do with the September 25, 2020 reports by the Secretary or NASED. Cardille Decl. ¶ 24.

All these facts – attested to by the only individuals and entities who have personal knowledge about these matters – are in the record. They are undisputed. Cumulatively, this evidence shows that there is no ongoing conduct by the Secretary that can be enjoined under the Ex parte Young exception. See Puerto Rico Aqueduct, 506 U.S. at 146.

Plaintiff's uninformed speculation to the contrary does nothing to detract from the evidence that is in the record from the only people who have personal knowledge of why Plaintiff was ultimately deplatformed. Ultimately, a factual challenge to jurisdiction calls for the Court to consider and weigh admissible, cogent evidence. And inadmissible evidence – including Plaintiff's conjecture and conspiracy theories – is not enough to change the jurisdictional outcome compelled by the evidence before the Court because "'[c]onclusory assertions' and 'unfounded speculation' are not enough to defeat a Rule 12(b)(1) motion." Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 240 (D. Mass. 2018) (citing Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016)). The admissible facts here show only one thing that is relevant to the Secretary's motion: any alleged misconduct by the state long ago ceased. As a result, this Court lacks jurisdiction. The Commonwealth's sovereign immunity must be respected. This case should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court address the Eleventh Amendment immunity issue immediately and dismiss the injunctive relief claim against the Secretary because it is barred by the Eleventh Amendment.

Respectfully submitted,

Defendants,

WILLIAM FRANCIS GALVIN, in his official and individual capacities, MICHELLE TASSINARI, in her individual capacity, and DEBRA O'MALLEY, in her individual capacity,

By their attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Adam Hornstine
Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO# 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Date: June 1, 2021

## CERTIFICATE OF SERVICE

I, Adam Hornstine, Assistant Attorney General, hereby certify that I have this day, June 1, 2021, served the foregoing **Memorandum**, upon all parties, by electronically filing to all ECF registered parties.

/s/ Adam Hornstine
Adam Hornstine