IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------
)
DR. SHIVA AYYADURAI,                    )
)
PLAINTIFF,          )          CASE NO. 1:20-CV-11889-MLW
)
V.                   )          **PROPOSED BRIEF *AMICUS***
)          ***CURIAE* OF CHILDREN'S**
WILLIAM FRANCIS GALVIN        )          **HEALTH DEFENSE IN**
*et al.*,                          )          **SUPPORT OF PLAINTIFF**
)
DEFENDANTS.          )
)
---------------------------------------------------------

**PROPOSED BRIEF *AMICUS CURIAE* OF CHILDREN'S HEALTH DEFENSE
IN SUPPORT OF PLAINTIFF AYYADURAI AND IN OPPOSITION
TO DEFENDANT TWITTER'S EFFORT TO BE DISMISSED**

## TABLE OF CONTENTS

Page #

TABLE OF AUTHORITIES .................................................................................................. i

PROPOSED BRIEF *AMICUS CURIAE* OF CHILDREN'S HEALTH DEFENSE IN
SUPPORT OF PLAINTIFF AYYADURAI AND IN OPPOSITION TO DEFENDANT
TWITTER'S EFFORT TO BE DISMISSED .................................................................... 1

Preliminary Statement ...................................................................................................... 1

Interest of Children's Health Defense as *Amicus Curiae* ............................................. 2

Argument ............................................................................................................................ 3

    Point I — This Court Can and Should Find That Twitter's Forum-Selection Clause is
    Both Inapplicable and Unenforceable in this Case ........................................................ 3

        A.    A Defendant Seeking to Enforce a Contractual Forum-Selection
            Clause Must Do So Through a Motion To Transfer Under 28 U.S.C.
            § 1404(a), Which is Not a Matter of Right, But Is Addressed to the
            Court's Discretion. .................................................................................. 3

        B.    Applicable Legal Standard ........................................................................ 4

        C.    Twitter's Forum-Selection Clause Does Not Apply to this Case ............... 4

            1.    *Twitter's Forum-Selection Clause Must Be Read Narrowly* .......... 4

            2.    *Because Twitter's Forum-Selection Clause Does Not Specify*
                *Whether or How It Applies When Plaintiff's Dispute Involves*
                *Non-California Third Parties, It Should Be Found Not To*
                *Apply to this Case.* ....................................................................... 5

        D.    Enforcement of the Clause Would Deny Plaintiff His Day in Court.......... 9

    Point II — The Partnership Pleaded in this Case Between State Officials and Twitter
    Adequately and Plausibly Alleges that Twitter's Conduct was State Action ................... 10

        A.    Applicable Legal Standards .................................................................... 10

        B.    The Allegations in this Case Plausibly State a Claim of State Action...... 12

Conclusion ....................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adickes v. S. H. Kress & Co.*,
    398 U.S. 144 (1970)............................................................................................14

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.*,
    591 F.3d 1 (1st Cir. 2009)....................................................................................4

*Atlantic Marine Constr. Co. v. United States Dist. Court*,
    571 U.S. 49 (2013)...............................................................................................3

*Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc.*,
    ___ F.3d ___, 2021 U.S. App. Lexis 14061 (1st Cir. May 12, 2021)...................4, 9

*Barrios-Velazquez v. Associcion De Empleados Del Estado Libre Asociado*,
    84 F.3d 487 (1st Cir. 1999)..................................................................................11

*Bass v. Parkwood Hosp.*,
    180 F.3d 234 (5th Cir. 1999) ...............................................................................11

*Bax Global, Inc. v. Ocean World Lines, Inc.*,
    No. 07 Civ. 10457 (NRB), 2009 U.S. Dist. Lexis 86180 (S.D.N.Y. Sept. 18, 2009)...............7

*Brill v. Correct Care Sols., LLC*,
    286 F. Supp. 3d 1210 (D. Colo. 2018)..................................................................12

*Burton v. Wilmington Parking Auth.*,
    365 U.S. 715 (1961)........................................................................................11, 12, 15

*Carmack v. Mass. Bay Transp. Auth.*,
    465 F. Supp. 2d 18 (D. Mass. 2006) ....................................................................11, 12, 15

*Casa Marie, Inc. v. Superior Court of P.R. for Dist. of Arecibo*,
    988 F.2d 252 (1st Cir. 1993)................................................................................14, 15

*Evans v. Valero Energy Corp.*,
    No. CV F 07-0130, 2007 U.S. Dist. Lexis 21402 (E.D. Cal. Mar. 6, 2007)............11

*Feliciano-Bolet v. P.R. Elec. Power Auth.*,
    No. 14-1631 (GAG), 2017 U.S. Dist. Lexis 8154 (D.P.R. Jan. 28, 2017)..............14

*George v. Edholm*,
    752 F.3d 1206 (9th Cir. 2014) .............................................................................1, 11, 13

*Glyphics Media, Inc. v. M.V. "Conti Sing."*,
    No. 02 Civ. 4398 (NRB), 2003 U.S. Dist. Lexis 4387 (S.D.N.Y. Mar. 20, 2003) ...................8

*Jones v. Ponant USA LLC*,
  No. 19 Civ. 3041 (NRB), 2020 U.S. Dist. Lexis 85176 (S.D.N.Y. May 14, 2020) .................7

*Lugar v. Edmondson Oil Co., Inc.*,
  457 U.S. 922 (1982)...............................................................................................................12

*Martinez v. Sun Life Assur. Co.*,
  948 F.3d 62 (1st Cir. 2020)......................................................................................................5

*Near v. Minnesota*,
  283 U.S. 697 (1931)...............................................................................................................13

*Norwood v. Harrison*,
  413 U.S. 455 (1973)...................................................................................................1, 10, 13

*Packingham v. North Carolina*,
  137 S. Ct. 1730 (2017)..............................................................................................................1

*Perkins v. Londonderry Basketball Club*,
  196 F.3d 13 (1st Cir. 1999)..............................................................................................11, 15

*Powell v. Couture*,
  No. 18-30146-MGM, 2020 U.S. Dist. Lexis 234556 (D. Mass. Mar. 24, 2020)....................14

*Rafael Rodriguez Barril, Inc. v. Conbraco Indus.*,
  619 F.3d 90 (1st Cir. 2010)......................................................................................................4

*Rawson v. Recovery Innovations, Inc.*,
  975 F.3d 742 (9th Cir. 2020) ...........................................................................................11, 15

*Skinner v. Railway Labor Executives' Ass'n*,
  489 U.S. 602 (1989)........................................................................................................10, 15

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)....................................................................................................................4

*Sullivan v. City of New York*,
  No. 18 Civ. 364 (PGG), 2019 U.S. Dist. Lexis 50812 (S.D.N.Y. Mar. 25, 2019) .................13

*The Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972).....................................................................................................................4

*United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001)..............................................................................10, 11, 12, 13, 15

*Winsor v. TBD Pizza, Inc.*,
  No. 19-cv-992-SM, 2021 U.S. Dist. Lexis 60769 (D.N.H. Mar. 30, 2021) ...........................4

**State Cases**

*Jacobson v. Mailboxes Etc. U.S.A.*,
   419 Mass. 572 (1995) ...................................................................................5, 9

*James B. Nutter & Company v. Estate of Murphy*,
   478 Mass. 664 (2018) ......................................................................................5

*M. Grieco Enters. v. McNamara*,
   No. PLCV2019-00989A, 2020 Mass. Super. Lexis 64 (Mass. Super. Apr. 2, 2020)...............6

*Sandquist v. Lebo Automotive, Inc.*,
   1 Cal. 5th 233 (2016) ......................................................................................5

**United States Constitution**

First Amendment ....................................................................................2, 10, 13
Fourteenth Amendment ..............................................................................14

**Federal Statutes**

28 U.S.C.
   § 1404(a) .......................................................................................................3

42 U.S.C.
   § 1983............................................................................................1, 12, 13, 14

47 U.S.C.
   § 230............................................................................................................10, 15
   § 230(c)(2)(A)...............................................................................................15

**Federal Rules of Civil Procedure**

Rule 12(b)(6)....................................................................................................12

**Other Authorities**

Instagram Terms of Use, 2017,
   https://www.facebook.com/help/instagram/1188470931252371 ........................................7, 8

Twitter's Forum-Selection Clause ...................................................................3, 4, 5, 8

Twitter Terms of Service, § 6,
   https://twitter.com/en/tos ...................................................................................4, 6

**PROPOSED BRIEF *AMICUS CURIAE* OF CHILDREN'S HEALTH DEFENSE
IN SUPPORT OF PLAINTIFF AYYADURAI AND IN OPPOSITION
TO DEFENDANT TWITTER'S EFFORT TO BE DISMISSED**

**Preliminary Statement**

Defendant Twitter is one of a handful of behemoth social media companies that act as gatekeepers for what the Supreme Court has called the "modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). As a result, these companies exercise a greater power over public discourse than any entity, public or private, has ever possessed before in American history. In this country, the highest governmental official cannot excise a single disfavored opinion or fact from even the smallest corner of public discourse. Yet every day Twitter dictates for hundreds of millions of Americans what opinions, what facts, what voices they're permitted to utter, see, and hear.

This vast censorship power doesn't by itself make Twitter—or Facebook or Google—a state actor. But it does mean that courts must be vigilant to apply well-established state action doctrine whenever governmental actors seek to harness these companies' extraordinary censorship powers to suppress speech the government disfavors. For it is "axiomatic that a state may not induce, encourage or promote private persons to accomplish what [the state] is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973). Yet that is precisely what is alleged in this case—and precisely what is happening, with increasing frequency, all over the country, because of an unholy, unconstitutional alliance between government officials and social media companies. When state officials violate this "axiomatic" principle, state action is present, and both the officials and private parties who intentionally assist them may be sued under Section 1983. *George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014).

## Interest of Children's Health Defense as *Amicus Curiae*

Children's Health Defense ("CHD") is no *amicus* of Plaintiff Shiva Ayyadurai himself. On the contrary, CHD has clashed intensely and publicly with Dr. Ayyadurai in the past. Indeed, Dr. Ayyadurai has sued CHD's founder and chair, Robert F. Kennedy, Jr., and wide political differences divide them as well. But the constitutional principles at stake in this case far outweigh any political differences, and on these principles Children's Health stands with Plaintiff, because CHD too has been a victim of the same kind of unholy, unconstitutional alliance between governmental officials and a social media company as alleged here.

CHD is an internationally prominent nonprofit organization dedicated to ending children's health epidemics by informing the public of the health risks of certain technologies and medical products. In pursuit of these goals, CHD frequently posts content on Facebook. But just as Massachusetts officials are alleged to have a trusted "partner" relationship with Twitter allowing them to direct removal of certain online content, so too Facebook has a publicly acknowledged "partner" relationship with federal governmental actors allowing the latter to direct removal of certain online content. As a result of this partnership, Facebook has repeatedly targeted, restricted, degraded, and censored CHD's speech online—including purely factual content such as data taken directly from government databases and reports of studies published in peer-reviewed scientific journals—and has ultimately terminated Mr. Kennedy's Facebook-owned Instagram account, just as Twitter has terminated Plaintiff Ayyadurai's Twitter account. Like Plaintiff Ayyadurai, CHD too has been forced to bring suit to vindicate its First Amendment rights against this public-private censorship alliance. For this reason, Children's Health Defense has a deep, direct, special interest in this case.

For the same reason, CHD has acquired substantial expertise in the law governing social media companies' forum-selection clauses and the constitutional doctrine applicable to censorship alliances between governmental officials and social media companies.   CHD therefore submits this brief in hopes of assisting the Court by showing: (1) that Twitter's forum-selection clause is both inapplicable and unenforceable here; and (2) that the partnership alleged by Plaintiff between Twitter and Massachusetts officials adequately and plausibly pleads state action.

## Argument

### Point I

### This Court Can and Should Find That Twitter's Forum-Selection Clause Is Both Inapplicable and Unenforceable in this Case

Twitter argues for its dismissal from this case on the basis of the forum-selection clause in its terms of service, which mandates litigation of certain disputes in California.  This Court can and should reject that argument.

### A.    A Defendant Seeking to Enforce a Contractual Forum-Selection Clause Must Do So Through a Motion To Transfer Under 28 U.S.C. § 1404(a), Which is Not a Matter of Right, But Is Addressed to the Court's Discretion.

As the Supreme Court has held, defendants seeking to enforce a contractual forum-selection clause must do so through a *forum non conveniens* motion to transfer under 28 U.S.C. § 1404(a).  *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 59 (2013). Such a transfer motion is not a matter of right, but rather is addressed to the District Court's discretion.  *See* 28 U.S.C. § 1404(a) ("in the interest of justice, a district court **may** transfer any civil action to . . . any district . . . to which all parties have consented") (emphasis added).  "The Court of Appeals for the First Circuit has recognized that '[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized,

case-by-case consideration of convenience and fairness.'" *Winsor v. TBD Pizza, Inc.*, No. 19-cv-992-SM, 2021 U.S. Dist. Lexis 60769 at * 9-10 (D.N.H. Mar. 30, 2021) (quoting *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))).

B.    **Applicable Legal Standard**

The First Circuit has established a three-step test for adjudicating motions to enforce a contractual forum-selection clause:

> [W]e first ask whether the forum selection clause is mandatory or permissive . . . Next, we look at the scope of the clause to see whether the claims at issue fall within it. . . . Finally, we consider whether the clause should be enforced. In so doing, we presume that the forum selection clause is "prima facie valid" and should not be set aside absent a "strong showing" of "some reason the presumption of enforceability should not apply."

*Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc.*, ___ F.3d ___, 2021 U.S. App. Lexis 14061 at * 11-12 (1st Cir. May 12, 2021) (citations omitted).   As to step three—determining "whether the clause should be enforced"—the First Circuit has repeatedly stated that a forum-selection clause is "unenforceable" if "proceedings 'in the contractual forum will . . . for all practical purposes [deprive the plaintiff] of his day in court.'" *Id*. at * 12; *Rafael Rodriguez Barril, Inc. v. Conbraco Indus.*, 619 F.3d 90, 93 (1st Cir. 2010) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

Twitter's forum-selection clause is mandatory, but it fails steps two and three of this test: it is both inapplicable and unenforceable here.

C.    **Twitter's Forum-Selection Clause Does Not Apply to this Case**

1. *Twitter's Forum-Selection Clause Must Be Read Narrowly*

Twitter's forum-selection clause appears in its contract-of-adhesion terms of service, binding all users on a take-it-or-leave it basis. Twitter Terms of Service, § 6,

https://twitter.com/en/tos.   As the Supreme Judicial Court of Massachusetts has stated, citing federal, Massachusetts, and California precedents:

> [Defendant] selected the language in its standard form of franchise agreement. ***That fact does not make the forum selection clause unenforceable, but it does support our conclusion that one need not read its own language expansively in Defendant's favor***.

*Jacobson v. Mailboxes Etc. U.S.A.*, 419 Mass. 572, 578 (1995) (emphasis added) (citations omitted).   Any ambiguity in Twitter's forum-selection clause must be construed strictly against Twitter.   *See, e.g.*, *James B. Nutter & Company v. Estate of Murphy*, 478 Mass. 664, 669 (2018) ("[w]hen [contractual] language is ambiguous, it is construed against the drafter"); *Martinez v. Sun Life Assur. Co.*, 948 F.3d 62, 69 (1st Cir. 2020) (recognizing "doctrine of contra preferentem," under which ambiguous contractual language must be "strictly construed" against drafter); *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) ("[T]he rule requiring the resolution of ambiguities against the drafting party 'applies with peculiar force in the case of a contract of adhesion.'").   "Where the drafter of a form contract has prepared [a] provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision *be construed against the drafter's interpretation and in favor of the nondrafter's interpretation*."   *Sandquist*, 1 Cal. 5th at 248 (emphasis added).[1]   Accordingly, Twitter's forum-selection clause is to be read narrowly.

> 2.   *Because Twitter's Forum-Selection Clause Does Not Specify Whether or How It Applies When Plaintiff's Dispute Involves Non-California Third Parties, It Should Be Found Not To Apply to this Case*.

Twitter's forum-selection clause consists of a single sentence:

> *All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States*. . . .

---

[1] This Court has not yet determined whether federal, Massachusetts, or California law governs the interpretation of Twitter's forum-selection clause.   As shown above, all agree on the points made here.

Twitter Terms of Service, § 6, https://twitter.com/en/tos.  While Twitter of course emphasizes the word "all" in this sentence, Submission by Proposed Defendant Twitter at 12, and argues that the clause therefore clearly covers this case, the fact is that the sentence is highly ambiguous.

The crucial question left open and unclarified by the clause is—disputes *between whom*? And specifically, *does the clause apply to a dispute arising between a plaintiff and out-of-state third parties when Twitter may be a necessary party to that dispute?*

Taken literally, under its plain meaning, especially with the emphasis on "all" (as Twitter would have it), Twitter's forum-selection clause would apply to a lawsuit brought *solely* against third parties, with no claims asserted against Twitter, so long as the dispute was "related" in some way to Twitter.  *See* Twitter Terms of Service, § 6, https://twitter.com/en/tos ("*All* disputes related to . . . the Services will be brought solely in the federal or state courts located in San Francisco County, California") (emphasis added).  On this plain-meaning interpretation, Plaintiff Ayyadurai's suit would have to be brought in California even if Plaintiff had never added Twitter as a defendant and even if Twitter were never joined as a party.  Does Twitter's forum-selection clause have that meaning?  Was it intended to produce that result?  The answer is presumably no, but if the answer is no, it follows that the language of the clause is ambiguous.  The phrase "all disputes related to . . . the Services" cannot mean what it says; thus its meaning is not unequivocal, but is instead open to different interpretations.  *See M. Grieco Enters. v. McNamara*, No. PLCV2019-00989A, 2020 Mass. Super. Lexis 64 at * 12 (Mass. Super. Apr. 2, 2020) (finding contractual provision requiring arbitration of "any disputes" to be "ambiguous" because it did not "manifest[] an unequivocal intent" to apply to third-party claims).

Even if the word "disputes" in Twitter's forum-selection clause is taken to mean "disputes between the user and Twitter," the clause is still wholly silent as to its applicability

when a plaintiff has a dispute with non-California third parties—third parties over whom California courts may have no jurisdiction—and sues those parties in their own state, with Twitter only being joined as a potentially necessary party defendant.  Is that a dispute between the user and Twitter to which the forum-selection clause applies, or is that a dispute between the user and third parties to which the clause does not apply?  Again, the clause itself does not say. If the clause purportedly applies to such a dispute, does it mean that the entire cause of action must then be brought in California, against all parties?  Or does it mean that there must be two divided and duplicative lawsuits, one in California against Twitter, and one in the state where jurisdiction may be had over the third parties?  Once again, the language of the clause provides no answer, because it says nothing about whether or how it applies when the dispute in question centrally or necessarily involves third parties.

Cementing the existence of this ambiguity is the fact that other Big Tech social media companies *have* provided a clear answer to such questions in their dispute-resolution clauses. For example, Instagram's 2017 terms of service state:

> you agree that ***all disputes between you and Instagram (whether or not such dispute involves a third party)*** with regard to your relationship with Instagram, including without limitation disputes related to these Terms of Use, your use of the Service, and/or rights of privacy and/or publicity, will be resolved by binding, individual arbitration . . . .

Instagram Terms of Use, 2017, https://www.facebook.com/help/instagram/1188470931252371 (emphasis added).  Similar language can be found in many forum-selection clauses.  *See, e.g.*, *Jones v. Ponant USA LLC*, No. 19 Civ. 3041 (NRB), 2020 U.S. Dist. Lexis 85176 at * 3 (S.D.N.Y. May 14, 2020) (discussing "forum-selection clause stating that '[o]nly the courts in the area of the Marseille District Court, France, have jurisdiction to hear any proceedings initiated against CDP . . . *even in the event that third parties are involved*'") (emphasis added); *Bax Global, Inc. v. Ocean World Lines, Inc.*, No. 07 Civ. 10457 (NRB), 2009 U.S. Dist. Lexis

86180 at * 2 (S.D.N.Y. Sept. 18, 2009) ("the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction *to hear all disputes hereunder including third party proceedings or those involving several defendants*") (emphasis added); *Glyphics Media, Inc. v. M.V. "Conti Sing."*, No. 02 Civ. 4398 (NRB), 2003 U.S. Dist. Lexis 4387 at * 2 (S.D.N.Y. Mar. 20, 2003) ("Any claim or dispute (if any) arising under this Bill of Lading, *including third party proceedings [or] those involving several defendants,* shall be . . . determined by the Court of the place where the Carrier (as specified above) has his registered office") (emphasis added).

By contrast to Twitter's ambiguous clause, the Instagram clause clearly states that the disputes to which it applies are disputes between the user and Instagram, and it further clarifies that the clause applies "***whether or not such a dispute involves a third party.***" Instagram Terms of Use, *supra*. Twitter's clause lacks this clarity.  It is simply but entirely ambiguous as to whether or how the clause applies when the dispute "involves a third party."  This doesn't mean that every Twitter user whose dispute is centrally against Twitter can avoid litigating in California merely by adding a third-party defendant.  But it does mean that where, as here, the suit centrally involves a dispute between a plaintiff and out-of-state third parties over whom a California court may have no jurisdiction, and Twitter's status is that of a potentially necessary party, Twitter's forum-selection clause is unclear about its own applicability, and that ambiguity must be construed in Plaintiff's favor.

Twitter is surely aware, or should have been aware, or can be charged with awareness, of the language used by other social media giants in their dispute-resolution clauses.  If Twitter had wanted to make clear that its forum-selection clause applies "whether or not [the] dispute involves a third party," it could and should have said so.  Having failed to include this simple

clarifying phrase, Twitter left its clause ambiguous, and under all the authorities cited above, that ambiguity must be construed strictly against Twitter.  Accordingly, Twitter's forum-selection clause should be held inapplicable to this case.

D.  **Enforcement of the Clause Would Deny Plaintiff His Day in Cour**t.

Even if Twitter's forum-selection clause covers this case—which it does not—it would still be unenforceable because transferring this case to California would "for all practical purposes" deprive Plaintiff "of his day in court."  *Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc.*, ___ F.3d ___, 2021 U.S. App. Lexis 14061 at * 11-12 (1st Cir. May 12, 2021). Whereas Twitter is indisputably subject to the jurisdiction of this Court here in Massachusetts, the Massachusetts officials who are defendants in this case will likely not (whether in their official or personal capacity) be subject to a California court's jurisdiction.  Thus the result of a transfer of these proceedings to California will be either dismissal for lack of an indispensable party, or at best an inability on Plaintiff's part to litigate his claims effectively because the California court will not have the Massachusetts state officials before it to testify, to comply with discovery orders, and so forth.

Nor can Twitter argue that Plaintiff is free to prosecute two separate actions—one in California against Twitter, and this one in Massachusetts against the state officials.  First, this result would contravene public policy.  See *Jacobson v. Mailboxes Etc.*, *supra*, 419 Mass. at 580 (refusing to enforce forum-selection clause by severing lawsuit where clause applied to some but not all claims) ("We share the view of the California Supreme Court that separate actions should not be encouraged.").  Second, more fundamentally, it would leave no court able to fully order the relief Plaintiff seeks because no court would have all the necessary parties before it.   Thus even if Twitter's forum-selection clause applied to Plaintiff's claims against Twitter, the clause

would be unenforceable because it would for all practical purposes deny Plaintiff his day in court.

**Point II**

**The Partnership Pleaded in this Case Between State Officials and Twitter Adequately and Plausibly Alleges that Twitter's Conduct was State Action**

As *amicus curiae*, CHD will not argue the facts of this case. Instead, CHD will take as true Plaintiff's allegations and attempt to assist the Court in answering the question raised in Your Honor's May 13, 2021 order: "whether Twitter's conduct should be deemed to be state action subject to the limitations of the Free Speech Clause of the First Amendment." Respectfully, CHD submits that the answer is clearly yes.

A.     **Applicable Legal Standards**

The Supreme Court has articulated numerous different tests and factors applicable to a state action finding in cases where a plaintiff alleges that government officials were involved in private party conduct. For example, state action can be found "when [the private party's conduct] results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity'" with the government. *United Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (citations omitted).

In addition, private party conduct can become state action when a statute or regulation (like Section 230 of the Communications Decency Act) immunizes that conduct from state law liability and the government has made plain its "strong preference" that the conduct be engaged in. *See, e.g., Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 615 (1989).

Crucially to this case, state action also exists if governmental actors deliberately set out to induce private parties to do what the government is constitutionally barred from doing. *Norwood*

10

*v. Harrison*, 413 U.S. at 465 (it is "axiomatic that [the state] may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish") (citation omitted).   When governmental officials violate this "axiomatic" principle, by deliberately "inducing, coercing, promoting, or encouraging private parties" to do what government cannot constitutionally do, the private party's conduct is state action.  *George v. Edholm*, 752 F.3d at 1215.

Private party conduct can also become state action when it results from a "symbiotic relationship" between the private party and the government.  *See, e.g.*, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999); *Carmack v. Mass. Bay Transp. Auth.*, 465 F. Supp. 2d 18, 27 (D. Mass. 2006).

Satisfaction of any one of the state action tests "requires that [the Court] find indirect state action."  *Barrios-Velazquez v. Associcion De Empleados Del Estado Libre Asociado*, 84 F.3d 487, 493 (1st Cir. 1999); *Carmack*, 465 F. Supp. 2d at 27.  But courts may also view these indicia of governmental involvement as cumulative factors, each weighing in favor of a state action finding, that can be added to one another to establish state action.  *See, e.g.*, *Rawson v. Recovery Innovations, Inc*., 975 F.3d 742, 754-55 (9th Cir. 2020).

Ultimately, the determination of whether private party conduct constitutes state action is "necessarily a fact-bound inquiry," *Brentwood*, 419 U.S. at 298, requiring a "totality of the circumstances" analysis. *Evans v. Valero Energy Corp*., No. CV F 07-0130, 2007 U.S. Dist. Lexis 21402 at * 9 (E.D. Cal. Mar. 6, 2007).  "Under any formula, . . . the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case."  *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999).

As a result, where the state action allegations concern joint activity between governmental actors and private parties, a state action determination is generally inappropriate on the pleadings, instead requiring discovery and development of a factual record:

> The Supreme Court has repeatedly emphasized the complicated nature of the state action inquiry. In *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961), the Court stated, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." In *Brentwood Acad. v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295-96, the Supreme Court stated, "What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action . . . ." Moreover, the Court notes that in this case, state action is a "necessarily fact-bound inquiry". For this separate reason, the Court easily concludes that Defendants' arguments that they are not state actors for purposes of Plaintiff's § 1983 claim form an inappropriate basis for dismissal under Rule 12(b)(6). *Lugar*, 457 U.S. at 939.

*Brill v. Correct Care Sols., LLC*, 286 F. Supp. 3d 1210, 1217 (D. Colo. 2018). *See also Carmack*, 465 F. Supp. 2d at 28 ("The inquiry, under any of these theories, is necessarily fact-intensive, and the ultimate conclusion regarding state action must be based on the particular facts and circumstances of the case."). Given the fact-intensive, potentially covert or complex relationships between Twitter and state officials alleged here, the development of a factual record is necessary.

B.    **The Allegations in this Case Plausibly State a Claim of State Action**

Plaintiff's proposed Second Amended Complaint, taking its allegations as true and drawing reasonable inferences in Plaintiff's favor, asserts the following facts: (1) that Twitter and a Massachusetts state agency, together with various state officials acting on its behalf, knowingly and deliberately entered into a "partnership" arrangement with the mutual objective of removing certain content from Twitter—content to which state officials objected; (2) that under this mutually agreed-to partnership, Massachusetts officials were authorized to report third-party tweets relating to Massachusetts as "misinformation" if so determined by

Massachusetts state actors; (3) that such state officials' reports were given special priority by Twitter; and (4) that in response to such reports, Twitter would remove the objected-to tweets "as a matter of priority and without necessarily independently checking the veracity of their complaints, as they come from a State office that is a 'Twitter Partner.'"  Plaintiff's Second Amended Complaint at p. 28.

Under the case law described above, these pleadings plausibly allege state action.

First, accepting the allegations as true, Massachusetts state officials violated the "axiomatic" principle "that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish."  *Norwood v. Harrison*, 413 U.S. at 465.   Under the First Amendment, state officials are paradigmatically "forbidden to accomplish" censorship of political speech; having such speech removed from discourse (without any pre-censorship process for determining whether such speech was in any way unlawful) would be a classic, unconstitutional prior restraint.  *See Near v. Minnesota*, 283 U.S. 697, 713-14 (1931).   Thus according to Plaintiff's allegations, Massachusetts officials deliberately and successfully sought to "induce, encourage or promote [Twitter] to accomplish what [they were] constitutionally forbidden to accomplish."  *Norwood*, 413 U.S. at 465.  When state officials violate this "axiomatic" principle, the private party's conduct is state action, and both the officials and the private parties who intentionally assist them can be sued under Section 1983.  *George v. Edholm*, 752 F.3d at 1215.

Second, again accepting Plaintiff's allegations as true, Twitter operated as a "willful participant in joint activity" with Massachusetts, converting Twitter's conduct into state action. *Brentwood*, 531 U.S. at 298.  "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor" and state officials. *Sullivan v. City of*

*New York*, No. 18 Civ. 364 (PGG), 2019 U.S. Dist. Lexis 50812 at * 20 (S.D.N.Y. Mar. 25, 2019) (citations omitted).  Under First Circuit case law, a "conspiracy" between state and private actors automatically satisfies the "joint activity" test.  "An actual conspiracy between a state [official] and a party attempting a plainly prohibited act would constitute 'state action.'" *Powell v. Couture*, No. 18-30146-MGM, 2020 U.S. Dist. Lexis 234556 at * 19-20 (D. Mass. Mar. 24, 2020) (quoting *Casa Marie, Inc. v. Superior Court of P.R. for Dist. of Arecibo*, 988 F.2d 252, 259 (1st Cir. 1993)).

A "conspiracy" between state and private actors for Section 1983 purposes is not an agreement to commit a crime.  Rather, it is simply an "agreement" or "understanding" the goal of which is to bring about what would be a violation of an individual's constitutional rights if the state engaged in the relevant conduct directly:

> One way to show that a private citizen participated in joint activity with the State or its agents is by showing that the private party engaged in a conspiracy with the State or its agents to form a common goal to violate the plaintiff's federal constitutional rights. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) (holding that a store employee who reached an understanding with a policeman to deny the petitioners access to a store "plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights"). . . .  A private party involved in such a conspiracy with the state or its agents is therefore considered to be acting under color of state law to be liable under section 1983 for the deprivation of a plaintiff's constitutional rights. *See Adickes*, 398 U.S. at 152 ("Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law.").

*Feliciano-Bolet v. P.R. Elec. Power Auth.*, No. 14-1631 (GAG), 2017 U.S. Dist. Lexis 8154 at * 24 (D.P.R. Jan. 28, 2017).

Plaintiff Ayyadurai's allegations state just such a conspiracy.  Taken as true, the partnership alleged in Plaintiff's complaint was an "agreement" or "understanding" between Twitter and Massachusetts officials allowing those officials to direct Twitter to take down speech to which the government objected—in other words, to bring about by "indirect" means a "deprivation of [the] plaintiff's constitutional rights." *Id*. Thus Plaintiff has alleged "willful

participa[tion] in joint activity" between Twitter and Massachusetts sufficient for state action. *Brentwood*, 531 U.S. at 298; *Casa Marie, Inc.*, 988 F.2d at 259.

Finally, there are other indicia of state action alleged in this case, which the Court may consider as factors weighing in the state action balance as the Ninth Circuit did in *Rawson v. Recovery Innovations, Inc.*, 975 F.3d at 754-55.  For example, one factor weighing heavily in favor of state action is a "symbiotic relationship" between governmental and private actors.  *See, e.g.*, *Burton v. Wilmington Parking Auth.*, 365 U.S. at 725; *Perkins*, 196 F.3d at 18; *Carmack*, 465 F. Supp. 2d at 27.  Drawing reasonable inferences in Plaintiff's favor, the partnership between Twitter and Massachusetts is just such a "symbiotic relationship."  Massachusetts, for its part, indirectly suppressed speech criticizing the state's election processes and potentially revealing wrongdoing by state officials.  At the same time, Twitter could be seen to be cracking down on so-called election misinformation, which it has been under intense public pressure to do.  Further benefits to Twitter and the state from this "partnership" may exist as well; Plaintiff is entitled to discovery to explore them.

Another factor weighing in favor of state action is the immunity granted to Twitter by Section 230 of the Communications Decency Act.  *See* 47 U.S.C. § 230(c)(2)(A) (immunizing social media companies from liability for action taken to "restrict" speech they deem "objectionable," even if that speech is "constitutionally protected").  In *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. at 615, the Supreme Court found that a similar immunity law turned a private company's immunized conduct into state action where the immunity law, like Section 230, merely permitted (rather than mandated) the immunized conduct, and where the government had "made plain" its "strong preference" that the conduct be engaged in.  Those factors are present in this case too.  On all these grounds, Plaintiff has plausibly alleged state action.

## Conclusion

For the reasons stated above, Children's Health Defense urges the Court to reject Twitter's effort to be dismissed from this case.


Dated:  June 4, 2021

Respectfully Submitted,

_____

Stefan L. Jouret, BBO # 656196
JOURET LLC
Two Center Plaza, Ste 610
Boston, MA 02108
(617) 523-0133 (tel)
(617) 507-2576 (fax)
jouret@jouretllc.com

ROLF HAZLEHURST (pro hac vice pending)
Children's Health Defense
1227 North Peachtree Parkway, Suite 202
Peachtree City, GA 30269
(917) 743-3868
rolf.hazlehurst@childrenshealthdefense.org

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants and that it will also be sent via email to the pro se plaintiff and counsel for the above-captioned parties on June 4, 2021.

_____

Stefan L. Jouret