# Exhibit A

```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    DR. SHIVA AYYADURAI,              )
                         Plaintiff,    )
 4                                      )
      vs.                               )
 5                                      )
      WILLIAM FRANCIS GALVIN,           )
 6    MICHELLE K. TASSINARI, DEBRA      )
      O'MALLEY, AMY COHEN, NATIONAL     )  No. 20-CV-11889-MLW
 7    ASSOCIATION OF STATE ELECTION     )
      DIRECTORS, all in their           )
 8    individual capacities, and        )
      WILLIAM FRANCIS GALVIN, in his    )
 9    official capacity as the          )
      Secretary of the Commonwealth     )
10    of Massachusetts, et al.,         )
                         Defendants.    )
11

12

13               BEFORE THE HONORABLE MARK L. WOLF
                SENIOR UNITED STATES DISTRICT COURT JUDGE
14              SCHEDULING CONFERENCE BY VIDEOCONFERENCE

15

16

17            John Joseph Moakley United States Courthouse
                           One Courthouse Way
18                    Boston, Massachusetts 02210

19                           June 15, 2021
                              2:42 p.m.
20

21

22             Kathleen Mullen Silva, RPR, CRR
                        Official Court Reporter
23            John Joseph Moakley United States Courthouse
                      One Courthouse Way, Room 7209
24                    Boston, Massachusetts 02210
                      E-mail: kathysilva@verizon.net
25
                   Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2
              Todd & Weld LLP
 3            Howard M. Cooper, Esq.
              Max D. Stern, Esq.
 4            Benjamin J. Wish, Esq.
              One Federal Street
 5            Boston, Massachusetts 02110
              617.720.2626
 6            for Plaintiff

 7
              Assistant Attorney General Adam Hornstine
 8            Assistant Attorney General Anne L. Sterman
              Attorney General's Office
 9            One Ashburton Place, 18th Floor
              Boston, Massachusetts 02108
10            617.963.2048
              for William Francis Galvin, Michelle K. Tassinari,
11            Debra O'Malley, Amy Cohen and National Association of
              State Election Directors

12

13            Nolan Mitchell, Esq.
              Quarles & Brady LLP
14            1701 Pennsylvania Avenue, Suite 700
              Washington, DC 20006
15            202.780.2644
              for National Association of State Election Directors
16            and Amy Cohen

17
              Wilmer Cutler Pickering Hale and Dorr LLP
18            Felicia H. Ellsworth, Esq.
              Ari Holtzblatt, Esq.
19            Patrick J. Carome, Esq.
              60 State Street
20            Boston, Massachusetts 02109
              617.526.6000
21            for Twitter, Inc.

22

23

24

25
```

```
 1                      P R O C E E D I N G S

 2          THE CLERK:  Civil Action 20-11889, Dr. Shiva Ayyadurai

 3    v. William Francis Galvin, Michelle Tassinari, Debra O'Malley,

 4    Amy Cohen and National Association of State Election Directors.

 5    Participants are reminded that recording and/or rebroadcasting

 6    of this hearing is prohibited and may result in sanctions.

 7          THE COURT:  And at the outset, let me reinforce that

 8    admonition.  As I said in May, after one participant improperly

 9    tweeted the proceedings, I think put them on YouTube and was

10    sanctioned, it's essential that this proceeding not be recorded

11    or transmitted in any way.  We have, because of the COVID-19

12    pandemic, the rare opportunity to make federal judicial

13    proceedings available to the public without requiring that they

14    come to the courtroom.  This is actually something I, among

15    others, have long advocated.  But last time there were close to

16    500 people watching the hearing.  Today there are many dozens.

17    And for those who want to take advantage of this opportunity,

18    it's essential that they adhere to the rules.

19          I had the option today to make this proceeding

20    available only by audio, but I thought I would try once more to

21    do it by video.  I expect that if our authority to permit video

22    conferences continues and there are violations of the court's

23    requirements today, I'll not authorize video for people who are

24    not parties or lawyers in the future.

25          Would counsel please identify themselves for the court
```

 1    and for the court reporter.

 2           MR. COOPER:  Certainly.  Good afternoon, Your Honor.

 3    Howard Cooper for Dr. Shiva Ayyadurai, and I have my colleagues

 4    Max Stern and Ben Wish I see on the screen, and I do see

 5    Dr. Shiva on the screen as well.

 6           THE COURT:  Yes.  And for the defendants, starting

 7    with what I'll call the Galvin defendants.

 8           MR. HORNSTINE:  Good afternoon, Your Honor.  Assistant

 9    Attorney General Adam Hornstine.  My pronouns are he/him/his,

10    and I'm here today on behalf of Secretary Galvin, Michelle

11    Tassinari and Debra O'Malley.

12           MS. STERMAN:  Good afternoon, Your Honor.  Assistant

13    Attorney General Anne Sterman on behalf of those same

14    Commonwealth defendants.

15           MR. MITCHELL:  Good afternoon, Your Honor.  Nolan

16    Mitchell from Quarles & Brady.  I represent the National

17    Association of State Election Directors and Amy Cohen.

18    Ms. Cohen is here today, as is Keith Ingram, I-n-g-r-a-m, who

19    is the NASED representative.

20           THE COURT:  Thank you.  And from Twitter.

21           MS. ELLSWORTH:  Good afternoon, Your Honor.  Felicia

22    Ellsworth from WilmerHale on behalf of non-party Twitter.  I'm

23    joined by my partners Ari Holtzblatt and Pat Carome as well

24    also on behalf of non-party Twitter.

25           THE COURT:  Okay.  When the May 21 -- May 20 and May

1   21 hearings ended, I stopped in part because the plaintiff, who

2   likes to be known as Dr. Shiva, expressed an interest in being

3   represented by counsel, which I encouraged because there are

4   profound legal issues, complex legal issues involved in this

5   case, and important related factual issues as well.

6         Since May 21, pursuant to my orders, all of the

7   parties reported that they did not believe that my limited

8   association with Ms. Ellsworth, counsel for Twitter, could

9   cause a reasonable person to question my impartially, and,

10   therefore, they agreed that my recusal is not required by 28

11   United States Code Section 455(a).  In addition, all except the

12   plaintiff stated that they waived any Section 458 grounds

13   relating to Ms. Ellsworth for my disqualification, as they're

14   permitted to do under Section 455(e).

15         In addition, Howard Cooper, Max Stern, Benjamin Wish

16   of Todd & Weld I'm told have been retained by the plaintiff and

17   filed appearances in this case.  I had discussed appointing

18   Mr. Cooper under a District of Massachusetts program that

19   allows the use of up to $10,000 in attorney admissions funds,

20   not appropriated funds, to cover expenses.  But it's my

21   understanding, and it can be clarified, that that is not now

22   necessary.  Dr. Shiva has retained his present lawyers, I'm

23   told.

24         Dr. Shiva requested that I authorize hybrid

25   representation which would allow him, as well as his lawyers,

1   to address the court.  The defendants objected, and in my June

2   1 order, docket 135, I noted that I have the discretion to

3   allow hybrid representation.  It's usually not appropriate, but

4   I would consider requests by the plaintiff to speak -- requests

5   made by his lawyers for him to speak on a case-by-case basis.

6          Also, since May 21, the Galvin defendants filed a

7   memorandum, as I encouraged, concerning the motion to dismiss,

8   their motion to dismiss, based on the 11th Amendment in

9   addressing the *Ex Parte Young* exception to what would otherwise

10  be an 11th Amendment bar to jurisdiction.  I've also received

11  additional requests to participate from potential amici,

12  including from the Children's Health Defense organization,

13  which address, among other things, issues raised by Twitter's

14  forum selection clause defense.

15         As I ordered the parties, and Twitter conferred, the

16  plaintiff proposed an agenda for today.  The defendants and

17  Twitter responded.  As I understand it, there's some areas of

18  agreement and some disagreements.  And in my view, much, if not

19  all, of this is organic.

20         So I think it may be most effective if I tell you what

21  my present thinking is on the issues that you've raised as I

22  understand them and my tentative view as to how to proceed from

23  here, and then you'll all have an opportunity -- all the

24  lawyers will have an opportunity to address it.

25         So unless there have been some material developments

1    since the recent reports -- well, let me ask this:  Have there

2    been any material developments since the recent reports,

3    Mr. Cooper?

4            MR. COOPER:  No, Your Honor.

5            THE COURT:  All right.  And -- all right.  I assume

6    there haven't.  So here's my understanding based on your

7    reports and my thoughts about how to proceed, my tentative

8    thoughts.  The plaintiff requests 30 days, until July 15, to

9    file a revised second amended complaint.  The parties and

10   Twitter agree that would be appropriate.  Putting aside the

11   timing for the moment, I agree that would be desirable too.

12   And when I say "timing" I'd like to put proceedings on a

13   schedule that we can have another up to two days perhaps of

14   hearings in mid to late August, ideally.

15           The plaintiff needs to decide whether to reallege

16   certain -- the plaintiffs should decide whether to reallege

17   certain claims that I indicated I was likely to dismiss.  And

18   some of this I'm doing because Mr. Cooper and his colleagues

19   have to catch a moving train, and some of these things were

20   discussed at length for two days in May.  But in May I

21   expressed the tentative view that the claim against Amy Cohen

22   of NASED in her individual capacity for damages would probably

23   be dismissed based on what I had been presented with.

24           I think there's a good discussion of what I understand

25   the applicable standards to be in Judge Saylor's decision in

1    M-R Logistics, 537 F.Supp. 2d 269 to -- I'm sorry -- 537

2    F.Supp. 2d 269, 279 to 281.  Basically, as I understand it, and

3    this wasn't briefed or briefed well by the plaintiff when he

4    was pro se, when a person acts for an organization without any

5    potential benefit for herself, she can't be held individually

6    liable and ordered to pay money damages if the claim is

7    meritorious.

8           So if the revised second amended complaint, or

9    proposed second amended complaint includes a claim against Amy

10   Cohen in her individual capacity, unless I change my mind,

11   consider yourself ordered to file a memorandum that addresses

12   the bases for that claim under Federal Rule of Civil Procedure

13   11 and the applicable law.  And that's a memo that will need to

14   be filed with the second amended complaint to expedite

15   resolution of this issue and some other issues that I intend to

16   direct the plaintiff to brief with the revised second amended

17   complaint.

18          I also stated in May that I thought the claims for

19   money damages against the defendants in their personal

20   capacities should be dismissed because they were protected by

21   qualified immunity.  And if the plaintiff realleges these

22   claims, which the defendants ask be dismissed now, but if the

23   plaintiff realleges these claims, they too shall be addressed

24   in the memo, and I mentioned in May what I understand to be the

25   applicable standards for qualified immunity.  I discussed them

1    in detail in 2014 at *Campos v. Van Ness*, 52 F. Supp 3d 240 at

2    249 to 250, where I discussed the then recent Supreme Court

3    decision in *Plumhoff*, 572 U.S. 765 at 779.

4         I saw in the report that the plaintiff essentially

5    needed more time to decide whether to reallege certain claims,

6    and if the defendant -- if the plaintiff decides not to

7    reallege these claims against defendants in their personal

8    individual capacities, it won't be necessary for me to decide

9    the motion to dismiss if I allow the amendment.  And, you know,

10   also facilitate focus on, you know, the issues that are

11   fundamental to the case, the merits, rather than the remedies.

12        The plaintiff wants to propound discovery requests to

13   the parties and Twitter by July 15, 2021 targeted to the

14   exception to the 11th Amendment bar on jurisdiction created by

15   the Supreme Court or recognized by the Supreme Court in *Ex*

16   *Parte Young*.  The issues, as I understand them, are whether any

17   of Twitter's alleged conduct is fairly attributable to the

18   government, and if so, whether it is continuing.  I believe it

19   would be useful for the plaintiff -- it would facilitate the

20   progress of the case if the plaintiff did describe what

21   discovery it is requesting or propounding.  However, at the

22   moment I don't believe that the defendants or Twitter should be

23   required to respond to any requests for discovery until I

24   decide the foreseeable oppositions to a motion to amend or

25   motions to dismiss.

1          One of the things I wanted to discuss today is whether

2     I ought to allow the proposed amendment with regard to the

3     current defendants at least and possibly with regard to

4     Twitter, and then deal with issues like futility on motions to

5     dismiss.

6          This is something that at the moment is of particular

7     importance, and I discussed this on May 21, but it's something

8     I think the parties can address somewhat today but need to be

9     prepared to address.  And this is reflected on pages 11 to 14

10    of the May 21 transcript.

11         I'll speak of the defendants, including -- NASED is

12    Galvin for these purposes.  It's my understanding that if

13    Galvin makes a facial or sufficiency challenge to the revised

14    proposed second amended complaint, I would treat that

15    essentially as a Rule 12(b)(6) motion and decide if the

16    plaintiffs have made a plausible claim that the *Ex Parte Young*

17    exception applies.  And Galvin made such a facial or

18    sufficiency challenge to the pro se proposed second amended

19    complaint, and it is addressed in the submission Galvin made

20    since May 21.

21         Galvin also made a factual challenge to the pro se

22    proposed second amended complaint.  For a factual challenge

23    that is not intertwined with the merits of the case, I would

24    allow discovery and then decide if the plaintiff has proven

25    that this court has jurisdiction under the *Ex Parte Young*

1    exception.  This was discussed by the First Circuit in

2    *Valentin*, 254 F.3d 358 to 363.  However, where the

3    jurisdictional facts are intertwined with the facts central to

4    the merits of the case and the motion to dismiss survives

5    facial challenge, as I understand it, it is appropriate to deny

6    the motion to dismiss without prejudice with regard to

7    jurisdiction, and then to decide that issue after discovery

8    either on a motion for summary judgment or, if there are

9    disputed material facts, at trial.  This, as I pointed out in

10   May, is footnote 3 in *Valentin* 254 F.3d at 363.  It's also a

11   matter that's well discussed by the First Circuit at *Kerns*, 585

12   F.3d 187 at 193.  It's discussed in Wright & Miller as well.

13        At the moment I believe that the issues of

14   jurisdiction and the merits of this case are intertwined

15   because the plaintiff is seeking restoration of his Twitter

16   account.  To prevail on the merits, the plaintiff will have to

17   prove Twitter's ongoing conduct is fairly attributable to the

18   government and would violate the First Amendment if the

19   government engaged in that conduct alone.  If this is proven,

20   the *Ex Parte Young* exception applies and the 11th Amendment

21   would bar the suit.

22        So it seems to me at the moment that if the revised

23   proposed second amended complaint plausibly alleges this, I

24   would deny the motion to dismiss without prejudice.  But this

25   is not an issue that the plaintiff should address in the memo

1    filed because the defendants have raised this issue and all I

2    have is the pro se pleadings of Dr. Shiva.

3         It's possible, I note, and some of the case law

4    recognizes, it's possible that there will be grounds other than

5    on the 11th Amendment to deny a motion to amend or allow a

6    motion to dismiss that would moot the 11th Amendment issue, but

7    with regard to the Galvin defendants, at the moment those

8    possible grounds don't come to mind.  Twitter has -- but in any

9    event, it seems to me it would be most sensible for the

10   defendants and Twitter to see the proposed revised second

11   amended complaint and to raise whatever arguments they want to

12   raise, but not to try to solve any of them before then.  I'm

13   not sure anybody is asking me to resolve any of them before

14   then.

15        There are some issues with regard to Twitter that

16   weren't briefed or fully discussed on May 20 and 21.  I think

17   they're the following:  There's the question under Rule 19(a)

18   of whether Twitter is a necessary party.  Twitter asserts that

19   under the forum selection clause in its user agreement it must

20   be sued in the Northern District of California.  It can't be

21   sued in the District of Massachusetts.  There may be a question

22   of whether that forum selection clause is generally

23   enforceable, or enforceable on the facts of this case, whatever

24   they are.  And I didn't see any -- I didn't discern from the

25   plaintiff's report that he was prepared to address Twitter's

1   forum selection clause.  And Twitter also asserts that as a

2   non-party, which it is, at least at the moment, any subpoena

3   for discovery must be issued by the District Court in the

4   Northern District of California and any litigation concerning

5   it must be conducted there.

6         If Twitter is a necessary party and cannot be sued in

7   the District of Massachusetts, I would have to decide if

8   Twitter is an indispensable party under Rule 19(b).  Twitter

9   might not be necessary or indispensable if an injunction

10  against Galvin would apply to Twitter because it is proven to

11  be working in concert with Galvin and his agent NASED.

12        If Twitter is a necessary and indispensable party, but

13  cannot be sued in Massachusetts, I might be required to dismiss

14  this case.  However, if doing so would deprive the plaintiff of

15  his opportunity to litigate his claims, to have his day in

16  court, I could conclude that the forum selection clause is not

17  enforceable in this case because it would not be in the

18  interests of justice to enforce it.  This is an issue discussed

19  in the Children's Health Defense proposed amicus brief, which I

20  haven't studied, but I've looked at.  It addresses, among other

21  things, whether Galvin could be sued in the Northern District

22  of California, which is something that I think was briefly

23  discussed in May.

24        So the plaintiff's memo filed with the second amended

25  complaint should, at least in a preliminary way should

1    address -- well, it would address this issue too, because I

2    don't have anything helpful yet from the plaintiff pro se.

3         So that's my present tentative thinking as to how we

4    should proceed, and I'm interesting in hearing from the parties

5    and Twitter about this.  Mr. Cooper, would you like to go

6    first?

7         MR. COOPER:  Certainly, Your Honor.  Let me just make

8    sure you can see me on the screen, because there's a variety of

9    people and I want to make sure --

10        THE COURT:  Well, I'm going to go on speaker view so I

11   can see you.

12        MR. COOPER:  Thank you, Your Honor.  First, just

13   quickly on the administrative type matters.  There is no

14   objection with regard to Ms. Ellsworth at all, and we are

15   appearing on a retained basis with regard to the cases

16   presenting significant and important constitutional issues

17   which require, frankly, that matters be brought, briefed and

18   argued in a fashion that will be appropriate for you to decide

19   them.

20        We have proposed three things, Your Honor, in our

21   proposed agenda.  The first is, as you said, we would have

22   until July 15 to file a proposed second amended complaint.  In

23   doing so, that will afford us time not just for the lawyers to

24   parse the various issues that you've described, Judge Wolf, but

25   also to make sure that our very sophisticated client

1    appreciates and agrees with the manner in which we are looking
2    into each of these issues.
3         I can tell the court today that we have under
4    consideration each and every one of the issues that the court
5    has identified both today and in transcripts from May 20 and
6    21, as well as going back to last October.  And our goal would
7    be to, frankly, add some facts that have been brought to the
8    court's attention by Dr. Shiva that have come out in response
9    to the court's questioning, but I'll sort of focus laser-like
10   on the First Amendment and *Ex Parte Young* issues.
11        We do think, and we have proposed, at least as we can
12   make a judgment today, that there is targeted discovery that
13   would be useful to have, and we would seek a way of limited
14   30(b)(6) depositions of the Galvin defendants, the NASED
15   defendants, although I'll say that singularly, NASED,
16   Ms. Cohen, and then ultimately Twitter, whether by way of being
17   joined as a party in the proposed second amended complaint or
18   having a subpoena duces tecum and deposition subpoena served
19   upon them.
20        The discovery we would seek, Your Honor, would go
21   directly to understanding the facts behind the trusted partner
22   relationship, understanding the facts, which I think are
23   critical, with regard to the game plan book, both versions that
24   Dr. Shiva mentioned during the May hearings, and --
25        THE COURT:  I'm sorry.  Would you say that again,

1  please.  You faded out on me.

2       MR. COOPER:  Yes.  Your Honor may recall that

3  Dr. Shiva brought to the court's attention what he referred to

4  as the game plan or the game books.

5       THE COURT:  The play book.

6       MR. COOPER:  The play book, Your Honor.  Which

7  seemingly have contributions, if one can adjudge by the list of

8  contributors, not just from the defendants and their various

9  organizations but also legal counsel.  And I won't go into

10  them, but Dr. Shiva began articulating certain arguments that

11  could be gleaned from some of the diagrams and stages in terms

12  of identifying important influencers and what should happen to

13  them going forward.

14       So --

15       THE COURT:  I'm sorry.  Go ahead.

16       MR. COOPER:  So I'm just identifying, Your Honor, some

17  of the topics we would seek to --

18       THE COURT:  Well, let me tell you why I said that I

19  thought it would be valuable if you identified the discovery

20  you would be seeking if you're permitted to have discovery.

21  But why -- well, maybe I misunderstood this, because you don't

22  intend to propound the discovery until after you file the

23  proposed amended complaint; is that right?

24       MR. COOPER:  Yes, Your Honor, and that would lead to

25  the third thing that we're seeking, which would be an

1   opportunity, and to do so quickly, to supplement Dr. Shiva's

2   briefing based upon the discovery, to the extent necessary,

3   and, frankly, to address certain issues that he has yet to

4   address.

5           Let me just point out, Your Honor, one of the reasons

6   we proposed proceeding this way as opposed to just filing a

7   more detailed second amended complaint, and I say this with the

8   admission that I am still working through the pleadings and the

9   hearing transcripts, but it does appear that the ground in

10  terms of the defendant's positions has shifted incrementally

11  and repeatedly as additional facts have been disclosed.  And

12  the broad statement from the defendants in their initial

13  motions that Twitter was exercising independent judgment, no

14  input whatsoever except the ordinary access to the portal

15  afforded all citizens by Twitter, has come to be -- let me just

16  say it needs to be understood in a far more detailed factual

17  context.

18          THE COURT:  Here's part of my thinking on why

19  discovery starting at the time you file the proposed amended

20  complaint would be premature and possibly both distracting and

21  confusing.  If -- so you're new to this case.  Of course it's

22  been going on for a while.  But if we were starting from

23  scratch and you were Dr. Shiva's lawyer, you would not get

24  discovery before you filed your complaint.  You'd have to have

25  a proper basis for your allegations under Rule 11.  You have

1   some prior proceedings, including some prior testimony, that

2   helps you.  I mean, it gives you more information than you

3   would have had if this case were really just starting now.  And

4   that -- you know, it's reasonable to require that you rely on

5   the information that exists in amending the complaint.

6           With regard to jurisdiction, and this is why I said I

7   viewed the issues as organic, if my tentative view that the

8   questions relating to *Ex Parte Young* are intertwined with the

9   merits of the case are correct, then I'm not going to be

10  considering any of the discovery in determining whether there's

11  an 11th Amendment bar to jurisdiction at this stage.  I'm going

12  to be using the 12(b)(6) standard in deciding whether you

13  plausibly alleged a claim on the merits and, therefore,

14  plausibly allege an *Ex Parte Young* exception to the usual 11th

15  Amendment bar.

16          If I were to consider discovery, you know, facts

17  outside -- facts that usually can't be considered or

18  information that can't properly be considered on a 12(b)(6)

19  motion to dismiss, then you would get discovery, and then I

20  would have a hearing and I would decide by a preponderance of

21  the evidence whether you had proven jurisdiction.  But because

22  I view these as intertwined, I don't at this point, subject to

23  hearing further from the defendants and Twitter, expect to be

24  doing that, plan to be doing that.

25          MR. COOPER:  Let me address that, Your Honor.  I agree

1    completely with the court's statement that if we were starting

2    from scratch Dr. Shiva would assemble his complaint based upon

3    what he knew and then it would be tested under the plausibility

4    standard.

5            As I understand the record, at least as far as I've

6    got into it, at some point in this process, not only initially

7    because it was a TRO hearing, did the court take testimony,

8    which is available to us, but both Twitter offered affidavits

9    as I believe did NASED.  It made those part of the record on

10   the point as to -- or on the factual basis as to how the

11   complaint was made, how it was received at Twitter, most

12   importantly the purported independence of Twitter in the

13   decisionmaking.

14           And having placed those facts at issue, Your Honor, I

15   assume that Dr. Shiva, of course as of today, in my view, based

16   upon what I know, would have a good faith basis for pleading

17   that all of the requirements to establish the relationship

18   between the state actors and Twitter are sufficient to get over

19   the plausibility standard.  But if the defendants are going to

20   respond to a second amended complaint seeking dismissal, making

21   a representation to the court that Twitter exercised fully

22   independent judgment, with the intent to put the affidavits,

23   including the corrected affidavit, back in front of the court,

24   we're going to have a factual inquiry.

25           THE COURT:  Well, but that's my point.  And as I

1  always tell my law clerks, you know, the essence of good

2  lawyering is defining the questions.  And the essence of good

3  judging is having good law clerks.

4          I've come to the understanding of the relevant

5  questions that I've just explained to you.  And if that view

6  holds, I'll be considering whether the jurisdictional issue is

7  intertwined with the merits of the case, and if that's correct,

8  I won't be considering anything but your proposed revised

9  second amended complaint in the documents that one can -- you

10 know, documents that are referenced in the complaint, documents

11 whose authenticity is not disputed.

12         But, you know, you said "if."  In my current

13 conception, I won't be considering those affidavits, and, you

14 know, one of them was corrected, and Dr. Shiva raised questions

15 about others, you know, whether some review had been conducted

16 I think by some committee in 18 minutes when he got his last

17 three strikes, if I remember right.  You know, there are

18 factual issues in all of this, but the question is the time.

19         I have a pragmatic concern as well, and that is, you

20 know, in my present conception you would file on July 15.

21 Under the local rules the defendants and Twitter would be

22 required to respond in 14 days.  You might want to reply.  I

23 might give you seven days or something to do that.  Then I've

24 got to work on it.  And I've told you I'd like to have a

25 further hearing in this matter mid to late August, hopefully

1     without destroying anybody's vacation.  But I don't know that

2     it would be reasonable to require the defendants to be

3     responding to discovery.  It's probably going to be irrelevant

4     to -- well, in my current view, it would be irrelevant to the

5     motions to dismiss, and time-consuming and distracting.

6           If they prevail on their motion to dismiss -- and I'm

7     entirely open-minded on all of this.  I just need it, as you

8     recognized, properly briefed so the adversary process could

9     facilitate an informed decision.  If I dismiss the case, then

10     there's not going to be any discovery.  If I don't dismiss the

11     case, then there will be discovery.  And the same discovery

12     will be central to the jurisdictional defense, 11th Amendment,

13     and to the merits of the case.

14           Part of the reason I'd like to make sure this proceeds

15     as -- you know, in a fair but efficient manner, is that if

16     Dr. Shiva has a meritorious claim, which is a big "if" -- it's

17     an open question -- he's being irreparably harmed.  It's

18     axiomatic.  The violation of the First Amendment rights is a

19     matter of irreparable harm, *Elrod v. Burns* and other cases.

20     So, anyway, that's my thinking.

21           Do you have -- and I'm interested in hearing from the

22     defendants and Twitter too.  Do you have a -- as I said -- we

23     didn't discuss this virtually at all in May, but there's a, I

24     think, complex set of questions about whether Twitter can and

25     should be made a party to this case and required to litigate it

1    in Massachusetts.  And that needs to be briefed for the

2    plaintiff too.  Have you given that some thought?

3              MR. COOPER:  We are actively thinking that through,

4    Your Honor, and I recognize the court's comments about the

5    ability to issue an injunction of the Galvin defendants and

6    those acting in concert with him.  But I don't have an answer

7    for you on that today.

8              THE COURT:  No.  And I don't have an answer for you on

9    that today too.

10             I said, as I recall, and I've been doing many things

11   since the last hearings, but, you know, I raised the question

12   whether Twitter would like to be in this case here so it could

13   present its views and I could consider them if -- and it's just

14   an if -- I made decisions that were adverse to Twitter or its

15   interests, it would have standing to appeal.

16             And I looked at this fairly closely, but, as I recall,

17   Twitter -- well, Twitter -- that didn't appeal to Twitter

18   immediately, and they had some points, you know, on why they

19   couldn't get a Rule 65(b) --

20             MR. COOPER:  Your Honor, let me complicate matters

21   further by saying in light of the ongoing irreparable harm to

22   Dr. Shiva from being banned from Twitter, we are also

23   considering whether at the time we file our second amended

24   complaint we're going to seek a preliminary injunction.

25             THE COURT:  That doesn't surprise me.  For a

1    combination of reasons -- if you file a motion for preliminary

2    injunction, then there's going to have to be a response and a

3    reply.  For a combination of reasons, although it may change

4    and the reasons aren't all vacation, I may not be available

5    from essentially the end of this month until the middle of

6    August.  So, you know, you'll do what you'll do.  But, you

7    know, you file something, the defendants will have an

8    opportunity to respond.

9         And then one of the things I would say is -- and I do

10   this frequently -- should I merge the hearing on the motion for

11   preliminary injunction with the trial on the merits?  If you do

12   expedited discovery in this case, how quickly can you do it?

13   Because you know that Twitter argues there's irreparable harm,

14   that if they are required to give Dr. Shiva his account back,

15   they're being compelled to speak.  But I appreciate your

16   telling me you're thinking about a possible motion for

17   preliminary injunction, and I'm telling you that that will be

18   one of my questions.

19        MR. COOPER:  I guess the last point, Your Honor, is I

20   do fully understand the implications of the court's tentative

21   view about filing the complaint, dealing with it on a 12(b)(6)

22   motion, and discovery being potentially inextricably

23   intertwined thereafter.

24        It is unclear to me, and the fault is mine, because I

25   didn't raise it when I was conferring with defendant's counsel

1    and for that matter Twitter's counsel, whether the procedural

2    mechanism here is that the defendants are assenting to our

3    motion to file a second amended complaint and intend to refile

4    their motions to dismiss or whether we should be moving to

5    further amend.

6             THE COURT:  That's a question that I intended to raise

7    more explicitly.  My preference would be, I think, to allow the

8    motion to amend and then deal with futility on a motion to

9    dismiss.  I think if we're only talking about the Galvin

10   defendants, that would be relatively straightforward.  I think

11   you're going to hear from Twitter that they want to oppose the

12   motion to amend because they don't want to be made parties to

13   this case for any purpose.  But we'll hear from them.

14            But I do -- I haven't thought any of this all the way

15   through, but this last point we didn't discuss last month, and

16   it's not well developed in the record.  I think there's first a

17   question is Twitter a necessary party.  And your goal -- and

18   there is the relief I expect to see in the second amended

19   complaint -- Dr. Shiva wants his account back.  It's Twitter

20   that would have to reactivate his account.  So, you know, in

21   their defenses, they're not the government -- they're not

22   Galvin's puppets.  They don't care what he says.  They're not

23   going to do it.  They are independent.  So they may need to be

24   parties.

25            Then there's a question of whether they're

1    indispensable parties.  They might be necessary but not

2    indispensable because if to prevail against Galvin you would

3    have to prove that Twitter was acting in concert with him,

4    there was sufficiently close collaboration, then an injunction

5    could be ordered to run against -- you know, would be ordered

6    in standard language to run against defendant and other persons

7    who were in active concert, participation with them,

8    essentially, Rule 65(d)(2).

9         And then Twitter, if they hadn't participated as a

10   party up to that point, would want to come in and say we never

11   acted in concert.  So then we're sort of litigating that issue

12   in the context of what's the scope of the permanent injunction

13   or preliminary injunction that you persuaded me was

14   appropriate, if you do.  This is still a very big "if."  But

15   just to go through this, Twitter -- let's say Twitter is found

16   to be a necessary and indispensable party.  Let's also say that

17   Twitter's forum selection clause is ordinarily enforceable, as

18   some other judges have found, they've told me.  I don't know on

19   what kind of record they found that.  But let's say it's

20   ordinarily enforceable.  So a case against Twitter would have

21   to be in California.  Then you might bring a motion to transfer

22   the case to Massachusetts, which the judge in California might

23   find to be -- or might not, but might find to be persuasive.

24   This is a case in which Massachusetts has a deep interest.

25   It's against the Secretary of the State of Massachusetts.  And

1   Galvin might very well argue that he can't be sued in
2   California.  "I didn't do anything in California."
3         And then the dilemma would be, or the issue might be,
4   you have one case in Massachusetts against Galvin and another
5   case in California against Twitter, if it's not transferred
6   here under the conventional considerations, and neither -- and
7   relief can't be afforded in either case, effective relief,
8   because it doesn't have all the necessary parties, and there
9   is, as I understand it, an interest of justice exception to
10  dismissing when an indispensable party can't otherwise be
11  joined.  So you would argue that it's in the interests of
12  administration of justice to give Dr. Shiva his day in court
13  and you should join Twitter, and if we have to sue Twitter in
14  California, we're going to file a motion to transfer at the
15  same time.  But that's one of the things I want you to brief
16  when you file your second amended complaint, so, you know, the
17  other parties can see it.
18         Let me take a look at something.  And all of these are
19  "ifs."  These are questions.  For example, the First Circuit
20  has said in doing I think the analysis of whether a case should
21  be dismissed because a necessary party can't be joined, the
22  court may take into account other considerations -- well, I
23  don't think this is an applicable case.  But in any event,
24  there are cases that indicate that if ordinarily a party
25  wouldn't be joined in this case, perhaps because of the forum

1    selection clause, failure to join would deprive that party of

2    his day in court anywhere, then the party he's seeking to join

3    can be joined.  But my -- that's what I'd like the adversary

4    process to further educate me on.

5         What would the Galvin defendants like to say with

6    regard to my tentative views on how to proceed and the colloquy

7    I just had with Mr. Cooper?

8         MR. HORNSTINE:  Thank you, Your Honor.  This is Adam

9    Hornstine again on behalf of the Commonwealth defendants.

10        With respect to discovery, the Commonwealth defendants

11   would agree with Your Honor's tentative view that at this

12   juncture it is premature unless and until we see a new

13   complaint, and unless and until it's necessary to do so.  We're

14   not going to do essentially precomplaint discovery or discovery

15   in search of jurisdiction, and I think Your Honor correctly

16   forecast that the Commonwealth defendants' preference for

17   addressing the new second amended complaint would likely be to

18   deal with it on a motion to dismiss, not as an opposition to a

19   motion to amend, though inasmuch as plaintiff's counsel has not

20   yet indicated what the claims are in suit, let alone who the

21   claims would be against, it's a little bit difficult for me to

22   express that view with any certainty.

23        THE COURT:  Let me pause you here, because I should

24   also order you today to continue talking.

25        Mr. Cooper made explicit something that I inferred,

1    and that is, for example -- I didn't give a lot of time for

2    them to talk to their client, to talk to you to see what to do.

3    And they have to work closely with Dr. Shiva, who, of course,

4    is personally deeply invested in this case, and discuss things.

5    But I think, as they talk -- I think that there's perhaps a

6    reasonable prospect that if they talk long enough, you know,

7    fully enough with Dr. Shiva and explain qualified immunity --

8    it depends on the clarity of federal law, not Massachusetts

9    law -- and look into what I think at the moment are the

10   standards for holding Ms. Cohen personally liable, she's not

11   already protected by qualified immunity, but there's a

12   reasonable likelihood you won't see those in the second -- you

13   know, in the next complaint.

14           So, you know, if you talk about all these issues, look

15   at the cases, you know, figure out what really should be fought

16   over and what doesn't need to be, I think some of this may get

17   narrowed.  They'll be plenty of space for intense litigation,

18   but it won't be as diffuse.

19           But I'm sorry, you're being very helpful, so go ahead.

20           MR. HORNSTINE:  Your Honor, I agree that before

21   plaintiff's counsel files any new amended complaint, a meet and

22   confer would certainly be useful.  During our last conference I

23   urged them, as Your Honor just did, to strongly consider

24   dismissing the claims on what Your Honor previously termed "the

25   human being defendants."  Obviously, as we set forth in our

1   status report, those human beings have an interest in having

2   the litigation cloud removed from their head, particularly if

3   they are, as Your Honor has tentatively observed, entitled to

4   dismissal either on the basis of qualified immunity or another

5   basis.  So I know that they are eager to do that.

6         THE COURT:  And I understand that.  I think any time a

7   person is sued individually, whether they're indemnified or

8   not, you know, their livelihoods are at stake, their funds are

9   at stake.  You know, it's a big thing.  And it's the

10   jurisprudence both on qualified immunity and, as you said,

11   under the 11th Amendment, the defense is against having to

12   litigate.  So they need to be decided early on, except in the

13   11th Amendment area sometimes it can't.

14         But whatever it is, I take that -- I take your point

15   on the liability of the individual defendants, and I thought,

16   and Mr. Cooper has signaled what I expected, that it's possible

17   you won't see those claims in the next complaint, and then

18   there won't be any litigation over it here.  There won't be any

19   appeals.  So just keep talking.

20         MR. HORNSTINE:  Yes, of course, Your Honor.  I'm

21   optimistic that that will be the result of the new amended

22   complaint, though I will caution that when we were having

23   discussions with opposing counsel before, they did indicate

24   that they may want to do jurisdictional discovery on the

25   qualified immunity issue as well, but, again, I remain

1 optimistic.

2       THE COURT:  To overcome qualified immunity, as I

3 understand it -- I haven't done this in a while -- the

4 allegations in the complaint would have to be sufficiently

5 specific that if they were proven -- you know, they'd have to

6 be plausible allegations which, if proven, would constitute a

7 violation of clearly established federal law at the time of the

8 conduct in question, and I dealt with *Plumhoff* very intensely

9 the year it came out because it was a case where a police

10 officer shot and killed somebody.  And my memory of *Plumhoff* is

11 you basically needed a case with exactly the same facts decided

12 by the Supreme Court or the First Circuit before the conduct in

13 question.  And, you know, this is -- as I understand it, this

14 particular case, the case Dr. Shiva brought, is somewhat a

15 novel case.  I don't think anybody cited to me another case

16 where Twitter has been found to be a state actor, Facebook has

17 been found to be a state actor.  So if it's a case of first

18 impression, at least in the First Circuit, as I understand it,

19 defendants are going to have qualified immunity.

20       MR. HORNSTINE:  So yes, with that as a backdrop, Your

21 Honor, again, I will heed the court's admonition to continue to

22 meet and confer with Mr. Cooper about the potential amendment.

23       At the end of the day I think both this court and my

24 clients, their interests are jointly served by having one

25 complaint, a single unified briefing on motions to dismiss so

```
 1    that the court can decide it.  And I think that that's perhaps
 2    the most direct way forward here.  Let's have a clean
 3    complaint.  Let's have clean motions to dismiss.  Let's get
 4    decisions on them and see where things are at that point, you
 5    know, both in this case and in plaintiff's other case that is
 6    pending before this session of the district court.
 7            THE COURT:  Yeah, I haven't looked at that one in a
 8    long time.
 9            MR. HORNSTINE:  Neither here nor there, but my
10    clients' interest is in let's get one complaint with one set of
11    allegations, one set of legal issues.  Let's tee them up for
12    the court.  Let's get them decided, and then we can figure out
13    how to go from there, whether it's discovery, whether it's
14    something else.  We can figure it out.
15            THE COURT:  Let me say the following:  I think your
16    clients have other interests, because they're office holders.
17    If they have qualified immunity because this is a novel case or
18    an unusual case, not with a long line of precedent, they have
19    an interest in performing lawfully.  I think, you know, when
20    they complained to Twitter and prompted NASED to complain to
21    Twitter, I doubt it will be proven they thought they were doing
22    anything impermissible.  You know, we're in an environment
23    where there is considerable concern about misinformation
24    injuring the integrity of elections.
25            But, you know, in this case if money's not at stake,
```

1    you know, what's going to come out of this if -- and it's just

2    an "if" -- if the plaintiff prevails is guidance on what's

3    permissible and what isn't permissible, and you might get

4    guidance from a higher court if you don't prevail.  You might

5    get guidance from a higher court if you do prevail.  But, you

6    know, your clients I think have an interest, and I expect

7    they'll take it seriously, and, you know, perform lawfully.  If

8    the law needs to be clarified or gets clarified, then I expect

9    they'll follow it.

10          If we get to the end of the case, because it's

11    happened in other cases, and -- I don't issue an injunction

12    against the government unless it's necessary.  This is the

13    jurisprudence of *Farmer v. Brennan*, among others.  So if we get

14    to the end of this ever and somehow the plaintiffs have

15    prevailed, you know, if Secretary Galvin tells me, "I don't

16    have to issue an injunction to order them to do whatever,"

17    he'll do it.  Then there won't be any injunction, and he won't

18    face the threat of contempt.  It will be in effect a

19    declaratory judgment.  If there has to be an injunction and

20    then it's not obeyed, there's potentially serious consequences,

21    but we're a very long way from talking about that, I mean from

22    having -- I'm a long way from having to decide whether or not

23    to issue an injunction.

24          MR. HORNSTINE:  Yes, Your Honor.  And I think that is

25    essentially the Commonwealth defendants' response to your

1    colloquy with Mr. Cooper.  If the court has any questions, I'd

2    certainly be happy to address them.  Otherwise, I'm happy to go

3    back on mute.

4        THE COURT:  Well, let me ask you this:  I said that

5    I'd like to have a hearing in late August for a combination of

6    reasons, not only because I'll soon after lose my law clerk

7    who's immersed in this with me, but I hope to not be around --

8    I hope to be traveling internationally in the coming year more

9    than I have in the last year and a half.  And this is a very

10   important case, and it's not the only case I have.  You know,

11   we've got a backlog of trials and things.

12       But I want to always be reasonable.  And you haven't

13   seen the amended complaint yet, but it may get slimmed down,

14   and I think the issues are crystalizing, I hope.

15       Do you expect the usual two weeks will be sufficient

16   for you to file your motion to dismiss?

17       MR. HORNSTINE:  Again, it's challenging to agree to a

18   calendar without the benefit of knowing what claims are in the

19   suit, but if we get, as Your Honor terms it, a slimmed-down

20   complaint, I think that the Commonwealth defendants can put

21   together a motion to dismiss in two weeks' time, though I'm

22   mindful that, of course, Mr. Cooper will want his customary two

23   weeks to respond to any motion to dismiss.

24       THE COURT:  Yeah.  I think I'd probably give him less.

25   Whatever it is -- I'd asked you if you expect you could do it.

```
 1              MR. HORNSTINE:  I --

 2              THE COURT:  You have to see it.

 3              MR. HORNSTINE:  Right.  I expect, Your Honor, that if

 4    the complaint looks like something I hope it will look like,

 5    that yes, the Commonwealth defendants likely can move to

 6    dismiss it within two weeks.  Again, I'm hopeful that

 7    Mr. Cooper, before he hits go on a proposed second amended

 8    complaint, will continue to meet and confer with us because

 9    that may allow us to home in on that time frame.

10              THE COURT:  Right.  Well, you know it's coming

11    informally.

12              Mr. Cooper, do you have any concern about continuing

13    those conversations after you've talked to your client and have

14    something to further discuss?

15              MR. COOPER:  I have no concern about talking to any

16    lawyer that wants to talk to me about how to streamline a case.

17              Let me just say I've never had anyone object to

18    narrowing claims.  So that would be a first for me.

19              THE COURT:  No, they're not going to object to

20    narrowing the claims.  But if they know -- you know, they can

21    be working on some of the issues I've raised and who knows what

22    else.

23              MR. HORNSTINE:  Your Honor, I will mention, just if

24    we're talking about scheduling for a potential hearing in

25    August, I do know that August 19 and 20 are certain NASED
```

1    conference days, and as well I will mention that both

2    Ms. Sterman and I are responsible for handling certification

3    for Article 48 petitions, initiative petition process, and that

4    process plays out during the month of August.  We'd obviously

5    work to accommodate the court's schedule in that month, but

6    there may be some pockets where our availability is dicey that

7    month.

8             THE COURT:  Well, you had asked me to accommodate your

9    schedule.  I assume you'll be here if I schedule a hearing,

10   somebody will be here for Mr. Galvin if he wants to be heard,

11   if he wants to be represented.  But this is what I want to --

12            MR. HORNSTINE:  I hope that's helpful.

13            THE COURT:  It's very helpful.

14            Let me say something that hopefully will be helpful to

15   you when you renew your pleadings, because I did, of course,

16   read what you wrote about the motion to dismiss, and you

17   repeatedly said the only thing that the Galvin defendants did

18   is make one complaint early in September and then NASED, on

19   September 25, complained about three more tweets.  In my

20   current -- I think the testimony I've heard is that Ms. Cohen

21   talked to Ms. Tassinari or Ms. Tassinari alerted Ms. Cohen to

22   the tweets and that's why Ms. Cohen for NASED, as I understand,

23   complained to Twitter.

24            So in my current conception, the Galvin defendants are

25   not only responsible for what they did individually, but what

```
 1    NASED did I think in conjunction with them.  So your arguments
 2    will be more promising if you recognize that's my present state
 3    of mind.
 4            MR. HORNSTINE:  Understood, Your Honor.  But, of
 5    course, this is all premised on whatever we see in the new
 6    complaint.
 7            THE COURT:  Yes, okay.
 8            MR. HORNSTINE:  But thank you for your guidance, Your
 9    Honor.
10            THE COURT:  Okay.  Go ahead.  And what shall I hear
11    from Twitter?
12            MS. ELLSWORTH:  Your Honor, did you want to hear from
13    the NASED defendants as well?
14            THE COURT:  Thank you, I do.  You're right.  What
15    should I hear from NASED?
16            MR. MITCHELL:  Thank you, Your Honor.  Nolan Mitchell
17    for NASED and Ms. Cohen.  I will not take up a lot of your
18    time.  I think that our positions are largely aligned with
19    those of the state here.  What we're seeking is a quick way to
20    tee up the issues quickly, get them dismissed.  We are
21    certainly more than happy to confer with the plaintiff and
22    Mr. Cooper about this and to explore ways to narrow this.  And
23    I think we agree that discovery is inappropriate at this point
24    given all of the moving pieces and questions.  Unless you have
25    particular questions, you know, I think our positions are
```

1   largely aligned.

2           THE COURT:  Thank you.  All right.

3           Now, what should I hear from Twitter?

4           MS. ELLSWORTH:  Thank you, Your Honor.  Felicia

5   Ellsworth for Twitter.  You correctly predicted that, unlike

6   the defendants in the suit, Twitter is not inclined to forgo

7   the motion to amend process.  We do think the forum selection

8   clause, as well as the joinder issues and Rule 19 issues, are

9   important and need to be decided.  I do not have a strong view

10  on how we try and organization ourselves such that the briefing

11  can be done in an organized fashion and on a schedule that

12  works for everybody and kind of coincides with what the actual

13  defendants will be doing.  It's really a procedural issue, and

14  we need to preserve that point.  The arguments we are making

15  are largely what they would be if they were teed up in a

16  12(b)(6).

17          THE COURT:  And I think because we didn't discuss this

18  much last time, in my own -- and haven't delved as deeply into

19  this is as I have, for example, the 11th Amendment issue, but

20  what do you -- and now Mr. Cooper and his colleagues have to

21  catch up, and they can read the transcript, but what do you see

22  are the major questions that need to be decided with regard to

23  Twitter and in what framework?

24          MS. ELLSWORTH:  I think the -- well, with the caveat

25  that, as Mr. Hornstine offered, we don't actually know and

1    Mr. Cooper was unable to tell us, and I understand why.  He's

2    still figuring out what claims he can possibly make, whether we

3    will, in fact, be named as a defendant.  Partly because that

4    has not yet been made clear, we have less of a say in all this

5    than anybody else, are we named a defendant in this court or

6    are we named a defendant at all.

7         But if this proposed revised second amended complaint

8    were to name Twitter as a defendant, we have a variety of

9    important, I think, arguments that need to be teed up.  There

10   is, of course, the forum selection clause argument about where

11   any suit against us should be brought.  There's an important

12   First Amendment argument about the nature of the relief being

13   sought and the nature of the claims being made here that we

14   want and need the opportunity to be -- to brief and argue.  We

15   also have --

16        THE COURT:  Just to see if I understand it, is that

17   the argument that being ordered to restore Dr. Shiva's account

18   would be compelled speech in violation of the First Amendment?

19        MS. ELLSWORTH:  Precisely.  That's exactly what it

20   would be.  A similar argument is a Section 230 --

21        THE COURT:  Could you explain that to me.  Well, I

22   think I understand compelled speech is the basis on which the

23   Supreme Court agreed with me 9 to nothing on the St. Patrick's

24   Day Parade case, although that vehicle wasn't available to me

25   in my decision.

1        But what's the compelled speech issue?

2        MS. ELLSWORTH:  So the First Amendment protects both

3   speech and the right not to speak.  This is exactly the parade

4   issue, Your Honor, among others.  And action taken by Twitter

5   choosing not to allow certain individuals to use its platform

6   is Twitter's First Amendment exercise of its right not to speak

7   or not to have that speech on its platform.

8        THE COURT:  And are there -- this is not a rhetorical

9   question.  Are there cases where court orders have been deemed

10  to be compelled speech in violation of the First Amendment?

11       MS. ELLSWORTH:  There are.  I don't have any of them

12  at my fingertips, but it would be this court's action that

13  would be the government action compelling the speech is the

14  action that I think Your Honor --

15       THE COURT:  Right.  But, I mean, if it's action -- it

16  would only be an order if there was a finding that Twitter's

17  conduct was fairly attributable to the government and violated

18  the First Amendment.  So it would be a remedy.  It just -- it

19  just -- it's a question that comes to my mind.  But anyway, go

20  ahead.

21       MS. ELLSWORTH:  Your Honor, I think we addressed this

22  a little bit back at the May hearings, which is that even if

23  those findings were to be made, there still would be First

24  Amendment issues on both sides that would need to be balanced.

25  So even if Twitter were found to somehow be engaged in some

1   form of state action, which we don't think it could be, but

2   even assuming that, Twitter's First Amendment right remains,

3   and that's an important issue that would need to be decided.

4         We also have our Section 230 Communications Decency

5   Act argument, which we had briefly addressed in our opposition.

6         THE COURT:  Why don't you articulate that argument

7   again, please.

8         MS. ELLSWORTH:  Your Honor, with your permission I

9   would ask if I could have Mr. Holtzblatt take that argument for

10  us.

11        THE COURT:  Thank you for asking this time.  That

12  would be fine.

13        MS. ELLSWORTH:  All right.  Mr. Holtzblatt will take

14  that one.

15        MR. HOLTZBLATT:  Yes, Your Honor.  The question under

16  Section 230 is whether the claim of the plaintiff is seeking to

17  treat Twitter as the publisher or speaker of third-party

18  speech.  And there are a series of -- that's under Section

19  230(c)(1) of the Communications Decency Act.

20        THE COURT:  And what is the language?  I know part of

21  230 says good faith, but does it have to be independent and in

22  good faith?

23        MR. HOLTZBLATT:  So, Your Honor, there are several

24  separate immunities under Section 230, including under Section

25  230, Subsection (c).  The provision that I believe Your Honor

 1  had quoted at the prior hearing is 230(c)(2) at paragraph (A),

 2  and it's 47 U.S.C. 230(c)(2)(A) that refers to good faith, and

 3  that the action be voluntarily taken, which I think is --

 4          THE COURT:  That's it.  Voluntarily taken and in good

 5  faith.  So you have --

 6          MR. HOLTZBLATT:  I'm sorry.

 7          THE COURT:  I'm sorry.  Go ahead.

 8          MR. HOLTZBLATT:  There is a separate subsection of

 9  230, which is 47 U.S.C. Section 230(c)(1) --

10          THE COURT:  Are you finding it?

11          MR. HOLTZBLATT:  Oh, I'm sorry, Your Honor.  I have

12  it, yes.

13          THE COURT:  Okay.  Go ahead.  I found my materials on

14  Section 230(c)(2)(A), and it just -- again, to give all of you

15  the benefit of my really tentative thinking, I thought with

16  regard to this provision that provides immunity for Twitter for

17  any action voluntarily taken in good faith, the issue would be

18  closely related to the merits of the case.  Was Twitter acting

19  voluntarily, or was it coerced?  And even if it was voluntary,

20  was it in good faith?  Was it -- and then somebody would have

21  to educate me on what good faith means in this context.  But if

22  it was in collaboration -- sufficiently close collaboration

23  with the government that it could fairly be deemed state

24  action, and everybody knows that the government can't censor

25  speech, particularly political speech, is that good faith?

1    Those would be my questions.

2         MR. HOLTZBLATT:  Yes, Your Honor.  Your Honor, there

3    is no good faith or voluntariness requirement of the other

4    provision of Section 230 that we are relying on at the

5    threshold.

6         THE COURT:  What's the other one?

7         MR. HOLTZBLATT:  Section 230(c)(1) of Section 230.  So

8    the language of Section 230(c)(1) simply states "No provider or

9    user of an interactive computer service shall be treated as the

10   publisher or speaker of any information provided by another

11   information content provider."  And a number of courts -- and

12   I'll cite one for Your Honor, the Ninth Circuit in the *Riggs v.*

13   *Myspace* case, which is cited in our opposition to the motion to

14   amend, that's 44 Federal Appendix 986 at 987, applied

15   subsection(c)(1), not subsection (c)(2)(A), to hold that

16   Section 230, quote, "immunizes decisions to delete user

17   profiles," which is similar to the claim in this case that

18   Twitter allegedly is alleged to have acted unlawfully by

19   suspending the plaintiff's account.

20        So Twitter at this threshold -- there may be other

21   defenses that Twitter would assert at later stages of the case,

22   but at the pleadings stage, and courts all across the country

23   in many cases have held that Section 230(c)(1) is appropriate

24   and, in fact, should be decided on the pleadings before there

25   is any discovery because it's an immunity, it's a protection

 1    from the burdens of litigation, not only --

 2          THE COURT:  Can you read me that language again,

 3    because I don't have that at my fingertips.

 4          MR. HOLTZBLATT:  The Riggs?

 5          THE COURT:  (c)(1).

 6          MR. HOLTZBLATT:  Yes, Your Honor.  "No provider or

 7    user of an interactive computer service shall be treated as the

 8    publisher or speaker of any information provided by another

 9    information content provider."

10          THE COURT:  This is really off the top of my head,

11    but, again, it's sort of a preview of coming attractions.  If

12    and when you reiterate that argument, perhaps amplify it, I'm

13    going to ask, "Isn't that a protection against suits for

14    defamation?"

15          MR. COOPER:  I'd say --

16          THE COURT:  In other words, if --

17          Mr. Holtzblatt, say something so I see you instead of

18    Mr. Cooper.

19          MR. HOLTZBLATT:  Yes, Your Honor.  That argument has

20    been made and has been repeatedly rejected by courts across the

21    country.

22          THE COURT:  Well, I'd be interested in the reasoning

23    because it immediately -- and whatever my immediate reaction is

24    doesn't mean it will be my final answer if I have to answer it,

25    but it sounds as if that's intended to say that if Dr. Shiva

1   is using his Twitter account, when he had one, and engages in

2   defamation or libel Twitter's not responsible for that.  In

3   fact -- I have only the most primitive understanding of all of

4   this.  But, I mean, it seems to me that if Twitter in this case

5   argues it's not a publisher, it can't be held liable for

6   defamation because it's not the speaker, then how is its speech

7   implicated?  It's just a question.  And I know when you and

8   your colleagues put your great minds to it you'll have

9   responses to the question.  So will Mr. Cooper.

10          But anyway -- keep going on this if you wish.

11          MR. HOLTZBLATT:  Yes, Your Honor.  What courts,

12   including the *Riggs* case that I cited for you and many others

13   have found, and I'll give you another citation, which is a very

14   recent California Court of Appeal decision, *Murphy v. Twitter*,

15   which was 60 Cal.App.5th 12 at pin cite 31, what the courts

16   have held is that this (c)(1) provision protects against claims

17   that seek to treat the provider of interactive computer service

18   as a publisher.

19          In other words, they seek to impose liability for

20   quote publishing conduct, and publishing conduct includes both

21   the decision to publish but also the decision not to publish,

22   much like in the First Amendment context the protection of free

23   speech includes both the protection against being prevented

24   from speaking and also the protection from being compelled to

25   speak.  It's the two sides of the same coin.  So the (c)(1)

1    protection, which is a protection for the provider's publishing

2    conduct, likewise includes a decision to publish and a decision

3    not to publish.

4         THE COURT:  I mean, it is absolutely intriguing to me,

5    and I haven't dealt with this in 26 years, litigated it, but

6    when -- you know, when the organizers of a private parade are

7    required to include somebody with a sign with a message they

8    find objectionable, I understand that muddles their own

9    message, and is an impermissible form of compelled speech.  But

10   it seems to me that it's Twitter's position that it's not a

11   speaker at all.  It's just like a megaphone for, in this case,

12   Dr. Shiva.  So I'll read those cases with great interest and I

13   know you'll develop the argument very well.  But it doesn't

14   immediately strike me as right.

15        MR. HOLTZBLATT:  Your Honor, I think in this respect

16   the First Amendment protection and the Section 230 protection

17   are in some respects protecting the same right of Twitter.  And

18   that right, Your Honor -- Twitter has an incredibly strong

19   interest as a communications platform in what kind of speech is

20   assembled on that platform and what kind of speech it

21   disseminates through that platform in the same way that a

22   parade organizer who's assembling multitudinous voices has a

23   strong interest.  So Twitter here has made a protected decision

24   that it does not want certain types of misinformation speech.

25   And that is an expressive decision by --

1          THE COURT:  And you just added a word that, again, you

2   know, is the thread that goes through all this "protected."

3   Because -- I don't -- I think I understand; I don't think

4   anybody's arguing to the contrary -- that if Twitter is acting

5   independently as a private organization, not having been

6   coerced or closely collaborated with the government, then it

7   can make those decisions.  There's no -- the First Amendment's

8   not implicated because it's not the government.  So when you

9   say "protected" -- maybe you mean protected by the statute, as

10  well as not protected by the First Amendment.  But in any

11  event, this is useful because it plants a seed with me, and

12  it's something that the plaintiff can perceive he's going to

13  have to litigate, but it does seem somewhat anomalous to me at

14  the moment.  Anyway.  But that's -- I hadn't thought about

15  (c)(1), but you know you may want to remind me of what you've

16  done or do even more work on it, but I have no answer.

17          MR. COOPER:  Your Honor, may I have the floor for a

18  second?

19          THE COURT:  Yes.

20          MR. COOPER:  Thank you, Your Honor.  I very much

21  appreciate hearing Twitter 's thinking and I will keep it in

22  mind, of course.  The protections of the Communications Decency

23  Act for Twitter end where government action begins, and I think

24  it inexorably leads back to the fundamental question we're

25  going to have to address here.  I have an even more basic

1   question, which is I think I hear Twitter suggesting

2   procedurally that vis-a-vis it we should be required to move to

3   amend, and it will somehow have standing to enter the case for

4   purposes of opposing as opposed to us amending, asking my

5   fellow brother and sister to accept service of the complaint,

6   and then getting their motion to dismiss based upon forum

7   selection.

8           THE COURT:  You know, that's actually -- look, I know

9   we're taking a long time for a scheduling conference, but this

10  is what I'd like to flesh out.  You just said something that I

11  think occurred to me months ago but it hadn't been raised since

12  and I've overlooked.  I suppose if it's a motion to amend, then

13  if Twitter is not in the case, unless I exercise my discretion

14  to hear from them, they don't have the discretion to be

15  heard -- they don't have a right to be heard.  They don't have

16  standing.  Right?

17          MR. COOPER:  Exactly, Your Honor.  I think the most

18  efficient way to proceed, it sounds like the current defendants

19  agree with this, is that we would file the second amended

20  complaint.  We would get it to Twitter.  Presumably they would

21  accept service of it.  They will file a motion to dismiss in

22  response on whatever grounds they deem appropriate.

23          THE COURT:  Would you agree that they could argue, if

24  that procedural course was taken, that they're not a necessary

25  party, they're not -- they shouldn't be permissively joined?

1    In other words --

2            MR. COOPER:  I would agree that they reserve all of

3    their arguments, Your Honor.

4            THE COURT:  Okay.

5            MR. COOPER:  Just as they want one second amended

6    complaint so they know what we're dealing were, we would like

7    one set of motions to dismiss.  We know what we need to --

8            THE COURT:  And they could argue that I should either

9    dismiss the case against them under the forum selection clause

10   or transfer the case to the Northern District of California.

11           MR. COOPER:  Exactly, Your Honor.  And I don't mean to

12   be suggesting that we've made a final decision to name Twitter

13   as a defendant.

14           THE COURT:  Okay.  Oh, that's useful for me to hear

15   too.  Apparently there are others who were interested.

16           MR. COOPER:  I will add, Your Honor --

17           THE COURT:  I'm not ordering you to name them.  I just

18   have these pro se pleadings where the goal was to get --

19   Dr. Shiva's goal I knew was to get his Twitter account back,

20   and he was asking me to order the defendants to ask Twitter to

21   give it back, and it's foreseeable that Twitter would say, you

22   know, we don't take direction from you, and no, unless they

23   change their mind about Dr. Shiva.  So all right, you know, I

24   just wanted lawyers on both sides of this.  And I trust

25   Dr. Shiva understands that his interests are being represented

1    very well, as everybody else's interests are being represented.

2         MR. COOPER:  I will add, Your Honor, yes, we are

3    fundamentally in laser-like concern with Dr. Shiva, and what we

4    contend is there's improper restraint on speech that's ongoing.

5         THE COURT:  I understand that.  Let me go back to

6    Ms. Ellsworth, because -- now she's heard a little more about

7    this.  But I do have these questions about necessary parties,

8    indispensable parties, permissive joinder, Dr. Shiva having no

9    day in court.

10        MS. ELLSWORTH:  Right.

11        THE COURT:  That argument.

12        MS. ELLSWORTH:  All those arguments we will raise on

13   the merits and whatever the right posture is.

14        I point the court to Local Rule 15.1, which says that

15   when a party is sought to be added to a case, service needs to

16   be effected pursuant to the usual service requirements of Rule

17   5.  And from service flows all the rights to oppose whatever

18   paper is served on you.

19        I think we have standing and the ability -- and this

20   is what the court had ordered back in April or March, which was

21   that Dr. Shiva was to serve a complaint naming, if he wanted --

22        THE COURT:  Right, and actually I think at that time I

23   had the local rule in mind.  I appreciate being reminded of it.

24   Regardless, in some fashion I want to hear from you on these

25   issues.  You know, so one of the things I'm ordering you to

1    confer about is -- and maybe I'll have you all report again in

2    a week or something, is, you know, what's your position on

3    whether they can just file the amended complaint preserving all

4    of Twitter's arguments, they can do it -- you know, raise them

5    on a motion to dismiss.  There may not be much of a functional

6    difference because if I allowed them to amend after having

7    heard all the arguments, I'm going to deny a motion to dismiss

8    unless you argue something you couldn't have argued previously.

9         But what -- why is Twitter not a necessary party --

10   why is Twitter not a necessary party?

11        MS. ELLSWORTH:  Well, under the -- the way that we had

12   looked at the Rule 19 analysis previously was looking, as the

13   cases dictate, at the actual extant pleading, which sought

14   relief that could be sought and only from the state government

15   and was not necessary to join Twitter.

16        Now, the relief that Dr. Shiva sought in his pro se

17   second amended complaint did seek reinstatement of his account,

18   but that's not what the court looks at under this Rule 19

19   analysis.  Right?  The court looks at the existing pleadings to

20   determine whether the relief can be brought or the relief can

21   be --

22        THE COURT:  What I would be looking at is Mr. Cooper's

23   complaint when we get back to this.  So you've got, you know,

24   lawyers on the other side who, you know, will draft a complaint

25   in familiar form, I assume, and they'll say you're seeking

1   relief from Twitter, I've read the cases where ordinarily

2   private actors have been deemed to be state actors, and I

3   expect consistent with your obligations under Rule 11, there

4   will be allegations that this is such a case.

5          So do you expect -- you're not committed.  You haven't

6   seen the document.  But do you expect that you would argue that

7   Twitter's not a necessary party, or just that it can't be sued

8   here?

9          MS. ELLSWORTH:  Well, Your Honor, answering in a

10  vacuum without knowing what's going to be claimed, I still

11  think the calculus is the same because we still look at the

12  existing complaint to determine whether we are necessary to

13  that complaint.  That's the way the analysis runs.

14         THE COURT:  You mean Dr. Shiva's --

15         MS. ELLSWORTH:  Correct.

16         THE COURT:  Maybe that will persuade me to allow the

17  amendment and have you argue futility or, you know, lack of

18  jurisdiction in response -- in a motion to dismiss.  Because

19  I'm -- look, this isn't a game, the First Amendment interest is

20  implicated you say on both sides.  So if there's a permissible

21  way for me to sort of get to the merits of the immediate issue,

22  I'm going to do that.  I don't want to spend any more time on

23  Dr. Shiva's complaint.

24         MS. ELLSWORTH:  I understand, Your Honor.  I do think

25  it's productive for the parties to continue to confer on this

1    and also on this question raised about whether we should be on

2    a motion to amend posture or some other posture, reserving all

3    rights that we would have had if we weren't in a motion to

4    amend posture.  Obviously we need to confer with our client

5    about that, but we can certainly report back on that issue.

6           I won't belabor the point because I'm sure it's not

7    surprising to Your Honor.  We, of course, are of a piece with

8    the actual defendants about the prematurity of any discovery at

9    this point.  We have other, including both Section 230 and

10   First Amendment arguments against discovery over and above the

11   procedural issues of proceeding with discovery at this

12   juncture.  I heard Your Honor to say that while Dr. Shiva's

13   counsel may be allowed to serve to the court some discovery so

14   everyone can look at what he's proposing to take, there won't

15   be any discovery that anybody --

16          THE COURT:  I was somewhat ambiguous about that.  I

17   believe I said I would require him to either describe the

18   discovery they'll be seeking or to propound it, but you

19   wouldn't be required to respond to it -- defendants wouldn't be

20   required to respond to it until I decide to dismiss -- you

21   know, whether or not to dismiss the case.  If I dismiss the

22   case, there's no proper basis for discovery, of course, and no

23   need for it.  If I don't, then --

24          But to me, as a practical matter, a significant issue

25   is whether or not Twitter is in the case before me in

1    Massachusetts.  And, you know, I think you said last time,

2    well, we have the forum selection clause.  Dr. Shiva read it.

3    He's an educated and intelligent man.  He agreed to it.  And

4    I'm not necessarily finding facts here, but other courts have

5    found it enforceable.  There's nothing wrong with it.  If he

6    wants relief from Twitter, he needs to sue us in the Northern

7    District of California.

8            And so if he sued you in the Northern District of

9    California, do you think he could sue Galvin there?

10           MS. ELLSWORTH:  I think he can.  I won't pretend to

11   speak for what arguments the secretary may have against that,

12   but certainly there is precedent for suing a state actor in a

13   different state.

14           THE COURT:  How would it be personal jurisdiction?

15           MS. ELLSWORTH:  Twitter has filed a suit against the

16   Attorney General of Texas in a California court, and personal

17   jurisdiction was found to exist there.  So that's a pretty

18   recent example where personal jurisdiction was found against AG

19   Paxton.

20           THE COURT:  On what facts?

21           MS. ELLSWORTH:  That I'm not familiar with, Your

22   Honor.

23           THE COURT:  I mean, look, it's -- again, this -- I

24   mean, I'm just trying to communicate my questions and they're

25   not as well thought out as some of the other things I've said

1    to you.  But here's -- if Twitter's a necessary party, then you

2    argue they can't be -- Twitter can't be sued in Massachusetts

3    because of the forum selection clause.  Assume I find that's

4    correct.  Then there's a question as to whether Twitter is an

5    indispensable party, because if they are an indispensable party

6    that can't be sued here, I might be required to dismiss the

7    case unless there's an exception to that general rule.  And I

8    think some of the jurisprudence recognizes an exception if it

9    wouldn't be in the interests of justice if there would --

10   basically the plaintiff would lose his day in court.  There's

11   no place he can go to vindicate the alleged violation of his

12   First Amendment rights.

13        I'm just saying because this is something you all will

14   need to brief if and when we get to it.  You know, if Twitter

15   argues, you know -- and as I said to you previously, I have

16   thought that if you were going to get sued anywhere -- well, or

17   if relief was going to be sought against Twitter, you might

18   want to be in this case so you have standing to argue all the

19   issues and to appeal any adverse decisions when they're ripe

20   for appeal, because maybe -- you know, maybe Mr. Cooper and

21   Dr. Shiva will decide not to -- I'm beginning to see why they

22   might not, because then -- let me just -- I'm just thinking out

23   loud.

24        Because if they don't sue you, they'll litigate

25   against Galvin and NASED probably -- well, NASED

1    hypothetically, and then I'll decide whether they stated a

2    plausible claim that Twitter's conduct is state action in

3    violation of the First Amendment.  Let's say they get over that

4    hurdle.  Then we litigate this whole case without Twitter

5    except that you're a third-party witness, and maybe they have

6    to get a subpoena for your deposition in northern California

7    and seek documents from you there.  But you're not in the case.

8    I don't get to hear from you.

9         And then let's say hypothetically on summary judgment

10   I find or a trial jury finds a state action, and -- actually,

11   before I said if Galvin was going to comply, then I wouldn't

12   issue an injunction, but I might have to because that would be

13   the only way to possibly compel Twitter to do something.  And I

14   would issue an injunction that said Galvin defendants and

15   everyone acting in active concert with them has to do what's

16   necessary to restore his Twitter account.  And Dr. Shiva would

17   argue that Twitter -- you know, I found that Twitter was acting

18   in active concert with the Galvin defendants.  And then, again,

19   I think without the participation of Twitter, I would have to

20   find if that was proven.  If I found that Twitter was acting in

21   active concert with Galvin and was refusing to restore the

22   account, then we'd have contempt proceedings, which I think is

23   the line of cases that I was reading a month ago, was the way

24   that, you know, you might be able to challenge my decision.

25        So maybe -- I understand why Mr. Cooper and his

1   colleagues might prefer to litigate this case without you

2   unless and until they persuade me what they would need to

3   persuade me or a jury of.  Very interesting.  I guess I'll wait

4   and see what happens.

5          MS. ELLSWORTH:  Let me just say a few brief things,

6   Your Honor.

7          The first is there is no reason why if Dr. Shiva

8   wanted to pursue claims against both Twitter and the state

9   defendants, the claims against Twitter can't proceed in the

10  Northern District of California pursuant to the forum selection

11  clause and the claims against NASED and the Galvin defendants

12  proceed here.  That is feasible, permissible and required by

13  the existence of this forum selection clause.

14         THE COURT:  If he sued you in California, could he

15  move to have the case transferred here?

16         MS. ELLSWORTH:  I don't think a plaintiff can move to

17  transfer, but I haven't looked at that issue, but I've only

18  ever seen a 1404(a) brought by a defendant.  So I don't know

19  that that would be possible.

20         THE COURT:  Well, I don't --

21         MS. ELLSWORTH:  And procedurally whether or not he

22  could seek it, of course the forum selection clause argument we

23  would make to a judge in the Northern District of California,

24  the same argument we're making to you.

25         THE COURT:  Right.  But if the tables were turned, and

1    I had the discretion, I would transfer the case and say that's

2    -- I don't know, I think there might be a strong case for

3    transfer.  The witnesses are here.  The documents are here.

4    This relates to the Massachusetts Secretary of State.

5    Massachusetts has a particularly acute interest in the case.

6            MS. ELLSWORTH:  Your Honor, I'm looking at Section

7    1404.  I don't see on the face of the statute the answer to

8    this question.

9            THE COURT:  Well, it seems to have your question in

10   it.  I don't think it's limited to defendants, but it has to be

11   a place where the civil action -- it says "For the convenience

12   of the parties and witnesses, in the interest of justice, a

13   district court may transfer any civil action to another

14   district or division where it might have been brought."  I

15   thought that "might have been brought" is where there's

16   personal jurisdiction, not where it might have been brought but

17   for a forum selection clause.  But look, it's just an issue.

18           MS. ELLSWORTH:  Right.  And we would, of course, argue

19   it could not be brought, cannot be brought here.  The "might

20   have been brought" would not be satisfied.

21           Allow me to say that about this question of interests

22   of justice and day in court, because there's no reason why the

23   suits couldn't proceed separately, if Dr. Shiva was or counsel

24   decided they do want to proceed against Twitter.

25           As to your question about an injunction would somehow

1    bind us or a finding that Twitter were a state actor without

2    Twitter participating in the suit, we had a colloquy on this a

3    month ago.  I don't think that specific finding that the court

4    was just sort of discussing would be available to the court in

5    a case in which we are not a party under Rule 19.  So --

6           THE COURT:  Oh -- I'm sorry.  You finish.  But that

7    doesn't sound right at all.  We frequently have -- issue

8    injunctions, and they cover unnamed bankers and, you know,

9    agents.  That's the reason for that provision.

10          MS. ELLSWORTH:  No, I understand the Rule 65 argument,

11    Your Honor.  But what I'm talking about is if the court were to

12    make a finding that Twitter is a state actor in this

13    circumstance, I think by necessity that would impair or impede

14    our interest under Rule 19(a)(1)(B)(1).  So, again, the

15    question of the relief that's being sought in this complaint

16    that we will all see in the next several weeks will be

17    important to help crystalize the issues, but I don't -- I just

18    don't think the hypothetical the way Your Honor spun it out

19    could, in fact, occur consistent with the rules.

20          THE COURT:  I don't even know how that -- well, we

21    would be -- this train would be far down the track before that

22    became an issue.  Mr. Cooper would have persuaded me or a jury

23    that there's sufficiently close connection between the Galvin

24    defendants, which I referred to as including NASED, and

25    Twitter, that Twitter canceling his account was state action.

1   Then if necessary, I would issue an injunction that ran to the

2   defendants in this case and everyone acting in active concert

3   with them.

4        Then, you know, they would say, Judge, you've already

5   found that Twitter has been acting on a continuing basis in

6   active concert with the Galvin defendants.  So Twitter's

7   covered.  Clarify your ruling to include Twitter.  So I might

8   do that.  And then you would come in and say, "That's

9   impermissible.  We were an indispensable party."

10       So if they decide not to sue Twitter, I think I would

11   understand why.  It would simplify things for me, or it might

12   not.  I just wanted you to know about it.

13       MS. ELLSWORTH:  Well, I appreciate your raising it,

14   Your Honor.

15       THE COURT:  Not just the issue.  I thought Twitter

16   might want to participate in this case.  But you all are very

17   well equipped to advise your clients, and they're well equipped

18   to understand your advice.  So we really do need to go step by

19   step, but I think this discussion has been helpful to me at

20   least.

21       I told you what kind of schedule I was thinking about,

22   and do you expect you could meet that schedule?

23       MS. ELLSWORTH:  I think we could, Your Honor, with the

24   same caveats offered by Mr. Hornstine with regard to what we

25   don't know.  But I think we can also continue to meet and

 1    confer with Mr. Cooper about whether we'll be a party to this

 2    or not, and I don't know if the court had a particular set of

 3    dates in August that it was looking at.

 4            THE COURT:  Not yet.  And it's a little -- my

 5    availability is a little uncertain but will get clarified

 6    somewhat in the next few days.  But it will probably, to be

 7    safe, be the week of August 23, maybe the 24th and 25th.  Is

 8    that Saturday Labor Day?

 9            MS. ELLSWORTH:  No, Your Honor.  Labor Day is late

10    this year.  So it's the --

11            THE COURT:  That's what I thought.  I would say maybe

12    that week.  And I actually want you all to tell me about

13    whether you have some relatively short vacations planned, at

14    least periods of time.  I'll take that into account and be as

15    accommodating as I can.

16            But here's what I think I should do.

17            I'm sorry, Mr. Cooper, is there anything more you'd

18    like to say at this point?

19            MR. COOPER:  There's a lot I could say, but I don't

20    think it would be productive.

21            THE COURT:  All right.  I'm ordering you all to order

22    the transcript of this hearing.  I'm ordering you all to

23    continue to confer and report by June 24 on whether you've

24    reached agreement on anything, including but not limited to

25    whether I should address -- I'm going to -- my present

1    intention is to address the new claims against the Galvin

2    defendants on a motion to dismiss.  You should tell me whether

3    Twitter wants to go that route without prejudice to anything it

4    wants to argue.  And I might decide to do that anyway, if it's

5    a contested issue.

6            And then you should keep talking after the 24th.  If

7    there are open issues, tell me what you're continuing to talk

8    about, please.

9            I'm ordering the plaintiff by July 15 to file a

10   revised second amended complaint, a description of the

11   discovery it will be seeking if the complaint survives the

12   motion to dismiss by the Galvin defendants at least, whether it

13   survives the motion to dismiss, and a memo on the issues that I

14   identified earlier.

15           I'm ordering the defendants and Twitter to respond to

16   that by July 30.  And if the plaintiff wants to reply, to do

17   that by August 11.

18           Although this could change, I'm going to schedule

19   hearings in this case for August 25, 26 and 27.  If there's

20   anything I can decide orally, I will.  Otherwise, I'll take it

21   under advisement.

22           MR. COOPER:  Your Honor, may I ask a question about

23   the court's order?

24           THE COURT:  Yes.

25           MR. COOPER:  I understood from the earlier part of our

1     discussion that you expect a memo consistent with Rule 11 if we

2     deem to pursue claims against the individual defendants both

3     with regard to qualified immunity and jurisdiction over

4     Ms. Cohen.  I clearly understood that.  Are you telling the

5     parties that the defendants' motions to dismiss are due on July

6     30?

7               THE COURT:  Yes.

8               MR. COOPER:  Responses due on August 11?

9               THE COURT:  Yes.

10              MR. COOPER:  Okay.

11              THE COURT:  But your memo has to address more than

12    those two issues.  I told you what I thought the standards, you

13    know -- the 11th Amendment issue, the motion to dismiss, you

14    know, do I do differential fact-finding under Rule 12(b)(6), or

15    are these -- are the merits intertwined with the jurisdictional

16    issue?  So under the cases like *Valentin* and *Kerns*, do I deny

17    the motion to dismiss without prejudice to be reconsidered

18    after discovery on a motion for summary judgment, or if there

19    are materially disputed facts, at trial.  I think those are the

20    four issues that I told you to brief.

21              MR. COOPER:  I understand that, Your Honor.  It would

22    just seem to me to make more logical sense for us to brief the

23    issue of needed discovery in particular in response to the

24    motion to dismiss.

25              THE COURT:  Well, with regard -- I wasn't asking you

1    to brief the motion for discovery.  I was -- I said I wanted

2    you to describe what -- and it could be without prejudice.  It

3    could evolve -- but here.  This was the way I was thinking

4    about it:  So let's say we are having hearings in August.  I

5    orally deny the motion to dismiss.  Then you're going to want

6    to commence discovery.  But then they're going to -- they may

7    object to some of the discovery.  I'd like everybody to have

8    this information, so if I deny the motion to dismiss, discovery

9    can start promptly.  That was the point.

10            MR. COOPER:  Got it.

11            THE COURT:  Is that okay?

12            MR. COOPER:  Yes.

13            THE COURT:  All right.  Now I want all the lawyers and

14   Dr. Shiva and the NASED defendants -- all the lawyers and their

15   clients who are on this to go into the breakout room with me.

16            Is there anything else before court goes into recess?

17            MR. COOPER:  No, Your Honor.

18            THE COURT:  Okay.  And nothing from the other parties,

19   evidently.  So court is in recess.  But I want to talk to

20   everybody privately, everybody who's participating in the case.

21            MR. HORNSTINE:  Your Honor, while that's happening,

22   does the court wish for the human being clients I represent to

23   be in the breakout room as well?

24            THE COURT:  Yes, I think it's a good idea, and I don't

25   think we'll be there too long.        (Adjourned at 4:49 p.m.)

1                        C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS    )

6

7

8            I certify that the foregoing is a correct transcript

9    from the record of proceedings taken June 15, 2021 in the

10   above-entitled matter to the best of my skill and ability.

11

12

13

14

15   /s/ Kathleen Mullen Silva                      6/22/21

16

17   Kathleen Mullen Silva, RPR, CRR               Date
     Official Court Reporter
18

19

20

21

22

23

24

25