CASE No. 1:20-CV-11889-MLW

Dr. SHIVA AYYADURAI           )
        Plaintiff,           )
                           )
        v.           )
                           )
WILLIAM FRANCIS GALVIN,           )
MICHELLE K. TASSINARI,           )
DEBRA O'MALLEY,           )           JURY DEMANDED
AMY COHEN,           )
NATIONAL ASSOCIATION OF           )
STATE ELECTION DIRECTORS,           )
TWITTER, INC.,           )
all in their individual capacities, and  )
WILLIAM FRANCIS GALVIN,           )
in his official capacity as Secretary           )
of State for Massachusetts,           )
        Defendants.           )

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CLAIMS**

Table of Contents

**INTRODUCTION**                                                       **1**

I.     *Ex Parte Young* Applies ........................................................... 3

II.    Twitter Must Be Properly Joined Here .............................................. 6

III.   This Court Has Personal Jurisdiction Over Amy Cohen ................... 7

IV.   Forum Selection Does Not Apply and Is Un-Enforceable................. 9

V.    Defendants Cannot Avail Themselves of Qualified Immunity ......... 12

VI.   Clearly Established Law Provides All Defendants Are State Actors    15

**CONCLUSION**                                                     **20**

**INTRODUCTION**

Plaintiff has pleaded serious, colorable claims that should survive dismissal. Specifically, Plaintiff has alleged that employees of a state government used their power to either coerce or put a private company up to the task of censoring the political speech of a U.S. Senate candidate.  These actions fly in the face of the First Amendment.

The specific grounds urged by the Defendants for dismissal are all spurious.  First, Defendants do not hold sovereign immunity against Plaintiff's claim for injunctive relief. The exception first recognized well over a century ago in *Ex Parte Young* applies to this case.

Second, Twitter is a proper defendant, because Plaintiff's claims against Twitter arise out of the same facts and raise issues in common with the claims against the other Defendants.  In any event, the non-joinder of Twitter is not fatal, as Plaintiff can still obtain the relief he seeks even if Twitter is not part of the case.

Third, Amy Cohen voluntarily conspired with the other, local defendants, and voluntarily directed tortious activity that she understood would do injury to Plaintiff, a Massachusetts resident.  She therefore purposefully availed herself of suit here.

Fourth, this constitutional case does not arise out of Twitter's user agreement and is thus not governed by the forum selection clause therein.

Finally, the damages claims are not barred by qualified immunity, because Twitter and the other non-governmental Defendants acted either as a result of government coercion or in a joint enterprise with the government, both clearly established grounds for finding an ostensibly private company to be a state actor.

Plaintiff has pleaded sufficient facts to take this case to discovery.  The motion to

dismiss is without merit and should be denied.

# I. *Ex Parte Young* Applies

Simply put, the claims against Galvin, in his official capacity, for constitutional violations fall comfortably within the *Ex Parte Young* exception to the doctrine of sovereign immunity.

Galvin is sued in his official capacity. For 25 years he has been the Secretary of State for Massachusetts. Galvin's chief legal counsel complained about the content of Dr. Shiva's speech and did whatever it took to silence Dr. Shiva's political speech during the period immediately prior to the 2020 general elections day. This silencing involved the use of the domestic speech censorship infrastructure conceived and architected by Galvin's legal counsel Tassinari which includes a private NGO called EI-ISAC which was created to blur the lines between government actors and private actors specifically in order to allow government actors, such as Galvin and Tassinari, to silence domestic political speech while keeping their involvement concealed.

Because Dr. Shiva has been a systems thinker all his life, he was uniquely placed to unravel this covert enterprise rapidly and sued Galvin directly as the person responsible for silencing his political speech. The suit was filed within one month of the silencing.

On October 30, 2020, at the emergency TRO hearing, testimony revealed that Dr. Shiva was correct. Galvin admitted that his office did complain to Twitter about the content of Dr. Shiva's political speech and roped in other entities (NASED, NASS) to strongly encourage Twitter to silence Dr. Shiva's domestic political speech. Testimony also revealed that Tassinari had concealed in her affidavit the priority status that Galvin's office enjoys,

via the Trusted Twitter Partnership, and via her VIP status as one of the main architects of the domestic censorship infrastructure that was pressed into action to coerce Twitter to silence a US Senate candidate right before Election Day.

Despite Galvin's stipulation to Judge Wolf that in the future he would desist from silencing Dr. Shiva's political speech, Galvin and his office ensured 24/7 surveillance of Dr. Shiva's political speech between Election Day and February 1, 2021. This surveillance aimed to silence Dr. Shiva as soon as he mentioned Galvin's and Tassinari's intentional, conscious violation of Federal law 52 US Code 20701 through the deletion of all digital ballot images created by electronic voting machines - in order to prevent neutral audits of election results. Galvin's and Tassinari's use of 24/7 surveillance of Dr. Shiva's political speech for this purpose resulted in Dr. Shiva being permanently suspended on Twitter within seventeen (17) minutes of his very last mention of this violation of Federal law.

It is hornbook law that Galvin's actions were *per se* unconstitutional, under both the state and Federal constitutions. *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), *Commonwealth v. Melissa Lucas*, 472 Mass. 387 (2015)

The intentional violation by Galvin of both the state and Federal constitutions has caused and continues to cause Dr. Shiva great harm in a multitude of ways. Dr. Shiva's political speech remains totally silenced because a politician not actively on Twitter is a nobody. In the world of politics and campaigning, Twitter has an absolute monopoly in the social media space. No other platform credibly exists let alone comes close to Twitter in terms of reach, visibility and engagement with voters and donors.

After being an activist and fighter for forty (40) years, and hailing from a family that left a socialist British Commonwealth country specifically to live under the free speech

protections of the US constitution, it is staggering and disorienting to be silenced to this day by Galvin because of the content of his political speech.

In 1908 the Court ruled in *Ex Parte Young,* 209 U.S. 123 (1908) that sovereign states can never violate the US Constitution and that any violation is committed by the state official in his person and may not be imputed to the state. The Court thus ruled that Eleventh Amendment Immunity does not apply to these suits. Galvin has been sued in his official capacity precisely because the US Supreme court allows suits seeking prospective injunctive relief to be filed in Federal court against state officials in their official capacity. This suit strictly follows the Court's ruling.

In this Circuit, suits under *Ex Parte Young* against Massachusetts state officials are the norm and the enquiry is straightforward.

> "To determine whether the *Ex parte Young* exception is met, a court conducts a straightforward inquiry in to whether a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment). While an allegation of an ongoing violation of federal law is "ordinarily sufficient," Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002), a court must determine whether the alleged violation is truly ongoing or, rather, "designed to remedy past violations of federal law." Coeur d'Alene Tribe, 521 U.S. at 288  (O'Connor, J., concurring in part and concurring in the judgment); see also Papasan v.  Allain, 478 U.S. 265, 277-78 (1986) (distinguishing cases where a violation is "ongoing" from those "in which federal law has been violated at one time or over a period of time in      the past")."
> *Caesars Massachusetts Mgmt. v. Crosby*, 778 F.3d 327 (1st Cir. 2015)

> "Under the doctrine of *Ex Parte Young* and its progeny, however, individual state officials acting in violation of the constitution or laws of the United States are stripped of     their Eleventh Amendment immunity. 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  An individual acting in his or her official capacity may be sued for prospective injunctive relief to end an ongoing constitutional violation, or can be sued in his or her individual capacity for money damages. See Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.   Ed. 2d 662 (1974)."
> *Ahanotu v. Massachusetts Turnpike Authority*, 466 F. Supp. 2d 378 (D. Mass. 2006)

In this case here, Galvin has been sued in his official capacity in order to avail of prospective injunctive relief. It is settled law that Eleventh Amendment immunity is not a permissible defense to this official capacity count.

The harm from Galvin's violation of the Federal constitution is ongoing. Dr. Shiva continues to be excluded from Twitter, the only platform that is of use to persons wishing to run for political office in the future, the platform that Dr. Shiva must use to raise funds for his future campaigns, and the platform for Dr. Shiva to earn an income via live video lectures to his 360,000 followers, a following that he painstakingly built over ten (10) years of daily work.

It is settled law that showing ongoing harm entitles Dr. Shiva to relief from this court under *Ex Parte Young,* 209 U.S. 123 (1908). This ongoing constitutional harm must end and this court must enjoin Galvin's ongoing violation.

## II. Twitter May Be Properly Joined Here.

Dr. Shiva's political speech on Twitter was silenced. This silencing occurred with the full involvement of Twitter. Twitter is an active collaborator with Galvin, Tassinari, Cohen, NASED and the rest of the members of the domestic censorship infrastructure architected by Tassinari and Cohen, shown in the network diagram below.   Joining Twitter will allow Plaintiff to obtain relief against all of the parties who wronged him.

Under Fed. R. Civ. Proc. 20(b), joinder is proper of claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" so long as "any question of law or fact common to all defendants will arise in the action".  Thus, joinder of Twitter is permissible- clearly, all of Plaintiff's claims, against all of the Defendants, arise out of the same facts (the course of conduct that led to Plaintiff being

deplatformed off Twitter). Thus, this Court should join Twitter.

What this Court should *not* do is dismiss the case if it believes Twitter is a necessary party and cannot be joined due to the forum selection clause issue. Plaintiff still has claims for injunctive relief and damages against the other Defendants, who also infringed on his First Amendment rights. Further, Twitter can still be made subject to an injunction because it "acted in concert" with the other Defendants, even if Twitter is not formally joined. *G&C Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir. 1980) (non-party to case may be bound to injunction if it acts "in active concert" with a party). Thus, though Twitter should be made a party to this case for reasons of judicial economy and because the case does not fall within the scope of Twitter's forum selection clause, Plaintiff can still obtain adequate relief even without Twitter in the case.

### III. This Court Has Personal jurisdiction Over Amy Cohen

This is a civil RICO case. Cohen is named as a RICO defendant. The claim is that she participated in a RICO conspiracy along with persons resident within Massachusetts. This court has personal jurisdiction over Cohen because Congress granted this court statutory national jurisdiction over all defendants named in a RICO conspiracy. 18 USC § 1965(a) and (b) and (d).

> "One section of the RICO statute, 18 U.S.C. § 1965, provides for nationwide service of process in civil cases under certain circumstances, in order "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a single court in a trial." Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986). Rule 4 of the Federal Rules of Civil Procedure, in turn, provides that service of process establishes personal jurisdiction over a defendant. Fed. R. Civ. P. 4(k)(1)(C), ("Serving a summons . . . establishes personal jurisdiction over a defendant when authorized by a federal statute."). Thus, under § 1965 and Rule 4, personal jurisdiction over defendants can be obtained in RICO cases under circumstances where it otherwise might not exist."

*World Depot v. Onofri*, 1:16-cv-12439-FDS (D. Mass. 2017)

See also *Bridge v. Invest Am., Inc.*, 748 F. Supp. 948, 950 (D.R.I. 1990) To do otherwise guts the statutory scheme erected by Congress to effectuate the statute's aims. *Rotella v. Wood*, 528 US 549 (2000)(Congressional intent was to "encourag[e] civil litigation to supplement Government efforts to deter and penalize the . . . prohibited practices") While Cohen is free to contest the merits of the Plaintiff's claims, her motion to dismiss based on lack of personal jurisdiction must fail as a matter of law.

Even from a common law approach, going by the Court's ruling in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 US ___ (2021), Cohen cannot claim that this court lacks personal jurisdiction over her, given that her contacts with the forum state are extensive - she has collaborated with Tassinari and Harvard's Belfer Center, she has assisted Tassinari in silencing a Massachusetts political candidate during his run for office, with Tassinari she has held fortnightly calls to ensure participation in EI-ISAC etc. - ***contacts AND conduct*** that are well beyond the minimal contact needed under Ford for this court to establish personal jurisdiction over Cohen.

Independently, this Court has personal jurisdiction over Cohen because she knowingly directed a tort into the state of Massachusetts and deliberately injured Plaintiff, a Massachusetts resident. *Calder v. Jones*, 465 U.S. 783 (1984), is illustrative of this theory. In *Calder*, the defendants published a libelous story of and concerning a person they knew to be a resident of California.

The deliberate infliction of tortious injury in the state of California was held by the Supreme Court to be sufficient to confer personal jurisdiction over the defendants. Similarly, Cohen knew that her conduct would injure Plaintiff and she knew that injury

would be suffered in Massachusetts, where he lives and was campaigning.  She could therefore reasonably foresee being brought into court in this state, and maintenance of the suit against her comports with due process.

As a matter of law this court has personal jurisdiction over Cohen in this case.

### IV. Forum selection does not apply and is unenforceable

Twitter's claim that forum selection applies to this RICO case is a fraud on this court. This false claim is to further the Defendants' fake narrative that Twitter is a private company that makes independent decisions and that the Terms of Use Agreement is the sole relationship between Twitter and Dr. Shiva. Twitter's claim that forum selection applies is as false as Stacia Cardille's affidavit and is consciously false for the same purpose - to continue the racketeering enterprise and obstruct justice by misrepresenting and concealing material facts from Judge Wolf.

The discovery by Dr. Shiva of the Playbooks, filed in this court on May 21, 2021, demolish Twitter's false claim that it did not participate in the enterprise with the Defendants to silence Dr. Shiva and obstruct justice. The very existence of 24/7 surveillance teams and their use to silence a political candidate's political speech is egregious, unconscionable and un-American. Twitter must be publicly castigated in the harshest terms for participating in domestic censorship on behalf of government officials who violated Dr. Shiva's 1st Amendment rights in order to obstruct justice and impeach the witness who filed a sworn complaint against them with the US Attorney, and then lying about it in open court.

Back in 2011 when Dr. Shiva opened his Twitter account, he clicked on a button

which linked to a Terms of Use Agreement. Twitter has filed an affidavit with screenshots of what this button looked like. Dr. Shiva has punctiliously kept to his side of that agreement. At no time did any of his tweets violate twitter's Terms of Use agreement and neither did Twitter object or force him to delete any of those tweets.

The crux of the case which brings Twitter into this RICO case is Twitter's actions outside of the Terms of Use agreement. Nowhere does that agreement declare that Twitter would collaborate with government officials and their domestic censorship infrastructure to silence a US Senate candidate during an active run for office. Nowhere does that Terms of Use agreement declare that Twitter would file false affidavits in Federal court on behalf of government officials.

This means that there was no breach of contract by either party, and this litigation is wholly outside of any conduct governed by that agreement. This fact-intensive evaluation compels this court to disregard Twitter's claim that case law on forum selection controls this court's action and that the litigation must be severed and all claims that involve Twitter transferred to California.

Again, this is a racketeering case with statutory national jurisdiction, where venue is properly in Massachusetts and Twitter is an acknowledged Massachusetts person. Twitter has accepted service in Massachusetts and has failed to contest it, nor can it.

Because Twitter is a necessary or indispensable party in this racketeering case where documentary published evidence for Twitter's participation is overwhelming even before any court-ordered discovery, this court must deny Twitter's effort to destroy this litigation through a false forum selection claim.

None of the cases cited, be it *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of*

*Texas*, 571 U.S. 49 (2013) nor *Claudio de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 47 (1st Cir. 2014) apply to this litigation because the issue is that Twitter is a state actor and not that there was a breach of any contract between the two parties.

In addition, there is the matter of the enforceability of the "click-wrap" agreement itself. The 1st Circuit ruled in *Cullinane v. Uber*, 893 F.3d 53 (2018) that the determination of enforceability of click-wrap agreements was a fact-specific analysis that cannot be disposed off during the Rule 12 stage. That is the second reason why Twitter's forum selection argument must not be sustained.

Finally, in *Atlantic Marine*, the Court declared that the party seeking transfer "bore the burden of establishing that a transfer would be appropriate under §1404(a) and that the court would "consider a nonexhaustive and nonexclusive list of public and private interest factors," of which the "forum-selection clause [was] only one such factor." *United States ex rel. J-Crew Management, Inc. v. Atlantic Marine Constr. Co.*, 2012 WL 8499879, *5 (WD Tex., Apr. 6, 2012)."

In our case here two factors are relevant, in addition to the analysis required in this Circuit by *Cullinane*, and these two are:(1) proceedings in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court; (2) or enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

So, even if this court were to unsee the *Playbooks*, the *Long Fuse Report*, and simply forget the seventeen-minute response time on February 1, 2021, this case must not be transferred to California because (1) the contractual forum is irrelevant given that this is a

racketeering case with national jurisdiction and not one single breach of contract claim has been alleged, (2) it is impossible to bring this RICO case in California given that the conspiracy originated in Massachusetts and caused harm in Massachusetts to a Massachusetts person, an individual who will not be able to prosecute this case in California for reasons of cost and physical burden alone given that his life is here and he has to be here to run his various companies, and (3) devastating Dr. Shiva's ability to prosecute this racketeering complaint would gravely defy Congressional and public policy, because Congress has declared that courts must "encourage" civil RICO cases and not block efforts to effectuate the statute's purpose.

> "The Supreme Court repeatedly has rejected efforts to curtail the scope of civil RICO actions where courts ignore Congress's insistence that the statute be "liberally construed to effectuate its remedial purposes."" *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229  (S.D. NY 2012), *affirmed* 833 F.3d 74 (2nd Cir. 2016).

This court must thus deny all efforts to destroy this civil RICO action through transfer to California.

## V.  Defendants Cannot Avail Themselves of Qualified Immunity

The doctrine of qualified immunity provides that public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   This doctrine applies to claims for damages only- Plaintiff's claims for injunctive relief do not require any showing of a violation of "clearly established" law; only that there was some violation of the law.

Qualified immunity turns on whether Plaintiff can show that the constitutional right he asserts is "clearly established." Qualified immunity is a form of sovereign immunity and is reserved for government employees. "To determine whether a public official has violated clearly established law, a court must evaluate the objective reasonableness of the alleged conduct in light of legal precedent." *El Dia, Inc. v. Rossello*, 165 F.3d 106, 109 (1st Cir. 1999). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[I]n the light of the preexisting law[,] the unlawfulness must [have] be[en] apparent." *Id.*

A clearly-established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In *Sause v. Bauer,* 138 S.Ct. 2561 (2018), the Supreme Court found that qualified immunity does not necessarily apply to a public officer who has prevented a citizen from exercising her First Amendment Rights. In that case, a police officer prevented a woman from praying in her apartment. The Court observed that "there can be no doubt that the First Amendment protects the right to pray." *Id.* at 2562. Likewise, there can be no doubt that the First Amendment right protects the right to political speech, as here.

**A. Government May Not Use Explicit or Implicit Coercive Pressure to Compel Private Actors to Suppress Protected Speech**

Qualified immunity can only attach when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S.Ct. 548 (2018) One clearly established principle is that the First Amendment allows government officials to express political opinions just like

anyone else, but they cannot use the coercive pressure of government to compel private actors to suppress protected speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (state of Rhode Island could not charter a commission to identify objectionable books and pressure retailers not to carry them).

It is also clearly established that the *Bantam Books* rule applies to implicit threats as well as explicit ones. For instance, in *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), Judge Posner applied *Bantam Books* to hold that a Sheriff violated the Constitution when he contacted credit card companies in an attempt to dissuade them from doing business with Backpage, a website that the Sheriff did not approve of. The Sheriff's letter never specifically said that any legal action would be taken; it merely contained a request for contact information. However, under *Bantam Books*, it was sufficient that the letter came under the official imprimatur of a law enforcement official; the threat was implicit.

*Bantam Books*' prohibition on implicit threats was also clearly established in *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003), which held that a New York local government official who contacted a billboard company to express his displeasure with the content of an advertisement that the billboard company carried. Even though no specific threat was made, the court held that the *Bantam Books* rule still prohibited the official's letter, because it implicitly threatened that harm might come to the billboard company's business. Moreover, it did not matter that the defendant had no direct regulatory authority over the billboard company: "a defendant without such direct regulatory or decisionmaking authority can also exert an impermissible type or degree of pressure". *Id.* at 343.

14

Thus, it is long established that a public official cannot act through a private actor to suppress a citizen's speech, particularly when the speech is political and the citizen is a candidate for the United States Senate. Every public official named in this action would understand that prohibition, particularly those with law degrees.

## VI. Clearly Established Law Provides That All Defendants Are State Actors

Independent of whether Twitter is under any implicit or explicit coercion, Plaintiff has also pleaded an alternative theory of joint action between state and private actors that is also supported by clearly established law.  It is clearly established that when a private actor acts in conjunction with the government, this can result in the private actor being treated as a state actor.  Thus, in *Dennis v. Sparks*, 449 U.S. 24 (1980), private parties who conspired with a corrupt judge were held to be state actors by the United States Supreme Court.  "[A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law for purposes of the statute. To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* at 29 n. 4 (cleaned up).

The *Dennis* joint action rule has been clearly established in several Supreme Court and First Circuit cases.  Thus, in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), the Court held that the actions of a state interscholastic athletics sanctioning body, whose members included numerous Tennessee public schools, were so intertwined with government actors that they constituted state action.  The test was

15

whether there was "entwinement" between the government and the ostensibly private defendant.  *Id.* at 302.  As the First Circuit has said, "[w]here a private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights".  *Alexis v. McDonald's Restaurants*, 67 F.3d 341, 351 (1st Cir. 1995).  *Downs v. Sawtelle*, 574 F.2d 1 (1st Cir. 1978), demonstrates that government officials who utilize private actors in a scheme to deprive someone of constitutional rights are state actors in the First Circuit.  *Downs* held that a physician and hospital who sterilized a patient against her will at the behest of local government officials were state actors.

Plaintiff's Second Amended Complaint sufficiently pleads this theory as well.  Plaintiff alleges that far from simply reporting, as any private citizen might, what they believed to be a violation of Twitter's terms of service, the government employees here participated in a wide-ranging collaboration with Twitter where they would be provided with a special portal through which they could identify speakers to be deplatformed.  This portal was created specifically for the purpose of allowing election officials to censor speech they did not like, pursuant to a Playbook that was created to allow for such censorship, and was used for that purpose against Plaintiff, who had been repeatedly identified as a target in the Long Fuse Report.  *Second Amended Complaint* ¶¶ 2-13, 27. Twitter and the other defendants acted jointly, and the purpose of their joint scheme was to deprive Plaintiff (and others) of his constitutional rights.  This joint action is state action under controlling, clearly established authority.

Galvin, Tassinari and O'Malley are government employees.   Cohen and NASED acted as agents for state actors. NASED is an association for and of state actors actually in office.

NASED is inextricably linked with state actors and exists for the sole purpose of amplifying the voice of state actors. It does so via EI-ISAC, the infrastructure built by Cohen and Tassinari to intentionally blur the lines between government and the private sector so as to erase "the gap" created by the First Amendment, which the Defendants and their allies have identified as a problem.

Through EI-ISAC and its own Trusted Partner program, Twitter is inextricably linked with state actors and runs the Partnership solely to provide the government a stealthy end run around First Amendment restrictions. *See* Brentwood *Academy v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288 (2001)  It is impossible to tell where Twitter ends and where the government begins, thanks to Cohen, Rosenbach and allies creating EI-ISAC. This became an established fact in the record with the discovery of the Playbook and the Long Fuse Report.

All Defendants are bound by the very same conspiracy and goal: suppress dissemination of tweets that reveal official emails that confirm conscious violation of Federal law by Tassinari and Galvin.

All Defendants coordinated their attack on Dr. Shiva's political speech in conscious, willful, contemptuous violation of his First Amendment right to the highest protections for his political speech, especially immediately prior to election day.

> While some means of communication may be less effective than others at influencing the public in different contexts, any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts 'own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. And in all events, those differentiations might soon prove to be irrelevant or outdated by technologies that are in rapid flux. See *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 639 (1994). Courts, too, are bound by the First Amendment. We must decline to draw, and then redraw, constitutional lines based on the particular media or technology used to disseminate political speech from a particular speaker." "The Government may not render a

ban on political speech constitutional by carving out a limited exemption through an amorphous regulatory interpretation." "First Amendment standards, however, "must give the benefit of any doubt to protecting rather than stifling speech." *WRTL*, 551 U. S., at 469 (opinion of ROBERTS, C. J.) (citing *New York Times Co. v. Sullivan*, 376 U. S. 254, 269–270 (1964))." "As the foregoing analysis confirms, the Court cannot resolve this case on a narrower ground without chilling political speech, speech that is central to the meaning and purpose of the First Amendment. See *Morse v. Frederick*,551 U. S. 393, 403 (2007)." *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010)

Here it is undisputed, and admitted, that the Defendants stifled the Plaintiff political candidate's political speech during an election campaign, especially just prior to election day, based solely on the content of Plaintiff's speech, which exposed an official email that supported his sworn complaint that Galvin and Tassinari violated Federal law when they destroyed records (digital ballot images) generated in the course of a Federal election, a matter of great public concern, and subject to court rulings in many other states.

Defendants suppressed speech on "matters of public concern'" that is "at the heart of the First Amendment's protection." *First National Bank of Boston v. Bellotti*, 435 U. S. 765, 435 U. S. 776 (1978), citing *Thornhill v. Alabama*, 310 U. S. 88, 310 U. S. 101 (1940), *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010); *see also Commonwealth v. Lucas*, 472 Mass. 387 (2015) (holding that governmental officials in Massachusetts may not constitutionally interfere with political speech during an election campaign).

The suppression of Dr. Shiva's political speech, as well as all of his speech on Twitter for half of the last month prior to Election Day, November 3, 2020, caused massive irreparable harm to him as he was running for Federal office as a Write-In candidate who needed as much visibility as he could get, so voters could learn that he was still a candidate whose name they would have to write in themselves if they chose. Dr. Shiva had built up a following of a quarter of a million followers on Twitter and via Twitter had a reach that did

not require additional expense, compared to advertising on television. The *Long Fuse Report* precisely quantifies that reach.

The Defendants intentionally made his voice disappear at the crucial time and have already admitted to it under oath.

Galvin and the other Defendants, through their conscious, defiant, contempt for and violation of bedrock American principles enshrined in the Constitution via the First Amendment, deliberately caused immense harm to this candidate Plaintiff solely to block the candidate from raising public awareness of Galvin's and Tassinari's violation of Federal law, which is as content-based as a restriction on speech by a government actor can get.

"The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U. S. 476, 354 U. S. 484 (1957); *New York Times Co. v. Sullivan*, 376 U. S. 254, 376 U. S. 269 (1964). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U. S. 64, 379 U. S. 74-75 (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the "highest rung of the hierarchy of First Amendment values,'" and is entitled to special protection. *NAACP v. Claiborne Hardware Co.*, 458 U. S. 886, 458 U. S. 913 (1982); *Carey v. Brown*, 447 U. S. 455, 447 U. S. 467 (1980)." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)

Given their deliberate contempt for both the U.S. Constitution and the right of voters to have free and fair elections without government interference, it is the height of cynicism and hypocrisy for the Defendants to portray themselves as the Defenders of Democracy.

The Court's questioning of Tassinari revealed that the Defendants did not for one moment have any intention of respecting Dr. Shiva's right under the First Amendment to the Constitution, where the sole constitutional response to so-called bad speech is good speech.

The Court asked Tassinari why she did not simply issue a tweet from the Election Division's official Twitter account that debunked Dr. Shiva's tweet rather than coordinating an effort to delete his tweet and have him suspended in the midst of his election campaign prior to election day. Tassinari offered no explanation for why she and the other Defendants did not do this.

The reason Tassinari was unable to explain her choice to the Court is that Tassinari and the other Defendants did not act in response to bad speech, they acted to conceal official evidence of the conscious violation of Federal law by Tassinari and Galvin.  Because the law clearly establishes that government officials cannot act to censor the speech of a political candidate, either through their own offices **or** by collaborating with a private company, Plaintiff is entitled to pursue his claim for damages.

## CONCLUSION

Plaintiff respectfully requests that the Court enter orders consistent with the arguments herein.

Respectfully submitted,

/s/ Dr. Shiva Ayyadurai

Date: July 22, 2021

**Dr. Shiva Ayyadurai**
701 Concord Ave
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com