UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DR. SHIVA AYYADURAI,

              Plaintiff,

v.

WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts and his individual capacity, MICHELLE TASSINARI, in her individual capacity, DEBRA O'MALLEY, in her individual capacity, AMY COHEN, in her individual capacity, and NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS

              Defendant.

CIVIL ACTION
NO. 1:20-cv-11889-MLW

**MEMORANDUM IN RESPONSE TO JULY 16, 2021 ORDER BY WILLIAM FRANCIS GALVIN, MICHELLE TASSINARI, AND DEBRA O'MALLEY**

MAURA HEALEY
ATTORNEY GENERAL

Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Dated: July 28, 2021

## INTRODUCTION

Having fired his attorneys on the eve of a critical Court-imposed deadline, Plaintiff Shiva Ayyadurai has chosen to press forward with legally unsupportable claims and fabricated factual contentions. In so doing, he has violated a Court order and thrown this case into turmoil. Ayyadurai's response to the Court's subsequent order to show cause and his newly revised Second Amended Complaint show that he neither appreciates the way that his antics have impeded this case nor understands his obligation to follow the rules and orders of the Court.

Ayyadurai's actions, not just in this instance but throughout this case, have had consequences. Defendants' ability to vindicate their immunities from litigation have been delayed. The Court's ability to adjudicate the many pending motions at the scheduled August hearings has been jeopardized. And now the parties, their counsel, the Court, and its staff must spend time addressing issues ancillary to the central questions of the case. As Defendants have already argued, the claims in this suit should be dismissed with prejudice because they are contrary to law, barred by the Eleventh Amendment immunity and qualified immunity, and do not state plausible claims for relief. But this Court also has authority to dismiss these claims and take other appropriate steps as a sanction under Fed. R. Civ. P. 16 and 37. Such a response would be fully warranted for conduct that has unfairly prejudiced Defendants, caused substantial delay, and obstructed the ability of the Court to resolve this case.

## PROCEDURAL HISTORY

This suit began in October 2020 when Ayyadurai, who then had counsel, filed a complaint alleging that his First Amendment rights were violated by the Secretary in his official capacity when Twitter decided to suspend temporarily Ayyadurai's Twitter account. See Dkt.

1

No. 1. Just seven days later, however, Ayyadurai terminated his first attorney and elected to proceed pro se. In the ensuing nine months, Ayyadurai has attempted to amend his complaint three times, see Dkt. Nos. 23, 78, 167, each time to add new claims, new defendants, and new conspiracy-fueled allegations to his pleadings.

Since the outset of this case, the Defendants have maintained that these ever-expanding, increasingly erratic claims should be dismissed, based, among other things, on several immunities from suit, including the Commonwealth's Eleventh Amendment immunity and the individual Defendants' qualified immunity. Defendants long ago moved to dismiss Ayyadurai's complaint, see Dkt. Nos. 36 (filed Dec. 9, 2020), and have filed multiple memoranda in support of these motions to dismiss, see Dkt. Nos. 37 (filed Dec. 9, 2020), 46 (filed Jan. 8, 2021), 134 (filed June 1, 2021). And the parties have had multiple hearings on these motions, including hearings in May 2021 that were adjourned without resolving these pending motions so that Ayyadurai could retain counsel at the Court's urging.

These and other motions remain unresolved more than nine months into this case because, as the Court observed at the May 20, 2021 hearing, "this case is somewhat confused, and the way [Ayyadurai] presented matters has impeded its progress." May 20, 2021 Tr. at 6:5-6. The Court has repeatedly – both in written orders and orally during hearings – reminded Ayyadurai that, notwithstanding his decision to proceed pro se, he is obligated to follow the rules and orders of the Court. For example:

- Oct. 29, 2020 Order (Dkt. No. 17) ("'[P]ro se status does not free a litigant in a civil case of the obligation to comply with the procedural rules.' Nor does it permit a litigant to disobey court orders.") (citing Rivera v. Riley, 209 F.3d 24, 27-28 & n.2 (1st Cir. 2000));

2

- Feb. 19, 2021 Order (Dkt. No. 63) ("Despite being admonished by the court concerning the need to comply with the Federal Rules of Civil Procedure and Local Rules, plaintiff did not file a memorandum of law in support of his Emergency Motion as required by Local Rule 7.1(b)(1) and allegedly did not confer with defendants concerning his motion for a subpoena to Twitter (Dkt. No. 56). Any future submissions that do not comply with the applicable Rules may be summarily denied.");

- Oct. 30, 2020 Tr. at 95:5-13 ("[Y]ou're going to have to read the rules and follow them."); and

- May 20, 2021 Tr. at 6:3-4 ("You have to follow the rules and meet the substantive standards."); id. at 12:9-10 ("You have to follow the rules.").

These repeated admonitions have been necessary because Ayyadurai has repeatedly violated the rules.[1]  For example:

- Ayyadurai failed to serve his Complaint in a timely manner as required by the Court's October 20, 2020 Order (Dkt. No. 7), see Dkt. No. 17;

- Ayyadurai failed to timely meet and confer with Defendant concerning his motion for a Temporary Restraining Order, see Dkt. No. 17;

- Ayyadurai failed to file a memorandum in support of a motion as required by Local Rule 7.1(b)(1), see Dkt. No. 63;

---

[1]    This is to say nothing of Ayyadurai's violations of rules in a second case that he filed that is pending before the Court, Ayyadurai v. Galvin, Dkt. No. 1:20-cv-12080-MLW (D. Mass.). For example, Ayyadurai failed to confer with counsel before filing a motion for preliminary injunction, and the Court responded by reminding Ayyadurai that "plaintiff was informed of this requirement [under Local Rule 7.1(a)(2)] and of the fact that "'pro se status does not free a litigant in a civil case of the obligation to comply with the procedural rules.'" Dkt. No. 8 at 2-3. He also marked this second case as being "related" to the present case under Local Rule 40.1 even though it likely is not related within the meaning of that rule.  See Dkt. No. 8.

3

- Ayyadurai failed to meet and confer with Defendants before filing a motion for a subpoena with the Court, see Dkt. No. 63;

- Ayyadurai failed to notify Twitter of his intention to add it as a party as required by Local Rule 15.1, see Dkt. No. 69.

Most recently, Ayyadurai fired his Court-recommended attorneys on the cusp of a Court-ordered deadline – a deadline requested on his behalf by these attorneys – thus violating a scheduling order set by the Court and throwing the resolution of pending motions into disarray. The scheduling order required Ayyadurai to file before July 15, 2021: (1) either a revised complaint or a motion for leave to file a new complaint (depending on whether Defendants assented to a motion for leave to file an amended complaint during a mandatory Local Rule 7.1 conference); (2) a description of discovery he would seek if he amended his complaint; and (3) a memorandum of law addressing, as relevant to these Defendants, their Eleventh Amendment immunity and qualified immunity. See Dkt. No. 149. This schedule gave Defendants until July 30, 2021 to respond to these filings and set three days of hearings at the end of August to resolve all pending motions. Id.

The Court orchestrated this schedule so that these hearings could proceed in August, before the Court's law clerks turned over and so that these motions could be addressed before the Court addressed its "backlog of trials and things." See June 15, 2021 Tr. at 33:4-11. But just as importantly, the Court set this schedule in hopes that Ayyadurai – now with the benefit of advice from and discussion with experienced counsel from Todd & Weld – would file a "slimmed down" complaint, one that would be less "diffuse" and that jettisoned invalid claims for monetary relief against public servants in their personal capacities. See id. at 27:25-28:18, 33:12-14. The Court acknowledged that this schedule would permit it to resolve pending immunity-based defenses to promptly remove the cloud of litigation from individual Defendants

4

who had been sued personally, explaining that "I think any time a person is sued individually, whether they're indemnified or not, you know, their livelihoods are at stake, their funds are at stake. You know, it's a big thing. And it's the jurisprudence both on qualified immunity and, as you said, under the 11th Amendment, the defense is against having to litigate." See id. at 29:6-12.

Ayyadurai was present when the Court initially set these deadlines during the June 15, 2021 hearing. See id. at 4:4-5 ("I do see Dr. Shiva on the screen as well."). As a registered user of CM/ECF in this case, he also received the scheduling order through the Court's electronic filing system on June 16. See Dkt. No. 149. Yet as Ayyadurai's deadline under this Order approached, he terminated his counsel, thus missing the critical deadline and filing none of the materials required by the order.

Dr. Ayyadurai's explanation for his behavior? He was so determined to assert claims against the individual Defendants in their personal capacity under Section 1983 and RICO – claims that the Court had already determined were likely legally unsupportable[2] – that he fired Todd & Weld at the eleventh hour. See Dkt. No. 165 at 2 (explaining that Ayyadurai "was determined not to allow the RICO claims to drop and to oppose qualified immunity" and thus "he felt he was left with little choice" but to fire his attorneys). He knew full well that his actions would run afoul of the Court's critical scheduling order, see id. ("[Ayyadurai] was aware that, if he dismissed his counsel, he would not be able to meet the Court's deadline for these filings"), but he plowed ahead anyway. In the process, he showed no regard for either the Court's order or how his actions would prejudice the Defendants who have long waited to

---

[2]  For instance, at the May 20, 2021 hearing, the court explained that "all of the individual defendants in my current tentative conception … have qualified immunity that protects them from claims . . . against the individuals personally." See May 20, 2021 Tr. at 13:9-12.

vindicate their immunities from suit. Rather, Ayyadurai assumed that his actions would "be largely harmless to the court and the Defendants" and that his behavior could be "easily cured" by an extension. See id.

The Court denied Ayyadurai's request for this extension and instead ordered Ayyadurai to account for his actions. See Dkt. No. 160 at 9-10. In this July 16, 2021 Order, the Court emphasized that Ayyadurai "prejudice[ed]" the Defendants and "disrupt[ed]" the Court's adjudication of these proceedings. See id. at 5.

Ayyadurai's response to this July 16, 2021 Order did nothing to put this case back on track. On July 22, 2021, he and his new attorney, Timothy Cornell,[3] filed a series of confusing documents that again appear to breach the rules and orders of the Court, including:

- Revised second amended complaint (Dkt. No. 167). Although the Court never permitted Ayyadurai to have "hybrid" counsel while simultaneously representing himself pro se, Cornell filed a revised complaint using his CM/ECF credentials but did not sign it. Instead, it was only signed by his client. But see Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented."). Unlike counsel from Todd & Weld, which participated in productive dialogue with Defendants' counsel to narrow the grounds of the suit,[4] neither Ayyadurai nor Cornell met and conferred with Defendants before

---

[3]   Cornell had previously moved to participate as amicus curiae on his own behalf in this case, claiming that he was not being paid for his involvement in the case. Although that pleading is presumably now inaccurate, and at a minimum creates a situation in which Cornell is asking to participate in this case both on his own behalf and Ayyadurai's, Cornell has taken no steps to amend or withdraw it.

[4]   On July 9, 2021, counsel from Todd & Weld represented that Plaintiff had "made the decision … not to name [the individual Defendants] in their individual capacities," and based on

(footnote continued)

6

submitting this new pleading.  But see Local Rule 7.1(a)(2) ("No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."); Dkt. No. 149 (requiring parties to meet and confer on issue of whether Court should address a new complaint through a motion to amend or through motions to dismiss).  Ayyadurai did not seek leave of Court to file this amended complaint.  But see Fed. R. Civ. P 15(a)(2) ("a party may amend its pleading only with the opposing party's written consent or the court's leave.").  This new complaint does not streamline the pleadings, as the Court had hoped; to the contrary, the new complaint contains new claims against new defendants while retaining the old money damages claims against the individual Defendants.[5]

- Memorandum of law in support of Plaintiff's claims (Dkt. No. 166).  Again, contrary to Fed. R. Civ. P. 11(a), this document was electronically filed by Cornell but only signed by Ayyadurai.[6]

- Opposition to Defendants' Motion to Dismiss on Qualified Immunity (Dkt. No. 168).  This document, signed by Cornell, argues – contrary to this Court's expressed tentative view – that the individual Defendants are not entitled to

---

that representation, Defendants agreed that a motion to amend was not necessary but that they reserved the right to move to dismiss the new complaint when it was filed.  Evidently, Dr. Ayyadurai was dissatisfied with the agreement that resulted from the parties' meet and confer, so he reneged and terminated Todd & Weld.

[5]  The Defendants sent a letter to Cornell on July 23, 2021 demanding that this new complaint and other documents filed be withdrawn.  Defendants are separately filing a motion to strike these filings pursuant to Fed. R. Civ. P. 11(a), Fed. R. Civ. P. 12(f), and Fed. R. Civ. P. 5.2(e).

[6]  The Court has previously noted that "I believe there's case law that says, for example, it's not ethical for a lawyer to write a pleading that's signed by a layperson."  May 20, 2021 Tr. at 129:9-11.

qualified immunity. The primary case cited in this brief was previously furnished to the Court by Ayyadurai when he was proceeding pro se, and the Court found it wanting.[7] See June 15, 2021 Tr. at 30:15-19 ("I don't think anybody cited to me another case where Twitter has been found to be a state actor, Facebook has been found to be a state actor. So if it's a case of first impression, at least in the First Circuit, as I understand it, defendants are going to have qualified immunity."). The arguments advanced by Cornell in this document are identical to those that appear in a document that only Ayyadurai signed. Compare Dkt. No. 166 at 13-15 with Dkt. No. 168 at 2-4.

- Description of the discovery sought by Plaintiff (Dkt. No. 166-1). This document was signed by Cornell and describes discovery he would seek on Ayyadurai's behalf in this case.

- Response to Court's Order to Show Cause as to why Ayyadurai should not be sanctioned or held in contempt (Dkt. No. 165). Cornell filed a response to the Court's Order to Show Cause along with an affidavit from Ayyadurai.

- Exhibit (Dkt. No. 170). On Sunday, July 25, 2021, after the new deadline imposed by the July 16 Order, Cornell filed an "exhibit" to the July 22 filings.

Pursuant to the Court's Order of July 16, 2021, Defendants now submit this memorandum in response to Ayyadurai's "submission concerning possible sanctions."

## ARGUMENT

Ayyadurai fired his attorneys because they would not advance his legally unsupportable claims, even though Ayyadurai knew that this decision would cause him to breach the deadlines

---

[7] See Dkt. No. 78 at 65 (citing Backpage.com, LLC v. Dart, 807 F.3d 229 (7th Cir. 2015)).

8

set by the Court.  His decision has had profound consequences for the individual Defendants, their attorneys, and the Court.  Ayyadurai's serial violations of the rules of procedure and the orders of this Court have sidetracked the orderly administration of this case and frustrated the Defendants' ability to vindicate their immunities from suit.  The Defendants moved to dismiss this suit not only because of these immunities from suit, but also because Ayyadurai's sprawling complaints failed to state plausible claims for relief.  Because of Ayyadurai's actions, however, the Court has been unable to rule on these important motions – motions that should ordinarily be resolved at the outset of the case – or otherwise smoothly manage this complex litigation.  Ayyadurai's decision to violate the Court's Order – like so many of his prior decisions to ignore the rules despite multiple admonitions from the Court – justifies a response from the Court.  The rules afford a broad arsenal of sanctions, including, as noted in the July 16, 2021 Order, dismissal with prejudice.  Indeed, dismissal of Ayyadurai's claims is an appropriate result for conduct that has prejudiced Defendants, caused substantial delay, and thwarted the ability of the Court to resolve this case – particularly as Ayyadurai's claims should be dismissed on their merits in any event.[8]

---

[8]  Although the July 16, 2021 Order requires the Defendants only to respond to Ayyadurai's brief concerning potential sanctions, the Defendants note that as it relates to the Court's consideration of whether it should initiate civil or criminal contempt proceedings against Ayyadurai for his violation of a Court order, neither the Defendants nor the Attorney General's Office affirmatively ask this Court to institute civil or criminal contempt proceedings against Ayyadurai.  But the Court certainly has the power to find a party who disobeys an order in civil contempt to coerce a party into compliance with a judicial order or to compensate a party for losses sustained, see United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947); G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 40 (1st Cir. 1980), or to institute criminal contempt proceedings to "punish disobedience with a judicial order," see United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998).  Although Ayyadurai freely admits that he disobeyed the Court's Order and that he did so fully "aware that, if he dismissed his counsel, he would not be able to meet the Court's deadline," Dkt. No 165-1 at 2, Defendants and their counsel are not aware of the content of the filings that were made last week with this Court ex parte and under seal by Ayyadurai and his attorneys.  As a result, Defendants lack full

(footnote continued)

As the First Circuit has acknowledged, "[a]dministering a bustling docket is hard work." Mulero-Abreu v. Puerto Rico Police Dep't, 675 F.3d 88, 91 (1st Cir. 2012); see also Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990) ("[A] district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines."). As the First Circuit succinctly put it: "[r]ules are rules—and the parties must play by them." Id. This maxim is particularly true in this case, which, as the Court has observed, presents challenging issues that require the proper functioning of the adversarial system to resolve. Because the administration of a case like this is challenging for the Court and litigants alike, "[t]he Civil Rules endow trial judges with formidable case-management authority," which includes the ability to set reasonable case event deadlines. Rosario–Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). And where the Court "sets a reasonable due date," for litigation-related filings, "parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance." Mendez, 900 F.2d at 7.

Accordingly, Fed. R. Civ. P. 16(f)(1) affords the Court broad discretion to issue "just orders" whenever a party "fails to obey a scheduling or other pretrial order." Rule 16(f)(1), in turn, "incorporates by reference a menu of sanctions enumerated in Rule 37." Mulero-Abreu, 675 F.3d at 91. This menu includes, as the Court correctly observed in its July 16, 2021 Order, the potential dismissal of an action. Id.; see also Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (noting that the "sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts."). And the selection of an appropriate sanction "is peculiarly within the province of the district court." Mulero-Abreu, 675 F.3d at 91.

---

knowledge of the record before the Court and, accordingly, are not well suited to making the determination of whether contempt proceedings should be initiated.

As to the sanction of dismissal, although this power should be typically reserved where a party's "misconduct is extreme," the First Circuit has emphasized that "disobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct." Young, 330 F.3d at 81; see also Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) ("disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)"). This sanction "must be available so the trial courts may punish and deter egregious misconduct." Mulero-Abreu, 675 F.3d at 94; cf. Higuera v. Pueblo Int'l, Inc., 585 F.2d 555, 557 (1st Cir. 1978) ("There comes a point when the question arises who is running the court—counsel, or the judge. To this there can be but one answer."). The type of misconduct that warrants dismissal includes instances in which a party disobeys scheduling orders. See Damiani v. R.I. Hosp., 704 F.2d 12, 16 (1st Cir. 1983) (noting that "[a]rrogat[ing] control" of the court's schedule should not be "condoned by a slap on the wrist."); Torres-Vargas v. Pereira, 431 F.3d 389, 392 (1st Cir. 2005) ("a federal district court's venerable power to sanction a party who repeatedly fails to comply with court-imposed deadlines cannot be doubted."). As the First Circuit has explained, "a party's disregard of a court order is a paradigmatic example of extreme misconduct" that justifies a sanction of dismissal, and "[u]sing dismissal as a sanction in such a case recognizes the court's strong interest in maintaining discipline and husbanding scarce judicial resources." Id. (stating that "the court need not exhaust less toxic sanctions before dismissing a case with prejudice"). Moreover, the First Circuit has stressed that dismissal is an appropriate remedy upon consideration of, among other things, the "need to maintain order and prevent undue delay," as well as "the prejudice (if any) to the offender's adversary." Young, 330 F.3d at 81 (affirming dismissal as sanction where party, "having been forewarned of the likely consequences of noncompliance, failed to abide by a court order to appear for a deposition within seven days.").

As outlined above, Ayyadurai did not play by the rules; he never has in this case. Although the Court patiently told Ayyadurai again and again that he had to follow the rules of civil procedure and obey the orders of the Court, he did not do so. His serial transgressions culminated in his decision to ignore the June 16, 2021 scheduling order because he was evidently dissatisfied that his attorneys would not maintain the sprawling RICO claim and the claim for money damages against the individual Defendants. This decision had profound consequences for the Court and for the Defendants alike. Defendants long ago asked this Court to dismiss this case, including on the basis of immunities from suit. Ayyadurai delayed (yet again) Defendants' ability to vindicate these immunities or otherwise have the Court act on motions that have long been pending to remove the cloud of needless litigation from Defendants' lives. Ayyadurai impeded the Court's ability to resolve the issues at the heart of this case. His most recent filings continue to show that Ayyadurai has no appreciation for the havoc he has caused.

In sum, he cavalierly treated the rules and this Court's orders as optional, something to be papered over without regard to proper procedure, the Court's calendar, or the Defendants' immunities from suit. His actions should have consequences commensurate to the chaos he has caused, but it is ultimately for the Court to determine what that sanction is. The Court is certainly vested with the power to put an end to Ayyadurai's abuses, and, as outlined above, dismissal is an appropriate consequence for conduct that has prejudiced Defendants, caused substantial delay, and hindered the ability of the Court to resolve this case. That result is particularly justified here, where, as Defendants have previously explained, dismissal of Ayyadurai's claims is proper on the merits.

        Respectfully submitted,

        Defendants,

        WILLIAM FRANCIS GALVIN, in his official and individual capacities, MICHELLE TASSINARI, in her individual capacity, and DEBRA O'MALLEY, in her individual capacity,

        By their attorneys,

        MAURA HEALEY
        ATTORNEY GENERAL

        <u>/s/ Adam Hornstine</u>
        Anne Sterman (BBO No. 650426)
        Adam Hornstine (BBO# 666296)
        Assistant Attorneys General
        Office of the Attorney General
        One Ashburton Place
        Boston, MA  02108
        617-963-2048
        Anne.Sterman@mass.gov
        Adam.Hornstine@mass.gov

Date: July 28, 2021

## CERTIFICATE OF SERVICE

    I, Adam Hornstine, Assistant Attorney General, hereby certify that I have this day, July 28, 2021, served the foregoing **Memorandum**, upon all parties, by electronically filing to all ECF registered parties.

        <u>/s/ Adam Hornstine</u>
        Adam Hornstine