UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI, <br><br> Plaintiff, <br><br> v. <br><br> WILLIANS FRANCIS GALVIN, MICHELLE K. TASSINARI, DEBRA O'MALLEY, AMY COHEN, NATIONAL ASSOCIATION OF STATE ELECTION DIRECTORS, in their individual capacities, and WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of State for Massachusetts. <br><br> Defendants. | Civ. No. 20-cv-11889 <br><br> **Leave to File Granted June 28, 2021** [**Dkt No. 154**] |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

The Opposition falls far short of saving Plaintiff's claims from dismissal. In its unavailing efforts to avoid that fate, moreover, the Opposition only confirms that Plaintiff fails to plead any causal relationship between the Election Division's supposed influence on NASED (the state action) and Twitter's decision to place temporary restrictions on Plaintiff's account for violations of its Terms of Service (Plaintiff's supposed constitutional injury), or any legally viable or coherent theory of state action. Lacking any substantive response to NASED's Motion, the Opposition resorts to empty rhetoric and misdirection, repeatedly mischaracterizing everything, including Plaintiff's own Amended Complaint. Plaintiff, however, cannot make NASED a proper party to this lawsuit or create a legally cognizable claim by piling one speculative inference on top of the next or spinning facts out of thin air, nor can he avoid the legal authorities and contentions in

NASED's Brief by turning a blind eye to them.  This lawsuit – itself a work of misinformation – should be dismissed with prejudice.

## ARGUMENT

### A. No Causation[1]

Despite the Opposition's strained efforts (pp. 6-9) to rewrite the TRO hearing testimony, the only well pled facts before the Court establish that the Elections Division and NASED both reported the same September 24th Tweet and only that specific Tweet, which Twitter took no action against Plaintiff for posting.  As such, all of Plaintiff's claims fail out of the gates for lack of causation.  (*See* Br. 14-15.)  In a U-turn from Plaintiff's prior submissions, the Opposition (pp. 7-8) now asserts—presumably to avoid the causation problems inherent in Plaintiff's theory of redundant state action (*see* Br. 13-14)—that the Elections Division reported only his September 24th Tweet and thereafter "enlisted" NASED to report Plaintiff's September 25th Tweets.  That, however, is not what Plaintiff alleged in his Amended Complaint or argued when opposing the Massachusetts' Defendant's Motion.  (*E.g.*, AC 57; Dkt No. 38, Pls.' Opp. p. 5 (contending that it is supposedly "irrefutable" that a "state Twitter Partner [i.e., the Elections Division] complained to Twitter about those Tassinari email tweets").)  And it is foreclosed by the testimony from which it derives, which is crystal clear that Ms. Tassinari communicated with NASED "once" about "Dr. Shiva" and his specific September 24th Tweet, beginning on the morning of September 25, 2020

---

[1] The leading argument in Plaintiff's Opposition (pp. 1-2) is a frivolous diatribe about the case caption, which merits no substantive response.  Plaintiff devotes another whole section (p. 3) to claiming that NASED supposedly "contradicted" testimony that Twitter's portal allowed NASED (and others) to select election-specific reasons when reporting a Tweet that were not available to every user (Opp. 3), which is entirely irrelevant to his theory of *state* action and shows only that NASED and the state communicated with Twitter using a mechanism available to public and private actors alike.  (*See* Br. 5-6.)  The Opposition (pp. 5-6) spends yet another section quibbling with NASED's description of Plaintiff's belief that the Elections Division violated federal criminal law as "subjective," which it is.  (*See* Br. 4 n.12.)  None of this has any relevance to Plaintiff's claims or substantively responds to NASED's arguments.

and again after 7:30 p.m. on the same day, when NASED told Ms. Tassinari the Tweet was "still up." (Ex. A, at 70.) Thus, because the September 25th Tweets were not published until 10:49 p.m. on September 25, 2020 (AC 15, 21) and Twitter restricted Plaintiff's account the next morning (Ex. A, 38:21-24), they could only have discussed the September 24th Tweet.[2]

Accordingly, the only timeline within the four corners of Plaintiff's pleading establishes that NASED's report could not have caused Twitter's actions or Plaintiff's alleged injury because NASED never flagged the September 25th Tweets for Twitter's review. This is fatal to each of his claims. (*See* Br. 14-15.) Further, by now taking the position that "Cohen and NASED were the proximal cause" of Twitter's decision to restrict his account by reporting Plaintiff's Tweet through its nongovernmental account (Opp. 7), Plaintiff abandons any claim of state action as to the Massachusetts Defendants and NASED alike because there is no allegation that Twitter would have had any basis to know NASED was supposedly encouraged by Massachusetts. *See Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 n. 2 (1st Cir. 1998) (where "the claim fails against the state actors, it fails against the private or semi-private actors who did the state's bidding").

B. **No Actionable Conduct**

**The Opposition Misapplies The State Action Doctrine**. As the Opposition also demonstrates, Plaintiff's claims independently fail because he cannot causally connect NASED *as a state actor* to any alleged *constitutional deprivation* by Twitter, or to any viable theory of state

---

[2] The timeline also forecloses the Opposition's tortured claim that Ms. O'Malley testified that "Tassinari was upset about the four [September 25th] tweets" and that "this is what made Tassinari telephone Cohen and enlist her help in adding to the efforts by the [Elections Division] to strongly encourage Twitter to force the Plaintiff to delete those specific four tweets," (Opp. 3-4), which is not a characterization of events remotely supported by the underlying testimony. The same goes for Plaintiff's efforts to use Ms. Tassinari statements that she "believed [she] saw that [the Tweet] had been removed" and was "relieved" to suggest that Ms. Tassinari and NASED had discussed and reported the September 25th Tweets. (Opp. 4-5.) As Exhibit A plainly reflects, Ms. Tassinari was explicit, including in response to examinations by both the Court and Plaintiff, that the Elections Division and NASED discussed and reported only the September 24th Tweet. (Ex. A, 71:20-78:5.)

action or tortious conduct. The state action analysis "begin[s] by identifying the specific conduct of which the plaintiff complains," *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (cleaned up), because it requires the plaintiff to show that the specific acts leading to his injury were attributable to sovereign authority or influence, *see Brentwood*, 531 U.S. at 295 ("state action may be found if, though[] only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the state itself) (cleaned up).

Plaintiff here specifically challenges the restrictions Twitter placed on his account, which he contends should be deemed state action because the Elections Division supposedly "compelled" or "encouraged" Twitter's editorial judgment (AC 1, 58), but that is not a viable theory of state action *as to NASED*. This is because the Opposition expressly disclaims any allegation that NASED is a "*per se*" state actor in its own right (pp. 6-7), and there is no allegation that NASED held itself out to Twitter as speaking for Massachusetts, invoked or exercised the authority or imprimatur of the state when it contacted Twitter, expressed any view the Elections Division had not already conveyed directly, or that Twitter even had any reason to know that NASED's report was supposedly encouraged by Massachusetts, (Br. 12-14.) Thus, even assuming for argument's sake that the state encouraged NASED's communication, Plaintiff cannot show that the *state's* influence on its report was known to, or had any transitive effect on, Twitter or is the proximate cause of the restrictions it placed on Plaintiff's account. (*See* Br. 13-14.)[3]

**Private "Amplification" Is Not State Action.** Plaintiff fares no better by claiming that NASED "add[ed] to" (Opp. 4) the state's direct message using its own private voice

---

[3] The Opposition's efforts (pp. 6-7) to mischaracterize NASED as the state's "mouthpiece" and "trusted Twitter partner" all flounder on Plaintiff's admission that NASED is not a *per se* state actor, and in any event are not at all supported by the well-pled facts. Such efforts would fail in any event because *Tarkanian* and *Brentwood* both hold that NASED does not speak as a surrogate for each of the individual states in which its members serve, but rather represents the interests of its collective membership. (Br. 9-10.)

4

(@NASEDorg), because that theory too, on its face, does not plead unlawful state action. (Br. 13-14.) The Opposition offers nothing to support Plaintiff's unprecedented claim that NASED's expression of its own private views to Twitter, without any invocation or exercise of Massachusetts authority and only after the state had made its views known, rendered its conduct "under color of law." (*See* Br. 13.) Similarly, it provides no support for Plaintiff's assertion that NASED's own constitutionally-protected speech was transformed into a constitutional tort merely because it shared the state's interests in "election integrity and the absence of fraud." (Opp. 6). *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) ("That a private entity performs a function which serves the public does not make its acts state action."); *see also* Dkt. No. 37, at 14-17 (addressing government speech doctrine). No court has recognized such a remote and attenuated theory of state action, which if accepted would only chill private political speech and public-private collaboration. Nowhere in his Opposition does Plaintiff acknowledge let alone address the countervailing interests threatened by his claims, which have led the First Circuit to consistently reject state action in its recent free speech cases. (Br. 17-18.)

**Parallel Advocacy Is Not An Actionable Conspiracy**. The Opposition's inadequately-pled and conclusory assertion that NASED supposedly acted "in concert" and in a "tight-knit" enterprise with the Elections Division cannot salvage Plaintiff's claims either. (Opp. 7) "[F]or a conspiracy to be actionable under section 1983 the plaintiff has to prove that there has been an agreement [to deprive the plaintiff of a federally-protected right] and an actual deprivation of a right secured by the Constitution and laws." *Hamilton v. Arnold*, 135 F. Supp. 2d 99, 102-03 (D. Mass. 2001) (citing *Dinco v. Dylex, Ltd.*, 111 F.3d 964, 970 (1st Cir. 1997)). Plaintiff's allegations do not come close. As the outset, Plaintiff's supposed conspiracy between NASED and the state did not even allegedly result in the "actual deprivation" of Plaintiff's rights; instead, Plaintiff

5

alleges that NASED and the Elections Division undertook to encourage *Twitter* to take action under its Terms of Service, which is not a legally cognizable basis to impose state action liability on NASED. (*See* Br. 8-13.) Merely encouraging Twitter, a third party who is not alleged to be involved in any conspiracy, to review Plaintiff's Tweet did not, without Twitter's independent actions and decisions construing its own policies, restrict Plaintiff's account or allegedly cause him any harm. *See URI Student Senate v. Town Of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011) ("third-party decisions are not attributable to state action in the requisite sense").

Moreover, "the importance of proving an agreement to conspire is paramount," *Hamilton v. Arnold*, 135 F. Supp. 2d 99, 103 (D. Mass. 2001), aff'd, 29 F. App'x 614 (1st Cir. 2002), but here Plaintiff cannot plead the requisite "corrupt" agreement between NASED and the Elections Division "*to inflict a wrong against or injury upon plaintiff.*" *Souvannakane v. Sears Roebuck & Co.*, 2007 WL 9797780, at *4 (D. Mass. Aug. 24, 2007) (emphasis added) (citing *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)); *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (private actors liable for conspiracy under state action theory where object is "corrupt"). The obvious object of any parallel action by NASED was to combat Plaintiff's objectively misleading claims about the election, not to cause Plaintiff injury. (Br. 3-6.) Stripping out his inadequately-pled stolen election allegations, Plaintiff never identifies any other plausible reason why NASED would report Plaintiff's Tweet, or any basis to conclude its report was inaccurate, insincere or not made in good faith. (*See* Br. 16, 18.) Indeed, NASED could not have "conspired" to unlawfully deprive Plaintiff of his constitutional rights because, as a private actor, it is not subject to the First Amendment and exerts no sovereign influence on Twitter. *See, e.g.*, *Yeo v. Town of Lexington*, 131 F.3d 241, 248-49 (1st Cir.1997) (en banc) ("If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."). There is

therefore no plausible basis to infer that it acted "willfully" to deprive Plaintiff of a constitutionally-protected right when it reported Plaintiff's Tweet. *Cf. Marinello v. United States*, __ U.S. __, 138 S. Ct. 1101, 1108 (2018) ("willfulness" means "the defendant knew of [a legal] duty, and [] voluntarily and intentionally violated that duty").[4]

In any event, the testimony is unequivocal that Ms. Tassinari contacted NASED "once" to advise that the Election's was "reporting [Plaintiff's September 24th Tweet] to Twitter as election misinformation, with the link to the tweet," and that when NASED later offered to "report it, too," it did not know whether the Elections Division had already done so. (Ex. A, 69:20-71:17.) Thus, because the only timeline shows that the Elections Division had already decided to report Plaintiff's Tweet when it notified NASED, and NASED later offered to report the Tweet without knowing whether the Elections Division already had, there could not have been any "plan" to violate Plaintiff's rights. *See, e.g.*, *Aubin v. Fudala*, 782 F.2d 280, 286 (1st Cir. 1983) (an "agreement" to conspire requires "a single plan the essential nature and general scope of which [was] known to each person" or a decision to act "'interdependently,' each actor deciding to act only because he was aware that the other would act similarly"); *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 351-52 (1st Cir. 1995) (no state action where record contained "no evidence of joint discriminatory action" to show that plaintiff's injury "resulted from concerted action tantamount to substituting the judgment of a private party for that of the [state] or allowing the private party to exercise state power"). Likewise, when NASED and the Elections Division

---

[4] Because Plaintiff must show that NASED intended to deprive him of a constitutional right, he also cannot plead state action under the "compulsion" test, which "asks whether the state requires or compels a private party to act in a way that violates a constitutionally protected right." *Jarvis v. Vill. Gun Shop*, 53 F. Supp. 3d 426, 432 (D. Mass. 2014), aff'd sub nom. *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1 (1st Cir. 2015); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Nor can his claims pass the "'joint action test,' under which private actors are considered state actors if they are '*willful* participant[s]' in joint action with the State or its agents" to act unlawfully. *McLarnon v. City of Malden*, 2007 WL 2159364, at *2 (D. Mass. 2007) (emphasis added).

communicated about Plaintiff's September 24th Tweet, they could not have formed any agreement as to the (then nonexistent) September 25th Tweets, as the Opposition (pp. 3-4, 7-8) suggests.[5]

**There Is No Entwinement**.  The Opposition fails to plead state action under an entwinement theory or any other accepted approach.  (*See* Br. 8-14.)  Plaintiff's undeveloped assertion that he "applied the Supreme Court's reasoning in *Brentwood*" does not help him.  Most obviously, *Tarkanian* and *Brentwood* explicitly hold that NASED cannot be deemed the "surrogate of any state" on account of its collective membership of multi-state officials.  (*See* Br. 9-10.)  As such, any credibility or influence the organization's views allegedly had on Twitter is not actionable under § 1983, but rather NASED's own constitutionally-protected speech on matters of public concern.  (*See* Br. 16-17.)  Further, "the requisite entwinement exists *only* when government actors manage or exercise control over a nominally private entity" whose conduct directly caused the deprivation of a federal right.  *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (emphasis added) (citing *Brentwood*, 531 U.S. at 297); *see also Logiodice*, 296 F.3d at 28 (no entwinement where private school was run by private trustees rather than public officials).  Plaintiff cannot show entwinement here for this additional reason, because he affirmatively pleads that NASED is supposedly controlled and funded by private "foundations" and managed in its day-to-day affairs by Ms. Cohen, and no allegation at all that would show the

---

[5]   In all events, the Opposition identifies no basis to hold Ms. Cohen individually liable under a conspiracy-theory of state action or otherwise.  Plaintiff concedes that "Cohen acts for 'NASED' as its Executive Director" (Pls.' Opp. to Rule 12(b)(2) Motion, Dkt. No. 51-1, at 4), and thus abandons any claim that she was acting "other than in [her] official capacit[y]" as NASED's executive director. *Williams v. Northfield Mount Hermon Sch.*, 504 F. Supp. 1319, 1328 (D. Mass. 1981). "Simply joining corporate officers in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation" where, as here, there is no allegation that "they acted other than in their normal corporate duties." *Williams*, 504 F. Supp. at 1328.  As such, Plaintiff cannot prevail on a conspiracy theory as to Ms. Cohen individually because NASED is itself an alleged co-conspirator.

requisite state entwinement between NASED and Twitter.  (Br. 11).[6]

**Twitter's Intervening Editorial Judgments Preclude Liability**.  The Opposition also fails to offer any substantive response to NASED's contention that, as a private actor, it had no ability to control Twitter's policies or editorial judgments, nor does it offer any plausible allegation to suggest that, when it chose to temporarily restrict Plaintiff's account, Twitter ignored its stated policies, contractual rights and statutory immunities on account of any state influence by NASED. (*See* Br. 15-16.)  Although it is black letter law that a state actor cannot be held liable for conduct "it could not control," *Brentwood*, 531 U.S. at 295, all the Opposition can muster is that "Twitter by itself had never deleted any of Plaintiff's Tweets" before he began promoting his election fraud claims.  (Opp. 7.)  But regardless of whether the Court looks to Plaintiff's pleaded theory that NASED reported Plaintiff's September 24th Tweet only after the Elections Division had already expressed the state's view, or the Opposition's speculative claim that NASED supposedly reported his September 25th Tweets on its own, the temporal proximity between NASED's private report and the restrictions placed on Plaintiff's account do not logically raise any inference that NASED's private communications had any *state* influence on Twitter—let alone effectively controlled that decision through the invocation or exercise of sovereign power.

---

[6]     Generally, moreover, the entwinement test applies where, unlike here, the state was not a direct participant in the conduct of the nominally private party. *See generally id.*; *Downs v. Sawtelle*, 574 F.2d 1, 9 (1st Cir. 1978) (entwinement theory applies where "the relationship between the state and the private institution [is] so intertwined that the state will be held responsible for conduct of the institution with which it had no direct connection").  Similarly, the *Blum* tests for state action are generally "limited to suits where the private party is the one allegedly responsible for taking the constitutionally impermissible action," and state officials "took *no* action themselves." *Paige v. Coyner*, 614 F.3d 273, 280 (6th Cir. 2010) (emphasis in original); *see also Mead v. Indep. Ass'n*, 684 F.3d 226, 232 (1st Cir. 2012) (analyzing but finding no state action under *Blum* where state directed plaintiff's private employer to replace her, because state did not "order" her termination because the plaintiff could have continued to work in another capacity and the employer "acted at least in part for its own reasons").  Plaintiff's claims here are entirely unprecedented and fit no accepted theory of state action.

**Plaintiff Ignores Fatal Deficiencies In His Claims**.  The Opposition does not acknowledge let alone overcome numerous dispositive arguments in NASED's Brief.  Thus, it has no response to NASED's authorities and arguments that show, among other things, that its one-time expression of its views to Twitter is too insubstantial to support a tort claim for damages (Br. at 16), that NASED's good faith and the absence of any malice are apparent on the face of the Amended Complaint (Br. at 16-17), or that NASED's expression of its views to Twitter are inactionable protected activity (Br. 17-18).  The Opposition never addresses the defects identified in Plaintiff's other federal or state claims (Br. at 18-20), and offers nothing to dispute that, even if he could plead state action or a federal claim, NASED and Ms. Cohen would be entitled to qualified immunity even as private actors (Br. at 19-20).  Plaintiff's *pro se* status does not relieve him of the obligation to support his claims, and any or all of these unaddressed contentions provide independent grounds for dismissal.  *See United States v. Rodriguez-Morales*, 647 F.3d 395, 400 n.6 (1st Cir. 2011) (deeming argument not developed by pro se plaintiff "waived").

## CONCLUSION

Plaintiffs' claims and allegations are entirely without merit, cobbled together from rank speculation, and contrary to the very constitutional and democratic principles he purports to champion.  Because the deficiencies in his claims cannot be cured, they should be dismissed with prejudice.

Respectfully submitted,

*For The National Association of State Election Directors and Amy Cohen*

*/s/ Nolan J. Mitchell*
Nolan J. Mitchell (BBO #668145)
Quarles & Brady LLP
1701 Pennsylvania Avenue

10

>Suite 700
>Washington, D.C. 20006
>Telephone: (202) 780-2644
>Facsimile: (202) 372-9572
>E-mail: Nolan.Mitchell@quarles.com

Date: August 3, 2021

(Originally filed with Request for Leave on February 1, 2021)

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this 3rd day of August, 2021, a true and correct copy of this document was served on plaintiff and all registered counsel of record via the Court's ECF system.

>*/s/Nolan J. Mitchell*